**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| CHIP PACKAGING TECHNOLOGIES, LLC, | Civil Action No. 7:25-cv-00505-DC-DTG |
| *Plaintiff*, | |
| v. | **JURY TRIAL DEMANDED** |
| STMICROELECTRONICS, INC., | |
| *Defendant*. | |

**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT AND DAMAGES**
**AND DEMAND FOR JURY TRIAL**

Plaintiff Chip Packaging Technologies, LLC ("Chip Packaging" or "Plaintiff") files this First Amended Complaint for Patent Infringement and Damages against STMicroelectronics, Inc., ("STMicro" or "Defendant") and alleges as follows:

**THE PARTIES**

1.    Chip Packaging is the current owner and assignee of the Asserted Patents.

2.    Chip Packaging is a Texas limited liability company with its principal place of business located at 5830 Granite Parkway, Suite #100-216, Plano, Texas 75024.

3.    Upon information and belief, based upon public information, Defendant STMicro is a corporation organized and existing under the laws of Delaware with its principal place of business at 750 Canyon Drive, Suite 300, Coppell, Texas 75019.

4.    Upon public information and belief, Defendant maintains an established place of business at 11809 Domain Drive, Suite 300, Austin, Texas 78758. *See* https://www.st.com/content/st_com/en/contact-us.html (last visited Oct. 21, 2025).  STMicro may

1

be served through its registered agent CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

5. This civil action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285. Accordingly, this Court has subject matter jurisdiction under, *inter alia*, 28 U.S.C. §§ 1331 and 1338(a).

6. This Court has personal jurisdiction over Defendant. Defendant conducts business and has committed acts of patent infringement in this Judicial District, the State of Texas, and elsewhere in the United States.

7. Plaintiff's causes of action arise, at least in part, from Defendant's contacts with and activities in this District and the State of Texas.

8. Defendant has infringed the Asserted Patents within this District and the State of Texas by making, using, distributing, marketing, offering, and/or importing in or into this District and elsewhere in the State of Texas, products that infringe the Asserted Patents, including the Accused Products. Defendant, directly and through intermediaries, makes, uses, offers, imports, distributes, advertises, promotes, and/or otherwise commercializes such infringing products in or into this District and the State of Texas. Defendant regularly conducts and solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from goods and services provided to residents of this District and the State of Texas.

9. This Court has personal jurisdiction over Defendant pursuant to TEX. CIV. PRAC. & REM. CODE § 17.041 *et seq*.

10. Personal jurisdiction exists over Defendant because Defendant has minimum contacts with this forum as a result of business regularly conducted within this District and the

State of Texas, and, on information and belief, specifically as a result of, at least, committing the tort of patent infringement within this District and the State of Texas.

11.    This Court also has personal jurisdiction over Defendant, in part, because Defendant does continuous and systematic business in this District, including by providing infringing products to the residents of this District that Defendant knew would be used within this District, and by soliciting business from the residents of this District.

12.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1400(b), because Defendant has maintained established and regular places of business in this District, has transacted business in this District, and has committed acts of infringement from this District, including, but not limited to, the sale and use of the products identified below.  Venue is proper because STMicro conducts substantial business in this District and has committed acts of infringement here.

13.    Upon public information and belief, and as discussed above in paragraph 4, Defendant has physical facilities and employees in Texas, including an office at 11809 Domain Drive, Suite 300, Austin, Texas 78758.

14.    STMicro is, and has been, registered to do business in the State of Texas (SOS File No. 0005910106) since August 4, 1983.

15.    Defendant has previously not contested the propriety of venue in this District for patent infringement actions and has also admitted that it has facilities and employees located in this District.  *See MIMO Research, LLC v. STMicroelectronics, Inc.*, No. 6:22-cv-00668-ADA, Dkt. No. 14, at ¶ 10 (W.D. Tex. Sept. 1, 2022); *Trustees of Purdue University v. STMicroelectronics, N.V.*, No. 6:21-cv-00727-ADA, Dkt. No. 21, at ¶ 14 (W.D. Tex. Oct. 11, 2021); *Ocean Semiconductor LLC v. STMicroelectronics, Inc.*, No. 6:20-cv-01215-ADA-DTG, Dkt. No. 70, at ¶ 8 (W.D. Tex. Apr. 6, 2022).

## THE ASSERTED PATENTS

16.    On February 16, 2016, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,263,299 (the "'299 Patent") entitled "Exposed Die Clip Bond Power Package." A true and correct copy of the '299 Patent is attached hereto as Exhibit A.

17.    Chip Packaging is the owner and assignee of all right, title, and interest in and to the '299 Patent, including the right to assert all causes of action arising under the '299 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

18.    On March 29, 2016, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,299,646 (the "'646 Patent") entitled "Lead Frame With Power and Ground Bars." A true and correct copy of the '646 Patent is attached hereto as Exhibit B.

19.    Chip Packaging is the owner and assignee of all right, title, and interest in and to the '646 Patent, including the right to assert all causes of action arising under the '646 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

20.    On February 4, 2014, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,643,189 (the "'189 Patent") entitled "Packaged Semiconductor Die with Power Rail Pads." A true and correct copy of the '189 Patent is attached hereto as Exhibit C.

21.    Chip Packaging is the owner and assignee of all right, title, and interest in and to the '189 Patent, including the right to assert all causes of action arising under the '189 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

22.    On June 20, 2017, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,685,351 (the "'351 Patent") entitled "Wire Bond Mold Lock Method and Structure." A true and correct copy of the '351 Patent is attached hereto as Exhibit D.

23.     Chip Packaging is the owner and assignee of all right, title, and interest in and to the '351 Patent, including the right to assert all causes of action arising under the '351 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

24.     On December 11, 2018, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,151,658 (the "'658 Patent") entitled "Pressure-sensing Integrated Circuit Device with Diaphragm."  A true and correct copy of the '658 Patent is attached hereto as Exhibit E.

25.     Chip Packaging is the owner and assignee of all right, title, and interest in and to the '658 Patent, including the right to assert all causes of action arising under the '658 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

26.     Chip Packaging has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Asserted Patents.

## FACTUAL ALLEGATIONS

27.     The Asserted Patents relate to innovative improvements to semiconductor packaging technologies.

28.     The technology in the '299 Patent was developed by Leonardus Antonius Elisabeth van Gemert and Emil Casey Israel of NXP B.V.

29.     The technology in the '646 Patent was developed by Shailesh Kumar and Piyush Kumar Mishra of Freescale Semiconductor, Inc.

30.     The technology in the '189 Patent was developed by Boon Yew Low, Navas Khan Oratti Kalandar, and Lan Chu Tan of Freescale Semiconductor, Inc.

31.     The technology in the '351 Patent was developed by Leo M. Higgins, III of NXP USA, Inc.

32.     The technology in the '658 Patent was developed by Mariano Layson Ching, Jr., Allen M. Descartin, and Alexander M. Arayata of NXP USA, Inc.

33.     On information and belief, each of the STMicro products identified herein, including the MOSFET N-CH 60V 120A POWERFLAT (STL220N6F7), STMicro 32-bit Power Architecture MCU for Automotive General-Purpose Applications - Chorus family (SPC582B60E1), have been available for purchase in the United States, including but not limited to, through STMicro-authorized distributors. By way of example only, the STMicro website specifically identifies its distributors that ship into the United States:



*See* STMicroelectronics, *Contacts*, https://www.st.com/content/st_com/en/contact-us.html (last visited Jan. 22, 2026).

34.     As an example, the MOSFET N-CH 60V 120A POWERFLAT (STL220N6F7) product line is available for purchase in the United States, including but not limited to through STMicro's website:



STMicroelectronics, *STL220N6F7*, https://estore.st.com/en/products/power-transistors/power-mosfets/stpower-n-channel-mosfets-gt-30-v-to-200-v/stripfet-f7-series/stl220n6f7.html (last visited Jan. 22, 2026).

35.    As another example, the STMicro 32-bit Power Architecture MCU for Automotive General-Purpose Applications - Chorus family (SPC582B60E1) is available for purchase in the United States, including but not limited to through STMicro's website:



STMicroelectronics, *SPC582B60E1*,

https://estore.st.com/en/catalogsearch/result/?q=SPC582B60E1 (last visited Jan. 22, 2026).

    36.    As another example, the STMicro Mainstream Arm Cortex-M0+ MCU with 128

Kbytes of Flash memory (STM32G071CB) family of products are available for purchase in the

United States, including but not limited to through STMicro's website:



STMicroelectronics, *STM32G071CB*, https://estore.st.com/en/products/microcontrollers-microprocessors/stm32-32-bit-arm-cortex-mcus/stm32-mainstream-mcus/stm32g0-series/stm32g0x1/stm32g071cb.html (last visited Jan. 22, 2026).

    37.    As another example, the STMicro SR5 E1 Series 32-bit MCUs product line are available for purchase in the United States, including but not limited to through STMicro's website:



STMicroelectronics, *SR5E1E5*, https://estore.st.com/en/products/automotive-microcontrollers/stellar-32-bit-automotive-mcus/stellar-e-electrification/sr5e1e5.html (last visited Jan. 22, 2026).

Additionally, the SR5E1E7 product is available for purchase in the United States, including but not limited to through STMicro's authorized distributor, Mouser Electronics:



Mouser Electronics, *STMicroelectronics SR5E1E770C30F00X*,

https://www.mouser.com/ProductDetail/STMicroelectronics/SR5E1E770C30F00X?qs=mELouG

lnn3cqj0hAynTdIQ%3D%3D (last visited Jan. 22, 2026).

38.     As another example, the STMicro LPS28DFW product line is available for

purchase in the United States, including but not limited to through STMicro's website:



STMicroelectronics, *LPS28DFW*, https://estore.st.com/en/products/mems-and-sensors/pressure-sensors/lps28dfw.html (last visited Jan. 22, 2026).

## FIRST COUNT
### (Infringement of U.S. Patent No. 9,263,299)

39.     Chip Packaging incorporates by reference the allegations set forth in Paragraphs 1-38 of the Complaint as though fully set forth herein.

40.     The claims of the '299 Patent are valid and enforceable.

41.     STMicro has and continues to directly infringe the '299 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products made using the patented methods including, but not limited to, products that satisfy each and every limitation of one or more claims of the '299 Patent. Upon information and belief, such products

include at least the STMicro MOSFET N-CH 60V 120A POWERFLAT product line, including but not limited to: STL220N6F7.

42.     For example, the Accused Products incorporate and/or implement elements that are identical or equivalent to each claimed element of the patented invention pointed out by at least Claim 1 of the '299 Patent.

43.     Claim 1 of the '299 Patent recites:

> 1. A method for packaging an integrated circuit (IC) device, the method comprising:
>
>> mounting a plurality of active device die, into predetermined positions, onto a temporary carrier, each said active device die having bond pads, each of said active device die having a solderable conductive surface on its underside; and having been subjected to back-grinding to a prescribed thickness;
>>
>> dispensing a solder paste onto the bond pads on the plurality active device die;
>>
>> attaching a lead frame to the temporary carrier, the lead frame having an array of device positions which correspond to the predetermined positions of the plurality of active device die, wherein upper lead frame portions contact the solder paste present on the bond pads and lower lead frame portions contact the temporary carrier; and
>>
>> reflowing the solder so that a connection is made between the upper lead frame portions and the bond pads of the plurality of active device die.

'299 Patent, Cl. 1.

44.     For example, the MOSFET N-CH 60V 120A POWERFLAT implements a method for packaging an integrated circuit (IC) device.  The integrated circuit (IC) device is illustrated in the images below, which are photographs of the STL220N6F7 product:




45.    On information and belief, the Accused Products are manufactured using a process that mounts a plurality of active device die (identified in blue), into predetermined positions, onto a temporary carrier where each active die has bond pads (identified in red).  The images below are X-rays and packaging photographs of the STL220N6F7 product, with blue and red identifiers added as annotations.



46.    On information and belief, within the Accused Products each active die has a solderable conductive surface, for example a surface made of titanium, nickel, copper, and/or gold, on its underside (identified in orange); and has been subjected to back-grinding to a prescribed thickness (identified in yellow).  The image below is an X-ray cross-section of the STL220N6F7 product, with orange and yellow identifiers added as annotations.



47.    On information and belief, the Accused Products are manufactured using a process that dispenses a solder paste (identified in pink), such as one made of (for example) tin, silver, copper, and/or lead, onto the bond pads on the plurality active device die.  The image below is an X-ray cross-section of the STL220N6F7 product, with pink, orange, and yellow identifiers added as annotations.



48.    On information and belief, the Accused Products are manufactured using a process that attaches a lead frame to the temporary carrier, the lead frame having an array of device

positions which correspond to the predetermined positions of the plurality of active device die. On information and belief, STMicro manufactures the Accused Products on a temporary carrier in an array with a unified lead frame, with each Accused Product initially formed as a part of an undiced (or uncut) array. The images below are a demonstrative illustration of how, on information and belief, the Accused Products (including the STL220N6F7 product) appear prior to separation. STMicro's processing steps are not public and are within the exclusive control of STMicro. On information and belief, an undiced lead frame (highlighted as a large blue rectangle in the demonstrative illustration below) has an array of device positions corresponding to a predetermined arrangement of the plurality of active device die (highlighted as six pink boxes in the demonstrative illustration below). After the array is diced, each of these device positions will correspond to one of the Accused Products, such as the STL220N6F7 product photographed above.



49.    On information and belief, the Accused Products are manufactured using a process wherein the upper lead frame portions contact the solder paste present on the bond pads (identified in green).  The images below are X-ray cross-sections of the STL220N6F7 product, with green, pink, and purple identifiers added as annotations.



50.    On information and belief, the Accused Products are manufactured using a process wherein the lower lead frame portions contact the temporary carrier (identified in purple).  The images below are X-ray cross-sections of the STL220N6F7 product, with green, pink, and purple identifiers added as annotations.



51.     On information and belief, the Accused Products are manufactured using a process that reflows the solder so that a connection is made between the upper lead frame portions and the bond pads of the plurality of active device die.  For example, EDS mapping shows a silicon (Si) die with lead (Pb) based solder reflowed on top and bottom surfaces:





52.     Fact and expert discovery are expected to confirm that the Accused Products infringe the '299 Patent, for which further evidence may lie in whole or in part in technical documents to which Chip Packaging does not presently have access.

53.     Further, on information and belief, Defendant has and continues to indirectly infringe one or more claims of the '299 Patent, including claim 1, under 35 U.S.C. § 271(b) without authority.  Defendant has had actual knowledge of the '299 Patent and that the Accused Products

infringed the '299 Patent, or was willfully blind to such infringement, as of November 4, 2025, the date that the original complaint in this action was served on STMicro. With specific intent to cause infringement by others, or while willfully blind to such infringement, Defendant has induced the direct infringement of the '299 Patent by third parties, including but not limited to, third-party semiconductor foundries, Defendant's distributors, other types of third-party manufacturers, customers, and/or end-users. Defendant's actions constituting inducement include, but are not limited to, contracting for the third-party manufacture of, and/or providing the Accused Products to direct infringers, thereby causing them to make, use, offer to sell, sell, and/or import into the United States the Accused Products, either literally or under the doctrine of equivalents.

54. Defendant, with knowledge that these products, and/or the manufacture thereof, infringe the '299 Patent as of November 4, 2025 (the date that the original complaint in this action was served on Defendant), knowingly and intentionally induced, and continues to knowingly and intentionally induce direct infringement of the '299 Patent by contracting for the third-party manufacture of, and/or providing the Accused Products to direct infringers.

55. As of November 4, 2025 (the date that the original complaint in this action was served on Defendant), Defendant has induced infringement by others, including third-party semiconductor foundries, Defendant's distributors, other types of third-party manufacturers, customers, and/or end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others infringe the '299 Patent, but while remaining willfully blind to the infringement.

56. Defendant has and continues to infringe one or more claims of the '299 Patent by importing into the United States or offering to sell, selling, or using within the United States a product which is made by a process patented in the United States.

57.     Defendant is not licensed or otherwise authorized to practice the claims of the '299 Patent.

58.     Thus, by its acts, Defendant has injured Chip Packaging and is liable to Chip Packaging for directly and/or indirectly infringing one or more claims of the '299 Patent, whether literally or under the doctrine of equivalents, including without limitation claim 1.

59.     As a result of Defendant's infringement of the '299 Patent, Chip Packaging has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty with interest and costs.

## SECOND COUNT
### (Infringement of U.S. Patent No. 9,299,646)

60.     Chip Packaging incorporates by reference the allegations set forth in Paragraphs 1-59 of the Complaint as though fully set forth herein.

61.     The claims of the '646 Patent are valid and enforceable.

62.     STMicro has and continues to directly infringe the '646 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products, including products made using the patented methods including, but not limited to, products that satisfy each and every limitation of one or more claims of the '646 Patent.  Upon information and belief, such products include at least the STMicro 32-bit Power Architecture MCU for Automotive General-Purpose Applications - Chorus family (SPC582B60E1) and all other products with power and ground bar arrangements that are not colorably different.

63. For example, the Accused Products incorporates and/or implements elements that are identical or equivalent to each claimed element of the patented invention pointed out by at least Claim 1 of the '646 Patent.

64. Claim 1 of the '646 Patent recites:

1. A semiconductor device, comprising:

a semiconductor die having a plurality of first contact pads and at least one second contact pad disposed on or exposed through a surface thereof;

a package casing that covers the semiconductor die;

a plurality of signal leads spaced apart from the semiconductor die and each having an embedded portion located within the package casing and an exposed portion located outside of the package casing, each of the signal leads being electrically connected to a respective one of the first contact pads;

a power bar extending at least partially in an area between the embedded portions of the plurality of signal leads and the semiconductor die and having a first side opposing the signal leads and a second side opposing the semiconductor die, the power bar being electrically connected to the at least one second contact pad; and

a ground bar that is electrically grounded and extends at least partially in said area, the ground bar having a first portion disposed between the embedded portions of the plurality of signal leads and the first side of the power bar, and a second portion disposed between the second side of the power bar and the semiconductor die.

'646 Patent, Cl. 1.

65. For example, the SPC582B60E1 family of devices includes a semiconductor device:



66.    On information and belief, the Accused Products include a semiconductor die (indicated in red) having a plurality of first contact pads (indicated in green) and at least one second contact pad (indicated in blue) disposed on or exposed through a surface thereof.



67.    On information and belief, the Accused Products include a package casing (indicated in pink) that covers the semiconductor die.



68.    On information and belief, the Accused Products include a plurality of signal leads (indicated in teal) spaced apart from the semiconductor die and each having an embedded portion

located within the package casing and an exposed portion located outside of the package casing, each of the signal leads being electrically connected to a respective one of the first contact pads.





Package Bottom View

Package X-Ray

69.     On information and belief, the Accused Products include a power bar (indicated in orange) extending at least partially in an area between the embedded portions of the plurality of signal leads and the semiconductor die (indicated in purple).



70.    On information and belief, the Accused Products include a power bar (indicated in orange) having a first side opposing the signal leads (indicated in teal) and a second side opposing the semiconductor die (indicated in red), the power bar being electrically connected (indicated in pink) to the at least one second contact pad (indicated in blue).



71.    On information and belief, the Accused Products include a ground bar (indicated in yellow) that is electrically grounded and extends at least partially in said area (indicated in purple) with a first portion disposed between the embedded portions of the plurality of signal leads (indicated in teal) and the first side of the power bar and having a second portion disposed between the second side of the power bar and the semiconductor die (indicated in red).



72.     Fact and expert discovery are expected to confirm that the Accused Products infringe the '646 Patent, for which further evidence may lie in whole or in part in technical documents to which Chip Packaging does not presently have access.

73.     Further, on information and belief, Defendant has and continues to indirectly infringe one or more claims of the '646 Patent, including claim 1, by inducing infringement under 35 U.S.C. § 271(b) without authority.  Defendant has had knowledge of the '646 Patent and that its Accused Products infringe as of November 4, 2025, the date that the original complaint in this action was served on Defendant.  Defendant, with specific intent to cause infringement, knowingly and intentionally induces others, including third-party semiconductor foundries, Defendant's distributors, other types of third-party manufacturers, customers, and/or end-users (the "Third-Party Infringers") to directly infringe the '646 Patent, either literally or under the doctrine of

equivalents, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products. Defendant has induced infringement by contracting for the third-party manufacture of, and/or providing the Accused Products to the Third-Party Infringers. Defendant had the intent to cause infringing acts by others or, in the alternative, acted with willful blindness to the infringement by others.

74.    Defendant, with knowledge that these products, and/or the manufacture thereof, infringe the '646 Patent as of November 4, 2025 (the date that the original complaint in this action was served on Defendant), knowingly and intentionally induced, and continues to knowingly and intentionally induce direct infringement of the '646 Patent by contracting for the third-party manufacture of, and/or providing the Accused Products to direct infringers.

75.    As of November 4, 2025, the date that the original complaint in this action was served on Defendant, Defendant has induced infringement by others, including third-party semiconductor foundries, Defendant's distributors, other types of third-party manufacturers, customers, and/or end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others infringe the '646 Patent, but while remaining willfully blind to the infringement.

76.    Defendant is not licensed or otherwise authorized to practice the claims of the '646 Patent.

77.    Thus, by its acts, Defendant has injured Chip Packaging and is liable to Chip Packaging for directly and/or indirectly infringing one or more claims of the '646 Patent, whether literally or under the doctrine of equivalents, including without limitation claim 1.

78.    As a result of Defendant's infringement of the '646 Patent, Chip Packaging has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to

compensate for Defendant's infringement, but in no event less than a reasonable royalty with interest and costs.

## THIRD COUNT
### (Infringement of U.S. Patent No. 8,643,189)

79.    Chip Packaging incorporates by reference the allegations set forth in Paragraphs 1-78 of the Complaint as though fully set forth herein.

80.    The claims of the '189 Patent are valid and enforceable.

81.    STMicro has and continues to directly infringe the '189 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products incorporating the patented methods including, but not limited to, products that satisfy each and every limitation of one or more claims of the '189 Patent.  Upon information and belief, such products include at least the STMicro Mainstream Arm Cortex-M0+ MCU with 128 Kbytes of Flash memory (STM32G071CB) family and all other products with power rail pad structures that are not colorably different.

82.    For example, the Accused Products incorporates and/or implements elements that are identical or equivalent to each claimed element of the patented invention pointed out by at least Claim 1 of the '189 Patent.

83.    Claim 1 of the '189 Patent recites:

1. A semiconductor die package, comprising:

a semiconductor die support having external connectors;

a semiconductor die mounted to the die support, the semiconductor die having a die support mounting surface attached to the die support and an opposite die connection pad surface with associated die connection pads, wherein the connection die pads are circuit nodes of the semiconductor die;

at least one power rail pad on the die connection pad surface, the power rail pad having a larger surface area than surface areas of the die connection pads; and

die wire bonds electrically coupling the power rail pad to at least two of the die connection pads.

'189 Patent, Cl. 1.

84.    For example, the STMicro Mainstream Arm Cortex-M0+ MCU with 128 Kbytes of Flash memory (STM32G071CB) family includes a semiconductor die package that satisfies each claim element.

 

85.    On information and belief, the Accused Products include a semiconductor die support (indicated in green) having external connectors.



86.    On information and belief, the Accused Products include a semiconductor die (indicated in blue) mounted to the die support (indicated in green).







87.    On information and belief, the Accused Products include a semiconductor die (indicated in blue) with a die support mounting surface (indicated in pink) attached to the die support (indicated in green) and an opposite die connection pad surface (indicated in pink).



88.    On information and belief, the Accused Products include a semiconductor die with associated die connection pads (indicated in purple), wherein the connection die pads are circuit nodes of the semiconductor die and at least one power rail pad (indicated in orange) on the die connection pad surface, the power rail pad having a larger surface area than surface areas of the die connection pads.



89.    On information and belief, the Accused Products include die wire bonds (indicated in light blue) electrically coupling the power rail pad to at least two of the die connection pads.



90.     Fact and expert discovery are expected to confirm that the Accused Products infringe the '189 Patent, for which further evidence may lie in whole or in part in technical documents to which Chip Packaging does not presently have access.

91.     Further, on information and belief, Defendant has and continues to indirectly infringe one or more claims of the '189 Patent, including claim 1, by inducing infringement under 35 U.S.C. § 271(b) without authority.  Defendant has had knowledge of the '189 Patent and that its Accused Products infringe as of November 4, 2025, the date that the original complaint in this action was served on Defendant.  Defendant, with specific intent to cause infringement, knowingly and intentionally induces others, including third-party semiconductor foundries, Defendant's distributors, other types of third-party manufacturers, customers, and/or end-users (the "Third-Party Infringers") to directly infringe the '189 Patent, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products.  Defendant has induced infringement by contracting for the third-party manufacture of, and/or providing the Accused Products to the Third-Party Infringers.  Defendant

had the intent to cause infringing acts by others or, in the alternative, acted with willful blindness to the infringement by others.

92.    Defendant, with knowledge that these products, and/or the manufacture thereof, infringe the '189 Patent as of November 4, 2025 (the date that the original complaint in this action was served on Defendant), knowingly and intentionally induced, and continues to knowingly and intentionally induce direct infringement of the '189 Patent by contracting for the third-party manufacture of, and/or providing the Accused Products to direct infringers.

93.    As of November 4, 2025 (the date that the original complaint in this action was served on Defendant), Defendant has induced infringement by others, including third-party semiconductor foundries, Defendant's distributors, other types of third-party manufacturers, customers, and/or end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others infringe the '189 Patent, but while remaining willfully blind to the infringement.

94.    Defendant is not licensed or otherwise authorized to practice the claims of the '189 Patent.

95.    Thus, by its acts, Defendant has injured Chip Packaging and is liable to Chip Packaging for directly and/or indirectly infringing one or more claims of the '189 Patent, whether literally or under the doctrine of equivalents, including without limitation claim 1.

96.    As a result of Defendant's infringement of the '189 Patent, Chip Packaging has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty with interest and costs.

## FOURTH COUNT
## (Infringement of U.S. Patent No. 9,685,351)

97.    Chip Packaging incorporates by reference the allegations set forth in Paragraphs 1-96 of the Complaint as though fully set forth herein.

98.    The claims of the '351 Patent are valid and enforceable.

99.    STMicro has and continues to directly infringe the '351 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products made using the patented methods including, but not limited to, products that satisfy each and every limitation of one or more claims of the '351 Patent.  Upon information and belief, such products include at least the STMicro SR5 E1 Series 32-bit MCUs, including the SR5E1E7 and all other products with positive mold lock structures that are not colorably different.

100.    For example, the Accused Products incorporates and/or implements elements that are identical or equivalent to each claimed element of the patented invention pointed out by at least Claim 1 of the '351 Patent.

101.    Claim 1 of the '351 Patent recites:

1. A method comprising:

   providing a lead frame comprising a first die paddle and one or more electrical connector elements; and

   forming one or more positive mold lock structures at predetermined locations on a top surface of the lead frame which laterally protrude above the top surface.

'351 Patent, Cl. 1.

102.    For example, the STMicro SR5E1E7 32-bit MCU, includes a semiconductor device that implements the claimed method.



103.    On information and belief, the Accused Products are manufactured using a process that provides a lead frame comprising a first die paddle (indicated in red) and one or more electrical connector elements (indicated in purple).



104.    On information and belief, the Accused Products are manufactured using a process that forms one or more positive mold lock structures (indicated in green) at predetermined locations.



*Package Cross-Section View*



105.    On information and belief, the Accused Products are manufactured using a process that forms one or more positive mold lock structures on a top surface of the lead frame (indicated in blue) which laterally protrude above (indicated in yellow) the top surface.

38



106.    Fact and expert discovery are expected to confirm that the Accused Products infringe the '351 Patent, for which further evidence may lie in whole or in part in technical documents to which Chip Packaging does not presently have access.

107.    Further, on information and belief, Defendant has and continues to indirectly infringe one or more claims of the '351 Patent, including claim 1, by inducing infringement under 35 U.S.C. § 271(b) without authority.  Defendant has had knowledge of the '351 Patent and that

its Accused Products infringe as of November 4, 2025, the date that the original complaint in this action was served on Defendant. Defendant, with specific intent to cause infringement, knowingly and intentionally induces others, including third-party semiconductor foundries, Defendant's distributors, other types of third-party manufacturers, customers, and/or end-users (the "Third-Party Infringers") to directly infringe the '351 Patent, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products. Defendant has induced infringement by contracting for the third-party manufacture of, and/or providing the Accused Products to the Third-Party Infringers. Defendant had the intent to cause infringing acts by others or, in the alternative, acted with willful blindness to the infringement by others.

108. Defendant, with knowledge that these products, and/or the manufacture thereof, infringe the '351 Patent as of November 4, 2025 (the date that the original complaint in this action was served on Defendant), knowingly and intentionally induced, and continues to knowingly and intentionally induce direct infringement of the '351 Patent by contracting for the third-party manufacture of, and/or providing the Accused Products to direct infringers.

109. As of November 4, 2025, the date that the original complaint in this action was served on Defendant, Defendant has induced infringement by others, including third-party semiconductor foundries, Defendant's distributors, other types of third-party manufacturers, customers, and/or end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others infringe the '351 Patent, but while remaining willfully blind to the infringement.

110.    Defendant has and continues to infringe one or more claims of the '351 Patent by importing into the United States or offering to sell, selling, or using within the United States a product which is made by a process patented in the United States.

111.    Defendant is not licensed or otherwise authorized to practice the claims of the '351 Patent.

112.    Thus, by its acts, Defendant has injured Chip Packaging and is liable to Chip Packaging for directly and/or indirectly infringing one or more claims of the '351 Patent, whether literally or under the doctrine of equivalents, including without limitation claim 1.

113.    As a result of Defendant's infringement of the '351 Patent, Chip Packaging has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty with interest and costs.

**FIFTH COUNT**
**(Infringement of U.S. Patent No. 10,151,658)**

114.    Chip Packaging incorporates by reference the allegations set forth in Paragraphs 1-113 of the Complaint as though fully set forth herein.

115.    The claims of the '658 Patent are valid and enforceable.

116.    STMicro has and continues to directly infringe the '658 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products which incorporate the patented methods including, but not limited to, products that satisfy each and every limitation of one or more claims of the '658 Patent.  Upon information and belief, such products include at least the STMicro LPS28DFW product line and all other products with a pressure sensing gel structure that are not colorably different.

117.    For example, the Accused Products incorporates and/or implements elements that are identical or equivalent to each claimed element of the patented invention pointed out by at least Claim 1 of the '658 Patent.

118.    Claim 1 of the '658 Patent recites:

1. A pressure-sensing integrated circuit (IC) device, comprising:

a pressure-sensing die;

a flexible gel covering at least a pressure-sensing region of the pressure-sensing die;

a flexible diaphragm covering the flexible gel, wherein the flexible diaphragm and the flexible gel enable the pressure sensor to sense ambient pressure outside of the IC device; and

a lid having an aperture, wherein the lid is located between the flexible gel and an exterior of the device, and the aperture permits ambient air to move the diaphragm and consequently the flexible gel so that the pressure-sensing die can measure the ambient air pressure.

'658 Patent, Cl. 1.

119.    For example, the STMicro LPS28DFW includes a pressure-sensing integrated circuit (IC) device (identified in red and with red underlining).



42

## Description

The LPS28DFW is an ultra-compact piezoresistive absolute pressure sensor which functions as a digital output barometer. The device comprises a sensing element and an IC interface which communicates over the I²C or MIPI I3C$^{SM}$ interface from the sensing element to the application. The LPS28DFW provides lower power consumption, achieving lower pressure noise than its predecessor.

*See STMicroelectronics, LPS28DFW Datasheet* (Dec. 2021), at 1, 10,

https://www.st.com/resource/en/datasheet/lps28dfw.pdf.

120.    On information and belief, the Accused Products include a pressure-sensing die (indicated in green and with green underlining).

### Device structure

The LPS28DFW has a unique cylindrical package solution with a full metal lid assembled on ceramic substrate and this cylindrical package provides an easy assembly with O-rings in the end user's application.



Figure 5. LPS28DFW internal structure

This structure (Figure 5) is designed and verified to resist water pressure up to 10 ATM and the potting gel in the LPS28DFW has been proven to protect electronic components from long-term exposure to harsh environments such as water mixed with chlorine, bromine, commercial washing detergent and fuels, solvents and chemicals. It also provides excellent low-stress encapsulation performance for sensitive electronic components from severe environmental conditions such as high temperature and humidity, refer to the properties of the gel which are given in the following table.

## Description

The LPS28DFW is an ultra-compact piezoresistive absolute pressure sensor which functions as a digital output barometer. The device comprises a sensing element and an IC interface which communicates over the I²C or MIPI I3C$^{SM}$ interface from the sensing element to the application. The LPS28DFW provides lower power consumption, achieving lower pressure noise than its predecessor.

*See* STMicroelectronics, *LPS28DFW Datasheet* (Dec. 2021), at 1, 10,

https://www.st.com/resource/en/datasheet/lps28dfw.pdf.

121.    On information and belief, the Accused Products include a flexible gel covering at least a pressure-sensing region (indicated in blue and with blue highlighting) of the pressure-sensing die.



See STMicroelectronics, *LPS28DFW Datasheet* (Dec. 2021), at 1, 10, https://www.st.com/resource/en/datasheet/lps28dfw.pdf.

122.    On information and belief, the Accused Products include a flexible diaphragm covering the flexible gel, wherein the flexible diaphragm and the flexible gel enable the pressure sensor to sense ambient pressure outside of the IC device. On information and belief, there is a thin flexible diaphragm on the surface of the flexible gel that has a different chemical composition

than the gel. EDS scans of the top surface and the body of the gel indicate that the surface and the gel have different chemical compositions, indicating the presence of a diaphragm.




| Element Number | Element Symbol | Element Name | Atomic Conc. [%] | Weight Conc. [%] |
|---|---|---|---|---|
| 6 | C | Carbon | 22.54 | 12.69 |
| 7 | N | Nitrogen | 1.07 | 0.70 |
| 8 | O | Oxygen | 9.06 | 6.79 |
| 9 | F | Fluorine | 55.09 | 49.05 |
| 14 | Si | Silicon | 0.83 | 1.10 |
| 24 | Cr | Chromium | 1.97 | 4.80 |
| 26 | Fe | Iron | 8.13 | 21.28 |
| 28 | Ni | Nickel | 1.31 | 3.60 |

| Element Symbol | Atomic % Region 6 |
|---|---|
| C | 23.68 |
| N | 0.00 |
| O | 44.84 |
| F | 8.02 |
| Na | 1.91 |
| Si | 19.99 |
| S | 0.40 |
| Cl | 0.00 |
| Cr | 0.00 |
| Fe | 1.15 |
| Ni | 0.00 |

123.    On information and belief, the Accused Products include a lid having an aperture (indicated in pink and with pink highlighting), wherein the lid is located between the flexible gel and an exterior of the device.



**Device structure**

The LPS28DFW has a unique cylindrical package solution with a full metal lid assembled on ceramic substrate and this cylindrical package provides an easy assembly with O-rings in the end user's application.

**Figure 5. LPS28DFW internal structure**

This structure (Figure 5) is designed and verified to resist water pressure up to 10 ATM and the potting gel in the LPS28DFW has been proven to protect electronic components from long-term exposure to harsh environments such as water mixed with chlorine, bromine, commercial washing detergent and fuels, solvents and chemicals. It also provides excellent low-stress encapsulation performance for sensitive electronic components from severe environmental conditions such as high temperature and humidity, refer to the properties of the gel which are given in the following table.

The LPS28DFW is available in a ceramic LGA package with a metal lid. It is guaranteed to operate over a temperature range extending from -40 °C to +85 °C. The package is holed to allow external pressure to reach the sensing element. Gel inside the IC protects the electrical components from water and the metal cap is, optionally, connected to ground or left floating electrically in the application PCB layout. The connection of the metal cap is determined according to the customer's target application.

This device has been designed to meet the requirements and mission profile for personal electronics and consumer applications.

*See* STMicroelectronics, *LPS28DFW Datasheet* (Dec. 2021), at 1, 10,

https://www.st.com/resource/en/datasheet/lps28dfw.pdf.

124.    On information and belief, the Accused Products include a lid aperture that permits ambient air to move the diaphragm and consequently the flexible gel so that the pressure-sensing die can measure the ambient air pressure (indicated by teal highlighting).

The LPS28DFW is available in a ceramic LGA package with a metal lid. It is guaranteed to operate over a temperature range extending from -40 °C to +85 °C. The package is holed to allow external pressure to reach the sensing element. Gel inside the IC protects the electrical components from water and the metal cap is, optionally, connected to ground or left floating electrically in the application PCB layout. The connection of the metal cap is determined according to the customer's target application.

This device has been designed to meet the requirements and mission profile for personal electronics and consumer applications.

*See* STMicroelectronics, *LPS28DFW Datasheet* (Dec. 2021), at 1,

https://www.st.com/resource/en/datasheet/lps28dfw.pdf.

125.    Fact and expert discovery are expected to confirm that the Accused Products infringe the '658 Patent, for which further evidence may lie in whole or in part in technical documents to which Chip Packaging does not presently have access.

126.    Further, on information and belief, Defendant has and continues to indirectly infringe one or more claims of the '658 Patent, including claim 1, by inducing infringement under 35 U.S.C. § 271(b) without authority.  Defendant has had knowledge of the '658 Patent and that its Accused Products infringe as of November 4, 2025, the date that the original complaint in this action was served on Defendant.  Defendant, with specific intent to cause infringement, knowingly and intentionally induces others, including third-party semiconductor foundries, Defendant's distributors, other types of third-party manufacturers, customers, and/or end-users (the "Third-Party Infringers") to directly infringe the '658 Patent, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products.  Defendant has induced infringement by contracting for the third-party manufacture of, and/or providing the Accused Products to the Third-Party Infringers.  Defendant had the intent to cause infringing acts by others or, in the alternative, acted with willful blindness to the infringement by others.

127.    Defendant, with knowledge that these products, and/or the manufacture thereof, infringe the '658 Patent as of November 4, 2025 (the date that the original complaint in this action was served on Defendant), knowingly and intentionally induced, and continues to knowingly and intentionally induce direct infringement of the '658 Patent by contracting for the third-party manufacture of, and/or providing the Accused Products to direct infringers.

128.    As of November 4, 2025, the date that the original complaint in this action was served on Defendant, Defendant has induced infringement by others, including third-party semiconductor foundries, Defendant's distributors, other types of third-party manufacturers, customers, and/or end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others infringe the '658 Patent, but while remaining willfully blind to the infringement.

129.    Defendant has and continues to infringe one or more claims of the '658 Patent by importing into the United States or offering to sell, selling, or using within the United States the accused products.

130.    Defendant is not licensed or otherwise authorized to practice the claims of the '658 Patent.

131.    Thus, by its acts, Defendant has injured Chip Packaging and is liable to Chip Packaging for directly and/or indirectly infringing one or more claims of the '658 Patent, whether literally or under the doctrine of equivalents, including without limitation claim 1.

132.    As a result of Defendant's infringement of the '658 Patent, Chip Packaging has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty with interest and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and seeks relief from Defendant as follows:

a.       For judgment that Defendant has infringed and continues to infringe the claims of the '299, '646, '189, '351, and '658 Patents;

b.       For an accounting of all damages sustained by Plaintiff as a result of Defendant's acts of infringement;

c.       For a mandatory future royalty payable by Defendant in relation to each sale of an Accused Product that is found to infringe one or more of the Asserted Patents and all future products which are not colorably different from products found to infringe;

d.       For a judgment and order requiring Defendant to pay Plaintiff's damages, costs, expenses, and pre- and post-judgment interest for its infringement of the '299, '646, '189, '351, and '658 Patents as provided under 35 U.S.C. § 284;

e.       For a judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees; and

f.       For such other and further relief in law and in equity as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action for all issues triable by a jury.

Dated: January 22, 2026                    Respectfully Submitted,
                                           */s/ Garland Stephens*
                                           Garland Stephens (Texas Bar No. 24053910)
                                           garland@bluepeak.law
                                           Robert Magee (*pro hac vice*)
                                           robert@bluepeak.law
                                           Justin Constant (*pro hac vice*)
                                           justin@bluepeak.law

Richard Koehl (Texas Bar No. 24115754)
richard@bluepeak.law
Kate Falkenstien (*pro hac vice*)
kate@bluepeak.law
Heng Gong (New York Bar No. 4930509)
heng@bluepeak.law
Natalie Lieber (*pro hac vice*)
Lieber@bluepeak.law
Ameet Modi (*pro hac vice*)
modi@bluepeak.law
**BLUE PEAK LAW GROUP LLP**
3139 West Holcombe Blvd.
PMB 8160
Houston, TX 77025
Telephone: (281) 972-3036

*Of Counsel:*
Mark D. Siegmund (Texas Bar No. 24117055)
msiegmund@cjsjlaw.com
CHERRY JOHNSON SIEGMUND JAMES, PC
7901 Fish Pond Road, 2nd Floor
Waco, TX 76710
Telephone: (254) 732-2242
Fax: (866) 627-3509

William D. Ellerman (Texas Bar No. 24007151)
wellerman@cjsjlaw.com
CHERRY JOHNSON SIEGMUND JAMES, PC
One Glenn Lakes Tower
8140 Walnut Hill Lane, Suite 105
Dallas, TX 75231
Telephone: (254) 732-2242
Fax: (866) 627-3509

ATTORNEYS FOR PLAINTIFF CHIP
PACKAGING TECHNOLOGIES, LLC

## <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of Plaintiff Chip Packaging Technologies, LLC's First Amended

Complaint for Patent Infringement and Damages and Demand for Jury Trial was served via

CM/ECF to all counsel of record on January 22, 2026.

*/s/ Garland Stephens*
Garland Stephens
