# EXHIBIT 10

# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/015,993 | 02/25/2026 | Antonius Elisabeth 9263299 | 068758.0662C | 4235 |

201116      7590      05/04/2026

Bunsow De Mory LLP
701 El Camino Real
Redwood City, CA 94063

| EXAMINER |
|---|
| MCKANE, ELIZABETH L |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3991 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 05/04/2026 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)



**UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Baker Botts LLP
2001 Ross Avenue, Suite 900
Dallas, TX 75201

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/015,993* .

PATENT UNDER REEXAMINATION *9263299* .

ART UNIT *3991* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| | Control No. | Patent Under Reexamination |
|---|---|---|
| ***Order Granting Request For Ex Parte Reexamination*** | 90/015,993 | 9263299 |

| | Examiner | Art Unit | AIA (FITF) Status |
|---|---|---|---|
| | ELIZABETH L MCKANE | 3991 | Yes |

***--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--***

The request for *ex parte* reexamination filed 02/25/2026 has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments:   a)☐   PTO-892,        b)☑   PTO/SB/08,        c)☐   Other: _____

1. ☑     The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional): TWO MONTHS from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

| /ELIZABETH L MCKANE/ Specialist, Art Unit 3991 | | |
|---|---|---|

cc:Requester ( if third party requester )

Application/Control Number: 90/015,993                                      Page 2
Art Unit: 3991

## Reexamination

### Order Granting Ex Parte Reexamination

A substantial new question of patentability affecting **claims 1-10** of United States

Patent Number 9,263,299 (hereinafter *the '299 patent*) is raised by the request for *ex*

*parte* reexamination.

Extensions of time under 37 CFR 1.136(a) will not be permitted in these

proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and

not to parties in a reexamination proceeding.  Additionally, 35 U.S.C. 305 requires that

*ex parte* reexamination proceedings "will be conducted with special dispatch" (37

CFR 1.550(a)).  Extensions of time in *ex parte* reexamination proceedings are provided

for in 37 CFR 1.550(c).

### References Cited

US 5,986,338 to Nakajima (hereinafter *Nakajima*)

US 7,989,319 to Grivna et al. (hereinafter *Grivna*)

US 8,633,102 to Otremba et al. (hereinafter *Otremba*)

US 2008/0048302 to Lee et al. (hereinafter *Lee*)

US 2011/0121461 to Lim et al. (hereinafter *Lim*)

### Patent Prosecution History

US Application No. 14/322,656 (*the '656 application*)

The '656 application, from which the '299 patent issued, contained claims 1-10

drawn to a method of packaging an integrated circuit device and claim 11 drawn to an

Application/Control Number: 90/015,993                                              Page 3
Art Unit: 3991

integrated circuit device. After a restriction and species election requirement, the

examiner allowed claims 1-10.  In the Reasons for Allowance, the examiner stated

"*Kelkar et al. do not teach or suggest dispensing a solder paste onto the bond pads on*

*a plurality of active device die, wherein upper individual lead frame portions contact the*

*solder paste present on the bond pads. Furthermore, Kelkar discloses no back-grinding*

*nor does he disclose the die having a solderable conductive surface on its underside.*

*Regarding the bond pad having solder paste, at best this pertains to the connection*

*between (108) and (110), however, this connection is made to another die (104) on the*

*opposite side of the lead frame through opening 130 in lead frame 102 (as disclosed in*

*paragraph [0018]), rather than to the lead frame itself and therefore the lead frame will*

*not contact both the carrier and the solder paste present on the bond pad as required in*

*both independent claims 1 and 7.*"  The examiner further stated "*Gong first mounts the*

*die into positions on the lead frame rather than onto the temporary carrier (tape), e.g.*

*the processing sequence shown in Figs. 15-21. Gong only applies the tape to the*

*die/lead frame assembly after the die are mounted in the lead frame. Thus, Gong does*

*not teach or suggest mounting the die in positions onto a temporary carrier and then*

*attaching the lead frame to the temporary carrier as claimed, and while Kelkar does*

*disclose an alternative sequence, there is no motivation to combine, aside from*

*hindsight.*"


### Substantial New Question of Patentability

The presence or absence of a "substantial new question of patentability"

determines whether or not reexamination is ordered. For a "substantial new question of

Application/Control Number: 90/015,993                                                          Page 4
Art Unit: 3991

patentability" to be present, it is only necessary that:

A) the prior art patents and/or printed publications raise a substantial new question of patentability regarding at least one claim, i.e., the teaching of the (prior art) patents and printed publications is such that a reasonable examiner would consider the teaching to be important in deciding whether or not the claim is patentable; and

B) the same question of patentability as to the claim has not been decided by the Office in an earlier concluded examination or review of the patent, raised to or by the Office in a pending reexamination or supplemental examination of the patent, or decided in a final holding of invalidity (after all appeals) by a federal court in a decision on the merits involving the claim. If a reexamination proceeding was terminated/vacated without resolving the substantial question of patentability question, it can be re-presented in a new reexamination request. It is not necessary that a "prima facie" case of unpatentability exist as to the claim in order for "a substantial new question of patentability" to be present as to the claim.


**SNQ 1: The Request indicates that Requester considers Lim together with Lee and Grivna as raising a substantial new question of patentability as to claims 1, 2, 4, 5, 7, 8, and 10 of the '299 patent.**

It is agreed that consideration of Lim together with Lee and Grivna raises an SNQ as to claims 1, 2, 4, 5, 7, 8, and 10 of the '299 patent.

Lim teaches method for packaging an integrated circuit (IC) device (para [0016]), the method comprising mounting a plurality of active device die **64** into predetermined positions onto a temporary carrier **62**, each said active device die having bond pads

Application/Control Number: 90/015,993                                                    Page 5
Art Unit: 3991

(connection point with clip interconnect), each of said active device die having a die pad

**14** on its underside.  Lee further teaches that the "thickness of the semiconductor

device package may be arranged for a specific application."  See para [0024]. To attach

the clip interconnect to the die, Lim teaches dispensing a solder paste **16** onto the bond



pads on the plurality active device die; attaching a lead frame (clip interconnect mesh;

para [0025]) to the temporary carrier, the lead frame having an array of device positions

which correspond to the predetermined positions of the plurality of active device die

(Figures 3A-D), wherein upper lead frame portions **18** contact the solder paste **16**

present on the bond pads and lower lead frame portions **19** contact the temporary

carrier.  Lim does not explicitly teach that each of said active device die has a

solderable conductive surface on its underside, has been subjected to back-grinding to

a prescribed thickness, and a step of reflowing the solder so that a connection is made

Application/Control Number: 90/015,993                                               Page 6
Art Unit: 3991

between the upper lead frame portions and the bond pads of the plurality of active

device die.

Lee teaches a method of making an IC package wherein each semiconductor die

**23** has a solderable and conductive surface (contact pads or terminals **25**) on the

underside thereof.  See paras [0016, 0020, 0022].

Grivna discloses a method of semiconductor packaging wherein the bottom

surface of a wafer **10** on which semiconductor dies **12,14,16** are supported, is thinned

to a desired thickness using "well-known methods…such as backgrinding."  See col.16,

lines 9-12 and 20-30; Figures 25 and 26.  After thinning, metallization can be applied to

the backside of the wafer.  See col.4, lines 28-32.

The disclosure of Lim relating to a method of semiconductor packaging including

dispensing a solder paste onto the bond pads on a plurality of active device die, wherein

upper individual lead frame portions contact the solder paste present on the bond pads,

*i.e.* a feature indicated as allowable by the examiner during prosecution of the '299

patent, together with the disclosures of Lee related to semiconductor packaging and

Grivna related to backgrinding, *i.e.* a feature indicated as allowable by the examiner

during prosecution of the '299 patent present a new, non-cumulative technical teaching

that was not present in the prosecution of the application which became the '299 patent.

Further, there is a substantial likelihood that a reasonable examiner would consider

these teachings important in deciding whether or not these claims are patentable.

Accordingly, Lim together with Lee and Grivna raise a substantial new question of

patentability as to claims 1, 2, 4, 5, 7, 8, and 10 of the '299 patent, which question has

not been decided in a previous examination of the '299 patent.

Application/Control Number: 90/015,993                                                          Page 7
Art Unit: 3991

**SNQ 2: The Request indicates that Requester considers Lim together with Lee, Grivna, and Otremba as raising a substantial new question of patentability as to claims 3 and 9 of the '299 patent.**

It is agreed that consideration of Lim together with Lee, Grivna, and Otremba raises an SNQ as to claims 3 and 9 of the '299 patent.

Lim, Lee, and Grivna are considered as set forth above.

Otremba discloses that wire bonding is a known method of interconnecting electrodes (bond pads) in semiconductor device manufacturing.  See Abstract.

The disclosure of Lim relating to a method of semiconductor packaging including dispensing a solder paste onto the bond pads on a plurality of active device die, wherein upper individual lead frame portions contact the solder paste present on the bond pads, *i.e.* a feature indicated as allowable by the examiner during prosecution of the '299 patent, together with the disclosures of Lee related to semiconductor packaging, Grivna related to backgrinding, *i.e.* a feature indicated as allowable by the examiner during prosecution of the '299 patent, and Otremba related to wire bonding together present a new, non-cumulative technical teaching that was not present in the prosecution of the application which became the '299 patent. Further, there is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether or not these claims are patentable. Accordingly, Lim together with Lee, Grivna, and Otremba raise a substantial new question of patentability as to claims 3 and 9 of the '299 patent, which question has not been decided in a previous examination of the '299 patent.

Application/Control Number: 90/015,993                                      Page 8
Art Unit: 3991

**SNQ 3: The Request indicates that Requester considers Lim together with Lee, Grivna, and Nakajima as raising a substantial new question of patentability as to claim 6 of the '299 patent.**

It is agreed that consideration of Lim together with Lee, Grivna, and Nakajima raises an SNQ as to claim 6 of the '299 patent.

Lim, Lee, and Grivna are considered as set forth above.

Nakajima discloses a method of making a semiconductor device. After backgrinding of the wafer **1** a metallic electrode layer **6** is formed. This layer is formed of a nickel film and a silver film and is solderable. See col.8, lines 7-59; col.8, line 65 to col.9, line 4.

The disclosure of Lim relating to a method of semiconductor packaging including dispensing a solder paste onto the bond pads on a plurality of active device die, wherein upper individual lead frame portions contact the solder paste present on the bond pads, *i.e.* a feature indicated as allowable by the examiner during prosecution of the '299 patent, together with the disclosures of Lee related to semiconductor packaging, Grivna related to backgrinding, *i.e.* a feature indicated as allowable by the examiner during prosecution of the '299 patent, and Nakajima related to a solderable conductive surface of nickel or silver together present a new, non-cumulative technical teaching that was not present in the prosecution of the application which became the '299 patent. Further, there is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether or not these claims are patentable. Accordingly, Lim together with Lee, Grivna, and Nakajima raise a substantial new question of

Application/Control Number: 90/015,993                                                  Page 9
Art Unit: 3991

patentability as to claim 6 of the '299 patent, which question has not been decided in a

previous examination of the '299 patent.


**SNQ 4: The Request indicates that Requester considers Lim together with Lee, Grivna, Nakajima, and Otremba as raising a substantial new question of patentability as to claims 7-10 of the '299 patent.**

It is agreed that consideration of Lim together with Lee, Grivna, Nakajima, and

Otremba raises an SNQ as to claims 7-10 of the '299 patent.

Lim, Lee, Grivna, Nakajima, and Otremba are considered as set forth above.

The disclosure of Lim relating to a method of semiconductor packaging including

dispensing a solder paste onto the bond pads on a plurality of active device die, wherein

upper individual lead frame portions contact the solder paste present on the bond pads,

*i.e.* a feature indicated as allowable by the examiner during prosecution of the '299

patent, together with the disclosures of Lee related to semiconductor packaging, Grivna

related to backgrinding, *i.e.* a feature indicated as allowable by the examiner during

prosecution of the '299 patent, Nakajima related to a solderable conductive surface of

nickel or silver, and Otremba related to wire bonding together present a new, non-

cumulative technical teaching that was not present in the prosecution of the application

which became the '299 patent. Further, there is a substantial likelihood that a

reasonable examiner would consider these teachings important in deciding whether or

not these claims are patentable. Accordingly, Lim together with Lee, Grivna, Nakajima,

and Otremba raise a substantial new question of patentability as to claims 7-10 of the

Application/Control Number: 90/015,993                                                Page 10
Art Unit: 3991

'299 patent, which question has not been decided in a previous examination of the '299

patent.

### 35 USC 325(d)

A review of the post grant history for the '299 patent indicates that there have

been no other prior Office post grant challenges involving the patent (Reexamination

Proceedings or Inter Partes Review, Post Grant Review and Covered Business Method

trials). Accordingly, a determination of whether to exercise discretion to deny this

request pursuant to 35 USC 325(d) is not applicable.

### Service of Papers

After the filing of a request for reexamination by a third party requester, any

document filed by either the patent owner or the third party requester must be served on

the other party (or parties where two or more third party requester proceedings are

merged) in the reexamination proceeding in the manner provided in 37 C.F.R. 1.248.

See 37 C.F.R. 1.550(c).

### Waiver of Right to File Patent Owner Statement

In a reexamination proceeding, Patent Owner may waive the right under 37 C.F.R.

1.530 to file a Patent Owner Statement. The document needs to contain a statement

that Patent Owner waives the right under 37 C.F.R. 1.530 to file a Patent Owner

Statement and proof of service in the manner provided by 37 C.F.R. 1.248, if the

request for reexamination was made by a third party requester, see 37 C.F.R. 1.550(f).

The Patent Owner may consider using the following statement in a document waiving

the right to file a Patent Owner Statement:

<div style="border:1px solid black; padding:1em;">

**WAIVER OF RIGHT TO FILE PATENT OWNER STATEMENT**

Patent Owner waives the right under 37 C.F.R. § 1.530 to file a Patent Owner Statement.

</div>

### *Amendment in Reexamination Proceedings*

Patent owner is notified that any proposed amendment to the specification and/or

claims in this reexamination proceeding must comply with 37 C.F.R. 1.530(d)-(j), must

be formally presented pursuant to 37 C.F.R. 1.52(a) and (b), and must contain any fees

required by 37 C.F.R. 1.20(c). See MPEP § 2250(IV) for examples to assist in the

preparation of proper proposed amendments in reexamination proceedings.

### *Submissions*

In order to ensure full consideration of any affidavits or declarations or other

documents as evidence of patentability, such documents must be submitted in response

to the first Office action on the merits (which does not result in a close of prosecution).

Submissions after the second Office action on the merits, which is intended to be a final

action, will be governed by the requirements of 37 C.F.R. 1.116, after final rejection and

by 37 C.F.R. 41.33 after appeal, which will be strictly enforced.

Application/Control Number: 90/015,993                                            Page 12
Art Unit: 3991

### *Duty of Disclosure*

The patent owner is reminded of the continuing responsibility under 37 C.F.R.

1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent

proceeding, involving **Patent No. 9,263,299** throughout the course of this reexamination

proceeding. Likewise, if present, the third party requester is also reminded of the ability

to similarly apprise the Office of any such activity or proceeding throughout the course

of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

### *Correspondence*

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to E. Leigh McKane whose telephone number is 571-272-

1275. The examiner can normally be reached on Mon.-Thurs. 6:30am-4:30pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Patricia Engle can be reached at 571-272-6660.

Information regarding the status of published or unpublished applications may be

obtained from Patent Center. Unpublished application information in Patent Center is

available to registered users. To file and manage patent submissions in Patent Center,

visit: https://patentcenter.uspto.gov. Visit https://www.uspto.gov/patents/apply/patent-center

for more information about Patent Center and https://www.uspto.gov/patents/docx for

information about filing in DOCX format. For additional questions, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative, call 800-786-9199 (IN USA OR CANADA) or

571-272-1000.

Application/Control Number: 90/015,993                                Page 13
Art Unit: 3991

Telephone Numbers for reexamination inquiries:

Central Reexam Unit (CRU)        (571) 272-7705

**All** correspondence relating to this *ex parte* reexamination proceeding may be submitted via:

Electronically:        Registered users may submit via Patent Center
                       https://patentcenter.uspto.gov/.

By Mail to:            Mail Stop Ex Parte Reexam
                       Central Reexamination Unit
                       Commissioner for Patents
                       United States Patent & Trademark Office
                       P.O. Box 1450
                       Alexandria, VA 22313-1450

By FAX to:             (571) 273-9900
                       Central Reexamination Unit

By hand:               Customer Service Window
                       Knox Building
                       501 Dulany Street
                       Alexandria, VA 22314

For Patent Center transmissions, 37 CFR 1.8(a)(1)(i)(C) and (ii) states that correspondence (except for a request for reexamination and a corrected or replacement request for reexamination) will be considered timely filed if (a) it is transmitted via the Office's electronic filing system in accordance with 37 CFR 1.6(a)(4), and (b) includes a certificate of transmission for each piece of correspondence stating the date of transmission, which is prior to the expiration of the set period of time in the Office action.

/ELIZABETH L MCKANE/
Specialist, Art Unit 3991

Application/Control Number: 90/015,993                                    Page 14
Art Unit: 3991

Conferees:

/LEONARDO ANDUJAR/
Primary Examiner, Art Unit 3991

/Patricia L Engle/
SPRS, Art Unit 3991