# EXHIBIT 13

093867.0104
PATENT 10,151,658

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

*In re* patent of:           Attorney Docket No.: 093867.0104
Mariano Layson Ching, Jr. et al.

U.S. Patent No.: 10,151,658

Issue Date: December 11, 2018      Examiner: Freddie Kirkland III

Filing Date: November 20, 2016     Art Unit: 2856

For:   PRESSURE-SENSING
      INTEGRATED CIRCUIT
      DEVICE WITH DIAPHRAGM

## REQUEST FOR *EX PARTE* REEXAMINATION
## OF U.S. PATENT NO. 10,151,658

Mail Stop "*Ex Parte* Reexam"
Attn: Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir or Madam:

STMicroelectronics, Inc. ("ST" or "Requester") requests an *ex parte* reexamination of Claims 1-16 ("Challenged Claims") of U.S. Patent No. 10,151,658 for "Pressure-Sensing Integrated Circuit Device With Diaphragm" (the "'658 Patent," EX1001), which issued on December 11, 2018 to Mariano Layson Ching, Jr. et al. based on U.S. Patent Application No. 15/356,622, filed November

20, 2016, which claims priority to Chinese Patent Application CN201610218782, filed April 11, 2016. The '658 Patent is presently assigned to Chip Packaging Technologies, LLC ("CPT" or "Patent Owner," or "PO"). The assignment is recorded in the U.S. Patent and Trademark Office ("USPTO") at reel/frame number 68541/0903.

This Request presents prior art references and analyses that are non-cumulative of the prior art that was before the Examiner during the original prosecution of the '658 Patent. This request thus raises substantial new questions of patentability (SNQs) over the original prosecution. Requester is not prohibited or estopped from making this Request. *See* 37 C.F.R. § 1.510(b)(6). As demonstrated herein, the submitted prior art renders Claims 1-16 unpatentable over these references, thus warranting reexamination of these claims. Requester therefore requests that an order for reexamination and an Office Action rejecting Claims 1-16 be issued.

### *Ex Parte Patent Reexamination Filing Requirements*

In support of its request, Requester provides the following:

Pursuant to 37 C.F.R. § 1.510(b)(1), statements pointing out each SNQ based on material, non-cumulative reference patents and printed publications for the Challenged Claims (Claims 1-16) of the '658 Patent are provided in Sections II and III of this Request.

ii

Pursuant to 37 C.F.R. § 1.510(b)(2), reexamination of the Challenged Claims (Claims 1-16) of the '658 Patent is requested, and a detailed explanation of the pertinence and manner of applying the cited references to the Challenged Claims is provided in Sections II and III of this Request.

Pursuant to 37 C.F.R. § 1.510(b)(3), copies of every patent or printed publication relied upon or referred to in the statement pointing out each SNQ or in the detailed explanation of the pertinence and manner of applying the cited references are provided as EX1005-EX1030 (with EX1005-EX1007 and EX1029 forming the basis for the SNQs presented herein) of this Request.

Pursuant to 37 C.F.R. § 1.510(b)(4), a copy of the entire '658 Patent, including the front face, drawings, and specification/claims is provided as EX1001 of this Request, along with a copy of any disclaimer, certificate of correction, and reexamination certificate issued corresponding to the patent.

Pursuant to 37 C.F.R. § 1.510(b)(5), the attached Certificate of Service indicates that a copy of this Request, in its entirety, has been served on Patent Owner at the following address of record, in accordance with 37 C.F.R. § 1.33(c):

C. Tumey Law
PO Box 890226
Houston, TX 77062-9998
UNITED STATES

iii

The Certificate of Service further indicates that a copy of this Request, in its entirety, is being served on PO at the following electronic addresses of its counsel in related district court litigation:

Garland Stephens
Garland@bluepeak.law

Robert Magee
Robert@bluepeak.law

Justin Constant
Justin@bluepeak.law

Richard Koehl
Richard@bluepeak.law

Kate Falkenstien
Kate@bluepeak.law

Heng Gong
Heng@bluepeak.law

Natalie Lieber
Lieber@bluepeak.law

Ameet Modi
Modi@bluepeak.law

Mark D. Siegmund
msiegmund@cjsjlaw.com

William D. Ellerman
wellerman@cjsjlaw.com

iv

Pursuant to 37 C.F.R. § 1.510(b)(6), ST hereby certifies that the statutory estoppel provisions of 35 U.S.C. § 315(e)(l) and 35 U.S.C. § 325(e)(l) do not prohibit ST from filing this *ex parte* patent reexamination request.

Also submitted herewith is the fee set forth in 37 C.F.R. § 1.20(c)(2).

v

## TABLE OF CONTENTS

**Page**

I.   STATEMENT UNDER 37 C.F.R. § 1.510(B)(1) POINTING OUT SUBSTANTIAL NEW QUESTIONS OF PATENTABILITY ...................... 4

    A.   Introduction ............................................................................. 4

    B.   Other Proceedings ................................................................... 7

    C.   The '658 Patent ....................................................................... 7

        1.   State of the Art at the time of the '658 Patent (November 20, 2016) ........................................................................ 7

        2.   The Disclosure of the '658 Patent .............................. 13

        3.   Claims of the '658 Patent For Which Reexamination is Requested ................................................................... 17

        4.   '658 Patent Prosecution History ................................. 24

        5.   Prosecution of Related Chinese Patent Application 201610218782 ............................................................ 30

    D.   Summary of SNQs Raised ...................................................... 34

II.   THE PRIOR ART REFERENCES, ARGUMENTS, AND EVIDENCE PRESENT SUBSTANTIAL NEW QUESTIONS OF PATENTABILITY ................................................................................ 35

    A.   Summary of Art Relied on in this Proceeding .................................. 35

        1.   Rozgo (EX1005) ........................................................ 37

        2.   Francis (EX1007) ....................................................... 37

        3.   Hooper (EX1006) ....................................................... 37

        4.   Otani (EX1013) .......................................................... 37

        5.   Wombacher (EX1030) ............................................... 38

    B.   The Cited References Present Substantial New Questions of Patentability ........................................................................ 38

    C.   Discretionary Denial under 35 U.S.C. § 325(d) Is Not Warranted .............................................................................. 39

III.   DETAILED EXPLANATION UNDER 37 C.F.R § 1.510(B)(2) OF THE PERTINENCY AND MANNER OF APPLYING THE CITED

vi

PRIOR ART TO EVERY CLAIM FOR WHICH
REEXAMINATION IS REQUESTED........................................................43

A.    Claim Construction.................................................................44

B.    SNQ1/SNQ2: Claims 1, 8, 15, and 16 are anticipated by Rozgo
(SNQ1), or obvious over Rozgo (SNQ2)...........................................46

    1.    Claim 1 ...............................................................46

    2.    Claim 8 ...............................................................69

    3.    Claim 15 ..............................................................70

    4.    Claim 16 ..............................................................72

C.    SNQ3: Claims 1, 8, 15, and 16 are obvious over Rozgo and
Hooper ................................................................................74

    1.    Motivation to Combine Rozgo and Hooper..........................74

    2.    Claim 1 ...............................................................77

    3.    Claims 8, 15, and 16 .................................................78

D.    SNQ4/SNQ5: Claims 1, 15, and 16 are anticipated by Francis
(SNQ4), or obvious over Francis (SNQ5)...........................................78

    1.    Claim 1 ...............................................................78

    2.    Claim 15 ..............................................................96

    3.    Claim 16 ..............................................................98

E.    SNQ6: Claims 1-4, 15, and 16 are obvious in view of Hooper
and Rozgo..........................................................................100

    1.    Motivation to Combine Hooper and Rozgo.........................100

    2.    Claim 1 ..............................................................109

    3.    Claim 2 ..............................................................122

    4.    Claim 3 ..............................................................133

    5.    Claim 4 ..............................................................138

    6.    Claim 15 ............................................................140

    7.    Claim 16 ............................................................141

F.    SNQ7: Claims 6, 7, 9, and 12-14 are obvious in view of
Hooper, Rozgo, and Otani........................................................142

    1.    Motivation to Combine Hooper, Rozgo, and Otani...............142

2.     Claim 6 ................................................................................147

3.     Claim 7 ................................................................................148

4.     Claim 9 ................................................................................151

5.     Claim 12 ..............................................................................159

6.     Claim 13 ..............................................................................169

7.     Claim 14 ..............................................................................172

G.     SNQ8: Claims 3, 4, 5 and 8 are obvious in view of Hooper, Rozgo, and Wombacher ..................................................................173

1.     Motivation to Combine Hooper, Rozgo, and Wombacher .....173

2.     Claim 3 ................................................................................180

3.     Claim 4 ................................................................................184

4.     Claim 5 ................................................................................186

5.     Claim 8 ................................................................................189

H.     SNQ9: Claims 10 and 11 are obvious over Hooper, Rozgo, Otani, and Wombacher ..................................................................191

1.     Motivation to Combine Hooper, Rozgo, Otani, and Wombacher ..........................................................................191

2.     Claim 10 ..............................................................................192

3.     Claim 11 ..............................................................................192

IV.     CONCLUSION ................................................................................193

**EXHIBITS**

| Ex. No.[1] | Description |
|---|---|
| EX1001 | U.S. Patent No. 10,151,658, Mariano Layson Ching, Jr. et al., "Pressure-Sensing Integrated Circuit Device With Diaphragm," ("the '658 Patent"), filed November 20, 2016, issued December 11, 2018 |
| EX1002 | Prosecution History of the '658 Patent |
| EX1003 | Declaration of Dr. Farrokh Ayazi |
| EX1004 | Curriculum Vitae of Dr. Farrokh Ayazi |
| EX1005 | U.S. Patent No. 8,371,176, filed January 6, 2011, issued February 12, 2013, to Paul Rozgo ("Rozgo") |
| EX1006 | U.S. Patent No. 7,859,068, filed November 3, 2009, issued December 28, 2010, to Stephen R. Hooper et al. ("Hooper") |
| EX1007 | Certified English Translation of French Patent Application Publication No. FR 2686692 A1, Registration No. 9200897, to Geslot Francis ("Francis") |
| EX1008 | French Patent Application Publication No. FR 2686692 A1, Registration No. 9200897, to Geslot Francis |
| EX1009 | Certified English Translation of Chinese Patent Application Publication No. CN 102589787 B, Application No. 201210001704.1, to P. Rozgo ("RozgoCN") |
| EX1010 | Chinese Patent Application Publication No. CN 102589787 B, Application No. 201210001704.1, to P. Rozgo |
| EX1011 | U.S. Patent Application Publication No. 2008/0110273, filed November 13, 2007, published May 15, 2008, to Kazunori Saito et al. ("Saito") |
| EX1012 | Intentionally left blank |
| EX1013 | U.S. Patent No. 6,049,120, filed June 5, 1997, issued April 11, 2000, to Hiroshi Otani et al. ("Otani") |

---

[1] Citations to patents and patent publications are made to paragraph number, column and line number, or original page and line number, where available. Citations to non-patent literature herein are made to the original pagination where available.

1

| EX1014 | Amended Complaint in *Chip Packaging Technologies, LLC, v. STMicroelectronics, Inc.*, United States District Court for the Western District of Texas, Case No. 7:25-cv-00505-DC-DTG |
| --- | --- |
| EX1015 | Certified English Translation of Office Action dated April 27, 2020 in CN201610218782.5 |
| EX1016 | Certified English Translation of Response to April 27, 2020 Office Action in CN201610218782.5 |
| EX1017 | Certified English Translation of Amended Claims for Response to April 27, 2020 Office Action in CN201610218782.5 |
| EX1018 | Certified English Translation of Office Action dated November 11, 2020 in CN201610218782.5 |
| EX1019 | Certified English Translation of Response to November 11, 2020 Office Action in CN201610218782.5 |
| EX1020 | Certified English Translation of Amended Claims for Response to November 11, 2020 Office Action in CN201610218782.5 |
| EX1021 | Certified English Translation of Rejection Decision dated March 2, 2021 in CN201610218782.5 |
| EX1022 | Excerpts from Microsystem Design by Stephen Senturia |
| EX1023 | Excerpts from Fundamentals of Microsystems Packaging |
| EX1024 | Datasheet for the MPX4115 Pressure Sensor |
| EX1025 | Datasheet for the MS4515DO Pressure Sensor |
| EX1026 | Datasheet for the MS5837 Pressure Sensor |
| EX1027 | Datasheet for the MS5803-14BA Pressure Sensor |
| EX1028 | Datasheet for Honeywell Basic Board Mount Pressure Sensors |
| EX1029 | U.S. Patent No. 7,900,521 filed February 10, 2009, issued March 8, 2011, to Stephen Hooper et al. ("Hooper2") |
| EX1030 | U.S. Patent Application Publication No. 2009/0026560, filed July 25, 2007, published January 29, 2009, to Ralf Wombacher et al. ("Wombacher") |
| EX1031 | Certified English Translation of Application Status for CN201610218782.5 |
| EX1032 | Office Action dated April 27, 2020 in CN201610218782.5 |
| EX1033 | Response to April 27, 2020 Office Action in CN201610218782.5 |
| EX1034 | Amended Claims for Response to April 27, 2020 Office Action in CN201610218782.5 |
| EX1035 | Office Action dated November 11, 2020 in CN201610218782.5 |
| EX1036 | Response to November 11, 2020 Office Action in CN201610218782.5 |
| EX1037 | Amended Claims for Response to November 11, 2020 Office |

2

| | Action in CN201610218782.5 |
|---|---|
| EX1038 | Rejection Decision dated March 2, 2021 in CN201610218782.5 |
| EX1039 | Application Status for CN201610218782.5 |
| EX1040 | Translator Certifications |

## I.    STATEMENT UNDER 37 C.F.R. § 1.510(b)(1) POINTING OUT SUBSTANTIAL NEW QUESTIONS OF PATENTABILITY

Requester requests reexamination of Claims 1-16 ("Challenged Claims") of the '658 Patent. This Request is accompanied by the declaration of Dr. Farrokh Ayazi, a professor in the school of Electrical and Computer engineering at Georgia Tech and expert in Integrated Micro and Nano Electromechanical Systems (MEMS and NEMS). EX1003.

### A.    Introduction

As discussed in more detail below, the Challenged Claims of the '658 Patent were well-known in the prior art, and the combinations of invalidating references cited herein raise SNQs regarding these claims. EX1003, ¶¶20-21, 79.

The six prior art sources relied upon for the proposed grounds include Rozgo, Francis, Hooper, Otani, and Wombacher. EX1005, EX1007, EX1006, EX1013, EX1030. The Examiner did not cite or substantively consider these references during prosecution of the '658 Patent and the grounds presented herein present substantial new questions of patentability as they anticipate and/or render obvious Claims 1-16 of the '658 Patent.

Integrated pressure sensors have been known for many years prior to the '658 Patent. EX1003, ¶81. The '658 Patent admits that pressure sensors having a gel that covers a pressure sensing die were well-known in the art. EX1001, 1:19-2:5, Figs. 1-3. The '658 Patent purports to improve on admitted prior art pressure sensors by

4

adding a "flexible diaphragm" that covers the gel. *Id.*, 2:60-62. The '658 Patent proposes that the diaphragm adds protection by acting as a "barrier" between the sensing die and ambient environment. *Id.*, 2:60-62. But the use of a diaphragm and gel to cover the pressure sensing die was a well-known improvement for many years prior to the '658 Patent. EX1003, ¶81.

For example, Rozgo (EX1005) describes a "diaphragm" that covers a gel pressure transfer fluid of a pressure sensor and "deforms" when subjected to pressure. EX1005, 3:4-40, 3:59-4:27, 4:40-5:44, Fig. 1. Francis (EX1007) similarly describes a "flexible film" that covers the gel of a pressure sensor and transmits pressure variations to the gel when subjected to pressure. EX1007, Abstract, 4:6-5:7, 6:1-8, claim 1, Fig. 3; EX1003, ¶82. At least these references demonstrate that the alleged invention of the '658 Patent was known. An annotated version of Rozgo's Figure 1 is reproduced below showing the known diaphragm and gel arrangement:



While these references were not considered during prosecution of the '658 Patent, the applicant faced the disclosure of Rozgo during the Chinese prosecution of the '658 Patent's counterpart application and applicant was unable to overcome that rejection. Chinese Patent Application 201610218782, to which the '658 Patent claims priority, entered substantive foreign prosecution with substantially similar independent claims after the '658 Patent issued. EX1001, Cover Page; EX1015-EX1021; EX1001, claims 1, 9, 12. During prosecution of that application, the examiner cited the Chinese language version of Rozgo (EX1009, referred to as RozgoCN herein) to show the limitations of the recited claims were well-known, including the use of a diaphragm to cover the gel. EX1015-EX1021. The rejection of the pending claims over RozgoCN ultimately caused applicant to *abandon* the Chinese application. EX1031; *see* EX1039. The abandonment of the Chinese

6

counterpart to the '658 Patent over RozgoCN demonstrates that the disclosure of Rozgo presents a compelling case of invalidity that has not previously been considered with respect to the issued '658 Patent claims.

Requester respectfully submits that SNQ1-SNQ3 and SNQ6-SNQ9, based on Rozgo and/or Rozgo as combined with other references, along with proposed SNQ4-SNQ5, based on Francis, present SNQs that justify ordering reexamination of the '658 Patent.

## B.    Other Proceedings

The '658 Patent is the subject of one pending District Court case:

*Chip Packaging Technologies, LLC, v. STMicroelectronics, Inc.*, United States District Court for the Western District of Texas, Case No. 7:25-cv-00505-DC-DTG (the "WDTX litigation").

## C.    The '658 Patent

### 1.    State of the Art at the time of the '658 Patent (November 20, 2016)

"[T]he knowledge of [a POSITA] is part of the store of public knowledge that must be consulted when considering whether a claimed invention would have been obvious." *Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013). As discussed by Dr. Farrokh Ayazi, the POSITA would have at least a bachelor's degree in electrical or mechanical engineering and at least 2-3 years of experience in the field of microelectromechanical systems (MEMS) packaging and design. EX1003, ¶ 32.

7

The POSITA would have been familiar with the fundamental concepts of MEMS packaging and design, including the applications of those concepts to the field of electronic pressure sensors. *Id.* The POSITA would have been familiar with the state of the art in pressure sensors as presented in the following paragraphs, which was a mature and well-developed field by the time of the '658 Patent.

Pressure sensors were well-known long before the earliest priority of the '658 Patent. EX1003, ¶35. As early as the 1970s, integrated pressure sensors were produced in high-volume due to demand from the automotive industry. *Id.* And as of the early 2000s, pressure sensors constituted the largest market segment of mechanical MEMS devices. *Id.*, 17 (native page 469). In 2005—ten years prior to the '658 Patent—U.S. federal regulations mandated that vehicles manufactured after September 1, 2007 must be equipped with tire pressure monitoring systems, and these utilized pressure sensors. 49 C.F.R. § 571.138; EX1001, 1:9-11 ("Integrated circuits (ICs) that can measure air pressure are useful in many applications[] [and] [o]ne such application is a tire-pressure monitoring system (TPMS)"). In addition, the deployment of electronic pressure sensors that were hermetically sealable using gel for use in outdoor devices was also well-known. EX1003, ¶35; EX1028, 2-3, 6; EX1026, 1; EX1024, 4; EX1025, 1, 12. As a result, pressure sensing devices having substantially similar characteristics as the embodiments described by the '658 Patent had been known for many years before the '658 Patent was filed. EX1003, ¶35.

8

As one example, Motorola produced a pressure sensor family in the 1990s that included a silicone gel die coat covering the pressure sensor die. By the early 2000s, the Motorola pressure sensor was covered in fundamental engineering textbooks, as shown below in an excerpted figure from *Microsystem Design* (2001-02):



EX1022, 9, Fig. 17.3 (native page 461)

As demonstrated by Figure 17.3, the device included a pressure sensor contained within a housing, wire bonds connecting the sensor to a lead frame, silicone gel covering the sensor, and a cap with an aperture that allowed pressure to enter the device for measurement. EX1022, 9 (native page 461). The silicone gel protected the device's components from the ambient air and environment. *Id.*

In operation, when subjected to the pressure, the sensor would deform due to a pressure differential across it, and the extent of the deformation would be converted to a representative electrical signal that appears at the sensor output. EX1023, 21 (native page 562). Several well-known ways of sensing the deformation existed and

9

included measuring bending strain using piezoresistance—the change in resistance with stress. EX1022, 17-18 (native pages 469-470).

As shown in the figure above, it was also well-known to cover the pressure sensor's die with gel to protect the die from hazards in the ambient environment, such as water, humidity, and corrosive elements. *Id.*; *see also* EX1027, 1; EX1025, 12; EX1026, 1; EX1003, ¶38. Indeed, commercial pressure sensors routinely included this feature to improve device durability and longevity. EX1003, ¶38.

Freescale, successor to Motorola and the original assignee of the '658 Patent, had also been producing pressure sensors for many years prior to the filing of the patent. For example, a Freescale datasheet for the MPX4115 dating to August 2006 shows that Freescale continued the textbook Motorola design in its MPX4115 products,[2] including with respect to the gel layer covering the die:

---

[2] The Hooper reference (EX1006), which reflected this prior design, was assigned to Freescale. EX1006, Cover Page.



Figure 2. Cross-Sectional Diagram (Not to Scale)

EX1024, 4 (Fig. 2)

As early as the 1990s, prior artists had also begun adding a "diaphragm" to the surface of the gel layer of the Motorola design. Indeed, as demonstrated by Francis and with reference to Figure 3 below, pressure sensor designs as of 1993 had already included a flexible film diaphragm 190 covering a gel 170 that overlay a pressure sensing pellet (i.e., a die) 130. EX1007, Cover Page (item 43), Abstract, 2:5-27, 3:12-27, 4:6-5:7, 5:1-6:8, claim 1, claim 8, claim 9, Fig. 3.

11



EX1007, Fig. 3

Later designs in 2013, such as that shown by Rozgo and with reference to Figure 1 below, also included a flexible diaphragm 22 covering a gel pressure transfer fluid that overlay a pressure sensing die 44. EX1005, 1:41-2:3, 2:39-49, 3:9-40, 3:59-4:39, 4:40-5:44, 5:6-6:6, Fig. 1.

12



EX1005, Fig. 1

The POSITA would have been familiar with all these concepts and background art at the time of the '658 Patent. EX1003, ¶43.

### 2.     The Disclosure of the '658 Patent

The '658 Patent generally relates to "pressure sensor integrated circuit devices and, more particularly, to a lid for a pressure-sensing device." EX1001, 1:5-8. Example pressure sensing devices are used in tire-pressure monitoring systems (TPMS). *Id.*, 9-18. The '658 Patent acknowledges that pressure sensors including embodiments with gel covering the die were well known. *See* Fig. 3. The only alleged improvement of the '658 Patent is introducing a "flexible diaphragm [that] is used as a barrier between the flexible gel of a pressure-sensing IC device and the ambient environment." EX1001, 2:60-62.

13

The '658 Patent shows a "conventional" pressure-sensing device 100 in Figs. 1-3. EX1001, 1:19-24. According to the patent, conventional pressure sensing device 100 includes a die 102 attached to a pad 104, which "can be referred to as a die paddle." *Id.*, 1:9-28, Figs. 1-3.



FIG. 3
- PRIOR ART -

EX1001, Fig. 3

Bond wires 108 extend from leads 106 to die pads on the top surface of die 102. *Id.*, 1:28-32, Fig. 3. The top surface of die 102 has a "pressure-sensing region" and a "layer of flexible gel 110 covers the top of the die 102 and the bond wires 108" to "protect[] the die 102 and the bonding wires from damage caused by the environment." *Id.*, 1:36-44. A lid 112 having an aperture 114 is also included on the top side of the device, where the "aperture 114 is sized to be large enough for rapid equalization of pressure between the exterior 124 and the cavity 122" and the

14

"pressure sensor of the die 102 is able to sense the air pressure in the cavity 122 through the flexible gel 110." *Id.*, 1:40-61.

The patent explains that there are drawbacks associated with conventional pressure sensor 100. EX1001, 1:66-2:5. For example, "the gel 110 may suffer one or more adverse effect—such as, for example, the formation of bubbles inside the gel 110 or the stiffening of the gel 110." *Id.*, 2:2-4. Thus, the '658 Patent states that "it would be advantageous to be able to better protect the gel 110." *Id.*, 2:4-5.

The '658 Patent purports to address this problem by introducing a "***flexible diaphragm*** [that] is used as a barrier between the flexible gel of a pressure-sensing IC device and the ambient environment." EX1001, 2:60-62. According to the patent, the "diaphragm helps eliminate or reduce some or all of the previously described adverse effects on the gel material." *Id.*, 2:62-64.

Thus, in relation to the conventional device of Figure 3, the '658 Patent's alleged point of novelty is ***simply adding a layer of material ("diaphragm") over the flexible gel 110***. EX1001, 2:60-64. But as demonstrated by the Rozgo, Francis, and the other references employed by the unpatentability grounds herein, the concept of adding a flexible diaphragm to cover the gel layer was well-known in prior art pressure sensors years before the '658 Patent issued. *See infra*, Section III.

Examples of the '658 Patent's alleged improvement are shown with reference to Figure 5, reproduced below. Specifically, the '658 Patent describes a device 400

15

that includes a pressure-sensing die 402 attached to a paddle 404. EX1001, 3:4-24, Fig. 5.



EX1001, Fig. 5

Bond wires 408 connect leads 406 to corresponding pads on a top or active surface of die 402. *Id.*, 3:22-27. The top surface of die 402 has a "pressure-sensing region" that comprises, for example, a "piezo-resistive transducer, a capacitive transducer, and/or a micro-electro-mechanical system (MEMS)." *Id.*, 3:28-32. A flexible gel 410 covers a "first portion of the top surface of the die 402 including the pressure-sensing region." *Id.*, 3:32-34. The top side of device 400 also has a lid 418 with an aperture 419. *Id.*, 3:44-47.

Device 400 also includes a "flexible diaphragm 420" that "covers and is in direct contact with the top of the gel 410." EX1001, 3:48-49. The space between

16

diaphragm 420 and lid 418 defines a cavity 422. *Id.*, 3:50-51. "The diaphragm 420 is flexible and is made of a material substantially impermeable to gases that may damage the gel 410." *Id.*, 3:51-53. The diaphragm "may be made of, for example, rubber, silicone, plastic, metal, or thermal tape" and "is able to transmit to the gel [] the pressure in the cavity 422." *Id.* 3:53-57.

In operation, due to the aperture 419 of lid 418, the air pressure inside the cavity 422 is the same as the ambient air pressure outside of the device 400. EX1001, 4:13-15. "The pressure-sensing die 402 is able to sense the air pressure in the cavity 422 as transmitted by the diaphragm 420 and the gel 410." *Id.*, 4:19-21. For example, "at a higher [ambient] pressure," the central section 428 of the diaphragm 420 is "deformed (i.e., flattened) and compresses the gel 410," which in turn "presses with greater force on the pressure-sensing region of the die 402." *Id.*, 4:21-26.

But this technique of measuring pressure was well-known in the art, and as discussed above, the use of a "diaphragm" to cover and protect the gel layer was also well-known. EX1003, ¶54. The grounds of this reexamination request raise SNQs and demonstrate that the '658 Patent should never have issued. *Id.*

### 3. Claims of the '658 Patent For Which Reexamination is Requested

The following chart lists Claims 1-16 addressed in this Request, with the element-by-element breakdown used throughout the Request.

| Claim Number | Claim Element |
|---|---|
| | |
| **Claim 1** | |
| 1[p] | A pressure-sensing integrated circuit (IC) device, comprising: |
| 1[a] | a pressure-sensing die; |
| 1[b] | a flexible gel covering at least a pressure-sensing region of the pressure-sensing die; |
| 1[c] | a flexible diaphragm covering the flexible gel, wherein the flexible diaphragm and the flexible gel enable the pressure sensor to sense ambient pressure outside of the IC device; and |
| 1[d] | a lid having an aperture, wherein the lid is located between the flexible gel and an exterior of the device, and the aperture permits ambient air to move the diaphragm and consequently the flexible gel so that the pressure-sensing die can measure the ambient air pressure. |
| | |
| **Claim 2** | |
| 2[a] | The device of claim 1, further comprising: a multi-tiered encapsulant upon which the lid is attached, wherein a recess is defined beneath the lid, |

18

| | |
|---|---|
| 2[b] | wherein: the die is partially covered by the encapsulant; the gel is located within a first tier of the encapsulant; the diaphragm is located within a second tier of the encapsulant above the first tier; and the lid is located within a third tier of the encapsulant above the second tier. |
| | |
| **Claim 3** | |
| 3[a] | The device of claim 2, wherein the diaphragm comprises: a convex central section covering the gel; an annular wall section contacting the encapsulant; and an annular support section connecting the central section to the wall section. |
| | |
| **Claim 4** | |
| 4[a] | The device of claim 3, wherein: the central section is made of a first material; and the wall and support sections are made of a second material different from the first material. |
| | |
| **Claim 5** | |
| 5[a] | The device of claim 3, wherein: a top surface of the first tier of the encapsulant forms an annular flange around a portion of the gel; and the support section of the diaphragm covers the flange. |
| | |

| | |
|---|---|
| **Claim 6** | |
| 6[a] | The device of claim 2, wherein: the device further comprises a lead frame having a paddle and a plurality of leads; the die is attached to the paddle and electrically connected to the leads; and the encapsulant covers the leads and at least a portion of the die. |
| | |
| **Claim 7** | |
| 7[a] | The device of claim 6, wherein: the die has a plurality of die pads electrically connected to corresponding leads via corresponding bond wires; the die pads and the bond wires are covered with the encapsulant; and the pressure-sensing region is not covered by the encapsulant. |
| | |
| **Claim 8** | |
| 8[a] | The device of claim 1, wherein the diaphragm is integral with the lid. |
| | |
| **Claim 9** | |
| 9[p] | An integrated circuit device, comprising: |
| 9[a] | a lead frame including a die paddle and a plurality of leads surrounding the die paddle; |

| | |
|---|---|
| 9[b] | a pressure-sensing die attached to the die paddle and electrically connected to the leads; |
| 9[c] | an encapsulant that covers the leads and the electrical connections between the leads and the pressure-sensing die, wherein a bottom surface of the lead frame forms a bottom surface of the integrated circuit device and the encapsulant forms side walls of the device, wherein a cavity is formed between the side walls and over the pressure-sensing die; |
| 9[d] | a gel material covering a pressure-sensing region on a top surface of the pressure-sensing die; |
| 9[e] | a lid that extends between the side walls and over the cavity, wherein the lid has a central opening that allows ambient air to enter the cavity so that the pressure-sensing die can measure the ambient air pressure; and |
| 9[f] | a diaphragm located beneath the central opening and that covers the gel material. |
| | |
| **Claim 10** | |
| 10[a] | The integrated circuit device of claim 9, wherein the diaphragm is integral with the lid. |

21

| | |
|---|---|
| | |
| **Claim 11** | |
| 11[a] | The integrated circuit device of claim 10, wherein the lid has a top portion formed of metal and a diaphragm portion formed of a flexible material. |
| | |
| **Claim 12** | |
| 12[p] | A method for assembling an integrated circuit (IC) device, the method comprising: |
| 12[a] | attaching a die to a paddle of a lead frame, wherein the die comprises a pressure sensor; |
| 12[b] | electrically connecting the die to leads of the lead frame; |
| 12[c] | encapsulating a portion of the die and the lead frame with an encapsulant, wherein a recess is formed over the pressure sensor such that at least a pressure-sensing region of the die is not covered by the encapsulant; |
| 12[d] | placing a gel into the recess and in contact with the pressure-sensing region of the die; |
| 12[e] | inserting a diaphragm into the recess and in contact with the gel; and |
| 12[f] | placing a lid having an aperture over the recess and the diaphragm. |

| | |
|---|---|
| **Claim 13** | |
| 13[p] | The method of claim 12, wherein in the encapsulation step comprises: |
| 13[a] | placing a film-covered shaping form over the pressure sensor to prevent the encapsulant from covering the pressure-sensing region and to form the shape of the recess; |
| 13[b] | injecting an uncured encapsulant into a molding enclosure containing the die and the lead frame; |
| 13[c] | curing the encapsulant; and |
| 13[d] | removing the film-covered shaping form. |
| | |
| **Claim 14** | |
| 14[a] | The method of claim 12, wherein the encapsulation step is performed using film-assisted molding. |
| | |
| **Claim 15** | |
| 15[a] | The device of claim 1, wherein the diaphragm is impermeable to at least one gas in the ambient air. |
| | |
| **Claim 16** | |

| 16[a] | The device of claim 1, wherein the diaphragm is a unitary article of manufacture made of one material. |
|---|---|
| | |

### 4.    '658 Patent Prosecution History

The '658 Patent's underlying application, U.S. Patent Application No. 15/356,622 (the "'622 application"), was filed on November 20, 2016, and claimed priority to Chinese application CN 201610218782.5, filed April 11, 2016. EX1001, Cover Page; EX1002, 1-58. After the Applicant filed a preliminary amendment making minor adjustments to dependent claims 2, 10, and 11 and adding new dependent claims 14-16, claims 1-16 were presented to the Office for examination. EX1002, 2-7.

The Office issued a first non-final office action rejecting claims 1-16. EX1002, 78-84. The Office rejected claim 1 under 35 U.S.C. § 102(a)(1) as being anticipated by U.S. Patent 5,522,267 to Lewis and rejected claims 2-16 as being unpatentable over Lewis and U.S. Patent Application Publication 2015/0137279 to Tiu. *Id.* The Office also objected to claim 8 due to an antecedent basis issue. *Id.*

In response, the Applicant amended claim 1 to require "a lid having an aperture" (which was previously recited in dependent claim 2), as well as additional details regarding the lid and aperture. EX1002, 104. This amendment is shown below:

24

1. (CURRENTLY AMENDED) A pressure-sensing integrated circuit (IC) device, comprising:

a pressure-sensing die;

a flexible gel covering at least a pressure-sensing region of the pressure-sensing die; ~~and~~

a flexible diaphragm covering the flexible gel, wherein the flexible diaphragm and the flexible gel enable the pressure sensor to sense ambient pressure outside of the IC device; and

a lid having an aperture, wherein the lid is located between the flexible gel and an exterior of the device, and the aperture permits ambient air to move the diaphragm and consequently the flexible gel so that the pressure-sensing die can measure the ambient air pressure.

The Applicant then distinguished amended claim 1 over the Lewis reference of the Office Action. First, the Applicant explained that its "present invention" is "directed to a pressure sensor device that includes a membrane or diaphragm that protects gel within the pressure sensor device from contamination and stiffening," and that "[p]rior art devices comprise the die, the gel and the lid, but not the flexible diaphragm 420." EX1002, 109. With its explanation, the Applicant included the application's Figure 5 with hand-written annotations of "DIAPHRAGM," "LID," "DIE," and "GEL," as reproduced below[3]. *Id.*

---

[3] Requester has annotated this figure with a box around the numeral 420, identifying the diaphragm. *Id.*

25



EX1002, 109 (annotated by Requester to add box around numeral 420)

The Applicant then acknowledged that Lewis discloses an "isolation diaphragm" that is "element 102," but stated it is "**akin to the lid of the present invention, in that both are caps that separate the gel and die area from the exterior environment**." EX1002, 111 (emphasis added). As such, the Applicant argued that "**the diaphragm of the present invention is a separate element that is disposed over the gel and between the gel and the lid**" and "**Lewis does not [disclose] such an element**." *Id.* (emphasis added). Lewis' isolation diaphragm is shown below in Figure 7, which the Applicant included with its explanation along with the hand-written annotations of "ISOLATION DIAPHRAGM" and

26

"SENSOR."[4] *Id.*, 110.



EX1002, 110 (annotated by Requester to add box around numeral 102)

The Applicant next addressed the combination of Lewis and Tiu. EX1002, 111. Here, the Applicant first stated that "Lewis does not teach a pressure sensing device that includes both a diaphragm and a lid" for the reasons discussed above. *Id.* The Applicant then explained that Tiu discloses an "MCU die 310 is attached to a flag (*aka* die paddle) of a lead frame and covered with an encapsulant 316," "a cavity 318 in which a pressure-sensing die 320 is disposed," and that "pressure-sensing die

---

[4] Requester has annotated this figure with a box around the numeral 102 and the hand-written "isolation diaphragm."

27

320 is covered with a gel 328 and the cavity is covered with a lid 330." *Id.* (parenthetical in original). The Applicant included the below figure from Tiu with its explanation, which shows these various components, and included the hand-written annotations of "MCU DIE," "GEL," "SENSOR DIE," and "LID." *Id.*, 112.



EX1002, 112

Thus, the Applicant alleged that "Tiu does not teach, suggest or disclose a separate diaphragm that is disposed between the gel and the lid" and that "as there is no diaphragm, the tiered structure formed by the encapsulant (claim 2) of the present invention also is not taught by either Lewis or Tiu or a combination of Lewis and Tiu." *Id.*, 111-112.

The Applicant pointed to Figure 9 and paragraph [0029] of the '622

28

application to show "the tiered structure" of its disclosure, stating that "the tiered structure formed by the encapsulant 412 has a first, narrow cavity that holds the gel, then a second, wider cavity above the first cavity that holds the diaphragm, and then a third cavity that is wider yet, that holds the lid." EX1002, 112. The Applicant further included Figure 9 with its explanation, including hand-written annotations that noted the various cavities for the gel, diaphragm, and lid in the figure and referred to the figure as a "3 TIERED STRUCTURE." *Id.*



FIG. 9

EX1002, 112

The Applicant concluded that " [i]ndependent claims 1, 9 and 12 each recite both a diaphragm and a lid, the combination of which is not taught by Lewis and Tiu" and "[s]ince neither Lewis nor Tiu, nor a combination thereof teaches both these elements in a pressure-sensing device, then claims 1-16 are nonobvious." EX1002, 113.

In response, the Office issued a notice of allowance, stating that claims 1-16. EX1002, 120-122. The Examiner identified the "flexible gel," "flexible diaphragm," and lid having an aperture" limitations of independent claim 1, the "encapsulant," "gel material," "lid," and "diaphragm" limitations of independent claim 9, and the "encapsulating," placing a gel", and "inserting a diaphragm" steps of independent claim 12 as rendering the claims allowable. *Id.*

However, unlike the prior art raised by the Office during prosecution, the prior art and combinations presented in this request explicitly disclose these and the other required elements of the Challenged Claims. *See infra* § III; *see* EX1003, ¶¶66.

### 5. Prosecution of Related Chinese Patent Application 201610218782

The '658 Patent claims priority to Chinese Patent Application 201610218782 (the "CN782 Application"). EX1001, Cover Page (item 30). Prosecution of the CN782 Application is highly relevant to the present reexamination request because it involved the prosecution of claims that were very similar to the '658 Patent's issued claims (and arguably narrower) ***yet resulted in abandonment of the application by the applicant***. *Compare* EX1017, claims 1-13 (pp. 11-14) *to* EX1001, claims 1-16; EX1031 (showing abandoned status); *see* EX1039. Moreover, the primary prior art reference (EX1009, CN102589787 to Rozgo ("RozgoCN")) utilized by the examiner during prosecution of the CN782 Application, as well as its

30

U.S. equivalent (Rozgo, EX1005) was never considered during prosecution of the '658 Patent.

The examiner of the CN782 Application issued a first office action rejecting all pending claims over either RozgoCN (EX1009) or RozgoCN and Tiu (U.S. Patent Application Publication 2015/0137279).[5] EX1015*; see* EX1032. In response, the applicant amended independent claims 1, 9, and 12, making them substantially the same as the '658 Patent's claims 1, 9, and 12. EX1016*; see* EX1033; *compare* EX1017, claims 1, 9, and 12 (pp. 11-14) *to* EX1001, claims 1, 9, and 12. As one example, a comparison between amended claim 1 of the CN782 Application and claim 1 of the '658 Patent is shown below, with the minimal differences between the claims bolded.

| CN782 Application— Claim 1 (First Amendment) | '658 Patent—Claim 1 |
|---|---|
| A pressure **sensor** integrated circuit (IC) device, comprising: | A pressure-**sensing** integrated circuit (IC) device, comprising: |
| a pressure **sensor** die; | a pressure-**sensing** die; |

---

[5] Tiu was also raised during prosecution of the '658 Patent. *See* Section I.C.4.

| | |
|---|---|
| flexible gel covering at least a pressure sensing region of the pressure **sensor** die; and | **a** flexible gel covering at least a pressure-sensing region of the pressure-sensing die; |
| a flexible diaphragm covering the flexible gel, wherein the flexible diaphragm and the flexible gel enable **a** pressure sensor to sense **an** ambient pressure outside the **integrated circuit** device; | a flexible diaphragm covering the flexible gel, wherein the flexible diaphragm and the flexible gel enable **the** pressure sensor to sense ambient pressure outside of the **IC** device; **and** |
| a lid having an **orifice**, wherein the lid is located between the flexible **diaphragm** and **the** exterior of the device, | a lid having an **aperture**, wherein the lid is located between the flexible **gel** and **an** exterior of the device, |
| and the **orifice allows** ambient air to **act on** the **flexible** diaphragm and the flexible gel, **thereby enabling** the pressure **sensor** die to measure ambient air pressure. | and the **aperture permits** ambient air to **move** the diaphragm and **consequently** the flexible gel **so that** the pressure-sensing die can measure **the** ambient air pressure. |

32

EX1017, 11 (claim 1); *see* EX1034; EX1001, claim 1. The applicant argued that the amended claims were novel because the alleged invention solved a technical problem of "how to deal with adverse impact on the gel," whereas RozgoCN allegedly solved "completely different" technical problems of "'a relatively high temperature offset change amount due to a relatively high aspect ratio of a cavity for accommodating a pressure conductive fluid' and a high-cost construction due to isolation of a pressure sensing element from a medium by means of a membrane." EX1016, 2; *see* EX1033. But the Examiner did not agree and maintained their rejections in the subsequent office action. EX1018, 1-5, 11; *see* EX1035.

In response, the applicant amended independent claims 1 and 9 again without making further amendments to claim 12. EX1019; *see* EX1036; EX1020, 11-14. Amended claim 1 of the CN782 Application was amended to be narrower in scope than claim 1 of the '658 Patent, adding limitations similar in scope to Claim 2 of the '658 Patent. EX1020, 11; *see* EX1037; EX1001, claim 1.

The applicant again attempted to distinguish between alleged technical solutions addressed by RozgoCN and the CN782 Application's claims, and further alleged that "rather than sensing an applied pressure by merely changing the membrane 22 and a pressure conducting fluid 24," RozgoCN "requires inducing the deflection of the pressure sensing membrane 46 of the pressure sensing die 44, which in turn requires applying a stress to one or a plurality of piezoresistive

elements on the pressure sensing membrane 46." EX1019, 1-4; *see* EX1036.

But the Examiner was not convinced and again maintained the rejection. EX1021; *see* EX1038. In response, the applicant abandoned the CN782 Application. EX1031, (showing abandoned status); *see* EX1039.

The USPTO has not previously considered RozgoCN, which was the primary reference applied by the Examiner during prosecution of the CN782 Application, or its U.S. equivalent (Rozgo, EX1005). In this reexamination request, several of the grounds, SNQ1-SNQ3, SNQ6-9, rely on Rozgo. The applicant's abandonment of its pursuit of narrowed claims in the CN782 application over RozgoCN supports a finding that these grounds raise substantial new questions of patentability.

The remaining grounds of this reexamination request, including those that utilize Rozgo, also raise substantial new questions of patentability for the reasons discussed herein.

### D.    Summary of SNQs Raised

This Request raises nine SNQs of patentability:

| SNQ | Claims | Basis (35 U.S.C. §) | Prior Art |
|---|---|---|---|
| 1 | 1, 8, 15, and 16 | 102(a)(1), 102(a)(2) | Rozgo |
| 2 | 1, 8, 15, and 16 | 103 | Rozgo |

34

| SNQ | Claims | Basis (35 U.S.C. §) | Prior Art |
|---|---|---|---|
| 3 | 1, 8, 15, and 16 | 103 | Rozgo and Hooper |
| 4 | 1, 15, and 16 | 102(a)(1) | Francis |
| 5 | 1, 15, and 16 | 103 | Francis |
| 6 | 1-4, 15, and 16 | 103 | Hooper and Rozgo |
| 7 | 6, 7, 9, and 12-14 | 103 | Hooper, Rozgo, and Otani |
| 8 | 3, 4, 5, and 8 | 103 | Hooper, Rozgo, and Wombacher |
| 9 | 10 and 11 | 103 | Hooper, Rozgo, Otani, and Wombacher |

## II. THE PRIOR ART REFERENCES, ARGUMENTS, AND EVIDENCE PRESENT SUBSTANTIAL NEW QUESTIONS OF PATENTABILITY

### A. Summary of Art Relied on in this Proceeding

Reexamination of the Challenged Claims is requested in view of the following references.

| Ex. | Description | 35 U.S.C. § | Prior Art Date(s) |
|---|---|---|---|
| EX1005 | Rozgo | 102(a)(1), 102(a)(2) | Filed: January 6, 2011<br><br>Issued: February 12, 2013 |

35

| Ex. | Description | 35 U.S.C. § | Prior Art Date(s) |
| --- | --- | --- | --- |
| **EX1007**[6] | Francis | 102(a)(1) | Published: July 30, 1993 |
| **EX1006** | Hooper | 102(a)(1), 102(a)(2) | Filed: November 3, 2009; claiming priority to May 16, 2006<br><br>Issued: December 28, 2010 |
| **EX1013** | Otani | 102(a)(1), 102(a)(2) | Filed: June 5, 1997; claiming priority to January 14, 1997<br><br>Issued: April 11, 2000 |
| **EX1030** | Wombacher | 102(a)(1), 102(a)(2) | Filed: July 25, 2007<br><br>Published: January 29, 2009 |

None of these references are cited by the '658 Patent, and none of them were considered by the Examiner during prosecution of the '658 Patent. *See* EX1002. The absence from the prosecution record of these references requires reexamination of the '658 Patent.

---

[6] EX1007 is a certified English translation. EX1008 is the original French language publication.

### 1.   Rozgo (EX1005)

U.S. Patent No. 8,371,176 ("Rozgo") was filed on January 6, 2011 and issued on February 12, 2013, and thus qualifies as prior art under at least §§ 102(a)(1) and 102(a)(2). *See* EX1005, Cover Page, items (22) and (45).

### 2.   Francis (EX1007)

French Patent Publication No. 2686692 A1 ("Francis") was filed on January 28, 1992 in France and published on July 30, 1993. Francis qualifies as prior art under at least § 102(a)(1) at least because it published in France in 1993. *See* EX1007 (certified English translation of Francis) and EX1008 (Original publication of Francis in French), Cover Page, items 11, 22, and 43.

### 3.   Hooper (EX1006)

U.S. Patent No. 7,859,068 ("Hooper") was filed on November 3, 2009, is a divisional of U.S. Patent Application No. 11/383,649 filed May 16, 2006, and issued on December 28, 2010, and thus qualifies as prior art under at least §§ 102(a)(1) and 102(a)(2). *See* EX1006, Cover Page, items (22), (62), and (45).

### 4.   Otani (EX1013)

U.S. Patent No. 6,049,120 ("Otani") was filed June 5, 1997, claims priority to JP Patent Application 9-004457 filed January 14, 1997, and issued on April 11, 2000, and thus qualifies as prior art under at least §§ 102(a)(1) and 102(a)(2). *See* EX1013, Cover Page, items (22), (30), and (43).

5. **Wombacher (EX1030)**

U.S. Patent Application Publication No. 2009/0026560 ("Wombacher") was filed June 25, 2007 and published on January 29, 2009, and thus qualifies as prior art under at least §§ 102(a)(1) and 102(a)(2). *See* EX1030, Cover Page, items (22), and (43).

B. **The Cited References Present Substantial New Questions of Patentability**

This Request presents several SNQs for resolution. These SNQs are referred to using a reference number for convenience herein (e.g., SNQ1, SNQ2, etc.). The SNQs presented in this Request are the following:

- **SNQ1 and SNQ2: Claims 1, 8, 15, and 16 are anticipated by Rozgo (SNQ1), or obvious over Rozgo (SNQ2)**

- **SNQ3: Claims 1, 8, 15, and 16 are obvious over Rozgo and Hooper**

- **SNQ4 and SNQ5: Claims 1, 15, and 16 are anticipated by Francis (SNQ4), or obvious over Francis (SNQ5)**

- **SNQ6: Claims 1-4, 15, and 16 are obvious over Hooper and Rozgo**

- **SNQ7: Claims 6, 7, 9, and 12-14 are obvious over Hooper, Rozgo, and Otani**

- **SNQ8: Claims 3, 4, 5, and 8 are obvious over Hooper, Rozgo, and Wombacher**

38

- **SNQ9: Claims 10 and 11 are obvious over Hooper, Rozgo, Otani, and Wombacher**

Section III below details these SNQs and demonstrates why the Challenged Claims are unpatentable.

Requester submits that the prior art references cited herein raise new "substantial question[s] of patentability" because "the teaching of the (prior art) patents and printed publications is such that a reasonable examiner would consider the teaching to be <u>important</u> in deciding whether or not the claim is patentable." *See* MPEP § 2242 (9th ed. Rev. R-01.2024, Nov. 2024) (emphasis in original). While the original Examiner did not locate prior art that disclosed the challenged claims and based on the file history, they did not consider the prior art relied upon in this Request. That is, not only were the teachings of the cited references not before the Examiner, but references like these were not of record during the original examination.

## C.    Discretionary Denial under 35 U.S.C. § 325(d) Is Not Warranted

Discretionary denial is only warranted under § 325(d) when "the same or substantially the same prior art or arguments" were previously considered by the Office. 35 U.S.C. § 325(d). This Request does not present "the same or substantially the same prior art or arguments previously were presented to the Office." 35 U.S.C. § 325(d).

39

The five prior art references relied upon herein are Rozgo, Francis, Hooper, Otani, and Wombacher. EX1005, EX1007, EX1006, EX1013, EX1030. Rozgo, Francis, Otani, and Wombacher are new and are not cited by the '658 Patent. EX1001, Cover Page.

With respect to Hooper, one of its related patents (U.S. Patent No. 8,359,927) is cited by the '658 Patent.[7] This document, however, was never substantively analyzed by the Office in an Office Action, and was instead submitted to the Office by the applicant via an Information Disclosure Statement. EX1002, 9. Hooper's disclosure was thus not substantively relied on during prosecution. And regardless, reliance on art previously considered by the Office does not preclude the existence of a substantial new question of patentability. 35 U.S.C. § 303(a); MPEP § 2242. For example, "[d]eterminations on whether a substantial new question of patentability exists" for such art "shall be based upon a fact-specific inquiry done on a case-by-case basis" and "a substantial new question of patentability may be based solely on old art where the old art is being presented/viewed in a new light, or in a different way, as compared with its use in the earlier examination(s), in view of a

---

[7] The '658 Patent also lists U.S. Patent No. 9,663,350 to Hooper on its face, but this is a different disclosure from the Hooper reference (U.S. Patent No. 7,859,068) (EX1006) utilized herein.

40

material new argument or interpretation presented in the request," where "[s]uch material new argument or interpretation may be based solely on claim scope of the patent being reexamined." MPEP § 2242 (II)(A). Hooper is utilized herein in combination with prior art that was not before the Office during prosecution and is thus presented in a new light and different way than in prosecution, which raises substantial new questions of patentability.

As such, because this Request presents new art not previously considered during prosecution of the '658 Patent for SNQs 1-9, discretionary denial under § 325(d) is not warranted. *Becton, Dickinson & Co.*, IPR2017-01586, Paper 8 at 17 (considering "the extent to which the asserted art ***was evaluated during examination***" when deciding whether discretionary denial is proper); *In re Sandelman et al*, *Ex Parte* Reexamination Proceeding, Control No. 90/020,115, Denying Patent Owner's Petition to Vacate the Reexamination Order at 13 (June 15, 2018) ("[T]he purpose of ex parte reexamination is to permit the Office to reexamine the patent on the basis of prior art which was ***not previously considered, or was not fully considered*** with respect to the specific claims of the patent, during an earlier examination or review of the patent. There is a strong public interest that all of the prior art be considered.")

Additionally, SNQs 1-9 present compelling grounds of unpatentability for the Challenged Claims that are not cumulative to the art considered during prosecution.

41

During prosecution, the applicant distinguished the prior art by arguing that "the diaphragm of the present invention is a separate element that is disposed over the gel and between the gel and the lid" and that the prior art (Lewis) did not disclose "such an element." EX1002, 111. The Examiner found this argument persuasive and allowed the claims. *Id.*, 120-122. The grounds presented herein demonstrate that a pressure sensor device having a flexible diaphragm disposed between gel covering a pressure sensing die and a lid of the device—which was the applicant's basis for patentability during prosecution—was actually well-known in the prior art. *See* Section I.C.4; Section III. For example, Rozgo expressly teaches a diaphragm 22 that covers the gel 24 and is positioned beneath the lid (housing 12). EX1005, 2:35-3:40, 3:59-4:27, 4:40-5:44, Fig. 1. Francis similarly teaches a flexible film 190 that covers the gel 170 and is positioned beneath the lid (cover plate 160). EX1007, Abstract, 2:12-27, 3:5-27, 4:6-5:14, 5:1-6:8, claim 1, claim 8, claim 9, Fig. 3.

Requester respectfully submits that proposed SNQs 1–9 are not redundant to each other and should each justify reexamination. SNQ1 and SNQ2 rely on Rozgo to reach claims 1, 8, 15, and 16. Rozgo expressly discloses each element of claim 1 along with the bonded diaphragm-to-housing arrangement of claim 8 and the metal, impermeable, unitary diaphragm of claims 15 and 16. SNQ3 is presented to show the obviousness of using the flexible gel embodiments suggested by Rozgo. SNQ4 and SNQ5 rest on Francis's distinct diaphragm-over-gel-over-die arrangement using

its "flexible film 190" to reach claims 1, 15, and 16, and are not cumulative of the Rozgo-based grounds. Whereas Rozgo discloses a media-isolated pressure sensor in which a metal diaphragm seals the end of a fluid passageway and transmits pressure through a gel-or-oil transfer fluid contained within a carrier cavity to a separately mounted sensing die, Francis discloses a distinct architecture in which a flexible film is applied directly over a gel that itself covers the pressure-sensing region of the die. These differences matter to claim 1 because Francis supplies an express disclosure of a flexible polymeric film covering a gel that covers the die — the precise diaphragm-over-gel-over-die arrangement recited in claim 1 — without reliance on the media-isolation, passageway, and transfer-fluid features that characterize Rozgo's architecture. As compared to Rozgo, Francis therefore provides a non-cumulative teaching of each of the elements of Claims 1, 15, and 16. SNQs 6–9 justify reexamination because they are directed to claims not reached by any of the foregoing grounds.

The grounds herein thus squarely address the alleged inventive concept of the '658 Patent with non-cumulative prior art, and reexamination of the Challenged Claims should be ordered.

## III.  DETAILED EXPLANATION UNDER 37 C.F.R § 1.510(B)(2) OF THE PERTINENCY AND MANNER OF APPLYING THE CITED PRIOR

**ART TO EVERY CLAIM FOR WHICH REEXAMINATION IS REQUESTED**

In the subsections below, this Request describes the proposed rejections (SNQs) listed above (*supra* § II.B-C) in further detail and demonstrates how Claims 1-16 of the '658 Patent are rendered unpatentable over the references noted above.

Requester notes that each of the proposed rejections below are based on novelty under 35 U.S.C. § 102 or obviousness under 35 U.S.C. § 103. Requester notes that, even if there are minor differences between cited disclosures of the prior art and the claimed concepts, the claims are still obvious, as a POSITA would not have appreciated "some new synergy" or unexpected results from the limitations given the disclosures of the prior art and the general knowledge of a POSITA. *KSR Intern. Co. v. Teleflex Inc.*, 550 US 398, 417 (2007). When compared with the prior art described below and in light of the knowledge of a POSITA, any "differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103.

### A. Claim Construction

In ex parte reexamination, claim terms are given their broadest reasonable interpretation ("BRI") in light of the specification. *See* MPEP § 2258. For claim terms that are also at issue in the pending district court litigation, the *Phillips*

44

standard applies. *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc).

Requester respectfully submits that the Office need not expressly construe any claim

term because the prior art presented herein renders the claims unpatentable under

either standard—both the BRI and the ordinary and customary meaning yield the

same result, as explained below.[8]

During prosecution of the '658 Patent, the applicant construed the term

*flexible diaphragm* as "a separate element that is disposed over the gel and between

the gel and the lid." EX1002, 111 ("Although Lewis terms element 102 an isolation

diaphragm, this element 102 is akin to the lid of the present invention, in that both

are caps that separate the gel and die area from the exterior environment. Thus, **the**

**diaphragm of the present invention is a separate element that is disposed over**

---

[8] Requester does not concede that the claims are capable of express construction, are

definite, or that there is written description support for the terms. Nevertheless, the

Request is proper because as long as the claims are not "impossible" for the Office

to analyze, the Office can review the "patentability of the claims on section 102 and

103 grounds." *Samsung Elecs. Am. Inc. v. Prisua Eng. Corp.*, 948 F.3d 1342, 1355

(Fed. Cir. 2020); *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 813 (Fed. Cir. 2021)

(A patentability analysis is only precluded when the claims indefiniteness "renders

it logically impossible for the Board to reach such a decision").

**the gel and between the gel and the lid.** Lewis does not [disclose] such an element.") (emphasis added). Requester submits that this definition represents the correct construction under a BRI or under the narrower district court *Phillips* standard. The prior art utilized herein discloses or at least renders obvious a *flexible diaphragm* under this prosecution history definition. As such, the Challenged Claims are unpatentable under both the BRI and any construction consistent with the applicant's prosecution statements.

### B.    SNQ1/SNQ2: Claims 1, 8, 15, and 16 are anticipated by Rozgo (SNQ1), or obvious over Rozgo (SNQ2)

SNQ1 utilizes Rozgo (EX1005), which is the U.S. equivalent of RozgoCN and includes the same content. *See* EX1005; EX1009 (RozgoCN) (Certified Translation); EX1010 (Original Chinese language version of RozgoCN). The Examiner in prosecution of related Chinese Patent Application 201610218782 utilized RozgoCN in rejections of overlapping and narrower claims to those of the '658 Patent, and when faced with these rejections, the applicant abandoned the application. *See* Section I.C.5. Rozgo—which includes the same content as RozgoCN—raises SNQs for the following reasons.

#### 1.    Claim 1

Rozgo discloses and renders obvious Claim 1. EX1003, ¶85.

##### i.    1[p] A pressure-sensing integrated circuit (IC) device, comprising:

To the extent the preamble of Claim 1 is limiting, Rozgo discloses or at least

46

renders obvious *[a] pressure-sensing integrated circuit (IC) device.*[9] EX1005, 1:41-2:3, 2:39-49, 3:9-21, 4:12-39, 5:6-6:6, Fig. 1; EX1003, ¶86.

Rozgo describes a "pressure sensor 10" that includes a "pressure sensing die 44." EX1005, 1:41-2:3, 2:39-49, 3:9-21, 4:12-39, 5:6-6:6, Fig. 1.



EX1005, Fig. 1 (annotated with boxes around numerals 10, 44, and 46)

The pressure sensing die 44 includes "one or more pressure sensing elements and/or other circuitry (e.g., trim circuitry, signal conditioning circuitry, etc.) formed using

---

[9] Claim language is italicized in the claim-by-claim analysis unless otherwise noted.

47

any suitable fabrication or printing techniques." *Id.*, 4:12-39 (parenthetical in original), Fig. 1. Pressure sensing die 44 further includes a "pressure sensing diaphragm 46 including one or more sensing elements, such as piezoresistive sensing components" that are connected in a "Wheatstone bridge configuration." *Id.*, 4:18-39. A Wheatstone bridge is and was a well-known electrical circuit. *Id.*; EX1003, ¶88. Indeed, by the early 2000s, the Wheatstone bridge was well-known circuit used by pressure sensors, as demonstrated by the Microsystem Design textbook authorized by Stephen Senturia. EX1003, ¶88; EX1022, 24-25, Fig. 18.3 (native pages 476-477) (showing a "Wheatstone-bridge circuit" used in a pressure sensor.)

Pressure sensor 10 also includes a "substrate 42." EX1005, 1:41-2:3, 2:39-49, 3:9-21, 4:12-39, 5:6-6:6, Fig. 1. Substrate 42 is a "printed circuit board (PCB)". *Id.*, 5:6-9, Fig. 1. Substrate 42 can include "circuitry for compensation of bridge signals from pressure sense die 44." *Id.*, 5:17-20.

48



EX1005, Fig. 1 (annotated with boxes around numerals 10, 42, 44, 46, and 48)

Moreover, pressure sensor 10 may include "optional signal conditioning circuitry 48 mounted on substrate 42." EX1005, 5:45-6:6. Circuitry 48 "may include an ASIC (Application Specific Integrated Circuit) or other electronics" and "may include amplification, analog-to-digital conversion, offset compensation circuitry, and/or other suitable signal conditioning electronics." *Id.*, 5:47-53. Circuitry 48 "may include any suitable signal conditioning circuitry including any suitable microprocessor or microcontroller, discrete components, or any other suitable circuitry, as desired." *Id.*, 5:53-60.

49

Thus, at least because pressure sensor 10 includes a pressure sensing die 44 formed that includes electrical circuitry, substrate 42 formed by circuitry, and signal conditioning circuitry 48, the pressure sensor 10 is *[a] pressure-sensing integrated circuit (IC) device* as claimed. EX1005, 1:41-2:3, 2:39-49, 3:9-21, 4:12-39, 5:6-6:6, Fig. 1; EX1003, ¶91. Rozgo therefore discloses or at least renders obvious the preamble. EX1003, ¶91.

### ii.    1[a]: a pressure-sensing die;

Rozgo discloses or at least renders obvious *a pressure-sensing die*. EX1005, 1:41-2:3, 2:39-49, 3:9-21, 4:12-39, 5:6-6:6, Fig. 1; EX1003, ¶92. Rozgo describes that pressure sensor 10 includes "pressure sensing die 44," which is *a pressure-sensing die* as claimed. EX1005, 1:41-2:3, 2:39-49, 3:9-21, 4:12-39, 5:6-6:6, Fig. 1; EX1003, ¶92.

Figure 1 of Rozgo shows pressure sensing die 44:

50



EX1005, Fig. 1 (annotated with boxes around numerals 10, 14, 16,

22, 34, 44, and 53)

Rozgo explains that using pressure sensor 10, a media to be sensed, such as

gas or liquid, is provided to the first end 16 of pressure sensor 10's passageway 14,

and the media's pressure is transmitted to diaphragm 22. EX1005, 1:39-40, 5:29-32,

Fig. 1. The "applied pressure deforms the diaphragm 22, and transmits the pressure

51

to the back side [53][10] of the pressure sensing die 44 via the pressure transfer fluid 24." *Id.*, 5:32-35; *see id.*, 3:59-4:11 ("…the back side 53 of the pressure sensing die 44 may face the second side 34 of the carrier 26…a pressure applied to the fluid passageway 14 of the housing via a media to be sensed may be transmitted to the back side 53 of pressure sensing diaphragm 46 via the diaphragm 22, the fluid transfer fluid 24, and the first opening 28 in the carrier 26.").

The transfer fluid 24 can be a gel. *Id.*, 3:34-36 ("In some embodiments, the pressure transfer fluid 24 may be . . . a *gel*"). A "pressure difference" between "the pressure of the media to be sensed and atmosphere causes a deflection of the pressure sensing diaphragm 46 of the pressure sense die 44, which then stresses one or more piezoresistive elements on the pressure sensing diaphragm 46." *Id.*, 5:35-39. "Applying a current through the piezoresistive elements may provide a signal that

---

[10] Rozgo (EX1005) at 5:32-35 refers to "back side 51" but this is a typographical error and should instead recite "back side 53." Other than this section of Rozgo, every other reference to numeral 51 describes it as "front side 51" or "top 51." *See* EX1005, 3:63-4:27. Moreover, numeral 53 is referred to as "back side 53" or "bottom 53" in each instance that it is used. *Id.* And back side 53 is described as "fac[ing] the second side 34 of the carrier 26" and further described as having pressure "transmitted" to it in Rozgo at 3:59-4:11.

corresponds to the applied pressure in the media to be sensed." *Id.*, 5:39-41. Thus, pressure sensing die 44 senses the pressure of the media. *Id.*

Rozgo therefore discloses or at least renders obvious element [1a]. EX1003, ¶96.

> ### iii.    1[b]: a flexible gel covering at least a pressure-sensing region of the pressure-sensing die;

Rozgo discloses and renders obvious *a flexible gel covering at least a pressure-sensing region of the pressure-sensing die*. EX1005, 2:35-38, 3:22-40, 3:59-4:27, 4:40-6:6, Fig. 1; EX1003, ¶97.

Rozgo describes that pressure sensor 10 includes "pressure transfer fluid 24" that can be a "gel." EX1005, 3:22-40, 3:59-4:27, 4:40-5:44, Fig.1. Pressure of a media to be sensed is applied to a diaphragm 22 which "deforms" when subjected to the pressure and transmits the pressure to the back side 53 of the pressure sensing die 44 "via the pressure transfer fluid 24." *Id.*, 3:59-4:27, 4:40-5:44, Fig.1. Then, "[a] pressure difference between the pressure of the media to be sensed and atmosphere causes a deflection of the pressure sensing diaphragm 46 of the pressure sense die 44, which then stresses one or more piezoresistive elements on the pressure sensing diaphragm 46." *Id.*

A POSITA would have understood or at least found obvious that the gel pressure transfer fluid 24 is *flexible*. *Id.*; EX1003, ¶99. Rozgo explains that "[a]s used herein, the term fluid" is "intended to include any material subject to flow."

53

EX1005, 2:35-38. As such, Rozgo's "pressure transfer fluid" that is a "gel" would have been "subject to flow" and thus been flexible. *Id.*, 2:35-38, 3:22-40, 3:59-4:27, 4:40-5:44, Fig. 1; EX1003, ¶99. Further, the word "gel" conveys to the POSITA a class of semi-solid material that would be characterized by its flexibility. EX1003, ¶99. Moreover, the POSITA would have understood Rozgo's reference to a gel as referring to a class of *flexible* gels. *Id.*; EX1003, ¶99. Indeed, Rozgo further discloses that "[i]n some embodiments, the oil may be a *silicone based oil*." EX1005, 3:37-38. The POSITA would have known that silicone-based pressure transfer materials were the industry standard for pressure sensor gels and were characteristically flexible. EX1003, ¶99; EX1024, 4 (showing Freescale's MPX4115 pressure sensor with "Fluoro Silicone Gel Die Coat").

The POSITA would have understood and found obvious that Rozgo's gel would have needed to be flexible for the pressure-sensing device to work properly. EX1003, ¶100. As noted above, diaphragm 22 is deformed due to applied pressure; this deformation transmits the pressure to the gel pressure transfer fluid 24, which in turn transmits the pressure to the pressure sensing die 44 for measurement. EX1005, 3:59-4:27, 4:40-5:44, Fig. 1; EX1003, ¶100. In order for the gel pressure transfer fluid 24 to transmit pressure in this manner, it would have been flexible in some capacity so that it deforms according to the media's pressure and thus transmits this pressure to the pressure sensing die 44. EX1005, 3:59-4:27, 4:40-5:44; EX1003,

¶100. This is consistent with its description as both a "gel" and a "fluid"—flexibility is a trait of both such substances. *Id.*, 2:35-38, 3:22-40, 3:59-4:27, 4:40-5:44, Fig. 1; EX1003, ¶100. Thus, the gel pressure transfer fluid 24 forms *a flexible gel* as claimed. EX1005, 3:59-4:27, 4:40-5:44; EX1003, ¶100.

Rozgo further discloses that the gel pressure transfer fluid 24 covers the back side 53 of the pressure sensing die 44 and its pressure sensing diaphragm 46, as shown by Figure 1 below.  EX1005, 3:22-40, 3:59-4:27, 4:40-5:44, Fig. 1.



EX1005, Fig. 1 (annotated with boxes around numerals 10, 24,

44, 46, and 53)

55

The pressure sensing die 44 includes the pressure sensing diaphragm 46. *Id.* The back side 53 "may include an etched cavity that defines at least part of the pressure sensing diaphragm 46, which extends along the front side 51 of the pressure sensing die 44." *Id.* The pressure sensing diaphragm 46 includes piezoresistive elements that provide a signal corresponding to the media's pressure. *Id.* In operation, "a pressure applied to the fluid passageway 14 of the housing via a media to be sensed may be transmitted to the back side 53 of the pressure sensing diaphragm 46 via the diaphragm 22, the [] transfer fluid 24, and the first opening 28 in the carrier 26." *Id.*, 4:6-11. Thus, the gel pressure transfer fluid 24 (*flexible gel*) covers, at the back side 53, the pressure sensing diaphragm 46 of pressure sensing die 44 (*covering at least a pressure-sensing region of the pressure-sensing die*), thus disclosing or at least rendering obvious *a flexible gel covering at least a pressure-sensing region of the pressure-sensing die* as claimed. EX1005, 3:22-40, 3:59-4:27, 4:40-5:44, Fig. 1; EX1003, ¶102.

The POSITA would have immediately recognized or found exceedingly obvious that the *gel* referred to by Rozgo was or obviously would be a flexible gel, as flexible gel was commonly used in similar pressure sensors including Motorola's MPX devices. EX1003, ¶103. For example, the POSITA would have known that flexible gel was commonly used as the gel-coating for pressure sensors. EX1006, 2:19-21 ("In one embodiment, pressure transmitting material 20 is a gel, which for

56

some embodiments may be *flexible*." (emphasis added)); EX1003, ¶103. Rozgo's

teaching to use a gel would have taught or suggested to the POSITA the use of such

flexible gels. *Id.* Moreover, by 2006—a decade before the '658 Patent—commercial

pressure sensors such as Freescale's MPX4115 used "Fluoro Silicone Gel" as a die

coat, confirming that flexible silicone gel was a well-known industry standard for

pressure sensor gel coatings. EX1024, 4 ("A fluorosilicone gel isolates the die

surface and wire bonds from the environment, while allowing the pressure signal to

be transmitted to the sensor diaphragm."); EX1003, ¶103.

Rozgo thus renders obvious element [1b]. EX1003, ¶104.

> iv.    **1[c]: a flexible diaphragm covering the flexible gel, wherein the flexible diaphragm and the flexible gel enable the pressure sensor to sense ambient pressure outside of the IC device; and**

Rozgo discloses and renders obvious *a flexible diaphragm covering the flexible gel, wherein the flexible diaphragm and the flexible gel enable the pressure sensor to sense ambient pressure outside of the IC device*. EX1005, 3:4-40, 3:59-4:27, 4:40-5:44, Fig. 1; EX1003, ¶105. Rozgo describes that pressure sensor 10 includes a "diaphragm 22" that "deforms" when it is subject to "applied pressure." EX1005, 3:4-40, 3:59-4:27, 4:40-5:44, Fig. 1. Because the diaphragm 22 deforms, it is therefore *a flexible diaphragm* as claimed. *Id.*; EX1003, ¶105.

As shown by Figure 1 below, the diaphragm 22 (*flexible diaphragm*) covers gel pressure transfer fluid 24 (*the flexible gel*), which thus discloses or at least

renders obvious *a flexible diaphragm covering the flexible gel*. EX1005, 3:4-40, 3:59-4:27, 4:40-5:44, Fig. 1; Section III.B.1.iii (element 1[b]); EX1003, ¶106.



EX1005, Fig. 1 (annotated with boxes around numerals 10, 22, and 24)

Diaphragm 22 is also a component that is attached to housing 12 and is located between the gel pressure transfer fluid 24 and housing 12; housing 12 forms the claimed *lid*. EX1005, 3:4-40, 3:59-4:27, 4:40-5:44, Fig. 1; *see* Section III.B.1.v (element 1[d]), *infra*. As such, Rozgo further meets the applicant's construction of a *flexible diaphragm* during prosecution, as it describes diaphragm 22 as a component attached to housing 12 ("a separate element") that covers gel pressure transfer fluid

58

24 and is located between the gel pressure transfer fluid 24 and housing 12 ("that is disposed over the gel and between the gel and the lid"). EX1002, 111; EX1005, 3:4-40, 3:59-4:27, 4:40-5:44, Fig. 1; *see* Section III.B.1.v (element 1[d]), *infra*; EX1003, ¶107. Notably, while Rozgo teaches that "the diaphragm 22 *may be* bonded to the housing 12 using welding, an adhesive, a seal, a gasket, or any other suitable bonding or sealing mechanism (e.g. solder, eutectic, etc.)," (EX1005, 3:9-21) (implying that it also *may not be* bonded), the POSITA would have understood that the diaphragm 22 is a separate element from housing 12 to the extent it requires bonding to attach to the housing 12. EX1003, at ¶107.

Rozgo further describes that its diaphragm 22 (*flexible diaphragm*) and gel pressure transfer fluid 24 (*flexible gel*) allow the diaphragm 46 of pressure sensing die 44 to sense a media's pressure, thus disclosing or at least rendering obvious *wherein the flexible diaphragm and the flexible gel enable the pressure sensor to sense ambient pressure outside of the IC device*. EX1005, 3:4-40, 3:59-4:27, 4:40-5:44, Fig.1; EX1003, ¶108.

Indeed, Rozgo describes that a media to be sensed, such as gas or liquid, is outside of pressure sensor 10, but is provided to the first end 16 of pressure sensor 10's passageway 14, and the media's pressure is transmitted to diaphragm 22. EX1005, 1:39-40, 5:29-32, Fig. 1; EX1003, ¶109. Critically, Rozgo expressly teaches that "[t]he media to be sensed may be a liquid or *gas*, depending on the

59

application." EX1005, 1:39-40 (emphasis added). Air is a gas. EX1003, ¶109. A POSITA would have understood that when Rozgo teaches that the sensor can measure a "gas," this encompasses the measurement of ambient air pressure—the most common gas pressure measurement application—that is present in passageway 14. EX1003, ¶109.



EX1005, Fig. 1 (annotated with boxes around numerals 10, 14, 16, 22, 34, 44, and 53)

The "applied pressure deforms the diaphragm 22," which transmits the pressure to the back side 53 of diaphragm 46 (and pressure sensing die 44) via the gel pressure

transfer fluid 24. EX1005, 3:34-36, 3:59-4:27, 5:32-35. A "pressure difference" between "the pressure of the media to be sensed and atmosphere causes a deflection of the pressure sensing diaphragm 46 of the pressure sense die 44, which then stresses one or more piezoresistive elements on the pressure sensing diaphragm 46." *Id.*, 5:35-39. "Applying a current through the piezoresistive elements may provide a signal that corresponds to the applied pressure in the media to be sensed." *Id.*, 5:39-41. Thus, pressure sensing die 44 senses the pressure of the media. *Id.*

Rozgo's diaphragm 22 and gel pressure transfer fluid 24 (*the flexible diaphragm and the flexible gel*) enable the pressure sensing die 44 (and thus, the pressure sensor 10 device as a whole) (*the pressure sensor*) to sense ambient pressure of the medium located outside of pressure sensor 10 that flows into passageway 14, thus teaching *wherein the flexible diaphragm and the flexible gel enable the pressure sensor to sense ambient pressure outside of the IC device.* EX1005, 1:39-40, 3:4-40, 3:59-4:27, 4:40-5:44, Fig. 1; *see* Sections III.B.1.i-iii (elements 1[p], [1a], and 1[b]); EX1003, ¶111.

To the extent it is argued that Rozgo does not expressly teach sensing *ambient air* pressure, it would have been obvious to use Rozgo's gas pressure sensor to measure the pressure of ambient air  external to pressure sensor 10 that flows into passageway 14: (1) ambient air is a gas; (2) Rozgo teaches sensing "gas" pressure (EX1005, 1:39-40); and (3) the POSITA would have known that gas pressure

61

sensors were routinely used to measure the pressure of ambient air in many applications. EX1003, ¶112. Indeed, using Rozgo's gas pressure sensor to measure ambient air pressure would have been an obvious design choice yielding predictable results. *Id.*

Additionally, the '658 Patent explains that "[t]he invention is not, however, limited to devices for measuring air pressure" and "[t]he device may be used to measure the pressure of any gas." EX1001, 6:4-17. Under a broadest reasonable interpretation of claim 1 in light of this statement from the patent, *ambient air* and *ambient air pressure* would include measuring generic ambient gas and ambient gas pressure. EX1001, 6:4-17; EX1003, ¶113. Under such interpretation, *ambient air* and *ambient air pressure* includes Rozgo's disclosure of gas media in the ambient environment of pressure sensor 10, and the pressure of this gas media. *Id.*; EX1005, 1:39-40, 2:35-49, 5:29-32, Fig. 1; EX1003, ¶113.

Rozgo therefore discloses or at least renders obvious element [1c]. EX1003, ¶114.

> **v.    1[d]: a lid having an aperture, wherein the lid is located between the flexible gel and an exterior of the device, and the aperture permits ambient air to move the diaphragm and consequently the flexible gel so that the pressure-sensing die can measure the ambient air pressure.**

Rozgo discloses or at least renders obvious *a lid having an aperture, wherein the lid is located between the flexible gel and an exterior of the device, and the*

62

*aperture permits ambient air to move the diaphragm and consequently the flexible gel so that the pressure-sensing die can measure the ambient air pressure.* EX1005, 2:39-3:21, Fig. 1; EX1003, ¶115.

Rozgo describes that pressure sensor 10 includes a housing 12. EX1005, 2:39-3:21, Fig. 1. The housing is "formed from plastic, polyamide, ceramic, metal, or any other suitable material" and is "attached" to the "first side 21 of the diaphragm 22." *Id.* Under at least patent owner's interpretation, housing 12 forms a *lid* because it covers the internal components of pressure sensor 10, including the diaphragm 22 and pressure sensing die 44. *Id*; *see id.*, 1:41-2:3, 2:39-49, 3:9-39, 3:59-4:57, 5:6-6:6, Fig. 1; EX1014, 45-46; EX1003, ¶116. Indeed, the Patent Owner's own amended complaint alleges that a metal housing like Rozgo's housing 12 is a *lid*. EX1014, 45-46.



EX1005, Fig. 1 (annotated with boxes around numerals 10, 12, 22, and 24)

Moreover, housing 12 includes a "passageway 14" that "transmits a media (fluid or gas) from a customer application into the pressure sensor 10," where a "first end 16 may receive a media to be sensed, and may deliver the media to the second end 19." EX1005, 2:39-3:21, 3:59-4:57, 5:6-6:6, Fig. 1. Indeed, as shown by Figure 1, passageway 14 is an opening from the exterior of pressure sensor 10 that leads to an internal "space" of pressure sensor 10 bounded by "transition 18" of housing 12, "sidewalls extending downward from the transition 18" to diaphragm 22, and diaphragm 22 itself. *Id.*, 2:39-3:21, Fig. 1. Thus, the passageway 14 of housing 12

64

(*lid*) forms an *aperture* in the housing 12, and Rozgo thus discloses or at least renders obvious *a lid having an aperture. Id.*, 1:41-2:3, 2:39-49, 3:9-39, 3:59-4:57, 5:6-6:6, Fig. 1; EX1003, ¶117. Rozgo further describes that the housing 12 (*the lid*) is located between the gel pressure transfer fluid 24 (*the flexible gel*) and an exterior of pressure sensor 10, as shown by Figure 1 below, which thus discloses or at least renders obvious *wherein the lid is located between the flexible gel and an exterior of the device. See* EX1005, 1:41-2:3, 2:39-49, 3:4-40, 3:59-4:57, 4:40-6:6, Fig. 1; Section III.B.1.iii (element 1[b]); EX1003, ¶117.

65



EX1005, Fig. 1 (annotated with boxes around numerals 10, 12, 22, and 24, and

exterior labeling)

Finally, Rozgo discloses or at least renders obvious *the aperture permits ambient air to move the diaphragm and consequently the flexible gel so that the pressure-sensing die can measure the ambient air pressure*. As discussed in Section III.B.1.iv (element 1[c]), a POSITA would have understood or at least found obvious that Rozgo's gas media having a pressure would have been *ambient air* having an

66

*ambient air pressure* as claimed. EX1003, ¶118; *see* Section III.B.1.iv (element 1[c]). Moreover, Rozgo describes that the media to be sensed is provided to the first end 16 of passageway 14, and the media's pressure is transmitted to diaphragm 22. *Id.*, EX1005, 1:39-40, 5:29-32, Fig. 1; EX1003, ¶118.



EX1005, Fig. 1 (annotated with boxes around numerals 10, 14, 16, 22, 34, 44, and 53)

As discussed in Section III.B.1.iv (element 1[c]), in Rozgo's pressure sensor 10, the "applied pressure deforms the diaphragm 22," which transmits the pressure to the back side 53 of diaphragm 46 (and pressure sensing die 44) via the gel pressure

transfer fluid 24, causing deflection of the pressure sensing diaphragm 46 and stressing piezoresistive elements to sense the pressure. EX1005, 3:34-36, 3:59-4:27, 5:32-41, Fig. 1; *see* Section III.B.1.iv (element 1[c]). As such, passageway 14 (*the aperture*) permits ambient gas (i.e. air) to travel from the exterior of pressure sensor 10 to the interior of the sensor and the air's pressure "deforms" diaphragm 22 (*permits ambient air to move the diaphragm*). *Id.*, 1:39-40, 3:34-36, 3:59-4:27, 5:29-35, Fig. 1. This movement of diaphragm 22 then causes the air pressure to be transmitted via the gel pressure transfer fluid 24 to the pressure sensing die 44 for measurement of the pressure, and a POSITA would have understood or at least found obvious that the gel pressure transfer fluid 24 moves when subjected to the pressure (*and consequently the flexible gel so that the pressure-sensing die can measure the ambient air pressure*). *Id.*; EX1006, 2:16-35, 3:23-28, 3:37-47, Fig. 6; Section III.B.1.iii-iv (elements 1[b]-1[c]); EX1003, ¶119. Indeed, because the Rozgo gel pressure transfer fluid 24 is flexible, applying pressure to it would have caused the gel to flex and thus move, and this movement would have been measured by pressure sensing die 44 as representative of the applied pressure. EX1003, ¶119; Section III.B.1.iii (element 1[b]). Rozgo therefore discloses or at least renders obvious *the aperture permits ambient air to move the diaphragm and consequently the flexible gel so that the pressure-sensing die can measure the ambient air pressure. Id.*

Rozgo therefore discloses or at least renders obvious element [1d]. EX1003, ¶120.

### 2. Claim 8

Rozgo discloses or at least renders obvious claim 8. EX1003, ¶121.

#### i. [8a]: The device of claim 1, wherein the diaphragm is integral with the lid.

To the extent the Examiner determines that the broadest reasonable interpretation of claim 8 encompasses *the diaphragm* being *integral with the lid* as well as a "separate element" (or that Claim 1 is not limited by patentee's prosecution history statements), Rozgo discloses or at least renders claim 8 obvious. EX1003, ¶122. Rozgo describes that diaphragm 22 is *the diaphragm* as claimed, and that housing 12 is *the lid* as claimed. *See* Section III.B.1.iv-v (elements 1[c]-1[d]). Rozgo explicitly teaches that "the first side 21 of the diaphragm 22 may be attached to the housing 12" and that "the diaphragm 22 may be bonded to the housing 12 using welding, an adhesive, a seal, a gasket, or any other suitable bonding or sealing mechanism (e.g. solder, eutectic, etc.)." EX1005, 3:9-21.

Any of these bonding methods—welding, adhesive, seal, gasket, solder, or eutectic—would make diaphragm 22 (*the diaphragm*) *integral* with housing 12 (*the lid*) as claimed to the extent that bonding two separate elements together makes those elements "integral." EX1005, 3:9-21; EX1003, ¶122. Rozgo teaches that the diaphragm that is bonded to the housing 12 using any of the above bonding methods

69

(i.e., *integral with the lid*) would have still constituted a diaphragm portion that covered gel pressure transfer fluid 24 and been located between the gel pressure transfer fluid 24 and housing 12 (i.e., "a separate element that is disposed over the gel and between the gel and the lid."). EX1005, 3:9-21; EX1003, ¶122; *see* Sections III.A, III.B.1.iv (element 1[c]).

As such, Rozgo discloses or at least renders obvious *wherein the diaphragm is integral with the lid as claimed*. EX1005, 3:9-21; EX1003, ¶123.

### 3. Claim 15

Rozgo discloses or at least renders obvious claim 15. EX1003, ¶124.

#### i. [15a]: The device of claim 1, wherein the diaphragm is impermeable to at least one gas in the ambient air.

Rozgo discloses or at least renders obvious this limitation. EX1005, 1:41-48, 2:39-44, 3:9-21, 4:6-11; EX1003, ¶125. Rozgo describes that diaphragm 22 is *the diaphragm* as claimed. *See* Section III.B.1.iv (element 1[c]). Rozgo confirms that diaphragm 22 seals the fluid passageway and "provide[s] media isolation between the media to be sensed and a pressure sensing die 44," thus teaching that diaphragm 22 is impermeable to the media to be sensed—including gases—as claimed. EX1005, 1:41-48, 2:39-44, 3:9-21, 4:6-11; EX1003, ¶125.

For example, Rozgo further describes that diaphragm 22 "seals one end of the fluid passageway" of pressure sensor 10 "such that a media entering the other end of the fluid passageway may engage and apply pressure to the diaphragm." EX1005,

1:41-48, 2:39-44, 3:9-21. As discussed above in element 1[d], it would have been known or obvious to the POSITA that Rozgo's gas pressure measurements would include the ability to measure ambient air pressure. Section III.B.1.v (element 1[d]); EX1003, ¶126.

Rozgo further discloses that diaphragm 22 "may be a thin, solid material configured to provide media isolation between the media to be sensed and a pressure sensing die 44." EX1005, 3:12-15. Rozgo also discloses that while pressure may be transmitted to the die via the diaphragm 22 and pressure transfer fluid 24, the pressure sensing component "may remain isolated from the media to be sensed." *Id.*, 4:6-11. The POSITA would have understood that "media isolation" suggests impermeability—if the diaphragm isolates the media to be sensed from the pressure sensing elements, it obviously does not permit the media (including gases) to pass through it (or obviously would be so understood). EX1003, ¶127. Because diaphragm 22 maintains isolation of the media to be sensed (e.g., gas in the ambient air), Rozgo teaches that diaphragm 22 is impermeable to the media to be sensed (e.g., gas in the ambient air). EX1003, ¶127.

In addition, diaphragm 22 "may include metal, plastic, ceramic, or any other suitable material" and, in one embodiment, is specified as a "metal diaphragm." EX1005, 1:46-48, 3:9-21, 8:5 (claim 20). Metal is impermeable to gases. EX1003, ¶128. The POSITA would have understood that Rozgo's metal diaphragm 22 would

71

be impermeable to the component gases of ambient air, including oxygen and nitrogen (or obviously would be so understood). EX1003, ¶128. Because the diaphragm 22 seals part of pressure sensor 10 such that air engages and applies pressure to diaphragm 22 (so that an accurate pressure measurement is obtained), diaphragm 22 does not let any of the component gases of the air through it, thus teaching that diaphragm 22 (*the diaphragm*) *is impermeable to at least one gas in the ambient air*. EX1005, 1:41-48, 2:39-44, 3:9-21, 8:5 (claim 20); *see* Section III.B.1.v (element 1[d]); EX1003, ¶128.

Rozgo therefore discloses or at least renders obvious *wherein the diaphragm is impermeable to at least one gas in the ambient air*. EX1003, ¶129.

### 4.    Claim 16

Rozgo discloses or at least renders obvious claim 16. EX1003, ¶130.

> **i.    [16a]: The device of claim 1, wherein the diaphragm is a unitary article of manufacture made of one material.**

Rozgo discloses or at least renders obvious this limitation. EX1005, 3:9-21, 1:46-48, Fig. 1; EX1003, ¶131. Rozgo describes that diaphragm 22 is *the diaphragm* as claimed. *See* Section III.B.1.iv (element 1[c]). Rozgo further describes that, as demonstrated by Figure 1 below, diaphragm 22 (*the diaphragm*) is a "thin, solid material" and is thus a single, unitary component (*that is, a unitary article of manufacture*). EX1005, 3:9-21, Fig. 1; EX1003, ¶131. Notably, the '658 Patent

specification itself distinguishes between a unitary single-material diaphragm and a multi-material embodiment: FIG. 10 discloses an alternative "diaphragm 452 [that] comprises two different components formed from different materials." EX1001, 4:55-65. Claim 16 was specifically added during prosecution to claim a diaphragm that is "a unitary article of manufacture made of one material"—distinguishing from such multi-material embodiments. EX1002, 2-7. Rozgo's single-component diaphragm 22, made of a single material, directly meets this limitation. EX1003, ¶131.



EX1005, Fig. 1 (annotated with boxes around numerals 10 and 22)

73

Moreover, diaphragm 22 "may include metal, plastic, ceramic, or any other suitable material" and, in one example, is specified as a "metal diaphragm," thus teaching that diaphragm 22 (*the diaphragm*) is such a unitary component made of metal (*is a unitary article of manufacture made of one material*). EX1005, 1:46-48, 3:9-21, 8:5 (claim 20); EX1003, ¶132. The use of the singular "material" in Rozgo's disclosure—and the specific recitation of "a metal diaphragm" in Rozgo claim 20—confirms that diaphragm 22 is made of one material as claimed. Rozgo therefore discloses or at least renders obvious *wherein the diaphragm is a unitary article of manufacture made of one material*. EX1003, ¶132.

### C.    SNQ3: Claims 1, 8, 15, and 16 are obvious over Rozgo and Hooper

#### 1.    Motivation to Combine Rozgo and Hooper

A POSITA would have been motivated to combine Rozgo and Hooper, with a reasonable expectation of success, to arrive at a pressure sensor in which the gel pressure transfer fluid 24 of Rozgo's pressure sensor 10 is a flexible gel as expressly taught by Hooper. EX1005, 1:41-2:3, 2:35-38, 2:39-49, 3:9-40, 3:59-4:27, 4:40-6:6, Fig. 1; EX1006, 2:16-35, 3:23-28, 3:37-47, Fig. 6; EX1003, ¶133. As discussed in Section III.B.1.iii (element 1[b]), Rozgo's express disclosure of a "gel" pressure transfer fluid that is "subject to flow" itself teaches a flexible gel that satisfies element 1[b]. The Rozgo-Hooper combination supplies an alternative and independent basis for the "flexible gel" limitation by expressly identifying a

"flexible gel" suitable for that exact purpose, and the combination is supported by the rationales set forth below. EX1006, 2:16-35; EX1003, ¶133.

Like Rozgo, Hooper is also directed to a pressure sensor that uses a gel to transmit pressure from a measured medium to a pressure sensing element. EX1006, Abstract, 1:46-59. Hooper's apparatus 10 includes a device 12 that is "an integrated circuit that functions as a pressure sensor," and a "pressure transmitting material 20" that is expressly identified as "a flexible gel." *Id.*, 2:16-35, 3:23-28, 3:37-47, Fig. 6. Hooper's flexible gel both transmits pressure from a gas or liquid measured by apparatus 10 to the pressure sensor of device 12 and "provide[s] protection to device 12 (e.g. from a corrosive environment)." *Id.*



EX1006, Fig. 6 (annotated with boxes around numerals 10, 12, and 20)

75

*First*, Rozgo and Hooper share the same field of endeavor and address the same problem. Both references are directed to pressure sensors that use a gel to transmit pressure to a sensing element while protecting that element from the surrounding environment. EX1005, 1:5-23, 1:39-40; EX1006, 1:21-25, 1:63-66, 3:12-16, 3:29-31, Fig. 6; EX1003, ¶136. Rozgo expressly contemplates that its pressure transfer fluid "may be" a gel without specifying a particular gel, EX1005, 1:41-2:3, 2:39-49, inviting the POSITA to look to references such as Hooper for known examples of gels suitable for this exact purpose. EX1003, ¶136.

*Second*, Hooper's flexible gel provides recognized benefits when used in Rozgo's pressure sensor. Hooper teaches that its flexible gel both transmits pressure and "provide[s] protection to device 12 (e.g. from a corrosive environment)." EX1006, 1:21-25, 1:63-66, 2:16-35, 3:12-47, Fig. 6. This dual functionality is directly applicable to Rozgo's pressure sensor, which is intended for "commercial, automotive, aerospace, [and] industrial" applications that frequently present hostile environments. EX1005, 1:12-14; EX1003, ¶137.

*Third*, the combination is technically straightforward and yields predictable results. Hooper teaches that its flexible gel can be applied using "a standard syringe and needle dispense apparatus" or by "physical vapor deposition, spraying, [or] direct placement." EX1006, 2:16-35; EX1003, ¶138. Substituting Hooper's expressly identified "flexible gel" for the unspecified gel of Rozgo's pressure

76

transfer fluid 24 requires no structural modification to Rozgo's pressure sensor 10 and produces nothing beyond what would be expected from the combination of known elements according to their known functions, with a reasonable expectation of success. EX1005, Fig. 1; EX1006, 2:16-35, Fig. 6; EX1003, ¶138.

In view of the foregoing, a POSITA would have been motivated to combine the pressure sensor 10 of Rozgo with Hooper's flexible gel, and would have had a reasonable expectation of success in doing so. The combination yields predictable results because it simply uses a known flexible gel (Hooper) as the gel pressure transfer fluid in a known pressure sensor (Rozgo). EX1003, ¶139.

### 2. Claim 1

#### i. Claim elements 1[p]-1[a]]

The Rozgo-Hooper combination discloses elements 1[p]-1[a]. *See* Sections III.B.1.i (element 1[p]) and III.B.1.ii (element 1[a]); EX1003, ¶140.

#### ii. 1[b]: a flexible gel covering at least a pressure-sensing region of the pressure-sensing die;

The Rozgo-Hooper combination discloses this limitation. *See* Section III.B.1.iii (element 1[b]); EX1005, 2:35-38, 3:22-40, 3:59-4:27, 4:40-5:44, Fig. 1; EX1006, 2:16-35, 3:23-28, 3:37-47, Fig. 6; EX1003, ¶141. To the extent it is argued that Rozgo's gel is not "flexible," it would have nonetheless been obvious to use a flexible gel in light of Hooper. Section III.C.1; EX1003, ¶141.

#### iii. 1[c]: a flexible diaphragm covering the flexible gel, wherein the flexible diaphragm and the flexible gel

> **enable the pressure sensor to sense ambient pressure outside of the IC device; and**

The Rozgo-Hooper combination discloses this limitation. *See* Section III.B.1.iv (element 1[c]); EX1003, ¶143. As explained above for element 1[b], the combination renders obvious *the flexible gel* as claimed. *See* Section III.C.2.ii (element 1[b]); EX1003, ¶143.

> **iv.    1[d]: a lid having an aperture, wherein the lid is located between the flexible gel and an exterior of the device, and the aperture permits ambient air to move the diaphragm and consequently the flexible gel so that the pressure-sensing die can measure the ambient air pressure.**

The Rozgo-Hooper combination discloses this limitation. *See* Section III.B.1.v (element 1[d]); EX1003, ¶144. As explained above for element 1[b], the combination renders obvious *the flexible gel* as claimed. *See* Section III.C.2.ii (element 1[b]); EX1003 at ¶144.

### 3.    Claims 8, 15, and 16

The Rozgo-Hooper combination discloses claims 8, 15, and 16 for the same reasons discussed with respect to Rozgo in Sections III.B.2 (claim 8), III.B.3 (claim 15), and III.B.4 (claim 16). EX1003, ¶145.

### D.    SNQ4/SNQ5: Claims 1, 15, and 16 are anticipated by Francis (SNQ4), or obvious over Francis (SNQ5)

### 1.    Claim 1

Francis discloses, or at least renders obvious, claim 1. EX1003, ¶146.

78

i.    **1[p] A pressure-sensing integrated circuit (IC) device, comprising:**

To the extent the preamble of Claim 1 is limiting, Francis discloses or at least renders obvious *[a] pressure-sensing integrated circuit (IC) device.* EX1007, Abstract, 2:1, 2:12-3:27, 4:6-6:8, claim 1, Fig. 3; EX1003, ¶147. Francis describes a "pressure sensor 100" that includes a silicon "semiconductor pellet 130." EX1007, Abstract, 2:12-27, 4:6-5:7, claim 1, Fig. 3.



EX1007, Fig. 3 (annotated with boxes around numerals 100 and 130)

The semiconductor pellet 130 has "implanted" in it a "piezo-sensitive gauging structure" that is, for example, a "four-element Wheatstone bridge, arranged so that the resistance of the bridge elements varies according to the stresses applied to the

79

pellet." *Id.*, Abstract, 2:12-27, claim 1; *see id.*, 2:5-14 (referring to a "piezoresistive silicon transducer" of the pressure sensor that is suitable for "measuring intake pressure"). A Wheatstone bridge is and was a well-known electrical circuit. *Id.*; EX1003, ¶148. Indeed, by the early 2000s, the Wheatstone bridge was well-known circuit used by pressure sensors, as demonstrated by the Microsystem Design textbook authorized by Stephen Senturia. EX1003, ¶148; EX1022, 24-25, Fig. 18.3 (native pages 476-477) (showing a "Wheatstone-bridge circuit" used in a pressure sensor.)

Moreover, the semiconductor pellet 130 can "also comprise a signal processing circuit." EX1007, Abstract, 2:12-27, claim 1. The POSITA would have understood semiconductor pellet 130 to refer to an integrated circuit – at least because it is a semiconductor die that integrates multiple functional circuit elements into its substrate. EX1003, ¶149. For example, semiconductor pellet 130 is described as including a Wheatstone bridge "implanted" in it which includes multiple circuit elements arranged to vary the resistance of the bridge elements according to the pressure applied to the pellet. EX1003, ¶149. The integration of these components into semiconductor pellet 130 forms an integrated circuit. Semiconductor pellet 130 includes both the Wheatstone bridge and a signal processing circuit, which is further evidence that it is an integrated circuit. EX1003, ¶149.

The packaging and design of the pressure sensor 100 would have been

immediately recognized to POSITAs as a form of well-known integrated circuit packaging common to pressure sensors at the time. EX1003, ¶150. Francis cites the Motorola MPX series of pressure sensors as one known pressure sensor, and the POSITA would have immediately recognized Francis' figures to be describing an improvement to the Motorola MPX design. EX1003, ¶150 (citing EX1024, the MPX4115 datasheet). Francis' Figure 3 is strikingly similar to the Motorola MPX cross-sectional diagram with the addition of Francis' flexible film 190 to the gel die coat in the MPX product:



EX1024, 4 (Fig. 2)

The Motorola MPX series of pressure sensors were well known integrated circuit pressure sensors, and Francis' citation of and described improvements to the Motorola design confirm Francis' disclosure of an integrated circuit in the form of semiconductor pellet 130. EX1003, at 151. Thus, at least because pressure sensor 100's semiconductor pellet 130 includes a Wheatstone bridge circuit and signal

81

processing circuit, the pressure sensor 100 forms *[a] pressure-sensing integrated circuit (IC) device* as claimed. EX1007, Abstract, 2:1, 2:12-3:27, 4:6-6:8, claim 1, Fig. 3; EX1003, ¶151. Francis therefore discloses or at least renders obvious the preamble. EX1003, ¶151.

### ii.      1[a]: a pressure-sensing die;

Francis discloses or at least renders obvious *a pressure-sensing die*. EX1007, Abstract, 2:5-27, 4:6-5:7, 5:34-6:2, claim 1, Fig. 3; EX1003, ¶152. Pressure sensor 100 includes silicon semiconductor pellet 130. EX1007, Abstract, 2:12-27, 4:6-5:7, claim 1, Fig. 3. Silicon semiconductor pellets, such as pellet 130, were well-known as being semiconductor *die[s]* that include circuit components. *Id.*; EX1003, ¶152. The term "pellet" (*pastille* in the original French application) was a recognized term of art in the semiconductor industry and literature of the era, used to refer to a semiconductor die or chip. EX1003, ¶152. The POSITA would have thus immediately recognized that semiconductor pellet 130 is a *die*.



EX1007, Fig. 3 (annotated with boxes around numerals 100 and 130)

As discussed above in Element 1[p], semiconductor pellet 130 is an integrated circuit that includes a "four element Wheatstone bridge" circuit, as well as a signal processing circuit. At least for this reason, the POSITA would have further understood semiconductor pellet 130 to be or include a semiconductor *die* that holds these electrical components. EX1007, Abstract, 2:5-27, 4:6-5:7, 5:34-6:2, claim 1, Fig. 3; *see* Section III.D.1.i (element 1[p]); EX1003, ¶152.

Francis' citation to the Motorola MPX series pressure sensors and inclusion of similar figures further confirm that Francis' semiconductor pellet 130 is a semiconductor die. As discussed above in Element 1[p], the POSITA would have understood Francis to be proposing an improvement to the well-known Motorola MPX pressure sensor design, which was well-understood to include a semiconductor

83

die. EX1003, ¶153 (citing EX1024, the MPX4115 datasheet, Figure 2 (showing the "Die" and the "Fluoro Silicone Gel Die Coat")). Francis' citation of and described improvements to the Motorola design confirm Francis' disclosure of a *die* in the form of semiconductor pellet 130. EX1003, ¶153.

Semiconductor pellet 130 is a *pressure-sensing* die at least because Francis expressly discloses that it includes pressure-sensing circuit elements. Specifically, Francis discloses that semiconductor die 130 includes a "piezo-sensitive gauging structure" that is, for example, the "four-element Wheatstone bridge" circuit. EX1007, Abstract, 2:12-27, claim 1; EX1003, ¶154; Section III.D.1.i (element 1[p]). The Wheatstone bridge was a well-known circuit for sensing pressure as is expressly confirmed by Francis. EX1003, at 154. Francis states that the Wheatstone bridge is "arranged so that the resistance of the bridge elements varies according to the stresses applied to the pellet." *Id*. "[P]ressure variations from the surrounding medium" and pressure in the "ambient environment" are applied to the semiconductor pellet 130. *Id.*, Abstract, 4:6-5:7, 5:34-6:2, claim 1. Francis further refers to a "piezoresistive silicon transducer" (i.e. the semiconductor pellet 130) of the pressure sensor that is suitable for "measuring intake pressure." *Id.*, 2:5-14; EX1003, ¶154. Both "piezo-sensitive" and "piezoresistive" structures were well-known components that sense pressure. EX1003, ¶154; *see also* EX1022, 17-18 (native pages 469-470) (discussing the "silicon piezoresistive pressure sensor" and

explaining that silicon is "ideally suited to" pressure sensor devices and has the "piezoresistance" property).

Thus, because the semiconductor pellet 130 measures pressure variations, is a "piezoresistive silicon transducer," and further includes a "piezo-sensitive gauging structure"—e.g., a Wheatstone bridge that senses pressure based on changes to the resistance of Wheatston bridge elements—the semiconductor pellet 130 forms *a pressure-sensing die* as claimed. EX1007, Abstract, 2:5-27, 4:6-5:7, 5:34-6:2, claim 1, Fig. 3; EX1003, ¶155. Francis therefore discloses or at least renders obvious element [1a]. EX1003, ¶155.

### iii.    1[b]: a flexible gel covering at least a pressure-sensing region of the pressure-sensing die;

Francis discloses or at least renders obvious *a flexible gel covering at least a pressure-sensing region of the pressure-sensing die*. EX1007, Abstract, 3:12-27, 4:13-22, 5:1-6:8, claim 1, claim 8, claim 9, Fig. 3; EX1003, ¶156. Francis describes that pressure sensor 100 includes semiconductor pellet 130; the semiconductor pellet 130 forms the claimed *pressure-sensing die*. *See* Section III.D.1.ii (element 1[a]).

Pressure sensor 100 further includes a "silicone gel 170" that is "covering the pellet" 130 and "coat[s] the pellet 130." EX1007, Abstract, 3:12-27, 4:13-22, 5:1-6:8, claim 1, claim 9, Fig. 3. Indeed, as shown by Figure 3, silicone gel 170 covers the entirety of semiconductor pellet 130 (the claimed "*pressure-sensing die*"). *Id.*, Fig. 3.



EX1007, Fig. 3 (annotated with boxes around numerals 100, 130, and 170)

The POSITA would have understood that silicone gel 170 is "flexible" as claimed. First, the word "gel" conveys to the POSITA a class of semi-solid material that would be characterized by its flexibility. EX1003, ¶158. Moreover, the POSITA would have understood Francis' reference to a silicone gel as referring to a class of *flexible* silicone gels. *Id.*; EX1003, ¶158. Indeed, Francis expressly states that "[t]he gel 170 is preferably a silicone gel, very preferably a *fluorine-saturated silicone gel*." EX1007, 4 (emphasis added). Fluorine-saturated silicone gels were well-known flexible materials used in pressure sensors to transmit pressure while protecting the sensing element. EX1003, ¶158.

The POSITA would have understood and found obvious that Francis' gel would have obviously needed to be flexible for the pressure-sensing device to work

properly. For example, Francis describes that fluorocarbon film 190 is a "flexible film deposited floating on the mass of gel (170) to transmit pressure variations from the surrounding environment to the latter and to the pellet (130) without stress." EX1007, Abstract. The POSITA would have understood that for this transmission chain to work — ambient pressure acts on the film, the film transfers that pressure to the gel, and the gel transfers it to the piezoresistive sensing structure on the pellet — the gel would itself need to be or obviously would be flexible. EX1003, ¶159. The POSITA would have understood that a rigid or inflexible medium would not transmit the pressure as described by Francis, making a flexible gel the obvious and natural choice. *Id.*

This is consistent with Francis' description of the Motorola MPX series of pressure sensors. EX1007, 2:1-11. Motorola MPX series sensors were well known to include a "fluorosilicone gel [that] isolates the die surface and wire bonds from the environment, while allowing the pressure signal to be transmitted to the sensor diaphragm." EX1024, 4. Fluorosilicone gel is a gel that is well-known for its flexible properties. EX1003, ¶160. The POSITA would have understood Francis to be describing an improvement to those devices based on the similarity in the figures and structure of Francis' pressure sensing device. EX1003, ¶160. For example, the POSITA would have understood Francis to be proposing a similar gel coat as was used in Motorola MPX sensors, and the choice of a similar flexible gel would have

87

been obvious. EX1003, ¶160. Indeed, by 2006—a decade before the '658 Patent—commercial pressure sensors such as Freescale's MPX4115 used "Fluoro Silicone Gel" as a die coat, confirming that flexible silicone gel was a well-known industry standard for pressure sensor gel coatings. EX1024, 4; EX1003, ¶160.

Thus, the silicone gel 170 forms *a flexible gel* as claimed, and because it covers the entirety of semiconductor pellet 130, silicone gel 170 is further *covering at least a pressure-sensing region of the pressure-sensing die* as claimed. EX1007, Abstract, 3:12-27, 4:13-22, 5:1-6:8, claim 1, claim 8, claim 9, Fig. 3; EX1003, ¶161. Francis therefore discloses or at least renders obvious element [1b]. EX1003, ¶161.

iv.    **1[c]: a flexible diaphragm covering the flexible gel, wherein the flexible diaphragm and the flexible gel enable the pressure sensor to sense ambient pressure outside of the IC device; and**

Francis discloses or at least renders obvious *a flexible diaphragm covering the flexible gel, wherein the flexible diaphragm and the flexible gel enable the pressure sensor to sense ambient pressure outside of the IC device*. EX1007, Abstract, 2:12-27, 4:6-5:7, 5:1-6:8, claim 1, Fig. 3; EX1003, ¶162. Francis describes that pressure sensor 100 includes silicone gel 170; silicone gel 170 forms the claimed *flexible gel*. *See* Section III.D.1.iii (element 1[b]).

Pressure sensor 100 further includes "flexible film 190" that is "deposited on" the silicone gel 170. EX1007, Abstract, 5:1-6:8, claim 1, Fig. 3. Indeed, as shown by Figure 3, the flexible film 190 covers the silicone gel 170. *Id.*, Fig. 3.

88



EX1007, Fig. 3 (annotated with boxes around numerals 100, 130, 170, and 190)

Flexible film 190 further "acts as a barrier to the polluting environment, such as fuel, for the mass of gel 170 and therefore for the pellet 130." *Id.*, 5:11-23, Fig. 3. Flexible film 190 thus forms *a flexible diaphragm covering the flexible gel* as claimed because it is a flexible film barrier that covers silicone gel 170 and blocks pollutants from gel 170 and pellet 130. EX1007, Abstract, 2:12-27, 4:6-5:7, 5:1-6:8, claim 1, Fig. 3; EX1003, ¶164. This disclosure of Francis aligns with the '658 Patent, which itself states that "a flexible diaphragm is used as a barrier between the flexible gel of a pressure-sensing IC device and the ambient environment." EX1001, 2:60-62. Indeed, Francis' flexible film 190 is structurally and functionally identical to the

89

flexible diaphragm proposed by the '658 Patent. *Id.*; EX1007, Abstract, 2:12-27, 4:6-5:7, 5:1-6:8, claim 1, Fig. 3; EX1003, ¶164.

Flexible film 190 is also a separate component that rests on gel 170 and is located between the gel 170 and cover plate 160; cover plate 160 forms the claimed *lid*. EX1007, Abstract, 2:12-27, 4:6-5:7, 5:1-6:8, claim 1, Fig. 3; *see* Section III.D.1.v (element 1[d]), *infra*. As such, Francis further meets the applicant's construction of a *flexible diaphragm* presented to distinguish the art during prosecution, as it describes flexible film 190 as a separate component ("a separate element") that covers gel 170 and is located between the gel 170 and cover plate 160 ("that is disposed over the gel and between the gel and the lid"). EX1002, 111; EX1007, Abstract, 2:12-27, 4:6-5:7, 5:1-6:8, claim 1, Fig. 3; *see* Section III.D.1.v (element 1[d]), *infra*; EX1003, ¶165.

Francis also states that the flexible film 190 "fully transmits pressure variations in the ambient environment to the gel 170 and the pellet 130." EX1007, Abstract, 4:6-5:7, 6:1-8, claim 1, Fig. 3; EX1003, ¶166. Indeed, pressure variations travel from the ambient environment via flexible film 190 and silicone gel 170 to the semiconductor pellet 130. *Id.* Moreover, a passage 161 in cover plate 160 "transmit[s] external pressure to the chamber 120 of the housing" in which flexible film 190 and gel 170 are located "and thus to the pellet 130." *Id.*, 3:5-9; *see id.*,

90

Abstract, 2:12-27, 4:6-6:8, claim 1, Fig. 3. Pressure sensor 100 then uses pellet 130 to sense pressure. *See* Section III.D.1.ii (element 1[a]).



EX1007, Fig. 3 (annotated with boxes around numerals 100, 120, 130, 160, 161, 170, and 190)

As such, the flexible film 190 and the silicone gel 170 (*the flexible diaphragm and the flexible gel*) enable the semiconductor pellet 130 (and thus, the pressure sensor 100 as a whole) (*the pressure sensor*) to sense ambient pressure outside of pressure sensor 100 by transferring pressure variations from the ambient environment to semiconductor pellet 130, thus teaching *wherein the flexible diaphragm and the flexible gel enable the pressure sensor to sense ambient pressure outside of the IC device.* EX1007, Abstract, 4:6-5:7, 6:1-8, claim 1, Fig. 3; *see*

91

Sections III.D.1.i-iii (elements 1[p], [1a], and 1[b]); EX1003, ¶167. Notably, Francis expressly describes that the device measures "the intake pressure of the *air*/fuel mixture in a motor vehicle engine." EX1007, 2:1-8 (emphasis added). The POSITA would have understood that the "air" component of this mixture is ambient air, confirming that Francis' sensor measures ambient air pressure. EX1003, ¶167.

To the extent it is argued that Francis does not expressly teach sensing *ambient air* pressure apart from the air/fuel mixture context, it would have been obvious to use Francis' pressure sensor to measure ambient air pressure because: (1) Francis expressly teaches measuring the pressure of an "air/fuel mixture," which includes air (EX1007, 2:1-8); (2) the POSITA would have known that pressure sensors like Francis' were routinely used for ambient air pressure applications; and (3) using the same sensor structure for measuring ambient air pressure alone would have been a straightforward design choice yielding predictable results. EX1003, ¶168.

Francis therefore discloses or at least renders obvious element [1c]. EX1003, ¶169.

> **v.    1[d]: a lid having an aperture, wherein the lid is located between the flexible gel and an exterior of the device, and the aperture permits ambient air to move the diaphragm and consequently the flexible gel so that the pressure-sensing die can measure the ambient air pressure.**

Francis discloses or at least renders obvious *a lid having an aperture, wherein the lid is located between the flexible gel and an exterior of the device, and the*

*aperture permits ambient air to move the diaphragm and consequently the flexible gel so that the pressure-sensing die can measure the ambient air pressure.* EX1007, Abstract, 2:12-27, 3:5-9, 4:6-5:14, 5:1-6:8, claim 1, Fig. 3; EX1003, ¶170.

Pressure sensor 100 includes cover plate 160. EX1007, Abstract, 2:12-27, 3:5-9, 4:6-6:8, claim 1, Fig. 3. Cover plate 160 includes a "passage 161," which is an aperture or hole in plate 160. *Id.*; EX1003, ¶171. Cover plate 160 thus forms *a lid having an aperture* as claimed. *Id.*



EX1007, Fig. 3 (annotated with boxes around numerals 100, 160, 161, and 170, and "Exterior" label)

93

Cover plate 160 (*the lid*) is further located between silicone gel 170 (*the flexible gel*) and an exterior of pressure sensor 100, as shown in annotated Figure 3 above. EX1007, Abstract, 2:12-27, 3:5-9, 4:6-6:8, claim 1, Fig. 3; EX1003, ¶172. Francis thus discloses or at least renders obvious *wherein the lid is located between the flexible gel and an exterior of the device* as claimed. *Id.*

As discussed above, flexible film 190 forms *the diaphragm*, silicone gel 170 forms *the flexible gel*, and semiconductor pellet 130 forms *the pressure-sensing die*. *See* Sections III.D.1.ii-iv (elements 1[a]-1[c]). Francis explains that its device measures the "intake pressure of the *air*/fuel mixture in a motor vehicle engine." EX1007, 2:3-8, 3:12-16 (emphasis added). Because the air/fuel mixture includes ambient air, Francis' disclosure encompasses ambient air pressure measurement. EX1003, ¶173. Francis further explains that the passage 161 (*the aperture*) in cover plate 160 (*the lid*) "transmit[s] external pressure [of the air/fuel mixture] to the chamber 120 of the housing" in which flexible film 190 and gel 170 are located "and thus to the pellet 130." EX1007, 3:5-9; *see id.*, Abstract, 2:12-27, 4:6-6:8, claim 1, Fig. 3. The flexible film 190 "fully transmits pressure variations in the ambient environment to the gel 170 and the pellet 130." EX1007, Abstract, 4:6-5:7, 6:1-8, claim 1, Fig. 3; EX1003, ¶173. Indeed, pressure variations travel from the ambient environment outside of pressure sensor 100 through passage 161 and via flexible film 190 and silicone gel 170 to the semiconductor pellet 130. *Id.* Pressure sensor

94

100 then uses pellet 130 to sense pressure. *See* Section III.D.1.ii (element 1[a]). A POSITA would have thus understood that because passage 161 transmits "external pressure" into chamber 120 of pressure sensor 100, which causes flexible film 190 and gel 170 to transmit pressure variations to semiconductor pellet 130, passage 161 transmits ambient air of the air/fuel mixture into the chamber, that causes movement of flexible film 190 and gel 170. EX1007, Abstract, 2:12-27, 3:5-9, 4:6-6:8, claim 1, Fig. 3; EX1003, ¶173. This is because pressure is the force that air exerts, and this force would have moved flexible film 190, and consequently gel 170 located underneath film 190, so that the pressure variations are transmitted to and measured by semiconductor pellet 130. *Id.*



EX1007, Fig. 3 (annotated with boxes around numerals 100, 120, 130, 160, 161,

170, and 190)

Thus, passage 161 (*the aperture*) permits ambient air of the air/fuel mixture external to pressure sensor 100 to move flexible film 190 (*the diaphragm*) and consequently move silicone gel 170 (*the flexible gel*), which allows semiconductor pellet 130 to measure the ambient air pressure, thus disclosing or at least rendering obvious *the aperture permits ambient air to move the diaphragm and consequently the flexible gel so that the pressure-sensing die can measure the ambient air pressure*. EX1007, Abstract, 2:12-27, 3:5-9, 4:6-6:8, claim 1, Fig. 3; EX1003, ¶174. Francis therefore discloses or at least renders obvious element [1d]. EX1003, ¶174.

### 2.    Claim 15

Francis discloses or at least renders obvious claim 15. EX1003, ¶175.

#### i.    [15a]: The device of claim 1, wherein the diaphragm is impermeable to at least one gas in the ambient air.

Francis discloses or at least renders obvious this limitation. EX1007, 2:3-8, 3:12-16, 4:23-24, 5:11-23, 5:20-23, 6:3-8, Fig. 3; EX1003, ¶176. Francis describes that flexible film 190 is *the diaphragm* as claimed. *See* Section III.D.1.iv (element 1[c]). Francis further describes flexible film 190 is a "barrier to the polluting environment, such as fuel, for the mass of gel 170 and therefore the pellet 130" and "limits the migration and diffusion of the polluting medium into the gel 170." EX1007, 5:20-23, 6:3-8. Flexible film 190 is a "fluorocarbon-based film" and according to "an advantageous feature of the present invention, the fluorocarbon-

based film is a polytetrafluoroethylene film." *Id.*, 5:11-23, 6:3-8, Fig. 3. The POSITA would have understood that "barrier" functionality obviously suggests impermeability—if flexible film 190 acts as a barrier that "limits the migration and diffusion" of pollutants into the gel, it obviously does not permit those pollutants (including gases) to pass through it. *Id.*; EX1003, ¶176. For example, these films provide excellent barriers against fuel vapors (e.g. methanol vapors) in the air/fuel mixtures having their pressure measured in Francis. EX1007, 2:3-8, 3:12-16.

In addition, Francis describes that flexible film 190 is a "polytetrafluoroethylene film." EX1007, 4:23-24, 5:11-19, claim 2. Polytetrafluoroethylene (PTFE) is a well-known solid polymer material that is substantially impermeable to at least certain gases. EX1003, ¶177. This is consistent with the disclosed embodiments of the '658 Patent, which discloses the use of materials that are substantially impermeable. EX1001, 3:51-53, 6:8-11; EX1003, ¶177.

Thus, the POSITA would have understood that Francis's PTFE film 190 would be substantially impermeable to the component gases of ambient air (or obviously would be so understood). EX1003, ¶178. Thus, because flexible film 190 is such a barrier, limits pollutants, and further seals gel 170 and pellet 130 from such pollutants such that the air/fuel mixture engages and applies pressure to flexible film 190 (so that an accurate pressure measurement is obtained), a POSITA would have

97

understood or at least found obvious that flexible film 190 does not let all component gases of the ambient air through it, thus teaching that flexible film 190 (*the diaphragm*) *is impermeable to at least one gas in the ambient air*. EX1007, 2:3-8, 3:12-16, 4:23-24, 5:20-23, 6:3-8; EX1003, ¶178. Francis therefore discloses or at least renders obvious *wherein the diaphragm is impermeable to at least one gas in the ambient air*. EX1007, 4:23-24, 5:11-23, 5:20-23, 6:3-8, Fig. 3; EX1003, ¶178.

### 3.    Claim 16

Francis discloses or at least renders obvious claim 16. EX1003, ¶179.

> #### i.    [16a]: The device of claim 1, wherein the diaphragm is a unitary article of manufacture made of one material.

Francis discloses or at least renders obvious this limitation. EX1007, 4:23-24, 5:11-23, 6:3-8, Fig. 3, claim 2; EX1003, ¶180. Francis describes that flexible film 190 is *the diaphragm* as claimed. *See* Section III.D.1.iv (element 1[c]). Francis further describes that, as demonstrated by Figure 3 below, flexible film 190 (*the diaphragm*) is a single, unitary component (*is a unitary article of manufacture*). EX1007, Fig. 3. Notably, the '658 Patent specification itself distinguishes between a unitary single-material diaphragm and a multi-material embodiment: FIG. 10 discloses an alternative "diaphragm 452 [that] comprises two different components formed from different materials." EX1001, 4:55-65. Claim 16 was specifically added during prosecution to claim a diaphragm that is "a unitary article of

98

manufacture made of one material"—distinguishing from such multi-material embodiments. EX1002, 2-7. Francis's single-component flexible film 190, made of a single material, directly meets this limitation. EX1003, ¶180.



EX1007, Fig. 3 (annotated with boxes around numerals 100 and 190)

Moreover, Francis describes flexible film 190 as a "polytetrafluoroethylene film" and a "fluorocarbon film," thus teaching that flexible film 190 (*the diaphragm*) is such a unitary component made of polytetrafluoroethylene or a fluorocarbon (*is a unitary article of manufacture made of one material*). EX1007, 4:23-24, 5:11-19, 6:3-8, claim 2, Fig. 3; EX1003, ¶181. The use of the singular "film" made of a specified single material (polytetrafluoroethylene)—and the specific recitation of "a polytetrafluoroethylene film" in Francis claim 2—confirms that flexible film 190 is made of one material as claimed. Francis therefore discloses or at least renders

obvious *wherein the diaphragm is a unitary article of manufacture made of one material*. EX1007, 4:23-24, 5:11-23, 6:3-8, claim 2, Fig. 3; EX1003, ¶181.

### E.    SNQ6: Claims 1-4, 15, and 16 are obvious in view of Hooper and Rozgo

#### 1.    Motivation to Combine Hooper and Rozgo

Hooper discloses a pressure sensor that includes a pressure-sensing die, flexible gel, and lid with an aperture recited by Claim 1, along with housing and multi-tier encapsulant structures and implementation details claimed by dependent Claims 2-4. Indeed, Hooper includes a flexible gel covering the die disposed in the multi-tiered encapsulant housing structure. Hooper lacks a flexible diaphragm covering the gel, but it would have been obvious to modify Hooper to add such a diaphragm as taught by Rozgo. EX1003, ¶182

A person of ordinary skill in the art (POSITA) would have been motivated to combine Hooper and Rozgo, and would have had a reasonable expectation of success. EX1006, 1:21-26, 1:46-2:35, 2:58-61, 3:12-47, Fig. 6; EX1005, 1:41-2:3, 2:39-49, 3:9-40, 3:59-4:27, 4:40-6:6, Fig. 1; EX1003, ¶183. In particular, a POSITA would have been motivated to combine Hooper and Rozgo such that Hooper's apparatus 10 includes a diaphragm that overlays pressure transmitting material 20, as taught by Rozgo, for at least the following reasons, each of which independently supports the combination. EX1003, ¶183.

Hooper discloses an apparatus 10 having a pressure sensor device 12 and a gel pressure transmitting material 20 overlaying pressure sensor device 12. EX1006, 1:21-26, 1:46-2:2, 2:16-35, 3:12-47, claim 1, Fig. 6. An encapsulating material 24 is applied to "encapsulate device 12 and any other components that are to be encapsulated," and protects "sensitive circuitry on device 12 and wire bonds 16" of apparatus 10 "from a corrosive environment." *Id.*, 2:58-61, 3:29-31. Apparatus 10 also includes a housing 18 and a cap 28 having an opening 26. *Id.*, 2:4-15, 3:37-47, Fig. 6.



FIG. 6

EX1006, Fig. 6

Opening 26 is a vent that allows the pressure of a gas to "affect a pressure sensing element of device 12 located underlying vent 26." *Id.*, 3:17-28, 3:37-47. Indeed, the opening 26 allows the gas pressure "surrounding apparatus 10 to be transmitted to

101

device 12 by way of pressure transmitting material 20." *Id.*, 3:23-28. In Hooper's apparatus, the gel pressure transmitting material 20 remains directly exposed to the surrounding gas through opening 26. *Id.*, 3:17-28, 3:37-47, Fig. 6.

Like Hooper, Rozgo is directed to a pressure sensor 10 that includes a pressure sensing die 44 and a gel pressure transfer fluid 24 overlaying the die 44. EX1005, 1:41-2:3, 2:39-49, 3:9-40, 3:59-4:27, 4:40-6:6, Fig.1. However, pressure sensor 10 also includes a diaphragm 22. *Id.* The diaphragm 22 is positioned to seal one end of a fluid passageway in the pressure sensor's housing, thereby isolating the pressure sensing die 44 from gas that has its pressure sensed. *Id.*, 1:42-48, 3:9-21. Diaphragm 22 is a "thin, solid material configured to provide media isolation between the media to be sensed and a pressure sensing die 44" and overlays gel pressure transfer fluid 24. *Id.*, 3:12-15, Fig. 1.

102



EX1005, Fig. 1 (annotated with boxes around numerals 10, 22, 24, and 44)

In operation, pressure from a gas "media to be sensed" deforms the diaphragm 22, which transmits the pressure to the pressure sensing die 44 via the gel pressure transfer fluid 20. *Id.*, 5:29-44. The diaphragm 22 may be made of "metal, plastic, ceramic, or any other suitable material." *Id.*, 1:46-47, claim 20.

A POSITA would have been motivated to combine Hooper and Rozgo such that Hooper's apparatus 10 includes a diaphragm overlaying gel pressure transmitting material 20. EX1003, 188. Rozgo's teaching that the diaphragm 22 needs to transfer pressure to the pressure transfer fluid 24 would have motivated the POSITA to overlay a diaphragm onto the gel material 20 to conform to the shape of

103

the top surface of the gel material 20, as shown in the annotation of a combined device below. EX1003, ¶188.



EX1006, Fig. 6 (annotated)

The combination shown above would have provided that pressure from a gas "media to be sensed" by the pressure sensor of device 12 deforms the diaphragm, which transmits the pressure to the pressure sensing device via the gel pressure transmitting material 20. *Id.*; EX1006, 2:16-35, 3:23-28, 3:37-47, Fig. 6. EX1005, 5:29-44. The diaphragm would "seal[] one end of the fluid passageway" of apparatus 10 "such that a media entering the other end of the fluid passageway may engage and apply pressure to the diaphragm." EX1005, 1:41-48, 2:39-44, 3:9-21; EX1003, ¶189. A POSITA would have been so motivated for several reasons. *Id.*

*First*, both references are in the same field of endeavor and address the same challenge. EX1003, ¶190. Both Hooper and Rozgo are in the same field of endeavor—pressure sensors—and both references address the challenge of protecting pressure sensing components from the surrounding environment while permitting accurate pressure measurement. EX1005, 1:5-23; *see id.*, 1:39-40, 3:4-40, 3:59-4:27, 4:40-5:44, Fig. 1; EX1006, 1:13-22, 3:12-16, 3:29-31; *see id.*, 2:16-35, 3:23-28, 3:37-47, Fig. 6; EX1003, ¶190. A POSITA would have thus naturally looked to the teachings of Rozgo, which are directed to media isolation techniques for pressure sensors, to enhance Hooper's pressure sensor. *Id.*

*Second*, Rozgo's diaphragm addresses a recognized vulnerability in Hooper. EX1003, ¶191. Hooper expressly acknowledges that its pressure sensor device 12 functions in a corrosive environment, including exposure to "corrosive chemicals such as water, salt depositing on a road surface, and other typical automotive fluids." EX1006, 1:63-66. In Hooper's apparatus 10, the gel pressure transmitting material 20 is directly exposed to this corrosive environment via opening 26. *Id.*, 3:17-28, 3:37-47, Fig. 6. While the gel pressure transmitting material 20 protects the underlying sensitive circuitry and wire bonds from corrosion (*Id.*, 3:29-31), Hooper does not disclose any mechanism for protecting the gel pressure transmitting material 20 itself from the corrosive environment. EX1003, ¶191. A POSITA would have recognized that prolonged direct exposure of gel pressure transmitting material

105

20 to the corrosive environment would have degraded the gel's performance and reliability over time. *Id.* Francis corroborates this issue, explaining that such a gel might swell and dissolve, and thus expose sensitive circuitry when subjected to such an environment. *Id.*; EX1007, 3:30-4:5. A POSITA thus would have been motivated to seek a solution to this vulnerability. *Id.*

*Third*, Rozgo's diaphragm provides precisely the solution Hooper needs. EX1003, ¶192. Rozgo's diaphragm 22 provides precisely the type of media isolation that would have addressed this vulnerability in Hooper's design, motivating a POSITA to combine the teachings of Hooper and Rozgo and providing a predictable result. EX1003, ¶192. Rozgo describes that the diaphragm 22 is a "thin, solid material" that "provide[s] media isolation between the media to be sensed and a pressure sensing die 44." EX1005, 3:12-15, Fig. 1. By overlaying Rozgo's diaphragm 22 over Hooper's gel pressure transmitting material 20, a POSITA would have achieved the predictable result of improved media isolation for the gel— preventing corrosive media/environment from directly contacting the gel pressure transmitting material 20 while still permitting ambient pressure to be transmitted through the diaphragm to the gel and, in turn, to the pressure sensor of device 12. EX1003, ¶192; EX1006, 1:21-26, 1:46-2:2, 2:16-35, 2:58-61, 3:12-47, claim 1, Fig. 6; EX1005, 1:41-2:3, 2:39-49, 3:9-40, 3:59-4:27, 4:40-6:6, Fig. 1. The combination

106

would have furthered one of Hooper's explicit purposes of "providing protection to device 12." EX1006, 3:12-16; EX1003, ¶192.

*Fourth*, the combination does not compromise Hooper's functionality. EX1003, ¶193. Enhancing Hooper's apparatus 10 with Rozgo's diaphragm 22 would have added an additional layer of environmental protection without compromising pressure transmission functionality, because Rozgo's diaphragm is specifically designed to "deform" under applied pressure and transmit pressure of a gas medium to the underlying pressure sensor. EX1005, 5:29-44; EX1003, ¶193. Indeed, Rozgo's diaphragm 22 is described as "thin" and made of materials such as metal, plastic, or ceramic (EX1005, 1:41-48, 3:9-21), which would add minimal mass to Hooper's apparatus 10. EX1003, ¶193. Hooper even suggests use of such a diaphragm taught by Rozgo, noting that Hooper's pressure transmitting layer 20 itself can be "comprised of one or more layers that are formed of different materials" and "formed from a plurality of layers made of various materials." EX1006, 2:30-35. Thus, by including such a thin layer—the thin and deformable diaphragm as taught by Rozgo—the combination would still align with Hooper's acknowledgement that "the overlying mass pressing upon the sensing portion of device 12 is kept to a minimum." EX1006, 3:29-36, 1:56-2:3; EX1003, ¶193. And moreover, a POSITA would have understood that including the diaphragm would have been implementable without adding any mass to the sensing portion by, for example,

107

reducing the thickness of Hooper's gel pressure transmitting layer by an amount equal to the thickness of diaphragm 22. EX1003, ¶193.

*Fifth*, a POSITA would have had a reasonable expectation of success. EX1003, ¶194. Rozgo explains that its diaphragm 22 is bonded to a pressure sensor housing using standard techniques such as "welding, an adhesive, a seal, a gasket, or any other suitable bonding or sealing mechanism (e.g., solder, eutectic, etc.)." EX1005, 3:18-21. A POSITA would have thus recognized that these conventional bonding techniques would readily be used to secure Rozgo's diaphragm to Hooper's encapsulant 24 over gel pressure transmitting layer 20. *Id.*; EX1006, 1:21-26, 1:46-2:2, 2:16-35, 2:58-61, 3:12-47, claim 1, Fig. 6; EX1003, ¶194. Due to the simplicity of the combination and its conventional nature, the resulting apparatus that has pressure transmitted through a diaphragm, through a gel, and to the pressure sensing element would have been predictable and readily accomplished by a POSITA. EX1003, ¶194.

*Sixth*, commercial and market forces support the combination. EX1003, ¶195. Commercial and market forces would have further motivated a POSITA to combine Hooper and Rozgo. EX1003, ¶195. Hooper is a patent that issued to Freescale Semiconductor, Inc., and Rozgo is a patent that issued to Honeywell International Inc.—a competitor of Freescale. EX1006, Cover Page; EX1005, Cover Page; EX1003, ¶195. POSITAs at Freescale having knowledge of Honeywell's Rozgo

pressure sensor would have been motivated to enhance their design (Hooper) with Rozgo's diaphragm, in response to development of the diaphragm-based design by Honeywell. EX1003, ¶195.

In view of the foregoing, a POSITA would have been motivated to combine the teachings of Hooper and Rozgo, and would have had a reasonable expectation of success in doing so. EX1003, ¶196. The combination yields predictable results because it simply adds a known diaphragm (Rozgo) to a known pressure sensor apparatus (Hooper) to achieve improved media isolation—a result that would have been expected from combining these known elements according to their known functions. EX1003, ¶196.

### 2. Claim 1

The Hooper-Rozgo combination discloses claim 1. EX1003, ¶197.

#### i. 1[p] A pressure-sensing integrated circuit (IC) device, comprising:

The Hooper-Rozgo combination discloses *[a] pressure-sensing integrated circuit (IC) device*. EX1006, 1:21-26, 1:46-2:3, 3:29-47, claim 1, Fig. 6; EX1003, ¶198. To the extent the preamble of Claim 1 is limiting, Hooper describes an apparatus 10 that is a "packaged pressure sensor" and includes a "device 12" that "is an integrated circuit that functions as a pressure sensor." EX1006, 1:21-26, 1:46-2:3, 3:29-47, claim 1, Fig. 6.



EX1006, Fig. 6 (annotated with boxes around numerals 10 and 12)

Thus, Hooper's apparatus 10 forms *[a] pressure-sensing integrated circuit (IC) device* as claimed. *Id.*; EX1003, ¶199. Hooper therefore discloses or at least renders obvious element 1[p]. EX1003, ¶199.

### ii.    1[a]: a pressure-sensing die;

The Hooper-Rozgo combination discloses *a pressure-sensing die*. EX1006, 1:21-26, 1:51-2:15, Fig. 6; EX1003, ¶200. Hooper describes apparatus 10 includes a "device 12" that "is an integrated circuit that functions as a pressure sensor," where device 12 is "attached to package or housing 18" "by way of a die attach 14" that "has adhesive properties which ensure little or no movement of device 12." EX1006, 1:21-26, 1:51-2:15, Fig. 6. Thus, because device 12 is such an integrated circuit that

senses pressure, and is referred to as being secured using a "die" attach, the POSITA would have understood or at least found obvious that device 12 is a *pressure-sensing die. Id.*; EX1003, ¶200. Hooper therefore discloses or at least renders obvious element 1[a]. EX1003, ¶200.



EX1006, Fig. 6 (annotated with boxes around numerals 10, 12, and 14)

### iii.    1[b]: a flexible gel covering at least a pressure-sensing region of the pressure-sensing die;

The Hooper-Rozgo combination discloses *a flexible gel covering at least a pressure-sensing region of the pressure-sensing die.* EX1006, 1:51-2:2, 2:16-35, 3:12-47, Figs. 1, 6; EX1003, ¶201. Hooper describes that apparatus 10 includes a "pressure transmitting material 20" that "is a flexible gel," thus forming *a flexible gel* as claimed. EX1006, 2:16-27; EX1003, ¶201. Moreover, the flexible gel

111

"pressure transmitting material 20 (*flexible gel*) is applied overlaying device 12" and "transmits pressure from a gas or liquid above layer 20 to device 12." EX1006, 2:16-27, 3:12-47. "[D]evice 12 is an integrated circuit that functions as a pressure sensor" and includes a "sense diaphragm 17" having "pressure transducers that sense pressure variations and converts them to electrical signals." *Id.*, 1:51-2:2, Fig. 1. And as shown by Figures 1 and 6 below, the flexible gel pressure transmitting material 20 (*flexible gel*) covers the sense diaphragm 17 of device 12, and Hooper explains that the gel protects the "sensitive circuitry on device 12." *Id.*, 1:51-2:2, 3:29-31, Figs. 1, 6. Indeed, "the sensing portion of device 12 is located underlying the opening 26." *Id.*, 3:29-36.



EX1006, Fig. 6 (annotated with boxes around numerals 10, 12, and 20)

112



EX1006, Fig. 1 (annotated with boxes around numerals 10, 12, and 17)

As such, because Hooper's flexible gel pressure transmitting material 20 (*flexible gel*) covers device 12 and protects its integrated circuit pressure sensor, including the sense diaphragm 17, it thus forms *a flexible gel covering at least a pressure-sensing region of the pressure-sensing die* as claimed. EX1006, 1:51-2:2, 2:16-35, 3:12-47, Fig. 6; EX1003, ¶202. Hooper therefore discloses or at least renders obvious element [1b]. EX1003, ¶202.

   iv.  **1[c]: a flexible diaphragm covering the flexible gel, wherein the flexible diaphragm and the flexible gel**

113

**enable the pressure sensor to sense ambient pressure outside of the IC device; and**

The Hooper-Rozgo combination discloses *a flexible diaphragm covering the flexible gel, wherein the flexible diaphragm and the flexible gel enable the pressure sensor to sense ambient pressure outside of the IC device.* EX1006, 1:21-26, 1:46-2:35, 3:23-47, claim 1, Fig. 6. EX1005, 5:29-44; EX1003, ¶203; *see* Sections III.E.1 (MTC Hooper and Rozgo), III.E.2.i-iii (elements 1[p], [1a], and 1[b]).

The Hooper-Rozgo combination describes that Hooper's apparatus 10 includes a Rozgo's deformable diaphragm 22 (*a flexible diaphragm*) that overlays Hooper's gel pressure transmitting material 20 (*covering the flexible gel*). Section III.E.1 (MTC Hooper and Rozgo); Section III.E.2.iii (element 1[b]); EX1003, ¶204. As such, Hooper and Rozgo render obvious *a flexible diaphragm covering the flexible gel. Id.*



FIG. 6

114

EX1006, Fig. 6 (annotated)

The diaphragm is also a separate component located between the gel pressure transmitting material 20 and cap 28; cap 28 forms the claimed *lid*. EX1006, 1:21-26, 1:46-2:35, 3:23-47, claim 1, Fig. 6; EX1005, 3:4-40, 3:59-4:27, 4:40-5:44, Fig. 1; *see* Section III.E.2.v (element 1[d]), *infra*. As such, the Hooper-Rozgo combination further meets the applicant's construction of a *flexible diaphragm* during prosecution, as it describes a diaphragm as a separate component ("a separate element") that covers gel pressure transmitting material 20 and is located between the gel pressure transmitting material 20 and cap 28 ("that is disposed over the gel and between the gel and the lid"). EX1002, 111; EX1006, 1:21-26, 1:46-2:35, 3:23-47, claim 1, Fig. 6; EX1005, 3:4-40, 3:59-4:27, 4:40-5:44, Fig. 1; *see* Section III.E.2.v (element 1[d]), *infra*; EX1003, ¶205.

Moreover, the Hooper-Rozgo combination describes that pressure from a gas "media" in the ambient environment outside of apparatus 10, that is to be sensed by the pressure sensor of device 12, deforms the diaphragm, which then transmits the pressure via the gel pressure transmitting material 20 to the pressure sensor of device 12. Section III.E.1 (MTC Hooper and Rozgo); EX1006, 2:16-35, 3:23-28, 3:37-47, Fig. 6; EX1005, 5:29-44; EX1003, ¶206. As such, the diaphragm and the transmitting material 20 (*the flexible diaphragm and the flexible gel*) enable the pressure sensor of device 12 (as well as device 12 as a whole) (*the pressure sensor*)

115

to sense ambient pressure outside of apparatus 10 by transferring pressure from ambient gas to the pressure sensor, thus rendering obvious *wherein the flexible diaphragm and the flexible gel enable the pressure sensor to sense ambient pressure outside of the IC device.* EX1006, 1:21-26, 1:51-2:35, 3:23-28, 3:37-47, Fig. 6; EX1005, 5:29-44; EX1003, ¶206; *see* Sections III.E.1. (MTC Hooper and Rozgo), III.E.1.i-iii (elements 1[p], 1[a], and 1[b]).

The Hooper-Rozgo combination therefore discloses element [1c]. EX1003, ¶207.

> v.  **1[d]: a lid having an aperture, wherein the lid is located between the flexible gel and an exterior of the device, and the aperture permits ambient air to move the diaphragm and consequently the flexible gel so that the pressure-sensing die can measure the ambient air pressure.**

The Hooper-Rozgo combination discloses or at least renders obvious *a lid having an aperture, wherein the lid is located between the flexible gel and an exterior of the device, and the aperture permits ambient air to move the diaphragm and consequently the flexible gel so that the pressure-sensing die can measure the ambient air pressure.* EX1006, 1:21-26, 1:46-2:35, 3:17-47, claim 1, Fig. 6; EX1003, ¶208.

Hooper describes that apparatus 10 includes a cap 28. EX1006, 3:37-47, Fig. 6. The cap 28 is "applied overlying some or all of encapsulating material 24" and is "used to protect apparatus 10 during handling." *Id.* Moreover, cap 28 is "formed

from any desirable material" such as "steel" or "plastic" and "may be applied in any appropriate manner." *Id.* Cap 28 forms a *lid* because it covers the internal components of apparatus 10, including the diaphragm, gel pressure transmitting material 20, and pressure sensor of device 12. *Id.*; *id.*, 1:51-2:35, Fig. 6; Section III.E.1 (MTC Hooper and Rozgo); EX1003, ¶209.



EX1006, Fig. 6 (annotated with boxes around numerals 10, 12, 20, 26, and 28, added diaphragm, diaphragm label, exterior label)

Cap 28 includes an "opening 26" that "may be considered a vent which allows the pressure" of a "gas to affect a pressure sensing element of device 12 located underlying vent 26." EX1006, 3:42-47. Indeed, as shown by Figure 6, opening 26 is an opening from the exterior of apparatus 10 that leads to an internal cavity of

apparatus 10 bounded by encapsulant 24 and the diaphragm. *Id.*, 3:17-47, Fig. 6; Section III.E.1 (MTC Hooper and Rozgo); EX1003, ¶210. Thus, the opening 26 of cap 28 (*lid*) forms an *aperture* in the cap 28, thus rendering obvious *a lid having an aperture*. EX1006, 3:17-47, Fig. 6; Section III.E.1 (MTC Hooper and Rozgo); EX1003, ¶210. Hooper further describes that cap 28 (*the lid*) is located between gel pressure transmitting material 20 (*the flexible gel*) and an exterior of apparatus 10, as shown by Figure 6 below, which thus renders obvious *wherein the lid is located between the flexible gel and an exterior of the device*. EX1006, 3:17-47, Fig. 6; Section III.E.1 (MTC Hooper and Rozgo); EX1003, ¶210.



EX1006, Fig. 6 (annotated with boxes around numerals 10, 12, 20, 26, and 28, added diaphragm, diaphragm label, exterior label)

118

Finally, Hooper and Rozgo further render obvious *the aperture permits ambient air to move the diaphragm and consequently the flexible gel so that the pressure-sensing die can measure the ambient air pressure*. EX1006, 3:42-47; EX1005, 1:39-40, 3:34-36, 3:59-4:27, 5:29-44; EX1003, ¶211. Hooper explains that opening 26 "may be considered a vent which allows the pressure" of a "gas to affect a pressure sensing element of device 12 located underlying vent 26." EX1006, 3:42-47. In the combination, the opening 26 would have provided that the gas' pressure is transmitted to the diaphragm and the "applied pressure deforms the diaphragm," which transmits the pressure via the gel pressure transmitting material 20 to the pressure sensor of device 12. *Id.*; *see id.*, 1:21-26, 1:46-2:35, 3:23-47, claim 1, Fig. 6; EX1005, 1:39-40, 3:34-36, 3:59-4:27, 5:29-44; EX1003, ¶211; *see* Sections III.E.1 (MTC Hooper and Rozgo), III.E.2.iii-iv (elements 1[b]-1[c]).

The POSITA would have understood or at least found obvious that Hooper's gas having a pressure would have been *ambient air* having an *ambient air pressure* as claimed. EX1003, ¶212; EX1011, ¶0040. Ambient air includes several gases, including oxygen and nitrogen. EX1003, ¶212. Hooper's apparatus 10 measures the pressure of gas in the ambient environment of apparatus 10, including such components of the ambient air. EX1006, 1:21-26, 1:46-2:35, 3:23-47, claim 1, Fig. 6; EX1003, ¶212. As such, Hooper's apparatus 10 is measuring the pressure of the ambient environment and is thus subjected to *ambient air* and measures the *ambient*

119

*air pressure* as claimed. EX1006, 1:21-26, 1:46-2:35, 3:23-47, claim 1, Fig. 6; EX1003, ¶212.

Additionally, Hooper teaches that its device is capable of measuring gas pressure, which the POSITA would have understood to have included the capability to measure ambient air pressure. EX1003, ¶213. There would not need to be any structural or design changes to support Hooper's ability to measure air as a particular kind of gas. *Id.* At a minimum, the POSITA would have found it obvious in light of Hooper's ability to measure gas pressure to use Hooper's pressure sensor to measure air, which is the most common and ubiquitous gas on the planet. EX1003, ¶213.

Additionally, the '658 Patent explains that "[t]he invention is not, however, limited to devices for measuring air pressure" and "[t]he device may be used to measure the pressure of any gas." EX1001, 6:4-17. Under a broadest reasonable interpretation of claim 1 in light of this statement from the patent, the patent owner may argue that the claimed *ambient air* and *ambient air pressure* includes measuring generic ambient gas and ambient gas pressure. EX1001, 6:4-17; EX1003, ¶214. Under such interpretation, *ambient air* and *ambient air pressure* includes Hooper's disclosure of gas media in the ambient environment of pressure sensor 10, and the pressure of this gas media. *Id.*

As such, opening 26 (*the aperture*) permits ambient air to travel from the exterior of apparatus 10 to the interior of the apparatus and the air's pressure

120

"deforms" the diaphragm (*permits ambient air to move the diaphragm*). EX1006, 1:21-26, 1:46-2:35, 3:23-47, claim 1, Fig. 6; EX1005, 1:39-40, 3:34-36, 3:59-4:27, 5:29-44; EX1003, ¶215; *see* Sections III.E.1 (MTC Hooper and Rozgo), III.E.2.iii-iv (elements 1[b]-1[c]). This movement of the diaphragm then causes the air pressure to be transmitted via the gel pressure transmitting material 20 to the pressure sensor of device 12 for measurement of the pressure, and a POSITA would have understood or at least found obvious that the gel pressure transmitting material 20 moves when subjected to the pressure (*and consequently the flexible gel so that the pressure-sensing die can measure the ambient air pressure*). EX1006, 1:21-26, 1:46-2:35, 3:23-47, claim 1, Fig. 6; EX1005, 1:39-40, 3:34-36, 3:59-4:27, 5:29-44; EX1011, Abstract, ¶¶0002-0005, 0032, 0040; EX1003, ¶215; *see* Sections III.E.1.i (MTC Hooper and Rozgo), III.E.2.iii-iv (elements 1[b]-1[c]). Indeed, because the flexible gel pressure transmitting material 20 is flexible, applying pressure to it would have caused the gel to flex and thus move, and this movement would have been measured by the pressure sensor of device 12 as being representative of the applied pressure. EX1006, 1:21-26, 1:46-2:35, 3:23-47, claim 1, Fig. 6; EX1005, 1:39-40, 3:34-36, 3:59-4:27, 5:29-44; EX1003, ¶215; *see* Sections III.E.1 (MTC Hooper and Rozgo), III.E.2.iii-iv (elements 1[b]-1[c]). Hooper and Rozgo therefore render obvious *the aperture permits ambient air to move the diaphragm and consequently the flexible*

121

*gel so that the pressure-sensing die can measure the ambient air pressure.* EX1003, ¶215.

Hooper and Rozgo therefore render obvious element [1d]. EX1003, ¶216.

### 3.     Claim 2

Hooper and Rozgo render obvious claim 2. EX1006, 2:4-15, 2:58-3:2, 3:37-47, Figs. 4, 6; EX1003, ¶217.

> **i.     2[a] The device of claim 1, further comprising: a multi-tiered encapsulant upon which the lid is attached, wherein a recess is defined beneath the lid,**

The Hooper-Rozgo combination discloses *a multi-tiered encapsulant upon which the lid is attached, wherein a recess is defined beneath the lid.* EX1006, 2:4-15, 2:58-3:2, 3:37-47, Figs. 4, 6; EX1003, ¶218. Hooper describes that its apparatus 10 includes "encapsulant or encapsulating material 24" that is applied to the components of apparatus 10, including device 12, die attach 14, wire bonds 16, and pressure transmitting layer 20. EX1006, 2:58-3:2, 3:37-47, Figs. 4, 6. Cap 28 is "applied overlying some or all" of the encapsulant 24. EX1006, 3:37-47, Fig. 6. Encapsulating material 24 is further described as encapsulating "any other components" and "may encapsulate different portions of apparatus 10." EX1006, 2:58-3:2, 3:37-47, Figs. 4, 6. Apparatus 10 further includes "housing or package 18" that further protects the components of apparatus 10. *Id.*, 2:4-15. As shown by annotated Figure 6 below (annotated to show the combined Hooper-Rozgo device

122

as including a diaphragm), encapsulating material 24 and housing 18 has three tiers

and forms a *multi-tiered encapsulant* as claimed. *Id.*; EX1003, ¶218.



EX1006, Fig. 6 (annotated with tiers, diaphragm, and boxes around numerals 10,

18, 20, 24 and 28)

Cap 28 forms the claimed *lid*. *See* Section III.E.2.v (element 1[d]). Cap 28 is

"applied overlying some or all" of the encapsulating material 24, as well as housing

18, and attaches to housing 18 as shown in Figure 6 below (annotated to show the

combined Hooper-Rozgo device). EX1006, 2:4-15, 2:58-3:2, 3:37-47, Figs. 4, 6;

EX1003, ¶219.



EX1006, Fig. 6 (annotated with diaphragm and boxes around numerals 10, 18, 24,

and 28)

Thus, the encapsulating material 24 and housing 18 (*multi-tiered encapsulant*)

has cap 28 attached to it (*upon which the lid is attached*). *Id.*, 2:58-3:2, 3:37-47, Figs.

4, 6; EX1003, ¶220. Additionally, a recess is defined underneath cap 28 as shown in

the views of Figure 6 below (*wherein a recess is defined beneath the lid*). EX1006,

3:37-47, Fig. 6; EX1003, ¶220.



EX1006, Fig. 6 (annotated with box around numerals 10 and 28 and recess label)



EX1006, Fig. 6 (close-up view showing recess under cap 28)

The combination of Hooper and Rozgo thus render obvious element 2[a].

EX1003, ¶221.

> ii.    **[2b]: wherein: the die is partially covered by the encapsulant; the gel is located within a first tier of the encapsulant; the diaphragm is located within a second tier of the encapsulant above the first tier; and the lid is located within a third tier of the encapsulant above the second tier.**

126

The Hooper-Rozgo combination discloses or at least renders obvious element 2[b]. EX1006, 1:51-2:2, 2:58-3:2, 3:37-47, Figs. 1, 4, 6; EX1003, ¶222. Hooper describes that device 12 is the *pressure-sensing die*. *See* Section III.E.2.ii (element 1[a]). Encapsulating material 24 and housing 18 form *the encapsulant*. *See* Section III.E.3.i (element 2[a]). Encapsulating material 24 is "applied to encapsulate device 12," thus providing that *the die is partially covered by the encapsulant*. EX1006, 2:58-3:2, 3:37-47, Figs. 4, 6; EX1003, ¶222.

Moreover, the Hooper-Rozgo combination provides apparatus 10 having a diaphragm, as shown in Hooper's annotated Figure 6 below. Section III.E.1. As shown in the annotation below, Hooper's encapsulating material "partially covers" the die 12 at least because a significant portion of the encapsulating materials covers both the gel 20 and the die 12 underneath it. EX1003, ¶223.

127



EX1006, Fig. 6 (annotated with tiers, diaphragm, and boxes around numerals 10, 18, 20, 24, and 28)

The combination describes a diaphragm, forming the claimed *diaphragm*, that overlays gel pressure transmitting material 20. Sections III.E.1; Sections III.E.2.iii-iv (elements 1[b]-1[c]). As shown by Figure 6 above, the diaphragm is located in a second tier of the encapsulating material 24 and housing 18 structure, above a first tier (*the diaphragm is located within a second tier of the encapsulant above the first tier*). Sections III.E.1; Sections III.E.2.iii-iv (elements 1[b]-1[c]); EX1006, Fig. 6; EX1003, ¶224. Moreover, as also shown in Figure 6 above, the cap 28 (*the lid*) is located within a third tier of the encapsulating material 24 and housing 18 structure, above the second tier of the encapsulant (*and the lid is located within a third tier of*

128

*the encapsulant above the second tier*). Section III.E.2.v (element 1[d]); Section III.E.3.i (element 2[a]); EX1006, Fig. 6; EX1003, ¶224.

Finally, Hooper describes gel pressure transmitting material 20 forms *the gel* as claimed. Section III.E.2.iii (element 1[b]). And the POSITA would have at least found obvious that this gel pressure transmitting material 20 (*the gel*) would have been located within the first tier of the encapsulating material 24 and housing 18 structure (*the gel is located within a first tier of the encapsulant*), due to the arbitrary shape and size that the cavity of Hooper's chamber 15 can take. Sections III.E.1; Sections III.E.2.iii (element 1[b]); EX1006, 2:9-11, Fig. 6; EX1003, ¶225. Indeed, Hooper explains that its apparatus 10 has a "cavity or interior chamber 15" in which device 12 and gel pressure transmitting material 20 sit, and that "the cavity may be any desired shape or size." EX1006, 2:9-11, Figs. 1, 6.



FIG. 1

129

EX1006, Fig. 1 (annotated with boxes around numerals 10, 12, and 15)



EX1006, Fig. 1 (annotated with boxes around numerals 12 and 20 and diaphragm

label)

In view of Hooper's disclosure, Hooper's cavity would have been understood as being capable of taking any number of arbitrary sizes, which would have involved adjusting the heights of the various cavity portions. *Id.*; EX1006, 2:9-11, Figs. 1, 6. The POSITA would have understood or at least found obvious that one such sizing of cavity 15 would have provided that the lowest portion of the cavity, where device 12 sits, would have had sidewalls that are taller than the device 12. EX1003, ¶226.

130



EX1006, Fig. 6 (annotated)

In such an arrangement, the gel pressure transmitting material 20 overlaying the device 12 would have been at least partially located in the first tier of the encapsulating material 24 and housing 18 structure (*the gel is located within a first tier of the encapsulant*). *Id.* Hooper2 (EX1029), which is a patent to the same inventor as Hooper, corroborates this, describing a pressure sensor arrangement in which a housing 2 has an internal cavity sized such that a lowest portion containing a pressure sensor 4 and retained gel dome 22 has sidewalls that are taller than the sensor, forming a first tier that thus includes the gel dome. EX1029, 3:38-4:24, Fig. 1. This is shown in Hooper2's Figure 1 below.

131



Figure 1

EX1029, Fig. 1 (annotated with boxes around numerals 2, 4, and 22, and sidewall

labels)

Moreover, a POSITA would have understood that sizing Hooper's cavity 15

such that the lower portion has sidewalls that are taller than the device 12 would

have been easier to manufacture, as compared to an arrangement in which the

sidewalls are the exact same height as device 12, because the sizing would not have

depending on the height of device 12. EX1003, ¶228. Instead, the sizing would have

only been determined with reference to the dimensions of cavity 15. *Id.* Moreover,

the tolerances required during manufacturing would have been less rigorous and

easier to implement by a POSITA for the same reasons, further supporting this

teaching. *Id.*

132

The combination of Hooper and Rozgo thus render obvious element 2[b]. EX1003, ¶229.

### 4. Claim 3

Hooper and Rozgo render obvious claim 3. EX1003, ¶230.

> **i.   [3a]: The device of claim 2, wherein the diaphragm comprises: a convex central section covering the gel; an annular wall section contacting the encapsulant; and an annular support section connecting the central section to the wall section.**

The Hooper-Rozgo combination describes apparatus 10 having a diaphragm, as shown in annotated Figure 6 below, forming *the diaphragm* as claimed. Section III.D.1.i-ii, Section III.D.2.iv (element 1[c]), Section III.E.1.



EX1006, Fig. 6 (annotated with diaphragm)

133

As shown by annotated Figure 6 below, the diaphragm has a convex central section as it overlays the convex shape of gel pressure transmitting material 20. EX1003, ¶232; Section III.E.2.iv (element 1[c]), Section III.E.1.



EX1006, Fig. 6 (annotated with sections of diaphragm)



134

EX1006, Fig. 6 (close up of annotated convex central section of diaphragm)

Thus, the diaphragm has a convex central section covering the gel pressure transmitting material 20 (*wherein the diaphragm comprises: a convex central section covering the gel*). EX1003, ¶233; Section III.E.2.iv (element 1[c]), Section III.E.1, Sections III.E.2.i-ii (claim 2).

As shown by annotated Figure 6 below, the diaphragm has a vertical section that contacts the side edge or wall of encapsulant 24. EX1003, ¶234; Section III.E.1., Section III.E.2.iv (element 1[c]), Section III.E.1, Sections III.E.2.i-ii (claim 2). Moreover, a POSITA would have understood or at least found obvious that this contact would occur in a ring around the perimeter of opening 26 where the diaphragm and encapsulant meet. EX1003, ¶234. As such, this contacting section of the diaphragm forms *an annular wall section contacting the encapsulant* as claimed. *Id.*

135



EX1006, Fig. 6 (close up of annotated annular wall sections of diaphragm)

Finally, as shown by annotated Figure 6 below, the diaphragm has a support section, that supports the central section of the diaphragm and the section of the diaphragm contacting the encapsulant, by connecting those two sections together. EX1003, ¶235; Section III.D.1.ii-ii, Section III.D.2.iv (element 1[c]), Section III.E.1, Sections III.E.2.i-ii (claim 2). Moreover, a POSITA would have understood or at least found obvious that this section encircle the central section of the diaphragm. *Id.*; EX1003, ¶235. That is, it would have been understood to a POSITA that from a top-down view of the device, cavity 26 and diaphragm 22 would have

136

formed a shape having a perimeter forming the edge(s) of the cavity and diaphragm. EX1003, at ¶235 (citing EX1029, at Figure 2). As such, this support section of the diaphragm forms *an annular support section connecting the central section to the wall section* as claimed. EX1003, ¶235; Section III.E.1, Section III.E.2.iv (element 1[c]), Sections III.E.2.i-ii (claim 2).



EX1006, Fig. 6 (close up of annotated annular support sections of diaphragm)



EX1006, Fig. 6 (annotated with sections of diaphragm)

The combination of Hooper and Rozgo thus renders obvious claim 3. EX1003, ¶236.

### 5. Claim 4

Hooper and Rozgo render obvious claim 4. EX1003, ¶237.

> i.  **[4a]: The device of claim 3, wherein: the central section is made of a first material; and the wall and support sections are made of a second material different from the first material.**

The Hooper-Rozgo combination describes the diaphragm having a central section, forming *the central section* as claimed, support sections, forming *the support sections* as claimed, and wall sections, forming *the wall…sections* as claimed. Section III.E.3 (claim 3). Rozgo further explains that the diaphragm "may include metal, plastic, ceramic, or any other suitable material." EX1005, 1:42-48.

This is just like the '658 Patent itself, which states that the diaphragm "may be made of, for example, rubber, silicone, plastic, metal, or thermal tape." EX1001, 3:53-57. As such, it would have been obvious to a POSITA for the central section to be made of one of those materials (e.g., one of "metal, plastic, ceramic, or any other suitable material") and the support sections and walls sections to be made of a different one of those materials (*wherein: the central section is made of a first material; and the wall and support sections are made of a second material different from the first material*). *Id.*; EX1003, ¶238.

Indeed, a POSITA would have found it obvious to try forming a diaphragm in this manner. *KSR Int'l Co. v. Teleflex Inc.,* 550 U.S. 398, 415-421 (2007); MPEP 2143(I)(E); EX1003, ¶239. A POSITA would have recognized that, in view of Rozgo, there was a recognized problem of which materials to use when forming a pressure sensor diaphragm. EX1003, ¶239; EX1005, 1:42-48. Rozgo solves this problem by describing a finite number of identified, predictable solutions: using one or more of "metal, plastic, ceramic, or any other suitable material." EX1005, 1:42-48; EX1003, ¶239. Indeed, Rozgo describes that the diaphragm "include[s]" metal, plastic, ceramic, or any other suitable material. EX1005, 1:42-48. And, in view of Rozgo, a POSITA would have pursued using one or more of those disclosed materials to form its diaphragm with a reasonable expectation of success. *Id.*; EX1003, ¶239. This is because metal, plastic, and ceramic are well-known materials

139

that are used in pressure sensor arrangements and were well-known as being used for diaphragm arrangements. EX1003, ¶239. As such, a POSITA would have found claim 4 obvious for at least the above reasons. *Id.*

### 6. Claim 15

Hooper and Rozgo render obvious claim 15. EX1003, ¶240.

> #### i. [15a]: The device of claim 1, wherein the diaphragm is impermeable to at least one gas in the ambient air.

The Hooper-Rozgo combination describes a diaphragm (*the diaphragm*). *See* Section III.E.2.iv (element 1[c]). Within the combination, Rozgo further describes that the diaphragm "seals one end of the fluid passageway" of apparatus 10 "such that a media entering the other end of the fluid passageway may engage and apply pressure to the diaphragm." EX1005, 1:41-48, 2:39-44, 3:9-21; Section III.E.1. As discussed above in element 1[d], it would have been known or obvious to the POSITA that Hooper's gas pressure measurements would include the ability to measure ambient air pressure. Section III.E.2.v (element 1[d]); EX1003, ¶241. Moreover, air is and was well-known as being formed from gases including oxygen and nitrogen. EX1003, ¶241. And Rozgo's diaphragm "may include metal, plastic, ceramic, or any other suitable material" and, in one example, is specified as a "metal diaphragm;" a metal diaphragm would have been well known as being impermeable to gases in the ambient air. EX1005, 1:46-48, 3:9-21, 8:5 (claim 20); EX1003, ¶241. As such, because the diaphragm seals part of apparatus 10 such that air engages and

140

applies pressure to the diaphragm (so that an accurate pressure measurement is obtained), and the diaphragm is, in one example, made of metal, the metal diaphragm does not let all of the component gases of the ambient air through it, thus teaching that the diaphragm (*the diaphragm*) *is impermeable to at least one gas in the ambient air*. EX1005, 1:41-48, 2:39-44, 3:9-21; Sections III.E.1; Sections III.B.1.iv-v (elements 1[c]-1[d]); Sections III.E.2.iv-v (elements 1[c]-1[d]); EX1003, ¶241.

### 7.    Claim 16

Hooper and Rozgo render obvious claim 16. EX1003, ¶242.

#### i.    [16a]: The device of claim 1, wherein the diaphragm is a unitary article of manufacture made of one material.

The Hooper-Rozgo combination describes a diaphragm (*the diaphragm*). *See* Section III.E.2.iv (element 1[c]). Within the combination, Rozgo further describes that the diaphragm (*the diaphragm*) is a "thin, solid material" that is a single, unitary component (*is a unitary article of manufacture*). EX1005, 3:9-21, Fig. 1; EX1003, ¶243. Moreover, the diaphragm "may include metal, plastic, ceramic, or any other suitable material" and, in one example, is specified as a "metal diaphragm," thus teaching that the diaphragm (*the diaphragm*) is such a unitary component made of metal (*is a unitary article of manufacture made of one material*). EX1005, 1:46-48, 3:9-21, 8:5 (claim 20); EX1003, ¶243.

141

**F.    SNQ7: Claims 6, 7, 9, and 12-14 are obvious in view of Hooper, Rozgo, and Otani**

**1.    Motivation to Combine Hooper, Rozgo, and Otani**

A POSITA would have been motivated to combine Hooper and Rozgo. *See* Section III.E.1, which establishes that a POSITA would have been motivated to add Rozgo's diaphragm 22 to Hooper's apparatus 10 to provide media isolation for the gel pressure transmitting material 20. A POSITA would have been further motivated to combine the Hooper-Rozgo combination with Otani, and would have had a reasonable expectation of success. EX1006, 1:21-26, 1:46-2:35, 3:12-47, Fig. 6; EX1013, Abstract, 3:66-4:63, Fig. 2; EX1003, ¶244. In particular, a POSITA would have been motivated to combine the Hooper-Rozgo combination with Otani such that Hooper's apparatus 10 comprises a lead frame having a die pad on which pressure sensor device 12 is attached and leads surrounding the die pad to which pressure sensor device 12 is connected via wire bonds, as taught by Otani, for at least the following reasons, each of which independently supports the combination. EX1003, ¶244.

Hooper describes apparatus 10 includes pressure sensor device 12 that is attached to housing 18 by way of a die attach 14. EX1006, 1:21-26, 1:46-2:35, 3:12-47, claim 1, Fig. 6. Die attach 14 has adhesive properties that ensure little or no movement of device 12 within the package. *Id.*, 2:4-15. Hooper further discloses that wire bonds 16 are used to electrically couple device 12 to "package leads" of

142

"package or housing 18" surrounding the device 12, thereby allowing external electrical connections to be made to device 12, as well as "electrical leads" that "may protrude through package 18." *Id.*



EX1006, Fig. 6 (annotated with box around numerals 10, 12, and 16)

Thus, Hooper already describes a packaging arrangement in which a semiconductor device is physically secured by a die attach material and electrically connected through wire bonds to leads. *Id.*; EX1003, ¶246.

Otani, which is also directed to a pressure sensor apparatus, expressly teaches the use of a lead frame having a die pad for mounting a pressure sensor and leads for effectuating electrical connections to the sensor, providing a structural arrangement for accomplishing the very same packaging that Hooper describes. EX1013,

143

Abstract, 3:66-4:63, Fig. 2. Specifically, Otani describes that a pressure sensor semiconductor sensor chip 1a is bonded to a "die pad 3 of a lead frame with an adhesive 21." *Id.* Otani further describes that electrodes on the semiconductor sensor chip 1 are connected to leads 4 of the lead frame, surrounding the sensor chip 1 and die pad 3, with bonding wires 2, as shown in Figure 2.



EX1013, Fig. 2 (annotated with boxes around numerals 1a, 2, 3, and 4, and bonding wire 2 and lead 4 labels)

*First*, Otani teaches the structural details that Hooper describes but does not fully specify. EX1003, ¶248. A POSITA would have been motivated to combine the Hooper-Rozgo combination with Otani. EX1003, ¶248. Otani teaches to the combination that the die pad of a lead frame serves as the substrate to which Hooper's pressure sensor device 12 is attached via a die attach, and that the leads of the lead frame serve as the electrical conductors to which the pressure sensor device

144

12 is connected via wire bonds. EX1013, Abstract, 3:66-4:63, Fig. 2; EX1006, 1:21-26, 1:46-2:35, 3:12-47, claim 1, Fig. 6; EX1003, ¶248. A POSITA would have readily combined these teachings of Otani with Hooper, with a reasonable expectation of success (or obviously would be so understood). EX1003, ¶248.

*Second*, Hooper's apparatus already includes each functional component that Otani's lead frame provides. EX1003, ¶249. Hooper's apparatus 10 already includes each of the functional components that Otani's lead frame with leads and a die pad provides. EX1006, 1:21-26, 1:46-2:35, 3:12-47, claim 1, Fig. 6. Hooper's die attach 14, which bonds device 12 to the package with adhesive properties, corresponds directly to the adhesive 21 that bonds Otani's semiconductor chip 1 to the die pad 3 of the lead frame. *Id.*; EX1013, Abstract, 3:66-4:63, Fig. 2. Likewise, Hooper's wire bonds 16, which electrically couple pressure sensor device 12 to leads in Hooper, correspond directly to Otani's bonding wires 2 that connect pressure sensor chip 1 to leads 4 of the lead frame. *Id.* Hooper even explicitly references "package leads" and "electrical leads" coupled to the pressure sensor device 12, but does not describe their particular structural form. EX1006, 2:4-15. Otani supplies the structural detail missing from Hooper, explaining that the described leads are part of a lead frame surrounding a die pad, and that the die attach adheres pressure sensor device 12 to the lead frame's die pad. EX1003, ¶249. As such, the result of the combination (Hooper's apparatus 10 comprising a lead frame having a die pad on which pressure

145

sensor device 12 is attached and leads surrounding the die pad to which pressure sensor device 12 is connected via wire bonds, as taught by Otani) would have been predictable and, due to the routine structural detail involved in the combination, had a reasonable expectation of success. EX1003, ¶249.

*Third*, the combination involves nothing more than adding well-known implementation details. EX1003, ¶250. Indeed, enhancing Hooper's apparatus 10 within the Hooper-Rozgo combination with Otani's teachings would have been nothing more than the addition of well-known implementation details, which would have been routine and straightforward for a POSITA. EX1003, ¶250. Lead frames having leads that surround a die pad were a conventional and ubiquitous packaging structure for pressure sensor apparatus at the time, as Otani itself demonstrates. EX1013, Abstract, 3:66-4:63, Fig. 2; EX1003, ¶250. A POSITA considering Hooper's disclosure of leads and die attach in the context of a packaged pressure sensor would have naturally understood that a lead frame with leads and a die pad was a standard way to implement such features, and would have looked to Otani for confirmation of those routine implementation details. EX1003, ¶250. Both Hooper and Otani are directed to the same field of endeavor—pressure sensors. EX1006, 1:21-26, 1:46-2:35, 3:12-47, claim 1, Fig. 6; EX1013, Abstract, 3:66-4:63, Fig. 2; EX1003, ¶250. A person of ordinary skill in the art seeking to build or understand the packaging details of Hooper's apparatus 10 would have naturally looked to

Otani's teachings regarding lead frames, die pads, and wire bond connections as providing straightforward, well-known structural details for implementing the very package that Hooper describes. EX1003, ¶250. The combination therefore yields no more than what would be predicted from the combination of known elements according to their known functions. *Id.*

### 2. Claim 6

Hooper, Rozgo, and Otani render obvious claim 6. EX1003, ¶251.

> **i.** **The device of claim 2, wherein: the device further comprises a lead frame having a paddle and a plurality of leads; the die is attached to the paddle and electrically connected to the leads; and the encapsulant covers the leads and at least a portion of the die.**

The Hooper-Rozgo-Otani combination discloses that Hooper's apparatus 10 comprises a lead frame having a die pad and leads (*the device further comprises a lead frame having a paddle and a plurality of leads*). Section III.F.1; EX1003, ¶252. Moreover, Hooper describes that its device 12 having a pressure sensor forms the claimed *die*. Section III.E.2.ii (element 1[a]). Device 12 is attached to the die pad via "die attach 14" and is connected to the leads of the lead frame via "wire bonds 16" (*the die is attached to the paddle and electrically connected to the leads*). EX1006, 2:4-15; Section III.F.1; EX1003, ¶252. Moreover, encapsulating material 24 is used to "encapsulate device 12 and any other components that are to be encapsulated (e.g., 14, 16, 20, and the bottom of 22)." EX1006, 2:58-3:2

147

(parenthetical in original), Fig. 6. Item 16 refers to the wire bonds. *Id.*; *see id*, 2:4-15. The wire bonds 16 are "coupled to electrical leads" that are "not shown" in Figures 1 or 6; however, the figures do show that the wire bonds 16 connect device 12 to the portions of housing 18 where the leads are located, and these portions are shown as being encapsulated. *Id.*



EX1006, Fig. 6 (annotated with box around numerals 10, 12, 16, and 24)

As such, Hooper describes that the encapsulating material 24 covers the leads (*and the encapsulant covers the leads*) as well as the device 12 pressure sensor (*and at least a portion of the die*). *Id.*; EX1003, ¶253.

### 3.   Claim 7

Hooper, Rozgo, and Otani render obvious claim 7. EX1003, ¶254.

     **i.**     **The device of claim 6, wherein: the die has a plurality of die pads electrically connected to corresponding leads via corresponding bond wires; the die pads and the bond wires are covered with the encapsulant; and the pressure-sensing region is not covered by the encapsulant.**

The Hooper-Rozgo-Otani combination describes that Hooper's device 12 pressure sensor (*the die*) is coupled to leads of package 18 using wire bonds 16. EX1006, 2:4-15; Section III.E.2.ii (element 1[a]). Thus, a POSITA would have understood or at least found obvious that device 12 includes multiple die pads (*the die has a plurality of die pads*); this is because such die pads would have been required to attach the wire bonds 16 to the device 12. EX1003, ¶255; EX1006, 2:4-15; Section III.E.2.ii (element 1[a]). And the die pads of device 12 are used so that the wire bonds 16 can "electrically couple device 12 to [the] package leads," thus describing that the die pads are electrically connected to the leads via the wire bonds (*electrically connected to corresponding leads via corresponding bond wires*). EX1003, ¶255; EX1006, 2:4-15, Fig. 6; Section III.E.2.ii (element 1[a]).

Hooper further describes that the device 12 is covered with encapsulating material 24, thus providing that the die pads where wire bonds 16 are attached to on device 12 is covered by the encapsulant (*the die pads…are covered with the encapsulant*). EX1006, 2:4-15, 2:58-3:47, Fig. 6; EX1003, ¶256. Moreover, the wire bonds 16 are also covered with the encapsulant (*the bond wires are covered with the encapsulant*). EX1006, 2:4-15, 2:58-3:47, Fig. 6; EX1003, ¶256. In contrast, as

149

shown by Figures 1 and 6, the "sense diaphragm 17 of device 12" that "includes pressure transducers that sense pressure variations and converts them to electrical signals" (*and the pressure-sensing region*) is not covered by encapsulating material 24 (*is not covered by the encapsulant*) EX1006, 1:51-2:15, 2:58-3:47, Figs. 1, 6; EX1003, ¶256.



EX1006, Fig. 6 (annotated with box around numerals 10, 12, 16, and 24)



EX1006, Fig. 6 (annotated with box around numerals 10, 12, and 17)

### 4.    Claim 9

#### i.    [9p]: An integrated circuit device, comprising:

*See* Section III.E.2.i (element 1[p]).

#### ii.    9[a]: a lead frame including a die paddle and a plurality of leads surrounding the die paddle;

The Hooper-Rozgo-Otani combination describes that Hooper's apparatus 10 comprises a lead frame having a die pad and a plurality of leads surrounding the die pad (*a lead frame including a die paddle and a plurality of leads surrounding the die paddle*). Section III.F.1; EX1003, ¶258. Hooper, Rozgo, and Otani therefore disclose or at least render obvious element 9[a]. EX1003, ¶258.

151

      iii.        **9[b]: a pressure-sensing die attached to the die paddle and electrically connected to the leads;**

*See* Section III.F.2 (claim 6); Section III.F.1.

      iv.        **9[c]: an encapsulant that covers the leads and the electrical connections between the leads and the pressure-sensing die, wherein a bottom surface of the lead frame forms a bottom surface of the integrated circuit device and the encapsulant forms side walls of the device, wherein a cavity is formed between the side walls and over the pressure-sensing die;**

The Hooper-Rozgo-Otani combination describes that Hooper's encapsulating material 24 is used to "encapsulate device 12 and any other components that are to be encapsulated (e.g., 14, 16, 20, and the bottom of 22)." EX1006, 2:58-3:2 (parenthetical in original), Fig. 6. Item 16 refers to the wire bonds, teaching the wire bonds that connect Hooper's pressure sensor device 12 to leads. *Id.*; *see id*, 2:4-15; Section III.F.1; EX1003, ¶260.

152



EX1006, Fig. 6 (annotated with box around numerals 10, 12, 16, and 24)

As such, Hooper describes that the encapsulating material 24 covers the leads of the Hooper-Rozgo-Otani lead frame (*an encapsulant that covers the leads*) as well as the wire bonds 16 that form electrical connections between the leads and the device 12 pressure sensor (*and the electrical connections between the leads and the pressure-sensing die*). *Id.*; EX1003, ¶261; *see also* Section III.F.2 (claim 6), III.F.3 (claim 7); Section III.F.1.

The Hooper-Rozgo-Otani combination further describes that the lead frame of Hooper's apparatus 10 has a bottom surface that forms a bottom surface of apparatus 10 on which device 12 is attached to via die attach 14 (*wherein a bottom surface of the lead frame forms a bottom surface of the integrated circuit device*). Section III.F.1; EX1003, ¶262. Moreover, as shown by Figure 6 below, the

153

encapsulating material forms side walls of apparatus 10 and a recess is formed between the sidewalls and over the device 12 pressure sensor (*and the encapsulant forms side walls of the device, wherein a cavity is formed between the side walls and over the pressure-sensing die*). Section III.F.1; EX1006, Fig. 6; EX1003, ¶262



EX1006, Fig. 6 (annotated with box around numerals 24 and 28, cavity label, and line indicating recess under cap 28)



EX1006, Fig. 6 (close-up view showing recess under cap 28, annotated with box

around numerals 28, recess label, and dashed line indicating an edge of cap 28)

> v. **9[d]: a gel material covering a pressure-sensing region on a top surface of the pressure-sensing die;**

*See* Section III.E.2.iii (element 1[b]).

> vi. **9[e]: a lid that extends between the side walls and over the cavity, wherein the lid has a central opening that allows ambient air to enter the cavity so that the**

155

**pressure-sensing die can measure the ambient air pressure; and**

The Hooper-Rozgo- Otani combination describes that Hooper's cap 28 (*a lid*) extends between the encapsulant side walls and over the recess within apparatus 10 (*that extends between the side walls and over the cavity*). EX1006, Fig. 6*; see* Section III.E.2.v (element 1[d]).



EX1006, Fig. 6 (annotated with box around numerals 10, 24 and 28, cavity label, and line indicating recess under cap 28)



EX1006, Fig. 6 (close-up view showing recess under cap 28, annotated with box

around numerals 28, recess label, and dashed line indicating an edge of cap 28)

Cap 28 includes an "opening 26" that "may be considered a vent which allows

the pressure" of a "gas" to enter the internal recess of apparatus 10 bounded by

encapsulant 24 and "affect a pressure sensing element of device 12 located

underlying vent 26," thus allowing device 12 to measure the pressure. EX1006, 1:21-

26, 1:46-2:35, 3:17-47, claim 1, Fig. 6; EX1003, ¶265; *see* Section III.E.2.v (element

1[d]). As discussed in Sections III.E.2.iv-v (elements 1[c]-1[d]), Hooper's apparatus

is subjected to *ambient air* and measures *ambient air pressure*. Sections III.E.2.iv-v (elements 1[c]-1[d]).

The combination thus describes that cap 28 has a central opening 26 (*wherein the lid has a central opening*) that allows ambient air external to the apparatus 10 to enter the internal recess of apparatus 10 (*that allows ambient air to enter the cavity*) so that the pressure sensor of device 12 can measure the ambient air pressure (*so that the pressure-sensing die can measure the ambient air pressure*). EX1006, 1:21-26, 1:46-2:35, 3:17-47, claim 1, Fig. 6; EX1003, ¶266; Sections III.E.2.iv-v (elements 1[c]-1[d])); EX1011, Abstract, ¶¶0002-0005, 0032, 0040; Section III.F.1 (MTC Hooper, Rozgo, and Otani).

> **vii.    9[f]: a diaphragm located beneath the central opening and that covers the gel material.**

*See* Section III.E.2.iv (element 1[c]). Moreover, as shown by Hooper's Figure 6 below, the diaphragm would have been located beneath the opening 26. *Id.*; EX1003, ¶267.



EX1006, Fig. 6 (annotated)

5. **Claim 12**

i. **[12p]: A method for assembling an integrated circuit (IC) device, the method comprising:**

To the extent limiting, the Hooper-Rozgo-Otani combination renders obvious *[a] method for assembling an integrated circuit (IC) device*. EX1006, 1:21-26, 1:46-2:2, 3:29-47, claim 1, Fig. 6; EX1003, ¶268. The Hooper-Rozgo-Otani combination describes that Hooper's apparatus 10 that is a "packaged pressure sensor" and includes a "device 12" that "is an integrated circuit that functions as a pressure sensor." EX1006, 1:21-26, 1:46-2:3, 3:29-47, claim 1, Fig. 6.

159



EX1006, Fig. 6 (annotated with boxes around numerals 10 and 12)

Thus, Hooper's apparatus 10 forms *an integrated circuit (IC) device* as claimed. *Id.*; EX1003, ¶269. And Hooper explains how its apparatus 10 is manufactured, i.e., by "attach[ing]" device 12 to "package or housing 18," depositing a gel pressure transmitting material 20 on device 12 using a "standard syringe and needle dispense apparatus," applying encapsulant 24, and applying a cap 28, thus describing a *method for assembling* apparatus 10 (*an integrated circuit (IC) device*). EX1006, 2:4-35, 2:58-3:47; EX1003, ¶269.

      ii.        **[12a]: attaching a die to a paddle of a lead frame, wherein the die comprises a pressure sensor;**

The Hooper-Rozgo-Otani combination describes that Hooper's apparatus 10 comprises a lead frame having a die pad and a plurality of leads surrounding the die

160

pad. Section III.F.1; EX1003, ¶270. Hooper describes that its device 12 having a pressure sensor forms the claimed *die*. Section III.E.2.ii (element 1[a]). The device 12 having a pressure sensor is attached to the die pad of the lead frame via "die attach 14" (*attaching a die to a paddle of a lead frame, wherein the die comprises a pressure sensor*). EX1006, 2:4-15; Section III.F.1; EX1003, ¶270.

> **iii.     [12b]: electrically connecting the die to leads of the lead frame;**

The Hooper-Rozgo-Otani combination describes that Hooper's device 12 having a pressure sensor (*the die*) is electrically connected to a plurality of leads of the lead frame using wire bonds 16 (*electrically connecting the die to leads of the lead frame*). EX1006, 2:4-15; Section III.F.1; EX1003, ¶271.

> **iv.     [12c]: encapsulating a portion of the die and the lead frame with an encapsulant, wherein a recess is formed over the pressure sensor such that at least a pressure-sensing region of the die is not covered by the encapsulant;**

The Hooper-Rozgo-Otani combination describes that Hooper's device 12 having a pressure sensor forms the claimed *die* that is attached to a lead frame (*the lead frame*) having leads. Section III.F.5.ii (element 12[a]); Section III.F.1; EX1003, ¶272. Hooper describes that encapsulating material 24 is used to "encapsulate device 12 and any other components that are to be encapsulated (e.g., 14, 16, 20, and the bottom of 22)." EX1006, 2:58-3:2 (parenthetical in original), Fig. 6. Item 16 refers to the wire bonds. *Id.*; *see id*, 2:4-15. The wire bonds 16 are "coupled to electrical

161

leads" that are "not shown" in Figures 1 or 6; however, the figures do show that the wire bonds 16 connect device 12 to the portions of housing 18 where the leads are located, and these portions are shown as being encapsulated. *Id.*; Section III.F.1.



FIG. 6

EX1006, Fig. 6 (annotated with box around numerals 10, 12, 16, and 24)

As such, Hooper describes that the encapsulating material 24 would have covered the leads of the lead frame as well as the device 12 pressure sensor (*encapsulating a portion of the die and the lead frame with an encapsulant*). EX1006, 2:4-15, 2:58-3:2; Section III.F.1; EX1003, ¶273. Moreover, as shown by Figure 6 of Hooper, a recess is formed over the device 12 pressure sensor such that the sense diaphragm 17 of the device 12 pressure sensor that "includes pressure transducers that sense pressure variations and converts them to electrical signals" is not covered by encapsulating material 24 (*wherein a recess is formed over the pressure sensor such*

162

*that at least a pressure-sensing region of the die is not covered by the encapsulant).*
EX1006, 1:21-26, 1:46-2:35, 2:36-3:16, 3:17-47, claim 1, Figs. 3-6; EX1003, ¶273;
Sections III.F.1, III.E.1.



EX1006, Fig. 6 (annotated with box around numerals 10, 12, and 17)



EX1006, Fig. 6 (annotated with box around numerals 10, 12, 20, 24 and 28, cavity

label, and line indicating recess under cap 28)



EX1006, Fig. 6 (close-up view showing recess under cap 28, annotated with box

around numerals 28, recess label, and dashed line indicating an edge of cap 28)

Indeed, Figures 3 through 5 of Hooper demonstrate how a sacrificial material

22 is (1) placed on pressure sensor device 12 (Fig. 5), (2) encapsulating material 24

is applied (Fig. 4), and then (3) the sacrificial material 22 is removed (Fig. 5),

providing that (4) the recess above device 12 is formed (Fig. 6). EX1006, 2:16-3:36,

Figs. 3-6.



EX1006, Figs. 3-5, Fig. 6 (annotated with box around numerals 20, 24 and 28,

cavity label, and line indicating recess under cap 28)

> **v.    [12d]: placing a gel into the recess and in contact with the pressure-sensing region of the die;**

The Hooper-Rozgo- Otani combination describes that Hooper's gel "pressure

transmitting material 20 (*gel*) is applied overlaying device 12" and contacts the sense

diaphragm 17 of device 12 as shown by Figure 6 and because it "transmits pressure

from a gas or liquid above layer 20 to device 12" (*placing a gel…in contact with the*

*pressure-sensing region of the die*). EX1006, 2:16-35, 3:12-47; EX1003, ¶275.

Moreover, the gel pressure transmitting material 20 overlaying device 12 is

placed into the recess above the device 12 (*placing a gel into the recess*). EX1006,

166

2:16-35, 3:36-3:16, 3:12-47, Figs. 3-6; EX1003, ¶276. Figures 3 through 5 below demonstrate how a sacrificial material 22 is (1) placed on pressure sensor device 12 (Fig. 3), (2) encapsulating material 24 is applied (Fig. 4), and then (3) the sacrificial material 22 is removed (Fig. 5), providing that (4) the recess above device 12 is formed (Fig. 6). EX1006, 2:16-3:36, Figs. 3-6. By virtue of this process, the gel pressure transmitting material 20 overlaying device 12 (*gel*) is placed into the recess (*placing a gel into the recess*). *Id.*; EX1003, ¶276. Under a BRI of the claim, "*placing a gel into the recess*" broadly encompasses removing the sacrificial material such that the gel is situated in the recess formed by the removal. *See MFORMATION TECHNOLOGIES v. Research in Motion Ltd.*, 764 F. 3d 1392, 1398 ("As a general rule, '[u]nless the steps of a method [claim] actually recite an order, the steps are not ordinarily construed to require one.'").



FIG. 3



FIG. 4

167




EX1006, Figs. 3-5, Fig. 6 (annotated with box around numerals 20, 24 and 28,

cavity label, and line indicating recess under cap 28)

> **vi.** **[12e]: inserting a diaphragm into the recess and in contact with the gel; and**

The Hooper-Rozgo- Otani combination describes that a diaphragm is applied

to overlay Hooper's gel pressure transmitting material 20 within the recess and is in

contact with the gel pressure transmitting material 20 (*inserting a diaphragm into*

*the recess and in contact with the gel*). Section III.E.1; Section III.F.1; EX1003,

¶277.

> **vii.** **[12f]: placing a lid having an aperture over the recess and the diaphragm.**

The Hooper-Rozgo-Otani combination describes that Hooper's cap 28 having

an opening 26 is applied overlying the recess and the diaphragm (*placing a lid*

*having an aperture over the recess and the diaphragm*). EX1006, 1:21-26, 1:46-

2:35, 3:17-47, claim 1, Fig. 6; EX1003, ¶278; Sections III.F.1, III.E.1.



EX1006, Fig. 6 (annotated with box around numerals 10, 24, and 28, diaphragm

label, and recess under cap 28)

### 6.    Claim 13

Hooper, Rozgo, and Otani render obvious claim 13. EX1003, ¶279.

> **i.    [13a]: The method of claim 12, wherein in the encapsulation step comprises: placing a film-covered shaping form over the pressure sensor to prevent the encapsulant from covering the pressure-sensing region and to form the shape of the recess;**

The Hooper-Rozgo-Otani combination describes that Hooper's encapsulating

process includes placing a "sacrificial material or layer 22" made of "one or more

layers" on the device 12 pressure sensor (*wherein in the encapsulation step*

*comprises: placing a film-covered shaping form over the pressure sensor*), which

169

prevents encapsulating material 24 from covering the sense diaphragm 17 of device 12 and forms the shape of the recess under cap 28 (*to prevent the encapsulant from covering the pressure-sensing region and to form the shape of the recess*). EX1006, 2:36-3:36; EX1003, ¶280. As sacrificial material or layer 22 is made of "one or more layers," a POSITA would have understood or at least found obvious that it is a *film-covered shaping form* as claimed. EX1006, 2:36-3:36; EX1003, ¶280. Indeed, in an example in which sacrificial material or layer 22 is made from multiple layers, a POSITA would have recognized that an outer layer forms a *film* that covers the other layer(s) of the material 22 that determine the shape of the material and recess of apparatus 10, thus providing a *film-covered shaping form*. EX1006, 2:36-3:36; EX1003, ¶280.

Figures 3 through 5 below demonstrate how sacrificial material or layer 22 is (1) placed on pressure sensor device 12 (Fig. 5), (2) encapsulating material 24 is applied (Fig. 4), and then (3) the sacrificial material or layer 22 is removed (Fig. 5), providing that the recess is formed. EX1006, 2:36-3:36, Figs. 3-5.



FIG. 3



FIG. 4



EX1006, Figs. 3-5



EX1006, Fig. 6 (annotated with box around numerals 10, 24, and 28, diaphragm

label, and recess under cap 28)

171

> ii.    **[13b]: injecting an uncured encapsulant into a molding enclosure containing the die and the lead frame;**

The Hooper-Rozgo-Otani combination describes that Hooper's encapsulating material 24 is a "material that requires curing" and is thus uncured when it is applied to the cavity 17 of apparatus 10, that includes device 12 and lead frame, and is formed by package or housing 18 (*injecting an uncured encapsulant into a molding enclosure containing the die and the lead frame*). EX1006, 2:36-3:36, Figs. 1, 3-6; Section III.F.1; EX1003, ¶282.

> iii.    **[13c]: curing the encapsulant; and**

The Hooper-Rozgo-Otani combination describes that Hooper's encapsulating material 24 is a "material that requires curing" and is thus cured (*curing the encapsulant*). EX1006, 2:36-3:36; EX1003, ¶283.

> iv.    **[13d]: removing the film-covered shaping form.**

The Hooper-Rozgo-Otani combination describes that Hooper's sacrificial material or layer 22 is removed (*removing the film-covered shaping form*). EX1006, 2:36-3:36; EX1003, ¶284.

> 7.    **Claim 14**

> i.    **The method of claim 12, wherein the encapsulation step is performed using film-assisted molding.**

*See* Section III.F.6 (claim 13). As discussed with respect to claim 13, the encapsulation of apparatus 10 is performed using sacrificial material or layer 22 that

is formed from one or more layers and is a film covered shaping form, that has a molded shape that defines the recess of apparatus 10. *See* Section III.F.6.i (element 13[a]). The encapsulation that uses sacrificial material or layer 22 thus uses film-assisted molding (*wherein the encapsulation step is performed using film-assisted molding*). *Id.*; EX1003, ¶285.

### G.    SNQ8: Claims 3, 4, 5, and 8 are obvious in view of Hooper, Rozgo, and Wombacher

Claims 5 and 8 are rendered obvious by the combination of Hooper, Rozgo, and Wombacher, as demonstrated below. EX1003, ¶286.

With respect to claims 3 and 4, the combination of Hooper and Rozgo renders these claims obvious as discussed in Sections III.E.4 and III.E.5 (claims 3 and 4). The combination of Hooper, Rozgo, and Wombacher further renders obvious claims 3 and 4 under an alternative interpretation, as demonstrated below. EX1003, ¶287.

### 1.    Motivation to Combine Hooper, Rozgo, and Wombacher

A POSITA would have been motivated to combine Hooper and Rozgo. *See* Section III.E.1, which establishes that a POSITA would have been motivated to add Rozgo's diaphragm 22 to Hooper's apparatus 10 to provide media isolation for the gel pressure transmitting material 20. A POSITA would have been further motivated to combine the Hooper-Rozgo combination with Wombacher, and would have had a reasonable expectation of success. EX1006, 1:21-26, 1:46-2:35, 2:58-61, 3:12-47, Fig. 6; EX1005, 1:41-2:3, 2:39-49, 3:9-40, 3:59-4:27, Fig. 1; EX1030, ¶¶0014-0022,

173

0029, Fig. 1; EX1003, ¶288. In particular, a POSITA would have been motivated to combine the Hooper-Rozgo combination with Wombacher such that a barrier layer taught by Wombacher forms part of the Hooper-Rozgo diaphragm coating encapsulating material 24 and cap 28, as shown in Hooper's annotated Figure 6 below, for at least the following reasons, each of which independently supports the combination. EX1003, ¶288.



EX1006, Fig. 6 (annotated)

Wombacher discloses a sensor package including various components such as "semiconductor chip 10," "wire-bonds 20," and "sidewalls 15" that have their

surfaces covered by a "barrier layer 20" (also referred to as a "protective layer").

EX1030, ¶¶0015-0022, Fig. 1.



EX1030, Fig. 1 (annotated with boxes around numerals 10, 15, and 20)

Barrier layer 20 "has a high barrier effect against hydrogen ingress and/or the attack

of other chemical media which might result in corrosion or degradation of sensitive

surface structures" of a sensor device. *Id.*, ¶¶0015-0016. Barrier layer 20 can be

made of an "inorganic material" such as "silicate" and "may coat all exposed

surfaces in the interior of the open cavity structure 11, i.e., the sidewalls 15[.]" *Id.*,

¶¶0021-0022. Wombacher explicitly states that its teachings are relevant to

"semiconductor sensors" such as "pressure sensors." *Id.*, ¶0014.

As discussed in Section III.E.1., the Hooper-Rozgo combination provides that Hooper's apparatus 10 includes a diaphragm that overlays gel pressure transmitting material 20. EX1003, ¶291; *see* Section III.E.1.



EX1006, Fig. 6 (annotated)

A POSITA would have been motivated to apply Wombacher's barrier layer to the Hooper-Rozgo apparatus having a diaphragm, such that the barrier layer forms part of the diaphragm coating encapsulating material 24 and cap 28. EX1003, ¶292. The combination would have formed a continuous diaphragm that is bonded to cap 28 (forming a lid), covering the gel pressure transmitting material 20 and extending along the inner sidewalls of encapsulating material 24 and cap 28, as shown below. *Id.*



EX1006, Fig. 6 (annotated)

*First*, Wombacher's barrier layer addresses a recognized need in Hooper. EX1003, ¶293. Wombacher describes that its barrier layer provides corrosion resistance and environmental protection for surfaces within a sensor package that would otherwise be subject to degradation from chemical media, and that its barrier layer is applicable to pressure sensors. EX1030, ¶¶0014-0016. The Hooper-Rozgo pressure sensor apparatus 10 would have benefitted from a diaphragm that provides such protection. EX1003, ¶293. In particular, the apparatus 10 includes encapsulating material 24—which is analogous to Wombacher's cavity structure having sidewalls—and cap 28, that have exposed surfaces to the recess that receives

177

a media having its pressure measured. EX1006, 2:4-35, 3:37-47, Fig. 6; Section III.E.1; EX1003, ¶293. Hooper explains that "[r]eliability may become an issue for integrated circuits (ICs) that are used in hostile environments (e.g., where an IC is exposed to corrosive chemicals)" and that "[b]etter methods for packaging ICs to protect the ICs when they are used in hostile environments is desirable." EX1006, 1:21-26. A POSITA thus would have looked to Wombacher to improve the reliability of the Hooper-Rozgo pressure sensor apparatus 10 in hostile environments. EX1003, ¶293. Indeed, applying Wombacher's barrier layer over the exposed surfaces of encapsulating material 24 and cap 28, as part of the Hooper-Rozgo diaphragm, would have furthered Hooper's desire by protecting these components from moisture, corrosive agents, and other harmful elements, extending the useful life of the pressure sensor apparatus. *Id.*; Section III.E.1; EX1003, ¶293.

*Second*, the combination yields predictable results. EX1003, ¶294. Rozgo explains that the diaphragm can be bonded to a housing of its pressure sensor that is a lid. EX1005, 3:9-21. Wombacher explains that its barrier layer is applied to "coat all exposed surfaces in the interior of the open cavity structure[.]" EX1030, ¶0021. As such, in view of at least these teachings, a POSITA would have readily formed a continuous diaphragm that is bonded to cap 28 (forming a lid) and covers gel pressure transmitting material 20 and the inner exposed surfaces of encapsulating material 24 and cap 28. EX1003, ¶294. A POSITA would have recognized that by

178

having the continuous diaphragm that also protects the exposed portions of encapsulating material 24 and cap 28 by Wombacher's barrier layer, a more complete environmental barrier would have been formed that reduces potential ingress paths for harmful media. *Id.* Moreover, the pressure sensing capabilities of the Hooper-Rozgo combination would have been left intact, as Wombacher's barrier layer would only form the portion of the diaphragm covering the exposed surfaces of encapsulating material 24 and cap 28, and would not be applied to the central portion of the diaphragm covering the pressure sensing diaphragm 17 of device 12. *Id.*; EX1006, 1:51-2:3, Figs. 1, 6; Section III.E.1. This would have been readily achievable by POSITAs using, for example, "mask plates" as disclosed by Wombacher that are used to "avoid the exposure of surfaces…which are not intended to be coated with the inorganic barrier layer 20[.]" EX1030, ¶0029. By using Wombacher's barrier layer in this manner, a POSITA would have achieved the predictable results of a diaphragm that provides robust environmental protection to sensor components, without the risk of interfering with pressure-sensing functionality. EX1003, ¶294. The combination therefore yields no more than what would be predicted from the combination of known elements according to their known functions. *Id.*

*Third*, a POSITA would have had a reasonable expectation of success. EX1003, ¶295. Wombacher teaches multiple well-known deposition techniques for

179

applying a barrier layer, including chemical vapor deposition (CVD) and physical vapor deposition (PVD). EX1030, ¶0029. As discussed above, Wombacher also describes the use of mask plates to protect areas that are not intended to be coated. *Id.* As such, a POSITA would have had a reasonable expectation of success in depositing a barrier layer on the exposed surfaces of encapsulating material 24 and cap 28, in connection with the diaphragm of the Hooper-Rozgo combination, thus forming a continuous diaphragm. EX1003, ¶295.

In view of the foregoing, a POSITA would have been motivated to combine the teachings of Hooper, Rozgo, and Wombacher, and would have had a reasonable expectation of success in doing so. The combination yields predictable results because it simply applies a known barrier layer (Wombacher) to a known pressure sensor apparatus (Hooper-Rozgo) to achieve improved environmental protection— a result that would have been expected from combining these known elements according to their known functions. EX1003, ¶295.

### 2.    Claim 3

Hooper, Rozgo, and Wombacher render obvious claim 3. EX1003, ¶297.

       i.     **[3a]: The device of claim 2, wherein the diaphragm comprises: a convex central section covering the gel; an annular wall section contacting the encapsulant;**

> **and an annular support section connecting the central section to the wall section.**

The Hooper-Rozgo-Wombacher combination describes apparatus 10 having a diaphragm, as shown in annotated Figure 6 below, forming *the diaphragm* as claimed. Section III.G.1.



EX1006, Fig. 6 (annotated)

As shown by annotated Figure 6 below, the diaphragm has a convex central section as it overlays the convex shape of gel pressure transmitting material 20. EX1003, ¶299; Section III.G.1; Section III.E.4 (claim 3).

181



EX1006, Fig. 6 (annotated with sections of diaphragm)

Thus, the diaphragm has a convex central section covering the gel pressure transmitting material 20 (*wherein the diaphragm comprises: a convex central section covering the gel*). EX1003, ¶300; Section III.E.1, Section III.E.2.iv (element 1[c]), Section III.G.1.

As shown by annotated Figure 6 below, the diaphragm also has a section along the interior side wall and top of encapsulating material 24 as well as along the interior side wall of housing 18. EX1003, ¶301; Section III.G.1. Moreover, a POSITA would have understood or at least found obvious that section would occur in a ring around the perimeter of opening 26 where the diaphragm and housing meet. EX1003, ¶301.

As such, this section of the diaphragm forms *an annular wall section contacting the encapsulant* as claimed. *Id.*



EX1006, Fig. 6 (annotated with sections of diaphragm)

Finally, as shown by annotated Figure 6 below, the diaphragm has a support section, that supports the central section of the diaphragm and the barrier layer section of the diaphragm contacting the encapsulating material 24, by connecting those two sections together, thus formed by part Rozgo's diaphragm and Wombacher's barrier layer. EX1003, ¶302; Section III.E.1, Section III.E.2.iv (element 1[c]). Section III.G.1. Moreover, a POSITA would have understood or at least found obvious that this section encircles the central section of the diaphragm.

183

*Id.*; EX1003, ¶302. As such, this support section of the diaphragm forms *an annular support section connecting the central section to the wall section* as claimed. EX1003, ¶302; Section III.E.1, Section III.E.2.iv (element 1[c]). Section III.G.1.



EX1006, Fig. 6 (annotated with sections of diaphragm)

The combination of Hooper, Rozgo, and Wombacher thus renders obvious claim 3. EX1003, ¶303.

### 3.    Claim 4

Hooper, Rozgo, and Wombacher render obvious claim 4. EX1003, ¶304.

> i.    **[4a]: The device of claim 3, wherein: the central section is made of a first material; and the wall and**

> **support sections are made of a second material
> different from the first material.**

The Hooper-Rozgo-Wombacher combination describes the diaphragm having a central section, forming *the central section* as claimed, support sections, forming *the support sections* as claimed, and wall sections, forming *the wall...sections* as claimed. Section III.G.2 (claim 3).

Rozgo explains that its diaphragm "may include metal, plastic, ceramic, or any other suitable material." EX1005, 1:42-48. This is just like the '658 Patent itself, which states that the diaphragm "may be made of, for example, rubber, silicone, plastic, metal, or thermal tape." EX1001, 3:53-57. As such, a POSITA would have understood or at least found obvious that the convex central section of the Hooper-Rozgo-Wombacher diaphragm covering the gel pressure transmitting material 20, formed by Rozgo's diaphragm 22, would have been formed by a first material such as "metal, plastic, [or] ceramic" (*wherein: the central section is made of a first material*). EX1005, 1:42-48; Section III.G.2 (claim 3); EX1003, ¶306.

Wombacher explains that its barrier layer, which forms the portion of the diaphragm contacting encapsulating material 24 and cap 28 within the Hooper-Rozgo-Wombacher combination, is formed from materials such as a "semiconductor oxide and/or metal oxide materials such as silicate ($Si_yO_x$), e.g., $SiO_2$, or $Al_2O_3$, $B_2O_3$, $GeO_2$, $In_2O_3$, $PbO$, $Sb_2O_4$, $SB_4O_6$, $SnO$, $SnO_2$, $SrO$, $Te_2O_5$, $TeO_2$, $TeO_3$, $Tl_2O_3$, or $ZnO$." EX1030, ¶0015; Section III.G.1. As such, a POSITA would have

185

understood or at least found obvious that the diaphragm's vertical section along the interior side wall and top of encapsulating material 24 (*support section*) and the diaphragm's wall section along housing 18 (*wall section*) (collectively forming *the wall and support sections*) would have been made from, for example, silicate, which is a different material from metal, plastic, and/or ceramic (*are made of a second material different from the first material*). EX1030, ¶0015; EX1005, 1:42-48; Section III.G.2 (claim 3); Section III.G.1; EX1003, ¶307.

### 4.    Claim 5

Hooper and Rozgo render obvious claim 5. EX1006, 2:9-11, 3:37-47, Figs. 1, 6; EX1029, 3:19-4:24, Figs. 1, 2; EX1003, ¶308.

> i.    **[5a]: The device of claim 3, wherein: a top surface of the first tier of the encapsulant forms an annular flange around a portion of the gel; and the support section of the diaphragm covers the flange.**

As discussed with respect to claim 2, within the Hooper-Rozgo combination, Hooper describes that its apparatus has a *first tier of the encapsulant* as shown by tier 1 in annotated Figure 6 below. *See* Section III.E.3 (claim 2).

186



EX1006, Fig. 6 (annotated with tiers, sections of diaphragm, and a box around numeral 10)

As shown by annotated Figure 6 above and below, the tier 1 section includes a top surface, which encircles gel pressure transmitting material 20 within apparatus 10 because Figure 6 shows a cross-sectional view (*wherein: a top surface of the first tier of the encapsulant forms an annular flange around a portion of the gel*). EX1006, Fig. 6; Section III.E.3 (claim 2).

187



**FIG. 6**

EX1006, Fig. 6 (annotated with sections of diaphragm and tier 1 top surface)

Indeed, this top surface forms an *annular flange* because it is a rim that extends around the gel 20, thus forming a ring around gel 20. *Id.*; EX1003, ¶311. Hooper2 corroborates how this rim would have been *annular*, as it shows a cross-section of a pressure sensor having the same cavity and top surface (*compare* EX1029, Fig. 1, with EX1006, Fig. 6) and a top down view of the pressure sensor that demonstrates how this top surface would have surrounded the circular opening containing a pressure sensing die (EX1029, Fig. 2). EX1029, 3:19-4:24, Figs. 1, 2; EX1003, ¶311.

Finally, as shown by annotated Figure 6 below, the diaphragm has a support section as discussed with respect to claim 3. EX1030, ¶0015; EX1006, Fig. 6; *see also* Section III.G.2 (claim 3).



EX1006, Fig. 6 (annotated with sections of diaphragm and tier 1 top surface)

This support section of the diaphragm is in a plane above the top surface that forms the claimed *annular flange*, and thus covers the top surface (*the support section of the diaphragm covers the flange*). *Id.*; EX1006, Fig. 6; EX1003, ¶313.

### 5.     Claim 8

Hooper, Rozgo, and Wombacher render obvious claim 8. EX1003, ¶314.

i.    **[8a]: The device of claim 1, wherein the diaphragm is integral with the lid.**

To the extent the Examiner determines that the broadest reasonable interpretation of claim 8 encompasses *the diaphragm* being *integral with the lid* as well as a "separate element" (or that Claim 1 is not limited by patentee's prosecution history statements), the combination of Hooper, Rozgo, and Wombacher renders claim 8 obvious. EX1003, ¶315. The Hooper-Rozgo-Wombacher combination describes that Hooper's apparatus 10 includes a diaphragm (*the diaphragm*) that is attached to, and this integral with, cap 28 (*is integral with the lid*) as indicated in annotated Figure 6 below. *See* Section III.G.1; Section III.E.2.v (element 1[d]); EX1003, ¶315.



FIG. 6

190

EX1006, Fig. 6 (annotated)

### H.    SNQ9: Claims 10 and 11 are obvious over Hooper, Rozgo, Otani, and Wombacher

#### 1.    Motivation to Combine Hooper, Rozgo, Otani, and Wombacher

A POSITA would have been motivated to combine Hooper, Rozgo, and Otani, and would have had a reasonable expectation of success. *See* Section III.K.1, which establishes that a POSITA would have been motivated to combine Hooper and Rozgo (to add Rozgo's diaphragm 22 to Hooper's apparatus 10) and further combine with Otani (to implement the lead frame, die pad, and leads described by Hooper using Otani's teachings) A POSITA would have been further motivated to combine the Hooper-Rozgo-Otani combination with Wombacher for the same reasons discussed with respect to the combination of Wombacher with the Hooper-Rozgo combination in Section III.G.1, which establishes that a POSITA would have been motivated to apply Wombacher's barrier layer to form a continuous diaphragm that provides environmental protection to the sensor components EX1003, ¶316. Because each of these combinations yields predictable results—adding known elements (Rozgo's diaphragm, Otani's lead frame structure, and Wombacher's barrier layer) to a known pressure sensor apparatus (Hooper) according to their known functions—a POSITA would have been motivated to make the four-way

191

combination and would have had a reasonable expectation of success. EX1003, ¶316.

### 2.    Claim 10

#### i.    [10a]: The integrated circuit device of claim 9, wherein the diaphragm is integral with the lid.

The Hooper-Rozgo-Otani-Wombacher combination renders obvious claim 10 for the same reasons discussed in Section III.G.5 regarding claim 8.

### 3.    Claim 11

#### i.    [11a]: The integrated circuit device of claim 10, wherein the lid has a top portion formed of metal and a diaphragm portion formed of a flexible material.

The Hooper-Rozgo-Otani-Wombacher combination teaches an arrangement in which a diaphragm is attached to cap 28. *See* Sections III.H.1, III.G.1. In this arrangement where the diaphragm and cap 28 are attached, Hooper describes that cap 28 (*the lid*) includes a portion at the top of apparatus 10 that covers the apparatus components and is made from "any desirable material (e.g. steel, plastic, etc.)," where steel is a well-known metal alloy (*wherein the lid has a top portion formed of metal*), and further includes the central diaphragm portion that Rozgo describes is made from a "thin, solid material" that "may include metal, plastic, ceramic, or any other suitable material" and is "deform[able]" (*and a diaphragm portion formed of a flexible material*). EX1006, 3:37-47; EX1005, 3:12-15, 5:30-35; Sections III.H.1, III.G.1; EX1003, ¶318.

## IV.  CONCLUSION

Requester respectfully submits that the cited references render Claims 1-16 of the '658 Patent unpatentable, thereby raising SNQs regarding these claims. EX1003, ¶321. *Ex parte* reexamination should be commenced and Claims 1-16 found unpatentable.

Respectfully submitted,
BAKER BOTTS L.L.P.

Date: <u>May 28, 2026</u>

<u>*/Jeffery S. Becker/*</u>
Jeffery Becker (Reg. No. 68,533)
Ellyar Y. Barazesh (Reg. No. 74,096)
**BAKER BOTTS L.L.P.**
2001 Ross Avenue Suite 900
Dallas, Texas 75201-2980
Phone: 214-953-6526

ATTORNEYS FOR REQUESTER
STMicroelectronics, Inc.

193