# EXHIBIT 14

# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/015,860 & 90/015,902 | 01/05/2026 | 9685351 | 4059929.00003 | 3808 |

201116        7590        06/08/2026

Bunsow De Mory LLP
701 El Camino Real
Redwood City, CA 94063

| EXAMINER |
|---|
| CHOI, WOO H |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 06/08/2026 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)



**UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

K&L Gates LLP-Chicago
P.O. Box 1135
Chicago, IL 60690

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/015,860* & 90/015,902

PATENT UNDER REEXAMINATION  *9685351* .

ART UNIT *3992* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)



**UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Baker Botts LLP
2001 Ross Avenue, Suite 900
Dallas, TX 75201

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/015,902* & 90/015,860

PATENT UNDER REEXAMINATION  *9685351* .

ART UNIT *3992* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| **Office Action in Ex Parte Reexamination** | **Control No.** 90/015,860 & 90/015,902 | **Patent Under Reexamination** 9685351 |
|---|---|---|
| | **Examiner** Woo H Choi | **Art Unit** 3992 | **AIA (First Inventor to File) Status** Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a. ☐ Responsive to the communication(s) filed on _____.

    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

b. ☐ This action is made FINAL.

c. ☑ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire <u>2</u> month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

**Part I**    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

  1. ☐ Notice of References Cited by Examiner, PTO-892.    3. ☐ Interview Summary, PTO-474.

  2. ☐ Information Disclosure Statement, PTO/SB/08.    4. ☐ _____.

**Part II**    SUMMARY OF ACTION

  1a. ☑ Claims <u>1-9</u> are subject to reexamination.

  1b. ☐ Claims _____ are not subject to reexamination.

  2. ☐ Claims _____ have been canceled in the present reexamination proceeding.

  3. ☐ Claims _____ are patentable and/or confirmed.

  4. ☑ Claims <u>1-9</u> are rejected.

  5. ☐ Claims _____ are objected to.

  6. ☐ The drawings, filed on _____ are acceptable.

  7. ☐ The proposed drawing correction, filed on _____ has been (7a)  ☐ approved (7b)  ☐ disapproved.

  8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. 119(a)-(d) or (f).

      a) ☐ All  b)  ☐ Some*  c)  ☐ None    of the certified copies have

      1 ☐ been received.

      2 ☐ not been received.

      3 ☐ been filed in Application No. _____.

      4 ☐ been filed in reexamination Control No. _____.

      5 ☐ been received by the International Bureau in PCT application No. _____.

     * See the attached detailed Office action for a list of the certified copies not received.

  9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.

  10. ☐ Other: _____

cc: Requester (if third party requester)

PTOL-466 (Rev. 08-13)        **Office Action in Ex Parte Reexamination**      Part of Paper No.    20260604

Application/Control Number: 90/015,860 + 90/015,902                              Page 2
Art Unit: 3992

**DETAILED ACTION**

1.      This is an *ex parte* reexamination of U.S. Patent Number 9,685,351, requested by third

party requesters for reexamination of claims 1-9.  Requests filed by two requestors have been

granted and merged into a single proceeding.

- U.S. Pub. No. 2006/0138678 ("Yazid").
- U.S. Pub. No. 2012/0153444 ("Haga");
- U.S. Pub. No. 2007/0035019 ("Carney");
- U.S. Pat. No. 7,326,594 ("Beauchamp").

***Claim Rejections - 35 USC § 102***

2.      In the event the determination of the status of the application as subject to AIA 35 U.S.C.

102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the

statutory basis (i.e., changing from AIA to pre-AIA) for the rejection will not be considered a

new ground of rejection if the prior art relied upon, and the rationale supporting the rejection,

would be the same under either status.

        The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the

basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (a)(2) the claimed invention was described in a patent issued under section 151, or in an application for patent published or deemed published under section 122(b), in which the patent or application, as the case may be, names another inventor and was effectively filed before the effective filing date of the claimed invention.

3.      <u>Claims 1-3 are rejected under 35 U.S.C. 102(a)(2) as being anticipated by Carney.</u>

4.      With respect to claim 1, Carney discloses **a method comprising:**

Application/Control Number: 90/015,860 + 90/015,902                                    Page 3
Art Unit: 3992

**providing a lead frame** (paragraph [0024], "FIG. 1 is a top view of a portion of support substrate 12 … By way of example, support substrate 12 is a conductive substrate such as a leadframe having a plurality of regions 14 coupled to each other via vertically and horizontally oriented tie-bars 16 and 18 respectively.") **comprising a first die paddle** (paragraph [0025], "Source and drain electrodes 36 and 38, respectively, of semiconductor chip 34 and die attach material 35 are further illustrated in FIG. 2.") **and one or more electrical connector elements** (paragraph [0024], "Each component region 14 includes flag or chip attach region 20 and leads or pad portions 22 and 23."); **and**



FIG. 1

FIG. 2

**forming one or more positive mold lock structures** (paragraph [0027], "A positionally adaptable locking feature 44 is attached to a portion of flag 20 adjacent side 24 and positionally

adaptable locking feature 46 is attached to a portion of flag 20 adjacent side 30.") **at**

**predetermined locations on a top surface of the lead frame which laterally protrude above**

**the top surface** (see FIGs 1 and 3).



FIG. 3

5.    With respect to claim 2, Carney discloses **the method of claim 1, further comprising**

**mounting a microelectronic device onto the lead frame before or after forming the one or**

**more positive mold lock structures** (paragraph [0029], "Semiconductor chip 34 may be

mounted to flag 20 either before or after formation of positionally adaptable locking features 44

and 46.").

6.    With respect to claim 3, Carney discloses **the method of claim 1, further comprising**

**forming a molded body on at least the top surface of the lead frame to encapsulate a**

**microelectronic device attached to the lead frame and engage with the one or more positive**

**mold lock structures to promote adhesion between the molded body and the lead frame**

(paragraph [0031], "FIG. 2 is a cross-sectional side view of a portion of semiconductor

component 10 at a later stage of manufacture in accordance with an embodiment of the present

invention.  What is shown in FIG. 2, is a cross-sectional side view of one of component regions

14 taken along section line 2-2 of FIG. 1 after encapsulation by a mold compound 54 and after

singulation into individual semiconductor components 10.").

Application/Control Number: 90/015,860 + 90/015,902                    Page 5
Art Unit: 3992

7.    <u>Claims 1-3 are rejected under 35 U.S.C. 102(a)(2) as being anticipated by Yazid.</u>

8.    With respect to claim 1, Yazid discloses **a method comprising:**

**providing a lead frame** (FIG 3A, paragraph [0032], "Referring to FIG. 3, a central portion of a leadframe, which is a first embodiment of the invention is illustrated.") **comprising a first die paddle and one or more electrical connector elements** (paragraph [0032], "These further portions of the leadframe are according to conventional design, and typically include leads, which extend in a plane parallel to the major surface of the portion 101. The tips of the leads are for wire bonding to respective contacts of an integrated circuit, which is mounted on a die pad region at the center of the central portion101 of the leadframe."); **and**



**forming one or more positive mold lock structures** (FIG 3C, pedestal 104) **at predetermined locations on a top surface of the lead frame which laterally protrude above the top surface** (see FIGs 3A and 3C)**.**

9.    With respect to claim 2, Yazid discloses **the method of claim 1, further comprising mounting a microelectronic device onto the lead frame** (see paragraph [0032]) **before or after forming the one or more positive mold lock structures** (before or after covers all possible time frames)**.**

10.    With respect to claim 3, Yazid discloses **the method of claim 1, further comprising forming a molded body** (FIG 5, resin body 116) **on at least the top surface of the lead frame to encapsulate a microelectronic device attached to the lead frame and engage with the one or more positive mold lock structures to promote adhesion between the molded body and the lead frame** (see paragraph [0040], "Then, as shown in FIG. 5b, a resin body 116 is molded, so that the integrated circuit 103, the wire bonds 107 and pedestals 104, are encased in the resid 116. Typically, the wires (not shown) between the other contacts of the integrated circuit 103 and the leads are encased in the same resid body 116 at the same time. The pedestals 104 provide mechanical locking between the resin and the plate 110, especially because of the concave surface.").



7.    <u>Claims 1-3 and 8 are rejected under 35 U.S.C. 102(a)(2) as being anticipated by Haga.</u>

8.    With respect to claim 1, Haga discloses **a method comprising:**

**providing a lead frame** (FIG. 74, lead frame 3I; paragraph [0914], "The kea frame 3I includes a die pad 5I disposed at a central portion of the semiconductor device 1I and a plurality of (ten in the present preferred embodiment) leads 6I disposed at a periphery of the die pad 5I.") **comprising a first die paddle** (5I) **and one or more electrical connector elements** (6I)**; and**

**forming one or more positive mold lock structures at predetermined locations on a top surface of the lead frame which laterally protrude above the top surface** (FIG. 74, dummy wires 15I, 16I,a and 17I; paragraph [0923]. "A plurality of dummy wires 15I, 16I, and 17I made of copper are bonded to the top surface 9silver thin films 9I and 47I) of the die pad 51 exposed at the periphery of the semiconductor chip 2I.").



FIG. 74

9.      With respect to claim 2, Haga discloses **the method of claim 1, further comprising mounting a microelectronic device** (FIG. 74, 2I) **onto the lead frame before or after forming the one or more positive mold lock structures.**

10.     With respect to claim 3, Haga discloses **the method of claim 1, further comprising forming a molded body** (FIG. 74, resin package 4I) **on at least the top surface of the lead frame to encapsulate a microelectronic device attached to the lead frame** (paragraph [0913], The semiconductor device 1I has a structure in which a semiconductor chip 2I is sealed together

Application/Control Number: 90/015,860 + 90/015,902                                        Page 8
Art Unit: 3992

with the lead frame 3I by a resin package 4I.") **and engage with the one or more positive mold lock structures to promote adhesion between the molded body and the lead frame.**

11.    With respect to claim 8, Haga discloses **the method of claim 1, where forming one or more positive mold lock structures comprises using a ball bonding process** (paragraph [0465], "Yet another objective is to provide a method of manufacturing semiconductor device with which, in bonding a bonding wire made of copper and an electrode pad, a metal ball of comparatively small diameter can be formed with stability at a tip portion of the boding wire.") **to form one or more stud bumps** (FIG 74, 22I) **on the first die paddle or on the one or more electrical connector elements or on a tie bar of the lead frame.**

FIG. 76



*Claim Rejections - 35 USC § 103*

12.    The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections set forth in this Office action:

A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is not identically disclosed as set forth in section 102, if the differences between the claimed invention and the

Application/Control Number: 90/015,860 + 90/015,902                          Page 9
Art Unit: 3992

prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains. Patentability shall not be negated by the manner in which the invention was made.

13.     <u>Claims 4-6 and 8-9 are rejected under 35 U.S.C. 103 as being unpatentable over Carney in view of Beauchamp.</u>

14.     With respect to claim 4, Carney discloses all of the limitations of the parent claim 1 as discussed above.  However, Carney does not specifically disclose that the bonding process used is a wedge bonding process.  On the other hand, Beuchamp discloses "[t]here are two basic wire bonding techniques  that may be used in thermocompression (T/C), thermosonic (T/S) or ultrasonic (U/S) bonding process, the are "ball bonding" and "wedge bonding."  (Beauchamp, 5:26-29).  It would have obvious to use the **wedge bonding process** to **form one or more wedge-to-wedge loops as dummy features on the lead frame** because it is one of only two basic wire bonding techniques.  The examiner also notes that the mold lock structure shown in FIG. 3, does not exhibit any lumped bonding material typical of ball bonding process (see FIG. 9, bonding material head end 154).

15.     With respect to claim 5, Carney and Beauchamp disclose **the method of claim 1, where forming one or more positive mold lock structures comprises using a wedge bonding process to form one or more wedge-to-wedge loops on the first die paddle** (see FIG 1, mold lock structure 44 is on the first die paddle)**.**

16.     With respect to claim 6, Carney and Beauchamp disclose **the method of claim 1, where forming one or more positive mold lock structures comprises using a wedge bonding**

Application/Control Number: 90/015,860 + 90/015,902                      Page 10
Art Unit: 3992

**process to form one or more wedge-to-wedge loops on the one or more electrical connector elements** (see FIG. 5, 42)**.**

17.     With respect to claim 8, Carney and Beauchamp disclose **the method of claim 1, where forming one or more positive mold lock structures comprises using a ball bonding process to form one or more stud bumps** (FIG. 5, 103) **on the first die paddle or on the one or more electrical connector elements** (FIG. 9, 154) **or on a tie bar of the lead frame.**  As discussed above, Beauchamp discloses that ball bonding is one of only two basic bonding techniques.  It would have been obvious to one of ordinary skill in the art use either one of the two basic bonding techniques available to form wire bonds.  Additionally, FIGs. 5 and 9 show lumped bonding material typical for ball bonding.

18.     With respect to claim 9, Carney and Beauchamp disclose **the method of claim 1, where forming one or more positive mold lock structures comprises forming a stud bump** (FIG. 5, post 102) **by ultrasonically forming a wedge bond with an attached wire component and then breaking off the wire component directly adjacent to the wedge bond, leaving the wedge bond region as the stud bump on the first die paddle or on the one or more electrical connector elements or on a tie bar of the lead frame** (paragraph [0037], "wire post 102 form protrusion extending from lead frame 12 which protrusions are comprised of base structure 103 from which a severed wire 105 extends.  In accordance with another embodiment, wire post 102 are comprised of base structure 103, i.e., the bonding wire has been severed at base structure 103 such that a severed wire is not formed.  Wire post 102 increases the surface area to which mold compound 54 can bond.")**.**

Application/Control Number: 90/015,860 + 90/015,902    Page 11
Art Unit: 3992

19.    Claims 4-8 are rejected under 35 U.S.C. 103 as being unpatentable over Haga in view of Beauchamp.

20.    With respect to claim 4, Haga discloses all of the limitations of the parent claim 1 as discussed above.  However, Haga does not specifically disclose that the bonding process used is a wedge bonding process.  On the other hand, Beuchamp discloses "[t]here are two basic wire bonding techniques  that may be used in thermocompression (T/C), thermosonic (T/S) or ultrasonic (U/S) bonding process, the are "ball bonding" and "wedge bonding."  (Beauchamp, 5:26-29).  It would have obvious to use the **wedge bonding process** to **form one or more wedge-to-wedge loops as dummy features on the lead frame** because it is one of only two basic wire bonding techniques.

21.    With respect to claim 5, Haga and Beauchamp disclose **the method of claim 1, where forming one or more positive mold lock structures comprises using a wedge bonding process to form one or more wedge-to-wedge loops on the first die paddle** (see FIGs 74 and 75, mold lock structures 15I, 16I, and 17I are on the first die paddle**).**

22.    With respect to claim 6, Haga and Beauchamp disclose **the method of claim 1, where forming one or more positive mold lock structures comprises using a wedge bonding process to form one or more wedge-to-wedge loops on the one or more electrical connector elements** (see FIG. 74, 6I and 19I)**.**

Application/Control Number: 90/015,860 + 90/015,902                        Page 12
Art Unit: 3992

23.     With respect to claim 7, Haga and Beauchamp disclose the method of claim 1, **where forming one or more positive mold lock structures comprises forming one or more wedge-to-wedge loops which are positioned as a fence around a down bond region** (see FIGs. 74 and 75)**.**

23.     With respect to claim 8, Haga and Beauchamp disclose **the method of claim 1, where forming one or more positive mold lock structures comprises using a ball bonding process to form one or more stud bumps** (FIG. 76, 22I) **on the first die paddle or on the one or more electrical connector elements** (FIG. 9, 154) **or on a tie bar of the lead frame.**

### *Waiver of Right to File Patent Owner Statement*

24.     In a reexamination proceeding, Patent Owner may waive the right under 37 C.F.R. 1.530 to file a Patent Owner Statement. The document needs to contain a statement that Patent Owner waives the right under 37 C.F.R. 1.530 to file a Patent Owner Statement and proof of service in the manner provided by 37 C.F.R. 1.248, if the request for reexamination was made by a third party requester, see 37 C.F.R 1.550(f).

### *Service of Papers*

25.     After filing of a request for ex parte reexamination by a third party requester, any document filed by either the patent owner or the third party requester must be served on the other party (or parties where two or more third party requester proceedings are merged) in the reexamination proceeding in the manner provided in 37 CFR 1.248. The document must reflect service or the document may be refused consideration by the Office. See 37 CFR 1.550(f).

Application/Control Number: 90/015,860 + 90/015,902                    Page 13
Art Unit: 3992

## Extensions of Time

26.    Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in *ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

## Litigation Reminder

27.    The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving the patent throughout the course of this reexamination proceeding.  The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding.  See MPEP §§ 2207, 2282 and 2286.

## Conclusion

28.    All correspondence relating to this *ex parte* reexamination proceeding should be directed:

By Patent Center:  https://patentcenter.uspto.gov

By mail to:    Attn: Mail Stop "Ex Parte Reexam"
               Central Reexamination Unit
               Commissioner for Patents
               P.O. Box 1450
               Alexandria VA 22313-1450

By FAX to:    (571) 273-9900
              Central Reexamination Unit

By hand:    Customer Service Window

Application/Control Number: 90/015,860 + 90/015,902                          Page 14
Art Unit: 3992

Room 1D80
Knox Building
501 Dulany Street
Alexandria, VA 22314.

Any inquiry concerning this communication or earlier communications from the

examiner, or as to the status of this proceeding, should be directed to the Central Reexamination

Unit at telephone number (571) 272-7705.

/Woo H. Choi/
Patent Reexamination Specialist
Central Reexamination Unit 3992

Conferee:

/H.B.P/
Hetul Patel
Supervisory Patent Reexamination Specialist, Art Unit 3992