# EXHIBIT E

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-10)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | |
|---|---|
| Application Number | |
| Filing Date | |
| First Named Inventor | Leo M. Higgins III |
| Art Unit | |
| Examiner Name | |
| Attorney Docket Number | MT12020TK |

| | | | U.S.PATENTS | | | | Remove |
|---|---|---|---|---|---|---|---|

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 7091602 | B2 | 2006-08-15 | Elliott et al. | |
| | 2 | 7750486 | B2 | 2010-07-06 | Ohta | |
| | 3 | 7808089 | B2 | 2010-01-05 | Nguyen et al. | |
| | 4 | 7977773 | B1 | 2011-07-12 | Cusack | |

| If you wish to add additional U.S. Patent citation information please click the Add button. | Add |
|---|---|

| | | U.S.PATENT APPLICATION PUBLICATIONS | | | | Remove |
|---|---|---|---|---|---|---|

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 20070267731 | A1 | 2007-11-22 | Punzalan et al. | |
| | 2 | 20090224381 | A1 | 2009-09-10 | Ishihara et al. | |

EFS Web 2.1.17

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | |
|---|---|---|
| | Filing Date | |
| | First Named Inventor | Leo M. Higgins III |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | MT12020TK |

| | 3 | 20110027943 | A1 | 2011-02-03 | Gurrum et al. | |
|---|---|---|---|---|---|---|

If you wish to add additional U.S. Published Application citation information please click the Add button.    Add

**FOREIGN PATENT DOCUMENTS**    Remove

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | 0687008 | EP | A2 | 1995-12-13 | Motorola, Inc. | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button    Add

**NON-PATENT LITERATURE DOCUMENTS**    Remove

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|
| | 1 | COORS TEK, INC., Gaiser Precision Bonding Tools, Wedge Bonding, 11/28/2007 | ☐ |
| | 2 | P. ADAMSON, International Rectifier, Lead-Free Packaging for Discrete Power Semiconductors, JEDEC Conference, April/May 2002 | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button    Add

**EXAMINER SIGNATURE**

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | |
|---|---|---|
| | Filing Date | |
| | First Named Inventor | Leo M. Higgins III |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket  Number | MT12020TK |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☐ The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ A certification statement is not submitted herewith.

### SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Michael Rocco Cannatti/ | Date (YYYY-MM-DD) | 2014-07-18 |
|---|---|---|---|
| Name/Print | Michael Rocco Cannatti | Registration Number | 34791 |

This collection of information is required by 37 CFR 1.97 and 1.98.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

EFS Web 2.1.17

**Privacy Act Statement**

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| **Electronic Patent Application Fee Transmittal** | |
|---|---|
| **Application Number:** | |
| **Filing Date:** | |
| **Title of Invention:** | Wire Bond Mold Lock Method and Structure |
| **First Named Inventor/Applicant Name:** | Leo M. Higgins |
| **Filer:** | Michael Rocco Cannatti/Terri Munoz |
| **Attorney Docket Number:** | MT12020TK |

Filed as Large Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| Utility application filing | 1011 | 1 | 280 | 280 |
| Utility Search Fee | 1111 | 1 | 600 | 600 |
| Utility Examination Fee | 1311 | 1 | 720 | 720 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **1600** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 19622271 |
| **Application Number:** | 14335366 |
| **International Application Number:** | |
| **Confirmation Number:** | 3808 |
| **Title of Invention:** | Wire Bond Mold Lock Method and Structure |
| **First Named Inventor/Applicant Name:** | Leo M. Higgins |
| **Customer Number:** | 53364 |
| **Filer:** | Michael Rocco Cannatti/Terri Munoz |
| **Filer Authorized By:** | Michael Rocco Cannatti |
| **Attorney Docket Number:** | MT12020TK |
| **Receipt Date:** | 18-JUL-2014 |
| **Filing Date:** | |
| **Time Stamp:** | 16:13:37 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $ 1600 |
| RAM confirmation Number | 2521 |
| Deposit Account | 502264 |
| Authorized User | CANNATI, MICHAEL ROCCO |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |
| Charge any Additional Fees required under 37 C.F.R. Section 1.16 (National application filing, search, and examination fees) | |
| Charge any Additional Fees required under 37 C.F.R. Section 1.17 (Patent application and reexamination processing fees) | |

Charge any Additional Fees required under 37 C.F.R. Section 1.19 (Document supply fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.20 (Post Issuance fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.21 (Miscellaneous fees and charges)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Application Data Sheet | WebADS.pdf | 100484 / 201924d3890b960e9ae4d14a6ea166be575bbf57 | no | 6 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | | MT12020TK_PatentApplication.pdf | 323933 / 9392bd415c2a79e8a6c8e132394d2142f0eb2f65 | yes | 22 |

| Multipart Description/PDF files in .zip description | | |
|---|---|---|
| Document Description | Start | End |
| Specification | 1 | 13 |
| Claims | 14 | 16 |
| Abstract | 17 | 17 |
| Drawings-only black and white line drawings | 18 | 22 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 3 | Oath or Declaration filed | MT12020TK_Declaration.pdf | 64812 / 600707505c313147816f33e577e0585a8f8bf279 | no | 2 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 4 | Transmittal Letter | MT12020TK_POA-Transmittal.pdf | 141834 / 9718a0516b2d24580c903a047a27a65c33171bde | no | 1 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 5 | Non Patent Literature | Adamson.pdf | 301586 / 9089140c66269739c7314127bb098691651421b0 | no | 5 |

**Warnings:**

**Information:**

| | | | | | |
|---|---|---|---|---|---|
| 6 | Non Patent Literature | CoorsTek_SmWedge.pdf | 3614579<br><br>63bb83953476cd97db48823ba802d894e2<br>2bb30e | no | 60 |

**Warnings:**

**Information:**

| | | | | | |
|---|---|---|---|---|---|
| 7 | Foreign Reference | EP0687008A2.pdf | 382611<br><br>c70ebfd15f865df6c277debd9cefffcc784e8<br>28f | no | 5 |

**Warnings:**

**Information:**

| | | | | | |
|---|---|---|---|---|---|
| 8 | Information Disclosure Statement (IDS) Form (SB08) | MT12020TK_IDS.pdf | 612632<br><br>6be60d025270edb73f3c8fa715216c1794f6<br>0e4e | no | 4 |

**Warnings:**

**Information:**

| | | | | | |
|---|---|---|---|---|---|
| 9 | Fee Worksheet (SB06) | fee-info.pdf | 32605<br><br>444b751e8b1a70eeaa901c986a42a319b13<br>55cac | no | 2 |

**Warnings:**

**Information:**

| | |
|---|---|
| **Total Files Size (in bytes):** | 5575076 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/AIA/14
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | MT12020TK |
|---|---|---|
| | Application Number | |

| Title of Invention | Wire Bond Mold Lock Method and Structure |
|---|---|

The application data sheet is part of the provisional or nonprovisional application for which it is being submitted. The following form contains the bibliographic data arranged in a format specified by the United States Patent and Trademark Office as outlined in 37 CFR 1.76.
This document may be completed electronically and submitted to the Office in electronic format using the Electronic Filing System (EFS) or the document may be printed and included in a paper filed application.

## Secrecy Order 37 CFR 5.2

☐ Portions or all of the application associated with this Application Data Sheet may fall under a Secrecy Order pursuant to 37 CFR 5.2(Paper filers only. Applications that fall under Secrecy Order may not be filed electronically.)

## Inventor Information:

| Inventor 1 | | | | Remove |
|---|---|---|---|---|

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Leo | M. | Higgins | III |

| **Residence Information (Select One)** | ⦿ US Residency | ◯ Non US Residency | ◯ Active US Military Service |
|---|---|---|---|

| City | Austin | **State/Province** | TX | **Country of Residence** | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| **Address 1** | 10603 Queensbury Cove |
|---|---|
| **Address 2** | |

| City | Austin | **State/Province** | TX |
|---|---|---|---|
| **Postal Code** | 78726 | **Country** i | US |

All Inventors Must Be Listed - Additional Inventor Information blocks may be generated within this form by selecting the **Add** button.    Add

## Correspondence Information:

**Enter either Customer Number or complete the Correspondence Information section below.**
**For further information see 37 CFR 1.33(a).**

☐ **An Address is being provided for the correspondence Information of this application.**

| Customer Number | 53364 |
|---|---|
| **Email Address** | | Add Email | Remove Email |

## Application Information:

| **Title of the Invention** | Wire Bond Mold Lock Method and Structure | |
|---|---|---|
| **Attorney Docket Number** | MT12020TK | **Small Entity Status Claimed** ☐ |
| **Application Type** | Nonprovisional | |
| **Subject Matter** | Utility | |
| **Total Number of Drawing Sheets (if any)** | 5 | **Suggested Figure for Publication (if any)** | |

## Filing By Reference

WEB ADS 1.0

PTO/AIA/14
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | MT12020TK |
|---|---|---|
| | Application Number | |

| Title of Invention | Wire Bond Mold Lock Method and Structure |
|---|---|

Only complete this section when filing an application by reference under 35 U.S.C. 111(c) and 37 CFR 1.57(a).  Do not complete this section if application papers including a specification and any drawings are being filed.  Any domestic benefit or foreign priority information must be provided in the appropriate section(s) below (i.e., "Domestic Benefit/National Stage Information" and "Foreign Priority Information").

For the purposes of a filing date under 37 CFR 1.53(b), the description and any drawings of the present application are replaced by this reference to the previously filed application, subject to conditions and requirements of 37 CFR 1.57(a).

| Application number of the previously filed application | Filing date (YYYY-MM-DD) | Intellectual Property Authority or Country i |
|---|---|---|
| | | |

## Publication Information:

| ☐ | Request Early Publication (Fee required at time of Request 37 CFR 1.219) |
|---|---|

| ☐ | **Request Not to Publish.** I hereby request that the attached application not be published under     35 U.S.C. 122(b) and certify  that the invention disclosed in the attached application **has not and will not** be the subject of an application filed in another country, or under a  multilateral international agreement, that requires publication at eighteen months after filing. |
|---|---|

## Representative Information:

Representative information should be provided for all practitioners having a power of attorney in the application. Providing this information in the Application Data Sheet does not constitute a power of attorney in the application (see 37 CFR 1.32).
Either enter Customer Number or complete the Representative Name section below. If both sections are completed the customer Number will be used for the Representative Information during processing.

| Please Select One: | ● Customer Number | ○ US Patent Practitioner | ○ Limited Recognition (37 CFR 11.9) |
|---|---|---|---|
| Customer Number | 53364 | | |

Additional Representative Information blocks may be generated within this form by selecting the **Add** button.

## Domestic Benefit/National Stage Information:

This section allows for the applicant to either claim benefit under 35 U.S.C. 119(e), 120, 121, or 365(c) or indicate National Stage entry from a PCT application.  Providing this information in the application data sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120, and 37 CFR 1.78.

| Prior Application Status | | | Remove |
|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing Date (YYYY-MM-DD) |
| | | | |

Additional Domestic Benefit/National Stage Data may be generated within this form by selecting the **Add** button.

PTO/AIA/14
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | MT12020TK |
|---|---|---|
| | Application Number | |

| Title of Invention | Wire Bond Mold Lock Method and Structure |
|---|---|

## Foreign Priority Information:

This section allows for the applicant to claim priority to a foreign application. Providing this information in the application data sheet constitutes the claim for priority as required by 35 U.S.C. 119(b) and 37 CFR 1.55(d). When priority is claimed to a foreign application that is eligible for retrieval under the priority document exchange program (PDX) the information will be used by the Office to automatically attempt retrieval pursuant to 37 CFR 1.55(h)(1) and (2). Under the PDX program, applicant bears the ultimate responsibility for ensuring that a copy of the foreign application is received by the Office from the participating foreign intellectual property office, or a certified copy of the foreign priority application is filed, within the time period specified in 37 CFR 1.55(g)(1).

| | | | Remove |
|---|---|---|---|

| Application Number | Country        i | Filing Date (YYYY-MM-DD) | Access Code (if applicable) |
|---|---|---|---|
| | | | |

Additional Foreign Priority Data may be generated within this form by selecting the **Add** button.

## Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications

☐ This application (1) claims priority to or the benefit of an application filed before March 16, 2013 and (2) also contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013.
NOTE: By providing this statement under 37 CFR 1.55 or 1.78, this application, with a filing date on or after March 16, 2013, will be examined under the first inventor to file provisions of the AIA.

## Authorization to Permit Access:

☒ Authorization to Permit Access to the Instant Application by the Participating Offices

PTO/AIA/14
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | MT12020TK |
|---|---|---|
| | Application Number | |

| Title of Invention | Wire Bond Mold Lock Method and Structure |
|---|---|

If checked, the undersigned hereby grants the USPTO authority to provide the European Patent Office (EPO), the Japan Patent Office (JPO), the Korean Intellectual Property Office (KIPO), the World Intellectual Property Office (WIPO), and any other intellectual property offices in which a foreign application claiming priority to the instant patent application is filed access to the instant patent application. See 37 CFR 1.14(c) and (h). This box should not be checked if the applicant does not wish the EPO, JPO, KIPO, WIPO, or other intellectual property office in which a foreign application claiming priority to the instant patent application is filed to have access to the instant patent application.

In accordance with 37 CFR 1.14(h)(3), access will be provided to a copy of the instant patent application with respect to: 1) the instant patent application-as-filed; 2) any foreign application to which the instant patent application claims priority under 35 U.S.C. 119(a)-(d) if a copy of the foreign application that satisfies the certified copy requirement of 37 CFR 1.55 has been filed in the instant patent application; and 3) any U.S. application-as-filed from which benefit is sought in the instant patent application.

In accordance with 37 CFR 1.14(c), access may be provided to information concerning the date of filing this Authorization.

## Applicant Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

| **Applicant    1** |
|---|

If the applicant is the inventor (or the remaining joint inventor or inventors under 37 CFR 1.45), this section should not be completed. The information to be provided in this section is the name and address of the legal representative who is the applicant under 37 CFR 1.43; or the name and address of the assignee, person to whom the inventor is under an obligation to assign the invention, or person who otherwise shows sufficient proprietary interest in the matter who is the applicant under 37 CFR 1.46. If the applicant is an applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient proprietary interest) together with one or more joint inventors, then the joint inventor or inventors who are also the applicant should be identified in this section.

Clear

○ Assignee          ○ Legal Representative under 35 U.S.C. 117          ○ Joint Inventor

○ Person to whom the inventor is obligated to assign.          ○ Person who shows sufficient proprietary interest

If applicant is the legal representative, indicate the authority to file the patent application, the inventor is:

Name of the Deceased or Legally Incapacitated Inventor :

If the Applicant is an Organization check here.    ☐

| Prefix | **Given Name** | Middle Name | **Family Name** | Suffix |
|---|---|---|---|---|
| | | | | |

PTO/AIA/14
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | MT12020TK |
|---|---|---|
|  | Application Number |  |

| Title of Invention | Wire Bond Mold Lock Method and Structure |
|---|---|

**Mailing Address Information:**

| Address 1 | | | |
|---|---|---|---|
| Address 2 | | | |
| **City** | | **State/Province** | |
| **Country** i | | Postal Code | |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Applicant Data may be generated within this form by selecting the Add button.

## Assignee Information including Non-Applicant Assignee Information:

Providing assignment information in this section does not subsitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

| **Assignee        1** |
|---|

Complete this section if assignee information, including non-applicant assignee information, is desired to be included on the patent application publication . An assignee-applicant identified in the "Applicant Information" section will appear on the patent application publication as an applicant. For an assignee-applicant, complete this section only if identification as an assignee is also desired on the patent application publication.

| If the Assignee or Non-Applicant Assignee is an Organization check here | ☒ |
|---|---|
| Organization Name | Freescale Semiconductor, Inc. |

Mailing Address Information For Assignee including Non-Applicant Assignee:

| Address 1 | 6501 William Cannon Drive West | | |
|---|---|---|---|
| Address 2 | | | |
| **City** | Austin | **State/Province** | TX |
| **Country** i | US | Postal Code | 78735 |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Assignee or Non-Applicant Assignee Data may be generated within this form by selecting the Add button.

WEB ADS 1.0

PTO/AIA/14
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | MT12020TK |
|---|---|---|
| | Application Number | |

| Title of Invention | Wire Bond Mold Lock Method and Structure |
|---|---|

## Signature:

| NOTE: This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications | | | | | |
|---|---|---|---|---|---|
| **Signature** | /Michael Rocco Cannatti/ | | | | |
| First Name | Michael | Last Name | Cannatti | Registration Number | 34791 |
| Additional Signature may be generated within this form by selecting the Add button. | | | | | |

MT12020TK

# WIRE BOND MOLD LOCK METHOD AND STRUCTURE

Leo M. Higgins III

## BACKGROUND OF THE INVENTION

### Field of the Invention

[001]   The present invention is directed in general to the field of packaged integrated circuit devices.  In one aspect, the present invention relates to an improved packaging scheme for producing integrated circuits with reduced delamination.

### Description of the Related Art

[002]   Microchips are formed from a variety of dissimilar materials.  A semiconductor die, formed from silicon, gallium arsenide, germanium, or some other semiconductor material, may be attached to the flag portion of a lead frame and/or heatsink which may be formed with copper or some other thermally conductive material.  The semiconductor die is bonded to the die flag with an adhesive material or structure, such as a die bond soldering compound.  In selected Quad Flat No-Lead (QFN) packages, the lead frame includes a series of lead contacts that serve as the output electrical contacts for the microchip.  To electrically couple the semiconductor die to the lead frame, metal wires extend between the semiconductor die and the lead contacts.  To protect the semiconductor die, wires, and lead contacts, a plastic mold compound encapsulates the semiconductor package.

[003]   A common problem with integrated circuit packages, such as power QFN (PQFN) and small outline integrated circuit (SOIC) power packages, is delamination of the mold compound from the region surrounding the die on the die attach flag(s), and other lead frame regions.  This problem is particularly acute with SOICs that use certain types of organic polymer-based die attach adhesives due to the bleed of liquid material from the die attach adhesive onto the surface of the flag surrounding the die.  Delamination also occurs with PQFN packages which use solder die attach for the high power die.  Mold compound delamination often leads to electrical problems due to variation in the drain-source on-state resistance (Rdson) and compensation series resistance (CSR),  and can also result in separation in the die attach region (die to solder, die to organic polymer adhesive, solder or adhesive to lead frame) in portions of the die attach interface.  While the previous

MT12020TK

descriptions refer to lead frame-based packages, delamination of the encapsulation material from conductor regions on the surface of a printed circuit board-based (PCB) package, also referred to as an organic package, may also be a problem.

## BRIEF DESCRIPTION OF THE DRAWINGS

[004]  The present invention may be understood, and its numerous objects, features and advantages obtained, when the following detailed description is considered in conjunction with the following drawings.

[005]  Figure 1 is an isometric top view of an example lead frame having a die flag that is suitable for use in conjunction with selected embodiments of the present invention.

[006]  Figure 2 is an isometric top view of a lead frame assembly having a plurality of wire wedge bond loops formed around the periphery of the die flag.

[007]  Figure 3 is an isometric top view of a lead frame assembly having a plurality of wire wedge bond loops formed at one or more predetermined locations on the lead frame and die flag.

[008]  Figure 4 is an isometric top view of an example lead frame having an integrated circuit die affixed to the die flag.

[009]  Figure 5 is a cross-sectional view of the plurality of wire wedge bond loops located along view line 5A-5B in Figure 4.

[010]  Figure 6 is an isometric top view of a lead frame assembly after encapsulation of the wire wedge bond loops and integrated circuit die with a mold compound.

[011]  Figure 7 is a cross-sectional view of the encapsulated wire wedge bond loops and integrated circuit die located along view line 7A-7B in Figure 6.

[012]  Figure 8 is an isometric top view of a lead frame assembly having a plurality of stud bumps formed at one or more predetermined locations on the lead frame and die flag.

[013]  Figure 9 is a cross-sectional and enlarged view of the encapsulated stud bumps located along view line 9A-9B in Figure 8.

[014]  Figure 10 illustrates an example flow chart depicting a process of fabricating a lead frame assembly and integrated circuit with an encapsulation mold compound package in accordance with selected embodiments of the present invention.

## DETAILED DESCRIPTION

[015]  A method and apparatus are described for fabricating and packaging one or more integrated circuit die by forming a mechanical mold locking feature on a lead frame

2

MT12020TK

assembly and/or die flag, or on similar metal features on a printed circuit board-based (PCB) substrate assembly, to eliminate or reduce delamination between the lead frame or PCB substrate and the mold compound encapsulation. In selected embodiments, the mechanical mold locking feature is formed with one or more raised structures extending above the lead frame assembly and/or die flag, or the PCB substrate assembly, and protruding laterally to provide a mechanical engagement surface to securely lock the encapsulation package to the lead frame or PCB substrate assembly. Examples of such mechanical mold locking features include wire wedge bond loops or chains, stud bumps or other protruding structures having a raised and laterally protruding feature formed over the lead frame or PCB substrate. With the protruding mechanical mold locking features formed on the lead frame assembly, the top of each integrated circuit die may be covered with a molding compound using any desired packaging scheme, including but not limited to QFN (Quad Flat No leads), SOIC (Small-Outline Integrated Circuit), QFP (Quad Flat Package), BGA (Ball Grid Array), or LGA (Land Grid Array) packaging. As will be appreciated, the application of the mold compound will mechanically engage and lock with the protruding mechanical mold locking features to increase adhesion to the mold compound and thereby reduce and/or prevent delamination.

[016] To illustrate an example fabrication sequence for packaging one or more integrated circuit devices, reference is now made to Figure 1 which provides an isometric top view 10 of an example lead frame 100 having a die flag 104 that is suitable for use in conjunction with selected embodiments of the present invention. As will be appreciated, the lead frame 100 and die flag 104 may be produced by stamping or etching a portion of a metal (e.g., copper or copper alloy) strip with a predetermined pattern of lead frame features (e.g., die attach flags, interior electrical contacts, exterior electrical contacts, etc.). In selected embodiments, the exposed die flag 104 of the copper lead frame may be plated on at least the exterior surface (e.g., with NiPdAu). The depicted lead frame 100 includes a plurality of interior electrical contacts 106, 109 and a plurality of exterior electrical contacts 110 that are connected to a dam bar 108 which is provided around the perimeter of lead frame 100. As will be appreciated, portions of the dam bar 108 are later removed (i.e., trimmed) from lead frame 100 during device processing to physically separate and electrically isolate adjacent electrical contacts 106/109, 110. The depicted lead frame 100 also includes a die attach flag 104 that may be connected to the frame around the periphery and/or to the dam bar 108. As

shown, the die attach flag 104 is recessed below the remainder of the lead frame and attached thereto by a tie bar 105, though this is not required in all embodiments.

[017]    The die attach flag 104 is configured to support an integrated circuit (IC) die or device, such as an application specific integrated circuit (ASIC). In particular and as shown in Figure 1, the intended location of an IC die is indicated with the dashed lines 112. Though not shown, it will be appreciated that multiple die flags may be included in a lead frame, each supporting a separate IC die.

[018]    Turning now to Figure 2, there is illustrated processing of the lead frame 100 subsequent to Figure 1 with an isometric top view 20 of a lead frame assembly having a plurality of wire wedge bond loops 114 formed around the periphery of the die flag 104 so as to be located outside the intended IC die location 112. In selected embodiments, the wire wedge bond loops 114 may be formed as a continuous string of wire which is bonded to the die flag 104 at different locations to form a chain of wire bond loops. In other embodiments, the wire wedge bond loops 114 may be formed with one or more separate wire wedge bond loops, or lengths of two or more loops formed where desired. For example, the wire wedge bond loops 114 may be formed by stitch-bonding aluminum wire. Suitable materials for use in forming the wire wedge bond loops 114 includes, but is not limited to aluminum, copper, or gold wires, though other materials may also be used that are bondable to the underlying die flag 104, or other desired metal surface. As formed, the wire wedge bond loops 114 are formed on the die flag 104 as raised (not etched, stamped, or recessed) mechanical locking features to prevent delamination between the die flag 104 and subsequently formed mold compound, thereby preventing delamination cracks from forming therebetween that can propagate to the die and then penetrating under the die. Depending on the material used to form the wire wedge bond loops 114, the areas of the die flag 104 to be bonded should have a bondable surface, such as Ag, or Ni/Pd/Au, or other surface finishes know to promote reliable wire bonding. As illustrated, the wedge bond loop segment(s) or chains may be formed and positioned on the die flag 104 to be close to the die edge so that the IC die may be attached to the die flag 104 at the intended IC die location 112.

[019]    In addition or in the alternative to forming the wire bond locks near the intended IC die location 112, it will be appreciated that one or more wire wedge bond loop segments may also be formed on other lead frame surface areas that often show delamination. Examples of such locations are shown in Figure 3 which provides an isometric top view 30 of

4

MT12020TK

a lead frame assembly having a plurality of wire wedge bond loops 114-118 formed at one or more predetermined locations on the lead frame 100 and die flag 104. As a first example, one or more wire wedge bond loops 115 may be formed along one of the interior electrical contacts 106 to prevent delamination at these locations. In other examples, one or more wire wedge bond loops 116, 117, 118 may be formed at a larger contact pin, such as one of the larger silver plated areas 109 to prevent delamination at these locations. As seen from the foregoing, selected embodiments may also be implemented with substrate-based packages, such as ball grid array (BGA) packages where large metal areas are exposed before molding.

[020]   To avoid possible contamination of the die flag 104 caused by the die attach process, the wire wedge bond loops 114-118 may be formed prior to die attach. However, it will also be appreciated that the wire wedge bond loops 114-118 may be formed on the die flag 104 after die attach, thereby avoiding a special process flow.

[021]   Turning now to Figure 4, there is illustrated processing of the lead frame 100 subsequent to Figure 3 with an isometric top view 40 of a lead frame assembly having an integrated circuit die 120 affixed to the die flag 104. Any desired die bonding may be used to secure the IC die 120 to the die attach flag 104 with a suitable bonding material (e.g., epoxy, glass, gold preform, solder paste, etc.). After being secured to flag 104, the IC die 120 is wire bonded to a selected group of interior electrical contacts 106 with, for example, segments of gold wire 121.

[022]   Turning now to Figure 5, there is illustrated a cross-sectional view 50 of the plurality of wire wedge bond loops 114 located along view line 5A-5B in Figure 4. When forming the mechanical mold locking feature with wire wedge bond loops 114, it will be appreciated that the shape of the wire bond loops provides an excellent profile or contour shape enabling the mold compound locking function. For example, formation of the wire wedge bond loops 114 as aluminum wire loops provides a low loop height and allows the mold compound to flow under the loops for secure locking. However, other raised structures may be used to form the mechanical mold locking feature on the die flag 104 where such structures include lateral protrusions or extensions for mechanically locking with the mold compound.

[023]   Turning now to Figure 6, there is illustrated processing of the lead frame 100 subsequent to Figure 4 with an isometric top view 60 of an encapsulated device in which the lead frame 100, integrated circuit die 120, wire wedge bond loops 114, and wire bonds 121

5

MT12020TK

(not shown) are encapsulated with a molding compound 124. Though wire wedge bond loops 115-118 are not shown, it will be appreciated that such structures may also be covered and encapsulated by the molding compound 124. In particular, after the integrated circuit die 120 has been die bonded to flag 104 and wire bonded to selected ones of interior electrical contacts 106, the assembled lead frame 100 and wire bonded die 120 may be encapsulated (e.g., with an over-molded or transfer molded with a composite material (e.g., plastic with a particulate filler material, such as fused silica) to create a molded body 122, 124. As formed, the top of the IC die 120 will be covered with the molding compound 124 and thereby protected from the environment. In addition, the exterior electrical contacts 110 may be bent and the dam bar 108 trimmed as part of the package processing.

[024]    Turning now to Figure 7, there is illustrated a cross-sectional view 70 of the encapsulated wire wedge bond loops 114 and integrated circuit die 120 located along view line 6A-6B in Figure 6. With mold compound 124 totally enveloping the wedge bond wire loops 114, the wire bond loop features provide excellent and almost continuous (with chain stitch bond wire lengths) locking to the mold compound 124. In selected embodiments, the mold compound 124 may contain aluminum adhesion promoters to promote chemical bonding to the aluminum wire loops 114, further improving mold locking. In selected embodiments where aluminum wires are used to form the wire loops 114, the aluminum wires may have large diameters, where the large diameter structures of such aluminum wire loops provide enhanced strength for the mold compound lock function. For example, wire pull breaks on the 15 mil Al wire stitch bonds require a pull load of over 1000 g. In other embodiments, small diameter aluminum wires may also be used.

[025]    As described herein, the wire wedge bond loop structures provide a strong mechanical mold locking feature that extends above the die flag. In contrast to conventional approaches which use etched, stamped, or recessed features in the lead frame/die flag, the wire wedge bond loop structures described herein provide a laterally protruding element to enable the locking engagement with the mold compound. However, it will be appreciated that other types of protruding mold lock features may be used to engage with the mold compound. For example, reference is now made to Figure 8 which illustrates processing of the lead frame 100 subsequent to Figure 1 with an isometric top view 80 of a lead frame assembly having a plurality of stud bumps 214-215 formed at one or more predetermined locations on the lead frame 100 and die flag 104. In a first example embodiment, the stud

6

MT12020TK

bumps 214 are formed around the periphery of the die flag 104 so as to be located outside the intended IC die location 112. In other example embodiments, the stud bumps 215 are formed as a fence around a down bond location (e.g., at a larger contact pin 109) that lifts due to delamination around the power die due to solder flux residue. Wherever located, the stud bumps 214-215 may be formed as wire bond stud bumps that are bonded to the die flag 104 at different locations. In other embodiments, the stud bumps 214-215 may be formed with gold or copper ball bonds using conventional ball bonding processes in which a combination of heat, pressure and ultrasonic energy are applied form an intermetallic connection or weld between a wire and a connection pad or bonding site on the lead frame 100. Suitable materials for use in forming the stud bumps 214-215 include, but are not limited to silver, aluminum, copper, or gold, though any other bond wire bump material may also be used that is bondable to the underlying die flag 104. It is understood that the stud bumps may not have the idealized shape as stud bumps 214. For example, an aluminum stud would be formed by breaking the aluminum wire in the region immediately adjacent to the wedge bond, leaving a roughly rectangular-shaped aluminum stud. As formed, the stud bumps 214-215 are formed on the die flag 104 as raised (not etched, stamped, or recessed) mechanical locking features to prevent delamination between the die flag 104 and subsequently formed mold compound, thereby preventing delamination cracks from forming therebetween that can propagate to the die and then penetrating under the die.

[026]   Turning now to Figure 9, there is illustrated a cross-sectional view 90 of the plurality of stud bumps 214 located along view line 9A-9B in Figure 8. When forming the mechanical mold locking feature with stud bumps 214, it will be appreciated that the shape of the stud bumps 214 should provide a laterally protruding profile or contour enabling the mold compound locking function. For example and as illustrated with the enlarged view, formation of the stud bumps 214 as copper or gold wire bond stud bumps on the die flag 104 provides a low stud height and allows the mold compound to flow under the convex-shaped periphery 216, 217 of each stud bump 214. Raised above the surface of the lead frame 104, the surfaces of the stud bumps 214 provide mold compound locking benefits as a combination of any surface adhesion (especially where mold compounds contain adhesion promoters to promote chemical bonding to the stud bump surface) and as structural connection due to the mold compound penetrating under the periphery 216, 217 of the ball

MTI2020TK

bonds 214 where it overhangs the surface of the underlying substrate (e.g., die flag, bond pad, lead frame, etc.).

[027]    Figure 10 illustrates an example flow chart depicting a process of fabricating a lead frame assembly and integrated circuit with a mold compound encapsulant package having protruding mold lock structures in accordance with selected embodiments of the present invention.  The process begins at step 130 with the fabrication of a wafer using any desired semiconductor fabrication sequence.  At a minimum, the wafer is formed to include a plurality of integrated circuit die, typically having identical circuitry.  At this stage, additional wafers may be fabricated with different integrated circuit die (e.g., power circuit die).  At this step, each wafer is singulated into one or more integrated circuit dice.

[028]    At step 132, each integrated circuit die is placed on a lead frame structure which includes a die flag.  The die flag may be configured in recessed relation to the remainder of the lead frame structure.  At this step, a plurality of integrated circuit die may be aligned and affixed to the lead frame structure.

[029]    At step 134, the mold lock structures are formed on the lead frame and/or die flag die.  As formed, the mold lock structures are raised (not half-etched) mechanical locking features which protrude laterally over the die flag or lead frame elements at predetermined locations.  In selected embodiments, the mold lock features are formed as one or more wire wedge bond loops or chains using an aluminum, copper, silver or gold wire bonding process to form the loop or chain features on the die flag or lead frame elements.  In other embodiments, the mold lock features are formed as one or more aluminum, copper, silver, or gold ball bond studs, or wedge bond studs, using an aluminum, copper, silver or gold wire bonding process to form the stud bumps on the die flag or lead frame elements, such as by thermosonically or ultrasonically bonding electrical bond wires to the internal electrical leads or die flag(s) before cutting or pulling the wires away.

[030]    In the sequence shown in Figure 10, the mold lock structures are formed at step 134 after the die attach step 132.  This allows the mold lock structure formation step 134 and wire bonding step 136 to occur together, thereby avoiding a special process of forming the mold lock structures before die attach, though this sequence is also possible (as indicated with the switching arrow 133).  By forming the mold lock structures prior to die attach, die attach contamination at the die flag where the mold lock structures are formed can be avoided.

MT12020TK

[031]   At step 136, the integrated circuit die is electrically connected to the internal lead frame elements, such as by using a wire bonding process to connect the bond pads of the integrated circuit die to the internal electrical leads in the lead frame.  In selected embodiments, the electrical bond wires are thermosonically bonded to the internal electrical leads and to the bond pads on the integrated circuit die, while in other embodiments the bond wires are connected ultrasonically.

[032]   At step 138, a molding compound is applied to surround and protect the die.  As formed, the cross-section shape of the wire bond locks will provide a raised and laterally protruding structural contour for secure mold compound locking.  For example, aluminum wire loops provide a lateral structural loop height structure, and the aluminum wedge bond region provides a convex-shaped periphery under which the mold compound flows for secure locking.  In addition or in the alternative, stud bump locks will provide a lateral contour for mold compound locking so that the mold compound flows under a convex-shaped periphery of each stud bump.  Wedge bond loop segments and/or stud bumps may also be formed on other lead frame surface areas that often show delamination, such as large silver plated areas.  In addition, the molding compound covers the electrical leads, bond pads, and bond wires at the topside surface of the die, thereby preventing corrosive materials or fluids from reaching the sensitive portions of the integrated circuit die.  In addition, the added surface area provided by the aluminum wedge bond loops, and by the stud bumps, provides increased adhesion of the mold compound, particularly when the mold compound is formulated with adhesion promoters for the metal used to form the wedge bond loops or stud bumps.

[033]   By now, it should be appreciated that there has been provided herein a microchip structure and associated method for fabrication.  The disclosed microchip structure includes a substrate structure and a first chip (e.g., a power integrated circuit die) affixed thereto, such as by using solder die attach.  The substrate structure may include, in selected embodiments, a die flag portion of a lead frame structure having a plurality of lead frame elements which form electrical connectors.  In addition, the microchip structure includes a mold lock affixed to and laterally protruding above the substrate structure.  In selected embodiments, the mold lock may be formed with one or more wire wedge bond loops or chains formed on the substrate structure as raised mechanical locking features to prevent delamination between the molded body and the substrate structure.  In other embodiments, the mold lock may be formed with one or more stud bumps formed on the substrate structure

9

as raised mechanical locking features to prevent delamination between the molded body and the substrate structure. In other embodiments, the mold lock is formed with one or more dummy wire bond loops attached to a lead frame element of the substrate structure. In other embodiments, the mold lock is formed with one or more wedge-to-wedge loops attached to the substrate structure and not to the first chip. The mold lock may also be formed as a plurality of mold lock structures which are positioned peripherally around a die flag or on one or more interior electrical contact leads or on a tie bar of the substrate structure, and/or as a plurality of mold lock structures which are positioned as a fence around a down bond region. Finally, the microchip structure includes a molded body formed at least partially around the first chip and around the mold lock to prevent delamination between the mold body and the substrate structure. In selected embodiments, the molded body is a QFN (Quad Flat No leads), SOIC (Small-Outline Integrated Circuit), QFP (Quad Flat Package), BGA (Ball Grid Array), LGA (Land Grid Array), PQFN (Power Quad Flat No leads), TSSOP (Thin Shrink Small Outline Package), PDIP (Plastic Dual In-line Package), or PLCC (Plastic Leaded Chip Carrier) packaging body. The microchip structure may also include or more electrical connectors which are affixed to electrically connect one or more bond pads formed on the first chip to a corresponding lead frame element of the substrate structure which extends through the molded body.

[034] In another form, there is provided a packaged microelectronic device and associated method for packaging same. In the disclosed methodology, a lead frame is provided that has a first die paddle and one or more electrical connector elements. On the lead frame, one or more positive mold lock structures are formed at predetermined locations on a top surface of the lead frame which laterally protrude above the top surface. In selected embodiments, the positive mold lock structures are formed using a wedge bonding process to form one or more wedge-to-wedge loops as dummy features, where the primary function is not an electrical function, on the lead frame. In other embodiments, the positive mold lock structures are formed using a wedge bonding process to form one or more wedge-to-wedge loops on the first die paddle and/or on the one or more electrical connector elements. In other embodiments, the positive mold lock structures are formed as one or more wedge-to-wedge loops which are positioned as a fence around a down bond region. In other embodiments, the positive mold lock structures are formed using a ball bonding process to form one or more stud bumps on the first die paddle or on the one or more electrical connector elements or on a

10

MT12020TK

tie bar of the lead frame. In other embodiments, the positive mold lock structures are formed by forming a stud bump by ultrasonically forming a wedge bond with an attached wire component and then breaking off the wire component directly adjacent to the wedge bond, leaving the wedge bond region as the stud bump on the first die paddle or on the one or more electrical connector elements or on a tie bar of the lead frame. In addition, a microelectronic device is mounted onto the lead frame before or after forming the one or more positive mold lock structures. Thereafter, a molded body is formed on at least the top surface of the lead frame to encapsulate the microelectronic device attached to the lead frame and engage with the one or more positive mold lock structures to promote adhesion between the molded body and the lead frame.

[035] In yet another form, there is provided a packaged device and method for making same. As disclosed, the packaged device includes a lead frame substrate with one or more integrated circuit die attached on a first side. The packaged device also includes a plurality of raised wire bond mold lock structures formed on the first side of the lead frame substrate as wedge bond wire loops or stud bumps. In addition, the packaged device includes a molded body which encapsulates the one or more integrated circuit die and mechanically interlocks with the plurality of raised wire bond mold lock structures by flowing around and below over-hanging elements of the raised wire bond mold lock structures to improve adhesion between the molded body and the lead frame substrate.

[036] Various illustrative embodiments of the present invention have been described in detail with reference to the accompanying figures. While various details are set forth in the foregoing description, it will be appreciated that the present invention may be practiced without these specific details, and that numerous implementation-specific decisions may be made to the invention described herein to achieve the device designer's specific goals, such as compliance with process technology or design-related constraints, which will vary from one implementation to another. While such a development effort might be complex and time-consuming, it would nevertheless be a routine undertaking for those of ordinary skill in the art having the benefit of this disclosure. For example, selected aspects are depicted with reference to simplified drawings of an integrated circuit die and associated packaging without including every device feature or geometry in order to avoid limiting or obscuring the present invention. In addition, certain elements in the figures are illustrated for simplicity and clarity and have not necessarily been drawn to scale. It is also noted that, throughout this detailed

description, certain layers of materials will be deposited, removed and otherwise processed to form the depicted integrated circuit die and associated packaging structures. Where the specific procedures for forming such layers are not detailed below, conventional techniques to one skilled in the art for depositing, removing or otherwise forming such layers at appropriate thicknesses shall be intended. Such details are well known and not considered necessary to teach one skilled in the art of how to make or use the present invention.

[037]   Although the described exemplary embodiments disclosed herein are directed to various packaged semiconductor devices and methods for making same, the present invention is not necessarily limited to the example embodiments which illustrate inventive aspects of the present invention that are applicable to a wide variety of device packaging processes and/or devices. While the disclosed packaged semiconductor devices may be implemented with one or more power integrated circuits formed on a lead frame assembly, the fabrication process described herein is not limited to any particular integrated circuit arrangement or lead frame connector assembly, but is also applicable to any one of numerous package devices that include an encapsulating material formed to protect integrated circuit die mounted on a die flag. Thus, the particular embodiments disclosed above are illustrative only and should not be taken as limitations upon the present invention, as the invention may be modified and practiced in different but equivalent manners apparent to those skilled in the art having the benefit of the teachings herein. For example, the methodology of the present invention may be applied using materials other than expressly set forth herein. In addition, the process steps may be performed in an alternative order than what is presented. For example, the sequence of affixing a die and forming the mechanical locking features may be reversed. Accordingly, the foregoing description is not intended to limit the invention to the particular form set forth, but on the contrary, is intended to cover such alternatives, modifications and equivalents as may be included within the spirit and scope of the invention as defined by the appended claims so that those skilled in the art should understand that they can make various changes, substitutions and alterations without departing from the spirit and scope of the invention in its broadest form.

[038]   Benefits, other advantages, and solutions to problems have been described above with regard to specific embodiments. However, the benefits, advantages, solutions to problems, and any element(s) that may cause any benefit, advantage, or solution to occur or become more pronounced are not to be construed as a critical, required, or essential feature or

MT12020TK

element of any or all the claims. As used herein, the terms "comprises," "comprising," or any other variation thereof, are intended to cover a non-exclusive inclusion, such that a process, method, article, or apparatus that comprises a list of elements does not include only those elements but may include other elements not expressly listed or inherent to such process, method, article, or apparatus.

MT12020TK

## WHAT IS CLAIMED IS:

1.      A microchip structure, comprising:

a substrate structure;

a first chip affixed to the substrate structure;

a mold lock affixed to and laterally protruding above the substrate structure; and

a molded body formed at least partially around the first chip and around the mold lock, wherein the mold lock is configured to prevent delamination between the molded body and the substrate structure.

2.      The microchip structure of claim 1, where the substrate structure comprises a die flag portion of a lead frame structure comprising a plurality of lead frame elements which form electrical connectors extending through the molded body.

3.      The microchip structure of claim 1, where the first chip comprises a power integrated circuit die that is affixed to the substrate structure using solder die attach.

4.      The microchip structure of claim 1, where the mold lock comprises one or more wire wedge bond loops or chains formed on the substrate structure as raised mechanical locking features.

5.      The microchip structure of claim 1, where the mold lock comprises one or more stud bumps formed on the substrate structure as raised mechanical locking features.

6.      The microchip structure of claim 1, further comprising one or more electrical connectors which are affixed to electrically connect one or more bond pads formed on the first chip to a corresponding lead frame element of the substrate structure which extends through the molded body.

7.      The microchip structure of claim 1, where the mold lock comprises one or more dummy wire bond loops attached to a lead frame element of the substrate structure.

MT12020TK

8.    The microchip structure of claim 1, where the mold lock comprises one or more wedge-to-wedge loops attached to the substrate structure and not to the first chip.

9.    The microchip structure of claim 1, where the mold lock comprises a plurality of mold lock structures which are positioned peripherally around a die flag or on one or more interior electrical contact leads or on a tie bar of the substrate structure.

10.    The microchip structure of claim 1, where the mold lock comprises a plurality of mold lock structures which are positioned as a fence around a down bond region.

11.    A method comprising:
providing a lead frame comprising a first die paddle and one or more electrical connector elements; and
forming one or more positive mold lock structures at predetermined locations on a top surface of the lead frame which laterally protrude above the top surface.

12.    The method of claim 11, further comprising mounting a microelectronic device onto the lead frame before or after forming the one or more positive mold lock structures.

13.    The method of claim 11, further comprising forming a molded body on at least the top surface of the lead frame to encapsulate a microelectronic device attached to the lead frame and engage with the one or more positive mold lock structures to promote adhesion between the molded body and the lead frame.

14.    The method of claim 11, where forming one or more positive mold lock structures comprises using a wedge bonding process to form one or more wedge-to-wedge loops as dummy features on the lead frame.

15.    The method of claim 11, where forming one or more positive mold lock structures comprises using a wedge bonding process to form one or more wedge-to-wedge loops on the first die paddle.

MT12020TK

16.    The method of claim 11, where forming one or more positive mold lock structures comprises using a wedge bonding process to form one or more wedge-to-wedge loops on the one or more electrical connector elements.

17.    The method of claim 11, where forming one or more positive mold lock structures comprises forming one or more wedge-to-wedge loops which are positioned as a fence around a down bond region.

18.    The method of claim 11, where forming one or more positive mold lock structures comprises using a ball bonding process to form one or more stud bumps on the first die paddle or on the one or more electrical connector elements or on a tie bar of the lead frame.

19.    The method of claim 11, where forming one or more positive mold lock structures comprises forming a stud bump by ultrasonically forming a wedge bond with an attached wire component and then breaking off the wire component directly adjacent to the wedge bond, leaving the wedge bond region as the stud bump on the first die paddle or on the one or more electrical connector elements or on a tie bar of the lead frame.

20.    A packaged device, comprising:
a lead frame substrate with one or more integrated circuit die attached on a first side;
a plurality of raised wire bond mold lock structures formed on the first side of the lead frame substrate as wedge bond wire loops or stud bumps; and
a molded body formed to encapsulate at the one or more integrated circuit die and to mechanically interlock with the plurality of raised wire bond mold lock structures to improve adhesion between the molded body and the lead frame substrate.

16

MT12020TK

## ABSTRACT OF THE DISCLOSURE

[039]   A method and apparatus are described for fabricating a microchip structure (70) which protects interior electrical integrated circuits and components (120) attached to a lead frame die flag (104) using a molding compound (124) that mechanically interlocks with one or more positive mold lock structures formed as dummy wire loops (114) or stud bumps (214) that are attached to the lead frame (100) and/or die flag (104).

HIGGINS
MT12020TK

*1/5*



FIG. 1



FIG. 2

HIGGINS
MT12020TK

*2/5*



FIG. 3



FIG. 4

HIGGINS
MT12020TK

*3/5*



FIG. 5



FIG. 6



FIG. 7

HIGGINS
MT12020TK

*4/5*



FIG. 8



FIG. 9

HIGGINS
MT12020TK

*5/5*



FIG. 10

| DECLARATION FOR UTILITY OR DESIGN PATENT APPLICATION (37 CFR 1.63) COMBINED WITH POWER OF ATTORNEY | Attorney Docket Number | MT12020TK |
|---|---|---|
| | First Named Inventor | Leo M. Higgins III |
| | COMPLETE IF KNOWN | |
| | Application Number | |
| | Filing Date | |
| ☒ Declaration Submitted With Initial Filing  **OR**  ☐ Declaration Submitted after Initial Filing (surcharge (37 CFR 1.16 (e)) required) | Group Art Unit | |
| | Examiner Name | |

**I hereby declare that:**

My mailing address at which I customarily receive mail and my residence address, if different, are as stated below next to my name.

I believe that I and any other inventor(s) named below to be the original inventor or original joint inventors of a claimed invention in the application for which a patent is sought entitled:

## WIRE BOND MOLD LOCK METHOD AND STRUCTURE

the specification of which:

☒ is attached hereto

**OR**

☐ was filed on: (MM/DD/YYYY) _____ as United States Application Number or PCT International

Application Number _____ and was amended on (MM/DD/YYYY) _____ *(if applicable)*.

_____                    _____

The above-identified application was made or authorized to be made by me.

**Authorization To Permit Access To Application by Participating Offices**

☒ If checked, the undersigned hereby grants the USPTO authority to provide the European Patent Office (EPO), the Japan Patent Office (JPO), the Korean Intellectual Property Office (KIPO), the World Intellectual Property Office (WIPO) and any other intellectual property offices in which a foreign application claiming priority to the above identified application is filed access to the above-identified patent application. See 37 CFR 1.14(c) and (h). This box should not be checked if the applicant does not wish the EPO, JPO, KIPO, WIPO, or other intellectual property office in which a foreign application claiming priority to the above-identified application is filed to have access to the application.

In accordance with 37 CFR 1.14(h)(3), access will be provided to a copy of the application-as-filed with respect to: 1) the above-identified application, 2) any foreign application to which the above-identified application claims priority under 35 USC119(a)-(d) if a copy of the foreign application that satisfies the certified copy requirement of 37 CFR 1.55 has been filed in the above-identified US application, and 3) any U.S. application from which benefit is sought in the above-identified application.

In accordance with 37 CFR 1.14(c), access may be provided to information concerning the date of filing the Authorization to Permit Access to Application by Participating Offices.

I hereby appoint the attorney(s) or agent(s) associated with: 53364 to prosecute this application and transact all business in the patent and trademark office connected therewith.

Address all correspondence to:    **Customer Number**    53364
                Attorney/Agent Name:    Michael Rocco Cannatti
                Telephone:              (512) 338-9100
                Facsimile:              (512) 345-7225

I hereby declare that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. 1001.

☐ A petition has been filed for this unsigned inventor.

**Full Name of Sole or First Inventor:**    Leo M. Higgins III

_____    July 18, 2014
            Inventor's Signature                    Date

Residence:    Austin            Texas        78726
            City            State        Postal Code

10603 Queensbury Cove
            Mailing Address

10603 Queensbury Cove
            Physical Address

Austin            Texas        78726        US
    City            State        Postal Code        Country

MT12020TK

PTO/AIA/82A (07-12)
Approved for use through 11/30/2014. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## TRANSMITTAL FOR POWER OF ATTORNEY TO ONE OR MORE REGISTERED PRACTITIONERS

NOTE: This form is to be submitted with the Power of Attorney by Applicant form (PTO/AIA/82B or equivalent) to identify the application to which the Power of Attorney is directed, in accordance with 37 CFR 1.5. If the Power of Attorney by Applicant form is not accompanied by this transmittal form or an equivalent, the Power of Attorney will not be recognized in the application.

| | |
|---|---|
| Application Number | |
| Filing Date | |
| First Named Inventor | Leo M. Higgins III |
| Title | Wire Bond Mold Lock and Structure |
| Art Unit | |
| Examiner Name | |
| Attorney Docket Number | MT12020TK |

**SIGNATURE of Applicant or Patent Practitioner**

| | | | |
|---|---|---|---|
| Signature | /Michael Rocco Cannatti/ | Date | July 18, 2014 |
| Name | Michael Rocco Cannatti | Telephone | 512-338-9100 |
| Registration Number | 34,791 | | |

NOTE: This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4(d) for signature requirements and certifications.

■ *Total of 1_____ forms are submitted.

This collection of information is required by 37 CFR 1.31, 1.32 and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*



(19) Europäisches Patentamt
European Patent Office
Office européen des brevets



(11) Publication number: **0 687 008 A2**

(12) **EUROPEAN PATENT APPLICATION**

(21) Application number: **95108620.6**

(51) Int. Cl.6: **H01L 23/495**, H01L 21/48

(22) Date of filing: **06.06.95**

(30) Priority: **06.06.94 US 254842**

(43) Date of publication of application:
**13.12.95 Bulletin 95/50**

(84) Designated Contracting States:
**DE FR GB**

(71) Applicant: **MOTOROLA, INC.**
**1303 East Algonquin Road**
**Schaumburg, IL 60196 (US)**

(72) Inventor: **Ganesan**
**5972 West Gail Drive**
**Chandler,**

**Arizona 85226 (US)**
Inventor: **Berg, Howard Martin**
**12017 North 84th Street**
**Scottsdale,**
**Arizona 85260 (US)**

(74) Representative: **Hudson, Peter David et al**
**Motorola**
**European Intellectual Property**
**Midpoint**
**Alencon Link**
**Basingstoke,**
**Hampshire RG21 1PL (GB)**

(54) **Method and apparatus for improving interfacial adhesion between a polymer and a metal**

(57) A leadframe (11) and a method for improving adhesion of a polymer (17, 19) to the leadframe (11). The leadframe (11) has a flag (14) having a top surface (15) and a bottom surface (18), and leads (12). Microscopic locking features (31) are formed in the top surface (15) and the bottom surface (18) of flag (14) by bombarding the flag (14) with a grit material. Thus, the top and bottom surfaces (15, 18) are roughened. A semiconductor die (13) is attached to the flag (14) by a die attach material (17) and the flag (13), the semiconductor material (13), and portions of the leads (12) are encapsulated by a molding compound. The pits improve the adhesion of the die attach material (17) and the molding compound (19) to the leadframe (11).



FIG. 1



FIG. 2

EP 0 687 008 A2

Rank Xerox (UK) Business Services
(3.10/3.09/3.3.4)

EP 0 687 008 A2

## Background of the Invention

The present invention relates, in general, to semiconductor packages, and more particularly, to substrate-polymer interfaces of semiconductor packages.

Generally, semiconductor die are encapsulated within packages to prevent them from becoming damaged by external stresses and to provide a means for carrying electrical signals to and from the devices in the semiconductor die. Included in the repertoire of semiconductor die package types are dual-in-line packages, TAB packages, plastic quad flat packages, plastic ball grid array packages, and multichip modules. A common technique for packaging semiconductor die includes mounting them to a support, such as a leadframe, and encapsulating the semiconductor die and a portion of the leadframe within a polymer such as a mold compound.

An important aspect in packaging semiconductor die within a mold compound is preventing delamination of the mold compound from the substrate to which the semiconductor die are mounted. Typically, delamination occurs at the weakest interfaces between the mold compound and the substrate, resulting in the accumulation of moisture at the delamination sites. During high temperature process steps, e.g., solder reflow processes, the moisture vaporizes and causes the semiconductor package to crack via a phenomenon commonly referred to as a "popcorn effect."

To prevent delamination from occurring, semiconductor device manufacturers have sought ways to improve the interfacial adhesion between the polymer and the substrate. One technique for improving adhesion is to treat the substrate surface with silane. Although silane treatment improves mold compound adhesion, it is difficult to selectively deposit the silane and to control the thickness of the deposited silane. In addition, silane has a relatively short shelf-life and is susceptible to degradation during high temperature exposures such as occurs during die bond cure and wire bond processing steps. Thus, the leadframes must be treated with silane just before the encapsulation by the mold compound. Another technique for decreasing delamination is to form oxides on the substrate, e.g., cuprous or cupric oxides on a copper leadframe. However, selectively forming oxides on the leadframe is difficult and expensive.

Accordingly, it would be advantageous to have a substrate and a method for improving interfacial adhesion between a polymer and the substrate. In addition, it would be advantageous for the substrate and the method to be simple, inexpensive, and to readily fit into standard packaging regimes.

## Brief Description of the Drawings

FIG. 1 illustrates a cross-sectional view of a semiconductor die mounted to a semiconductor leadframe roughened in accordance with a first embodiment of the present invention;
FIG. 2 illustrates an enlarged view of a portion the semiconductor leadframe of FIG. 1;
FIG. 3 illustrates a plan view of a leadframe flag surface in accordance with a second embodiment of the present invention; and
FIG. 4 illustrates a plan view of a leadframe flag surface in accordance with a third embodiment of the present invention.

## Detailed Description of the Drawings

Generally, the present invention provides a method for improving interfacial adhesion between a polymer, such as die attach or mold compounds, and a metal surface or a metal alloy surface, such as leadframe surfaces or die pad surfaces on printed wiring boards. Interfacial adhesion is improved by roughening a portion of the metal or metal alloy surface, thereby increasing the surface area of the substrate and thus the number of contact sites to which the polymer can bond. In other words, increasing the surface area of the substrate increases the amount of polymer in contact with the substrate, thereby providing a higher resistance to delamination of the die attach material or mold compound from the metal surface. In addition, the roughened substrate surface has microscopic protrusions (shown in FIG. 2) that serve as locking features that further strengthen the bond between the polymer and the substrate surface. In accordance with the method of the present invention, the surface of the leadframe is roughened by bombarding it with a grit material in a gaseous medium.

FIG. 1 illustrates a cross-sectional view of a semiconductor die 13 mounted to a semiconductor leadframe 11 roughened in accordance with a first embodiment of the present invention. More particularly, leadframe 11 includes leads 12 and a flag 14 having a top surface 15 and a bottom surface 18 roughened using a high velocity gas stream in which abrasive particles are suspended. In other words, surfaces 15 and 18 are bombarded with a grit material carried in a gaseous medium, i.e., one of the metal or metal alloy surface is gritblasted. Preferably, the gaseous medium carrying the grit material blown at leadframe 11 contacts leadframe 11 at a pressure ranging between approximately 0.20 megaPascals and approximately 0.70 megaPascals. The abrasive particles may be grit materials such as, for example, sand, silicon dioxide, aluminum oxide, silicon carbide, bicarbonates, and the like. The gaseous medium may be, for

example, nitrogen, argon, air, and the like.

The grit material roughens top and bottom surfaces 15 and 18, respectively, by creating pits in surfaces 15 and 18, which increase the surface area of leadframe 11. Preferably, the metal surfaces have an average surface roughness of at least 1,500 angstroms after being roughened by the grit material. Average surface roughness is defined as the average vertical peak to trough distance along surface 15 and along surface 18, and illustrated by arrows 32 of FIG. 2. Although only surfaces 15 and 18 of flag 14 are shown as being roughened, it should be understood that roughening of metal surfaces to improve polymer adhesion is not restricted to leadframe flag surfaces only, but applies to any part of the leadframe including tie bars, leadframe fingers, and the like. It should also be understood that suitable materials for the leadframe include metals such as copper and aluminum, as well as metal alloys such as alloys of copper, alloys of aluminum, and alloys of nickel such as an iron-nickel alloy. The leadframe may also have a palladium-nickel preplated surface. Other suitable materials that may be roughened in accordance with the present invention include plated metal surfaces such as, for example, silver plated or gold plated surfaces.

Now referring to FIG. 2, an enlarged view of the portion of gritblasted surface 15 of flag 14 is shown. Surface 15 has macroscopic undulations 30 characterized by the average surface roughness (shown by arrows 32). In addition, surface 15 has microscopic locking features 31 along undulations 30 of surface 15. It should be understood that macroscopic undulations 30 and microscopic locking features 31 cooperate to increase the resistance to delamination between the polymer and surface 15, i.e., the polymer-metal interface.

Referring again to FIG. 1, semiconductor die 13 is coupled to surface 15 of flag 14 by means of an adhesive material 17. Suitable materials for adhesive material 17 include thermoset or thermoplastic epoxy die attach materials, silicone based die attach materials, and polyimide based die attaches. Leads 12 are coupled to flag 14 by interconnects 16. Subsequently, semiconductor die 13, flag 14, interconnects 16, and portions of leads 12 are encapsulated within mold compound 19 using, for example, a transfer molding process. The pits in surfaces 15 and 18 increase the surface area and the number of microscopic locking features of flag 14, thereby increasing the contact area and strengthening the adhesion of die attach material and mold compound to leadframe 11. Materials for attaching semiconductor die to substrates such as a leadframe as well as materials for encapsulating the semiconductor die and leadframes are well known to those skilled in the art.

FIG. 3 illustrates a second embodiment of a leadframe flag or die pad 20 roughened in accordance with the present invention. Generally, macroscopic delamination of die attach materials and mold compounds is initiated along the edges and at the corners of leadframe flags such as leadframe flag 20 because microscopic delamination forces are amplified in these regions. Accordingly, in the second embodiment of the present invention, leadframe flag 20 is roughened along the periphery 22 and in the corners 23 of leadframe flag 20. In other words, critical portions of the surfaces of leadframe flag 20 are preferentially roughened, i.e., the corners 23 of leadframe flag 20 as well as the portions of leadframe flag 20 adjacent the edges. Although only one major surface of leadframe flag 20 is shown, it is preferable that both the periphery and the corners of both the top and bottom major surfaces of leadframe flag 20 be roughened. Thus, a plurality of portions of the semiconductor leadframe are roughened.

FIG. 4 illustrates a third embodiment of a leadframe flag or die pad 26 roughened in accordance with the present invention. In this embodiment, the periphery 27, corners 28, and localized central regions 29 of the major surfaces of leadframe flag 26 are roughened. Polymers such as mold compounds and die attach materials strongly adhere to the roughened localized central regions. Thus, these regions of high adhesion impede the spreading of delamination, if delamination has been initiated.

By now it should be appreciated that a method of improving the delamination resistance between a polymer and a metal or a metal alloy surface has been provided. This method provides a simple, low-cost technique for improving adhesion of a polymer to a leadframe that is robust to package assembly processes and is independent of the metal or metal alloy surface. Adhesion of the die attach or mold compounds to the metallic surface is increased by the formation of microscopic locking features in the metallic surface. In addition, undulations are formed in the metallic surface that cooperate with the microscopic locking features to further increase the resistance of delamination of the die attach or mold compounds from the metallic surface. An important advantage of the surface roughening technique of the present invention over chemical roughening techniques is the formation of microscopic locking features. More particularly, it is believed that microscopic locking features are not formed using chemical roughening methods and that these features significantly increase the adhesion of the die attach or mold compounds to the metallic surfaces.

While we have shown and described specific illustrative embodiments of the present invention,

EP 0 687 008 A2

different embodiments, modifications and improvements will occur to those skilled in the art. We desire it to be understood, therefore, that this invention is not limited to the particular forms shown. We intend in the appended claims to cover all modifications that do not depart from the spirit and scope of this invention. For example, the die pads or chip pad locations on a printed wiring board may be roughened to improve adhesion of the polymer.

**Claims**

1. A method for improving an interfacial adhesion between a polymer (17, 19) and one (15, 18) of a metal surface or a metal alloy surface, comprising the steps of:
   providing the one (15, 18) of a metal surface or a metal alloy surface;
   bombarding the one (15, 18) of a metal surface or a metal alloy surface with a grit material, the grit material suspended in a gaseous carrier medium; and
   encapsulating a portion of the one (15, 18)) of a metal surface or a metal alloy surface with a molding compound (19).

2. The method of claim 1, wherein the step of bombarding the one (15, 18) of a metal surface or a metal alloy surface with a grit material further comprises gritblasting the one (15, 18) of a metal surface or a metal alloy surface.

3. The method of claim 1, wherein the step of providing the one (15, 18) of a metal surface or a metal alloy surface includes providing a semiconductor leadframe (11) having a surface, the semiconductor leadframe (11) selected from the group consisting of a metal and a metal alloy.

4. The method of claim 3, wherein the step of bombarding the one (15, 18) of a metal surface or a metal alloy surface with a grit material includes bombarding the one (15, 18) of a metal surface or a metal alloy surface until the surface of the one (15, 18) of a metal surface or a metal alloy surface has microscopic locking features (31).

5. A method for improving interfacial adhesion between a polymer (17, 19) and a semiconductor leadframe (11), comprising the steps of:
   providing the semiconductor leadframe (11);
   roughening a portion of the semiconductor leadframe (11) using a grit material carried via a gaseous medium;

mounting at least one semiconductor die (13) to the semiconductor leadframe (11); and
   encapsulating the at least one semiconductor die (13) and a portion of the semiconductor leadframe (11) in the polymer (19).

6. The method of claim 5, wherein the step of roughening a portion of the semiconductor leadframe (11) includes roughening a portion of the semiconductor leadframe (11) using a grit material selected from the group consisting of sand, silicon dioxide, aluminum oxide, silicon carbide, and bicarbonates.

7. The method of claim 5, wherein the step of roughening a portion of the semiconductor leadframe (11) includes blowing the grit material at the portion of the semiconductor leadframe (11) in the gaseous carrier medium, wherein the grit material arrives at the semiconductor leadframe (11) at a pressure ranging between approximately 0.20 megaPascals and approximately 0.70 megaPascals.

8. The method of claim 5, wherein the step of roughening a portion of the semiconductor leadframe (11) includes providing the gaseous carrier medium as a gas selected from the group consisting of nitrogen, argon, and air.

9. A semiconductor package (10), comprising:
   a semiconductor leadframe (11) having first (15) and second (18) surfaces, wherein a portion of the first surface (15) has a microscopic locking feature (31);
   a semiconductor die (13) mounted to the first surface (15); and
   a mold compound (19), the mold compound (19) encapsulating the semiconductor die (13) and the portion of the first surface (15) having the microscopic locking feature (31).

10. The semiconductor package (10) of claim 9, wherein the semiconductor leadframe (11) includes a portion having an average surface roughness of at least 1,500 angstroms.

EP 0 687 008 A2



## FIG. 1



## FIG. 2

## FIG. 3

## FIG. 4





UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 14/335,366 | 07/18/2014 | 2811 | 1600 | MT12020TK | 20 | 3 |

**CONFIRMATION NO. 3808**

53364
TERRILE, CANNATTI, CHAMBERS & HOLLAND, LLP - FSL
P.O. BOX 203518
AUSTIN, TX 78720

**FILING RECEIPT**

*OC000000069889238*

Date Mailed: 07/31/2014

Receipt is acknowledged of this non-provisional patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Inventor(s)**
          Leo M. Higgins III, Austin, TX;
**Applicant(s)**
          Leo M. Higgins III, Austin, TX;
**Assignment For Published Patent Application**
          FREESCALE SEMICONDUCTOR, INC., Austin, TX

**Power of Attorney:** The patent practitioners associated with Customer Number <u>53364</u>

**Domestic Applications for which benefit is claimed - None.**
*A proper domestic benefit claim must be provided in an Application Data Sheet in order to constitute a claim for domestic benefit. See 37 CFR 1.76 and 1.78.*

**Foreign Applications** for which priority is claimed (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see <u>http://www.uspto.gov</u> for more information.) - None.
*Foreign application information must be provided in an Application Data Sheet in order to constitute a claim to foreign priority. See 37 CFR 1.55 and 1.76.*

Permission to Access - A proper **Authorization to Permit Access to Application by Participating Offices** (PTO/SB/39 or its equivalent) has been received by the USPTO.

**If Required, Foreign Filing License Granted:** 07/29/2014
The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 14/335,366**
**Projected Publication Date:** 01/21/2016
**Non-Publication Request:** No

page 1 of 3

**Early Publication Request:** No
**Title**

        Wire Bond Mold Lock Method and Structure

**Preliminary Class**

        257

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

# PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

# LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

### GRANTED

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

### NOT GRANTED

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>14/335,366 |
|---|---|

## APPLICATION AS FILED - PART I

| FOR | (Column 1)<br>NUMBER FILED | (Column 2)<br>NUMBER EXTRA | SMALL ENTITY<br>RATE($) | FEE($) | OR | OTHER THAN<br>SMALL ENTITY<br>RATE($) | FEE($) |
|---|---|---|---|---|---|---|---|
| BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | | N/A | 280 |
| SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | | N/A | 600 |
| EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | | N/A | 720 |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | 20 minus 20 = | * | | | OR | x 80 = | 0.00 |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | 3 minus 3 = | * | | | | x 420 = | 0.00 |
| APPLICATION SIZE FEE<br>(37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | | 0.00 |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | | 0.00 |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | | TOTAL | 1600 |

## APPLICATION AS AMENDED - PART II

| | | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | SMALL ENTITY<br>RATE($) | ADDITIONAL FEE($) | OR | OTHER THAN<br>SMALL ENTITY<br>RATE($) | ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|---|
| **AMENDMENT A** | Total<br>(37 CFR 1.16(i)) | * | Minus | ** | = | x = | | OR | x = | |
| | Independent<br>(37 CFR 1.16(h)) | * | Minus | *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | | TOTAL<br>ADD'L FEE | | OR | TOTAL<br>ADD'L FEE | |

| | | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | RATE($) | ADDITIONAL FEE($) | OR | RATE($) | ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|---|
| **AMENDMENT B** | Total<br>(37 CFR 1.16(i)) | * | Minus | ** | = | x = | | OR | x = | |
| | Independent<br>(37 CFR 1.16(h)) | * | Minus | *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | | TOTAL<br>ADD'L FEE | | OR | TOTAL<br>ADD'L FEE | |

\* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
\*\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest found in the appropriate box in column 1.

Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇs Pᴀᴛᴇɴᴛ ᴀɴᴅ Tʀᴀᴅᴇᴍᴀʀᴋ Oꜰꜰɪᴄᴇ

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/335,366 | 07/18/2014 | Leo M. Higgins III | MT12020TK | 3808 |

53364          7590          04/17/2015
TERRILE, CANNATTI, CHAMBERS & HOLLAND, LLP - FSL
P.O. BOX 203518
AUSTIN, TX 78720

| EXAMINER |
|---|
| SOWARD, IDA M |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2822 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 04/17/2015 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

tmunoz@tcchlaw.com

PTOL-90A (Rev. 04/07)

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 14/335,366 | HIGGINS, LEO M. |
| | **Examiner** | **Art Unit** | **AIA (First Inventor to File) Status** |
| | IDA M. SOWARD | 2822 | Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>2</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
- Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☒ Responsive to communication(s) filed on *07/18/2014*.

    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a)☐ This action is **FINAL**.    2b)☐ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims*

5)☒ Claim(s) *1-20* is/are pending in the application.

    5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☐ Claim(s) _____ is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☒ Claim(s) *1-20* are subject to restriction and/or election requirement.

\* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

## Application Papers

10)☐ The specification is objected to by the Examiner.

11)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

## Priority under 35 U.S.C. § 119

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

**Certified copies:**

    a)☐ All    b)☐ Some**  c)☐ None of the:

    1.☐ Certified copies of the priority documents have been received.

    2.☐ Certified copies of the priority documents have been received in Application No. _____.

    3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

\*\* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)

2)☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____.

3)☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.

4)☐ Other: _____.

Application/Control Number: 14/335,366                                       Page 2
Art Unit: 2822

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

## DETAILED ACTION

### *Election/Restrictions*

Restriction to one of the following inventions is required under 35 U.S.C. 121:

I. Claims 1-10 and 20, drawn to a microchip structure, classified in H01L 23/49575.

II. Claims 11-19, drawn to a method, classified in H01L 21/4821.

The inventions are distinct, each from the other because of the following reasons: Inventions I and II are related as process of making and product made. The inventions are distinct if either or both of the following can be shown: (1) that the process as claimed can be used to make another and materially different product or (2) that the product as claimed can be made by another and materially different process (MPEP § 806.05(f)). Unpatentability of the Group I invention would not necessarily imply unpatentability of the Group II invention, since the device of the Group I invention could be made by a process materially different from those/that of the Group II invention. In the instant case, the microchip structure as claimed can be by another and materially different method, such as a method without a first die paddle.

Restriction for examination purposes as indicated is proper because all these inventions listed in this action are independent or distinct for the reasons given above and there would be a serious search and/or examination burden if restriction were not

Application/Control Number: 14/335,366                                      Page 3
Art Unit: 2822

required because one or more of the following reasons apply:  the inventions have acquired a separate status in the art in view of their different classification and would require a different knowledge base and a different thought processes for a search.

**Applicant is advised that the reply to this requirement to be complete <u>must</u> include (i) an election of an invention to be examined** even though the requirement may be traversed (37 CFR 1.143) **and (ii) identification of the claims encompassing the elected invention**.

The election of an invention may be made with or without traverse. To reserve a right to petition, the election must be made with traverse. If the reply does not distinctly and specifically point out supposed errors in the restriction requirement, the election shall be treated as an election without traverse. Traversal must be presented at the time of election in order to be considered timely. Failure to timely traverse the requirement will result in the loss of right to petition under 37 CFR 1.144. If claims are added after the election, applicant must indicate which of these claims are readable upon the elected invention.

Should applicant traverse on the ground that the inventions are not patentably distinct, applicant should submit evidence or identify such evidence now of record showing the inventions to be obvious variants or clearly admit on the record that this is the case. In either instance, if the examiner finds one of the inventions unpatentable over the prior art, the evidence or admission may be used in a rejection under 35 U.S.C. 103 or pre-AIA 35 U.S.C. 103(a) of the other invention.

Application/Control Number: 14/335,366    Page 4
Art Unit: 2822

This application contains claims of Group I directed to the following patentably distinct species: species I, Figure 2 corresponding to claims 1-10; and species II, Figure 4 corresponding to claim 20. The species are independent or distinct because it would require a search of the devices that are structurally distinct. In addition, these species are not obvious variants of each other based on the current record.

Applicant is required under 35 U.S.C. 121 to elect a single disclosed species, or a single grouping of patentably indistinct species, for prosecution on the merits to which the claims shall be restricted if no generic claim is finally held to be allowable. Currently, there are no generic claims.

There is a search and/or examination burden for the patentably distinct species as set forth above because at least the following reason(s) apply: it would require a different knowledge base and a different thought processes for a search.

**Applicant is advised that the reply to this requirement to be complete must include (i) an election of a species to be examined** even though the requirement may be traversed (37 CFR 1.143) **and (ii) identification of the claims encompassing the elected species or grouping of patentably indistinct species**, including any claims subsequently added. An argument that a claim is allowable or that all claims are generic is considered nonresponsive unless accompanied by an election.

The election may be made with or without traverse. To preserve a right to petition, the election must be made with traverse. If the reply does not distinctly and specifically point out supposed errors in the election of species requirement, the election shall be treated as an election without traverse. Traversal must be presented at the time

Application/Control Number: 14/335,366                                         Page 5
Art Unit: 2822

of election in order to be considered timely. Failure to timely traverse the requirement

will result in the loss of right to petition under 37 CFR 1.144. If claims are added after

the election, applicant must indicate which of these claims are readable on the elected

species or grouping of patentably indistinct species.

Should applicant traverse on the ground that the species, or groupings of

patentably indistinct species from which election is required, are not patentably distinct,

applicant should submit evidence or identify such evidence now of record showing them

to be obvious variants or clearly admit on the record that this is the case. In either

instance, if the examiner finds one of the species unpatentable over the prior art, the

evidence or admission may be used in a rejection under 35 U.S.C. 103 or pre-AIA 35

U.S.C. 103(a) of the other species.

Upon the allowance of a generic claim, applicant will be entitled to consideration

of claims to additional species which depend from or otherwise require all the limitations

of an allowable generic claim as provided by 37 CFR 1.141.

The examiner has required restriction between product or apparatus claims and

process claims. Where applicant elects claims directed to the product/apparatus, and all

product/apparatus claims are subsequently found allowable, withdrawn process claims

that include all the limitations of the allowable product/apparatus claims should be

considered for rejoinder. All claims directed to a nonelected process invention must

include all the limitations of an allowable product/apparatus claim for that process

invention to be rejoined.

Application/Control Number: 14/335,366                                    Page 6
Art Unit: 2822

In the event of rejoinder, the requirement for restriction between the product/apparatus claims and the rejoined process claims will be withdrawn, and the rejoined process claims will be fully examined for patentability in accordance with 37 CFR 1.104. Thus, to be allowable, the rejoined claims must meet all criteria for patentability including the requirements of 35 U.S.C. 101, 102, 103 and 112. Until all claims to the elected product/apparatus are found allowable, an otherwise proper restriction requirement between product/apparatus claims and process claims may be maintained. Withdrawn process claims that are not commensurate in scope with an allowable product/apparatus claim will not be rejoined. See MPEP § 821.04. Additionally, in order for rejoinder to occur, applicant is advised that the process claims should be amended during prosecution to require the limitations of the product/apparatus claims. **Failure to do so may result in no rejoinder.** Further, note that the prohibition against double patenting rejections of 35 U.S.C. 121 does not apply where the restriction requirement is withdrawn by the examiner before the patent issues. See MPEP § 804.01.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to IDA M. SOWARD whose telephone number is (571)272-1845. The examiner can normally be reached on Monday - Thursday 6:00am to 4:30pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Brett A. Feeney can be reached on 571-270-5484. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Application/Control Number: 14/335,366                                          Page 7
Art Unit: 2822

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


IMS
April 9, 2015
/IDA M SOWARD/
Primary Examiner, Art Unit 2822

| *Index of Claims* | Application/Control No.<br><br>14335366 | Applicant(s)/Patent Under Reexamination<br><br>HIGGINS, LEO M. |
|---|---|---|
| | Examiner<br><br>IDA M SOWARD | Art Unit<br><br>2822 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant    ☐ CPA    ☐ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 04/09/2015 | | | | | | | | |
| | 1 | ÷ | | | | | | | | |
| | 2 | ÷ | | | | | | | | |
| | 3 | ÷ | | | | | | | | |
| | 4 | ÷ | | | | | | | | |
| | 5 | ÷ | | | | | | | | |
| | 6 | ÷ | | | | | | | | |
| | 7 | ÷ | | | | | | | | |
| | 8 | ÷ | | | | | | | | |
| | 9 | ÷ | | | | | | | | |
| | 10 | ÷ | | | | | | | | |
| | 11 | ÷ | | | | | | | | |
| | 12 | ÷ | | | | | | | | |
| | 13 | ÷ | | | | | | | | |
| | 14 | ÷ | | | | | | | | |
| | 15 | ÷ | | | | | | | | |
| | 16 | ÷ | | | | | | | | |
| | 17 | ÷ | | | | | | | | |
| | 18 | ÷ | | | | | | | | |
| | 19 | ÷ | | | | | | | | |
| | 20 | ÷ | | | | | | | | |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| Inventor: | Leo M. Higgins III | | |
|---|---|---|---|
| Title: | Wire Bond Mold Lock Method and Structure | | |
| Assignee: | Freescale Semiconductor, Inc. | | |
| Application No.: | 14/335,366 | Filed: | July 18, 2014 |
| Examiner: | Ida M. Soward | Group Art Unit: | 2822 |
| Docket No.: | MT12020TK | Customer No.: | 53364 |

*Filed Electronically*                                                      June 17, 2015

## RESPONSE TO RESTRICTION REQUIREMENT

Sir:

In response to the restriction requirement set forth in the Office Action dated April 17, 2015, Applicant hereby provisionally elects Invention Group II (claims 11-19) with traverse because the inventions recited in Groups I and II are not distinct.

In support of the traversal, Applicant respectfully submits that the Examiner has not made the required "distinctness" showing for Groups I and II because the Examiner has not shown that the product as claimed (in claims 1-10 and 20) can be made by another process that is materially different (from that recited in claims 11-19). *See*, MPEP § 806.05(f) (allowing restriction "if the examiner can demonstrate that the product as claimed can be made by another materially different process."). On this question, the Examiner (incorrectly) asserts that the "the microchip structure as claimed [in Invention I] can be by another and materially different method [from Invention II], such as a method without a first die paddle." *See*, Office Action, p. 2. In reply, Applicant respectfully submits that the proposed omission of the "die paddle" requirement in Group II (claims 11-19) would not result in a "materially different" process for making the microchip structure of Group I since the "substrate structure" requirement in Group I (claims 1-10 and 20) would be understood to refer to a broad category of structures which would encompass, for example, a lead frame without a die paddle. Having traversed the restriction requirement by showing that a fabrication method without a "die paddle" is not materially different from a method which uses a "substrate structure," Applicant respectfully submits that the burden now shifts to require the Examiner to identify a materially different process for making the microchip structure. *See*, MPEP § 806.05(f) ("If applicant convincingly traverses the requirement, the burden shifts to the examiner to document a viable alternative process or product, or withdraw the requirement.").

1

In further support of the traversal, Applicant respectfully submits that the Examiner has not made the required "independent <u>and</u> distinct" showing for Groups I and II because the Examiner fails to establish that there is "no disclosed relationship between the two or more inventions claimed, that is, they are unconnected in design, operation, and effect," as required by the MPEP for showing that the species are "<u>independent</u>." *See*, MPEP § 802.01(I). Nor has the Examiner established that Groups I and II "*as claimed* are not connected in at least one of design, operation, or effect (e.g., can be made by, or used in, a materially different process) and wherein at least one invention is PATENTABLE (novel and nonobvious) OVER THE OTHER (though they may each be unpatentable over the prior art)," as required by the MPEP for showing that the species are "distinct." *See*, MPEP § 802.01(II). **Any doubt on whether the Examiner has made the required "independent and distinct" showing for Groups I and II is eliminated upon noting that there is no substantive analysis of the "independent" requirement in the "Election/Restrictions" section of the Office Action.** MPEP § 802.01 ("35 U.S.C. 121 quoted in the preceding section states that the Director may require restriction if two or more "independent and distinct" inventions are claimed in one application. In 37 CFR 1.141, the statement is made that two or more "independent and distinct inventions" may not be claimed in one application.") and MPEP § 808.02 (Establishing Burden). At a minimum, the failure to establish the required "independent and distinct" showing between Groups I and II is sufficient to demonstrate that the restriction requirement should be reconsidered and withdrawn.

These deficiencies in the required "distinctness" showing from MPEP § 806.05(f) are sufficient to demonstrate that the Examiner has not made the required showing to support a restriction requirement, and Applicant therefore requests that the Examiner withdraw the restriction requirement. However, if the restriction requirement is maintained, Applicant has provisionally elected claims 11-19, and respectfully submits that the application is in condition for allowance and request that a notice to that effect be issued. Nonetheless, should any issues remain that might be subject to resolution through a telephonic interview, the Examiner is requested to telephone the undersigned at (512) 338-9100.

CERTIFICATE OF TRANSMISSION

I hereby certify that on June 17, 2015, this correspondence is being transmitted via the U.S. Patent & Trademark Office's electronic filing system.

*/Michael Rocco Cannatti/*

Respectfully submitted,

*/Michael Rocco Cannatti/*

Michael Rocco Cannatti
Attorney for Applicant
Reg. No. 34,791

2

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 22660330 |
| **Application Number:** | 14335366 |
| **International Application Number:** | |
| **Confirmation Number:** | 3808 |
| **Title of Invention:** | Wire Bond Mold Lock Method and Structure |
| **First Named Inventor/Applicant Name:** | Leo M. Higgins |
| **Customer Number:** | 53364 |
| **Filer:** | Michael Rocco Cannatti/Terri Munoz |
| **Filer Authorized By:** | Michael Rocco Cannatti |
| **Attorney Docket Number:** | MT12020TK |
| **Receipt Date:** | 17-JUN-2015 |
| **Filing Date:** | 18-JUL-2014 |
| **Time Stamp:** | 15:36:15 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Response to Election / Restriction Filed | MT12020TK_ResponsetoRestriction.pdf | 96230<br>1d80ca24ca39a2c2d1e54ea75f38b19a003567ef | no | 2 |

**Warnings:**

**Information:**

Total Files Size (in bytes): 96230

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

U̲NITED S̲TATES P̲ATENT AND T̲RADEMARK O̲FFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/335,366 | 07/18/2014 | Leo M. Higgins III | MT12020TK | 3808 |

53364          7590          07/15/2015
TERRILE, CANNATTI, CHAMBERS & HOLLAND, LLP - FSL
P.O. BOX 203518
AUSTIN, TX 78720

| EXAMINER |
|---|
| PERKINS, PAMELA E |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2822 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 07/15/2015 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

tmunoz@tcchlaw.com

PTOL-90A (Rev. 04/07)

| | | |
|---|---|---|
| **Office Action Summary** | **Application No.** 14/335,366 | **Applicant(s)** HIGGINS, LEO M. |
| | **Examiner** PAMELA E. PERKINS | **Art Unit** 2822 | **AIA (First Inventor to File) Status** Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE *3* MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
- Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☒ Responsive to communication(s) filed on *17 June 2015*.

    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a)☐ This action is **FINAL**.    2b)☒ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims*

5)☒ Claim(s) *1-20* is/are pending in the application.

    5a) Of the above claim(s) *1-10 and 20* is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☒ Claim(s) *11-19* is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

## Application Papers

10)☐ The specification is objected to by the Examiner.

11)☒ The drawing(s) filed on *18 July 2014* is/are: a)☒ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

## Priority under 35 U.S.C. § 119

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

**Certified copies:**

    a)☐ All    b)☐ Some**  c)☐ None of the:

    1.☐ Certified copies of the priority documents have been received.

    2.☐ Certified copies of the priority documents have been received in Application No. _____.

    3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)

2) ☒ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date *7/18/14*.

3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.

4) ☐ Other: _____.

Application/Control Number: 14/335,366 Page 2

Art Unit: 2822

## DETAILED ACTION

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA. This office action is in response to the filing of the election on 17 June 2015. Claims 1-20 are pending.

### *Election/Restrictions*

Applicant's election with traverse of group II (claim 11-19) in the reply filed on 17 June 2015 is acknowledged. The traversal is on the ground(s) that the restriction requirement lacks reason and/or examples supporting a showing of the burden upon the office to examine both inventions at the same time. Therefore, in light of M.P.E.P. § 803, the requirement should be remove.

This is not found persuasive because the "assumption" that a close relationship exists between the two inventions is apparent, however this in itself does not overcome the restriction requirement. According to M.P.E.P. § 803, the proper criteria between for a restriction is (1) the inventions must be independent and separate and (2) there must be serious burden on the Examiner if the restriction is not required. The product and the process of manufacturing a semiconductor device are considered to be separate and independent by the Office. They are classified in two different art classifications and assigned two different sets of Art Units. It would be a serious burden on the Examiner to examine two such distinct inventions despite the fact that they are so closely related.

The requirement is still deemed proper and is therefore made FINAL.

Application/Control Number: 14/335,366                                                Page 3
Art Unit: 2822

Claims 1-10 and 20 are withdrawn from further consideration pursuant to 37 CFR

1.142(b) as being drawn to a nonelected group I, there being no allowable generic or

linking claim. Election was made **without** traverse in the reply filed on 17 June 2015.

## Claim Rejections - 35 USC § 102

In the event the determination of the status of the application as subject to AIA 35

U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any

correction of the statutory basis for the rejection will not be considered a new ground of

rejection if the prior art relied upon, and the rationale supporting the rejection, would be

the same under either status.

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(a)(1) the claimed invention was patented, described in a printed publication, or in public use, on sale or otherwise available to the public before the effective filing date of the claimed invention.

Claims 11-14 and 16-19 are rejected under 35 U.S.C. 102(a)(1) as being

anticipated by Ohta (2008/0191294).

Referring to claim 11, Ohta discloses a method comprising:

providing a lead flame comprising a first die paddle [100] and one or more electrical

connector elements [300]; and

forming one or more positive mold lock structures [1/2] at predetermined locations

on a top surface of the lead frame which laterally protrude above the top surface (Fig.

1A, 1B, 5A & 5B; ¶30 & 82).

Application/Control Number: 14/335,366                                               Page 4
Art Unit: 2822

Referring to claim 12, Ohta discloses mounting a microelectronic device onto the lead frame after forming the one or more positive mold lock structures (Fig. 4A & 4B; ¶66).

Referring to claim 13, Ohta discloses forming a molded body on at least the top surface of the lead frame to encapsulate a microelectronic device attached to the lead frame and engage with the one or more positive mold lock structures to promote adhesion between the molded body and the lead frame (¶61).

Referring to claim 14, Ohta discloses forming one or more positive mold lock structures comprises using a wedge bonding process to form one or more wedge-to-wedge loops as dummy features on the lead frame (Fig. 1B; ¶59).

Referring to claim 16, Ohta discloses where forming one or more positive mold lock structures comprises using a wedge bonding process to form one or more wedge-to-wedge loops on the one or more electrical connector elements (Fig. 1B; ¶59).

Referring to claim 17, Ohta discloses forming one or more positive mold lock structures comprises forming one or more wedge-to-wedge loops which are positioned as a fence around a down bond region (Fig. 1A & 5A).

Referring to claim 18, Ohta disclose forming one or more positive mold lock structures comprises using a ball bonding process to form one or more stud bumps on the one or more electrical connector elements (Fig. 5A; ¶82).

Referring to claim 19, Ohta discloses forming one or more positive mold lock structures comprises forming a stud bump by ultrasonically forming a wedge bond with an attached wire component and then breaking off the wire component directly adjacent

Application/Control Number: 14/335,366                                          Page 5
Art Unit: 2822

to the wedge bond, leaving the wedge bond region as the stud bump on the one or

more electrical connector elements (¶83).

### Claim Rejections - 35 USC § 103

The following is a quotation of 35 U.S.C. 103 which forms the basis for all

obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed
> invention is not identically disclosed as set forth in section 102 of this title, if the differences
> between the claimed invention and the prior art are such that the claimed invention as a whole
> would have been obvious before the effective filing date of the claimed invention to a person
> having ordinary skill in the art to which the claimed invention pertains.  Patentability shall not
> be negated by the manner in which the invention was made.

Claim 15 is rejected under 35 U.S.C. 103 as being unpatentable over Ohta in

view of Shih et al. (2003/0122224).

Referring to claim 15, although Ohta does not specifically disclose forming the

one or more wedge-to-wedge loops on the first die paddle, it is obvious.  A die paddle is

located in the lead frame semiconductor package for locating the semiconductor die

thereon[1]  Therefore, it would have been obvious to one of ordinary skill in the art at the

time the invention was made to form the wedge-to-wedges loops [1] on a first die

paddle.

During patent examination, the claims are given the broadest reasonable

interpretation consistent with the specification. See *In re Morris*, 127 F.3d 1048, 44

USPQ2d 1023 (Fed. Cir. 1997). See MPEP   § 2111 - § 2116.01 for case law pertinent

to claim analysis.

---

[1] Shih et al. (2003/0122224) paragraph 9

Application/Control Number: 14/335,366                                      Page 6
Art Unit: 2822

## *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to PAMELA E. PERKINS whose telephone number is (571)272-1840.  The examiner can normally be reached on Monday thru Friday, 10:00am to 6:30pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Brett Feeney can be reached on (571) 270-5484.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/PAMELA E PERKINS/
Examiner, Art Unit 2822
27 June 2015

| | | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|---|
| **Notice of References Cited** | | 14/335,366 | HIGGINS, LEO M. |
| | | Examiner | Art Unit | |
| | | PAMELA E. PERKINS | 2822 | Page 1 of 1 |

### U.S. PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-2003/0122224 | 07-2003 | Shih et al. | 257/676 |
| * | B | US-2008/0131294 | 06-2008 | Koehl, Robert M. | 417/53 |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

### FOREIGN PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

### NON-PATENT DOCUMENTS

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| S1 | 29 | ep-0687008-$.did. "20110027943" "20090224381" "20070267731" ("7091602" "7750486" "7808089" "7977773").pn. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2015/06/27 16:06 |
| S2 | 3 | wedge adj bond$3 adj loop$1 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2015/06/27 16:09 |
| S3 | 0 | wire adj wedge adj bond$3 adj loop$1 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2015/06/27 16:10 |
| S4 | 4463 | wedge adj bond$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2015/06/27 16:11 |
| S5 | 394 | wire adj wedge adj bond$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2015/06/27 16:11 |
| S6 | 6995 | stud adj bump$1 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2015/06/27 16:13 |
| S7 | 35 | wire adj wedge adj bond$3 same lead adj frame | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2015/06/27 16:14 |
| S8 | 219 | stud adj bump$1 same lead adj frame | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2015/06/27 16:14 |
| S9 | 3 | "20080191294" | US-PGPUB; USPAT; | OR | OFF | 2015/06/27 16:24 |

| | | | USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | | | |
|---|---|---|---|---|---|---|
| S10 | 13 | ("20020153615" \| "20030006508" \| "20030209789" \| "20040009682" \| "20050016271" \| "20050250363" \| "6476506" \| "6593663" \| "6759307" \| "6910898" \| "7078264" \| "7224070").PN. OR ("7750486").URPN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2015/06/27 16:25 |
| S11 | 494 | wire adj bond$3 adj loop$1 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2015/06/27 16:27 |
| S12 | 21 | wire adj bond$3 adj loop$1 same lead adj frame | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2015/06/27 16:27 |
| S13 | 0 | stud adj bump$1 same lead adj frame same delaminat$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2015/06/27 16:28 |
| S14 | 45 | stud adj bump$1 same lead adj frame same mold$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2015/06/27 16:28 |
| S15 | 0 | stud adj bump$1 same lead adj frame same mold$3 and delaminat$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2015/06/27 16:29 |
| S16 | 84 | lead adj frame same mold$3 adj lock$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2015/06/27 16:30 |
| S17 | 12 | lead adj frame same mold$3 adj lock$3 with wir$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2015/06/27 16:31 |
| S18 | 22 | lead adj frame and mold$3 adj lock$3 with wir$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2015/06/27 16:33 |
| S19 | 0 | lead adj frame and mold$3 adj lock$3 | US-PGPUB; | OR | OFF | 2015/06/27 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | with fence | USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | | | 16:36 |
| S20 | 0 | lead adj frame and mold$3 adj lock$3 with fenc$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2015/06/27 16:37 |
| S21 | 0 | lead adj frame and mold$3 adj lock$3 with loop$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2015/06/27 16:37 |
| S22 | 32864 | wir$3 adj loop$1 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2015/06/27 16:38 |
| S23 | 996 | wir$3 adj loop$1 and lead adj frame | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2015/06/27 16:38 |
| S24 | 183 | wir$3 adj loop$1 same mold$3 and lead adj frame | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2015/06/27 16:38 |
| S25 | 0 | wir$3 adj loop$1 with mold$3 and lead adj frame and mold$3 adj lock$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2015/06/27 16:38 |
| S26 | 129 | wir$3 adj loop$1 with mold$3 and lead adj frame | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2015/06/27 16:39 |
| S27 | 246 | lead adj frame and mold$3 adj lock$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2015/06/27 16:47 |
| S28 | 2638 | lead adj frame and (mold$3 adj lock$3 delaminat$3) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2015/06/27 16:47 |
| S29 | 1012 | lead adj frame and (mold$3 adj lock$3 | US-PGPUB; | OR | OFF | 2015/06/27 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | delaminat$3) with (mold$3 encapsulat$3) | USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | | | 16:49 |
| S30 | 123 | lead adj frame and (mold$3 adj lock$3 delaminat$3) with (mold$3 encapsulat$3) with wir$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2015/06/27 16:50 |
| S31 | 3 | ("20050184405" \| "4240099").PN. OR ("7382059").URPN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2015/06/27 16:54 |
| S32 | 92 | mold$3 adj lock$3 with wir$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2015/06/27 16:57 |
| S33 | 37 | mold$3 adj lock$3 near5 wir$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2015/06/27 16:57 |
| S34 | 0 | mold$3 adj lock$3 near5 fenc$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2015/06/27 16:57 |
| S35 | 92 | delaminat$3 near5 wir$3 with (mold$3 encapsulat$3) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2015/06/27 16:59 |

**EAST Search History (Interference)**

<This search history is empty>

**6/27/2015 6:19:24 PM**
**C:\Users\pperkins\Documents\EAST\Workspaces\14335366.wsp**

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L2 | 29 | lead adj frame and mold$3 adj lock$3 with paddle | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2015/06/27 18:36 |
| L3 | 1111 | lead adj frame with die adj paddle | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2015/06/27 18:41 |
| L4 | 425 | lead adj frame with die adj paddle same mold$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2015/06/27 18:41 |

**EAST Search History (Interference)**

<This search history is empty>

**6/27/2015 6:47:36 PM**
**C:\Users\pperkins\Documents\EAST\Workspaces\14335366.wsp**

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 14335366 | HIGGINS, LEO M. |
| | **Examiner** | **Art Unit** |
| | PAMELA E PERKINS | 2822 |

### CPC- SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| | | |

### CPC COMBINATION SETS - SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| | | |

### US CLASSIFICATION SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

### SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| EAST - text search | 6/27/15 | PEP |

### INTERFERENCE SEARCH

| US Class/ CPC Symbol | US Subclass / CPC Group | Date | Examiner |
|---|---|---|---|
| | | | |

| | |
|---|---|
| | |

U.S. Patent and Trademark Office                                                                                        Part of Paper No. : 20150627

Receipt date: 07/18/2014                                                      14335366 - GAU: 2822
Doc code: IDS                                                                        PTO/SB/08a (01-10)
Doc description: Information Disclosure Statement (IDS) Filed     Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

<table>
<tr><td rowspan="6"><b>INFORMATION DISCLOSURE STATEMENT BY APPLICANT</b><br>( Not for submission under 37 CFR 1.99)</td><td>Application Number</td><td></td></tr>
</table>

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | | |
|---|---|---|
| Application Number | | |
| Filing Date | | |
| First Named Inventor | Leo M. Higgins III | |
| Art Unit | | |
| Examiner Name | | |
| Attorney Docket Number | MT12020TK | |

### U.S. PATENTS — Remove

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| /P.E.P./ | 1 | 7091602 | B2 | 2006-08-15 | Elliott et al. | |
| /P.E.P./ | 2 | 7750486 | B2 | 2010-07-06 | Ohta | |
| /P.E.P./ | 3 | 7808089 | B2 | 2010-01-05 | Nguyen et al. | |
| /P.E.P./ | 4 | 7977773 | B1 | 2011-07-12 | Cusack | |

If you wish to add additional U.S. Patent citation information please click the Add button.     **Add**

### U.S. PATENT APPLICATION PUBLICATIONS — Remove

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| /P.E.P./ | 1 | 20070267731 | A1 | 2007-11-22 | Punzalan et al. | |
| /P.E.P./ | 2 | 20090224381 | A1 | 2009-09-10 | Ishihara et al. | |

| Receipt date: 07/18/2014 | | | Application Number | | 14335366 - GAU: 2822 | |
|---|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( Not for submission under 37 CFR 1.99) | | | Filing Date | | | |
| | | | First Named Inventor | Leo M. Higgins III | | |
| | | | Art Unit | | | |
| | | | Examiner Name | | | |
| | | | Attorney Docket  Number | MT12020TK | | |

| /P.E.P./ | 3 | 20110027943 | A1 | 2011-02-03 | Gurrum et al. | |
|---|---|---|---|---|---|---|

If you wish to add additional U.S. Published Application citation information please click the Add button.    **Add**

| **FOREIGN PATENT DOCUMENTS** | | | | | | | Remove |
|---|---|---|---|---|---|---|---|

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| /P.E.P./ | 1 | 0687008 | EP | A2 | 1995-12-13 | Motorola, Inc. | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button    **Add**

| **NON-PATENT LITERATURE DOCUMENTS** | | | Remove |
|---|---|---|---|

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|
| /P.E.P./ | 1 | COORS TEK, INC., Gaiser Precision Bonding Tools, Wedge Bonding, 11/28/2007 | ☐ |
| /P.E.P./ | 2 | P. ADAMSON, International Rectifier, Lead-Free Packaging for Discrete Power Semiconductors, JEDEC Conference, April/May 2002 | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button    **Add**

| **EXAMINER SIGNATURE** | | | |
|---|---|---|---|
| Examiner Signature | /Pamela E. Perkins/ | Date Considered | 07/10/2015 |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through a citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04.  [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3).  [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document.  [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible.  [5] Applicant is to place a check mark here if English language translation is attached.

| Index of Claims | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 14335366 | HIGGINS, LEO  M. |
| | **Examiner** | **Art Unit** |
| | IDA M SOWARD | 2822 |

| ✓ | **Rejected** | | - | **Cancelled** | | **N** | **Non-Elected** | | **A** | **Appeal** |
|---|---|---|---|---|---|---|---|---|---|---|
| = | **Allowed** | | ÷ | **Restricted** | | **I** | **Interference** | | **O** | **Objected** |

| ☐ Claims renumbered in the same order as presented by applicant | | ☐ CPA | ☐ T.D. | ☐ R.1.47 |

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 04/09/2015 | 06/27/2015 | | | | | | |
| | 1 | ÷ | N | | | | | | |
| | 2 | ÷ | N | | | | | | |
| | 3 | ÷ | N | | | | | | |
| | 4 | ÷ | N | | | | | | |
| | 5 | ÷ | N | | | | | | |
| | 6 | ÷ | N | | | | | | |
| | 7 | ÷ | N | | | | | | |
| | 8 | ÷ | N | | | | | | |
| | 9 | ÷ | N | | | | | | |
| | 10 | ÷ | N | | | | | | |
| | 11 | ÷ | ✓ | | | | | | |
| | 12 | ÷ | ✓ | | | | | | |
| | 13 | ÷ | ✓ | | | | | | |
| | 14 | ÷ | ✓ | | | | | | |
| | 15 | ÷ | ✓ | | | | | | |
| | 16 | ÷ | ✓ | | | | | | |
| | 17 | ÷ | ✓ | | | | | | |
| | 18 | ÷ | ✓ | | | | | | |
| | 19 | ÷ | ✓ | | | | | | |
| | 20 | ÷ | N | | | | | | |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Inventor: | Leo M. Higgins III | | |
| Title: | Wire Bond Mold Lock Method and Structure | | |
| Assignee: | Freescale Semiconductor, Inc. | | |
| Application No.: | 14/335,366 | Filed: | July 18, 2014 |
| Examiner: | Pamela E. Perkins | Group Art Unit: | 2822 |
| Docket No.: | MT12020TK | Customer No.: | 53364 |

_Filed Electronically_                                                    October 15, 2015

## <u>RESPONSE TO NON-FINAL OFFICE ACTION</u>

Sir:

This paper is responsive to the Office Action dated July 15, 2015, having a shortened statutory period expiring on October 15, 2015.  Further examination and reconsideration are respectfully requested in view of the remarks set forth below.

1

**AMENDMENTS TO THE CLAIMS**

1.      (Withdrawn)   A microchip structure, comprising:

a substrate structure;

a first chip affixed to the substrate structure;

a mold lock affixed to and laterally protruding above the substrate structure; and

a molded body formed at least partially around the first chip and around the mold lock, wherein the mold lock is configured to prevent delamination between the molded body and the substrate structure.

2.      (Withdrawn)   The microchip structure of claim 1, where the substrate structure comprises a die flag portion of a lead frame structure comprising a plurality of lead frame elements which form electrical connectors extending through the molded body.

3.      (Withdrawn)   The microchip structure of claim 1, where the first chip comprises a power integrated circuit die that is affixed to the substrate structure using solder die attach.

4.      (Withdrawn)   The microchip structure of claim 1, where the mold lock comprises one or more wire wedge bond loops or chains formed on the substrate structure as raised mechanical locking features.

5.      (Withdrawn)   The microchip structure of claim 1, where the mold lock comprises one or more stud bumps formed on the substrate structure as raised mechanical locking features.

6.      (Withdrawn)   The microchip structure of claim 1, further comprising one or more electrical connectors which are affixed to electrically connect one or more bond pads formed on the first chip to a corresponding lead frame element of the substrate structure which extends through the molded body.

7.      (Withdrawn)   The microchip structure of claim 1, where the mold lock comprises one or more dummy wire bond loops attached to a lead frame element of the substrate structure.

2

8.     (Withdrawn)   The microchip structure of claim 1, where the mold lock comprises one or more wedge-to-wedge loops attached to the substrate structure and not to the first chip.

9.     (Withdrawn)   The microchip structure of claim 1, where the mold lock comprises a plurality of mold lock structures which are positioned peripherally around a die flag or on one or more interior electrical contact leads or on a tie bar of the substrate structure.

10.     (Withdrawn)   The microchip structure of claim 1, where the mold lock comprises a plurality of mold lock structures which are positioned as a fence around a down bond region.

11.     (Original)     A method comprising:

providing a lead frame comprising a first die paddle and one or more electrical connector elements; and

forming one or more positive mold lock structures at predetermined locations on a top surface of the lead frame which laterally protrude above the top surface.

12.     (Original)     The method of claim 11, further comprising mounting a microelectronic device onto the lead frame before or after forming the one or more positive mold lock structures.

13.     (Original)     The method of claim 11, further comprising forming a molded body on at least the top surface of the lead frame to encapsulate a microelectronic device attached to the lead frame and engage with the one or more positive mold lock structures to promote adhesion between the molded body and the lead frame.

14.     (Original)     The method of claim 11, where forming one or more positive mold lock structures comprises using a wedge bonding process to form one or more wedge-to-wedge loops as dummy features on the lead frame.

15.     (Original)     The method of claim 11, where forming one or more positive mold lock structures comprises using a wedge bonding process to form one or more wedge-to-wedge loops on the first die paddle.

3

16.     (Original)     The method of claim 11, where forming one or more positive mold lock structures comprises using a wedge bonding process to form one or more wedge-to-wedge loops on the one or more electrical connector elements.

17.     (Original)     The method of claim 11, where forming one or more positive mold lock structures comprises forming one or more wedge-to-wedge loops which are positioned as a fence around a down bond region.

18.     (Original)     The method of claim 11, where forming one or more positive mold lock structures comprises using a ball bonding process to form one or more stud bumps on the first die paddle or on the one or more electrical connector elements or on a tie bar of the lead frame.

19.     (Original)     The method of claim 11, where forming one or more positive mold lock structures comprises forming a stud bump by ultrasonically forming a wedge bond with an attached wire component and then breaking off the wire component directly adjacent to the wedge bond, leaving the wedge bond region as the stud bump on the first die paddle or on the one or more electrical connector elements or on a tie bar of the lead frame.

20.     (Withdrawn)   A packaged device, comprising:
a lead frame substrate with one or more integrated circuit die attached on a first side;
a plurality of raised wire bond mold lock structures formed on the first side of the lead frame substrate as wedge bond wire loops or stud bumps; and
a molded body formed to encapsulate at the one or more integrated circuit die and to mechanically interlock with the plurality of raised wire bond mold lock structures to improve adhesion between the molded body and the lead frame substrate.

4

## REMARKS

Claims 1-20 are pending.  In the Office Action dated July 15, 2015, claims 1-10 and 20 were withdrawn pursuant to a restriction requirement; claims 11-14 and 16-19 were rejected under 35 U.S.C. § 102(a)(1) as anticipated by U.S. Patent Publication No. 20080191294 to Ohta ("Ohta"), and claim 15 was rejected under 35 U.S.C. § 103 as obvious over Ohta and U.S. Patent Publication No. 20030122224 to Shih et al. ("Shih").  Applicant must respectfully traverse the pending rejections for the reasons set forth below.

### A.     Claims 11-19 Are Not Anticipated or Obvious

Applicant has variously disclosed and claimed a wire bond "mold lock" methodology.  In particular, independent claim 11 recites that a lead frame is provided that has a first die paddle and one or more electrical connector elements, and that "one or more positive mold lock structures" are formed at predetermined locations on a top surface to laterally protrude from the lead frame.  With the protruding "mold lock structures" formed on the lead frame assembly, the top of each integrated circuit die may be covered with a molding compound using any desired packaging scheme to "mechanically engage and lock with the protruding mechanical mold locking features to increase adhesion to the mold compound and thereby reduce and/or prevent delamination."  *See, e.g.*, Application, paragraph 15.

Claims 11-19 stand rejected as being anticipated by Ohta (in the case of claims 11-14 and 16-19) or obvious over Ohta and Shih (in the case of claim 15).  In rejecting the claims, the rejection analysis cites Ohta's stopper wire 1 or stud bump 2 (Figures 1A-B, 5A-B and paragraphs 30 and 82) to meet the claim requirement of the "positive mold lock structures."  *See, e.g.*, Office Action, p. 3.

In reply, Applicant respectfully submits that the claim requirements are not met by the cited disclosure from the cited Ohta or Shih references.  In particular, each of the pending claims variously recite, *inter alia*, forming one or more protruding "positive mold lock structures" at predetermined locations on a top surface of the lead frame.  *See, e.g.*, claim 11.  In contrast to the claim requirements, Ohta's disclosure is deficient in at least two respects.  First, Ohta makes no provision for any "lead frame" with die paddle and electrical connector elements, as claimed.  In respect of this claim requirement, the rejection analysis vaguely refers to Ohta's "package 100" and "circuit chip 300" to meet the lead frame requirement, but Ohta's disclosure makes no reference whatsoever to any "lead frame," much less one including a "die paddle" and "electrical

5

connector elements, as claimed. Instead, Ohta refers to a stacked chip arrangement wherein a sensor chip 200 is stacked over the circuit chip 300 and adhered inside an opening 120 formed in a laminated substrate of ceramic layers 110. This deficiency alone is enough to demonstrate that a *prima facie* anticipation and obviousness showing has not been established.

Another deficiency in the rejection analysis is the claim requirement of forming the "positive mold lock structures" on the lead frame. In respect of this claim requirement, the rejection analysis cites Ohta's stopper wire 1 or stud bump 2, but Ohta's disclosure clearly describes these stoppers 1, 2 as being formed in the "circuit chip 300," not in any "lead frame," as claimed. More importantly, Ohta's disclosed stopper 1 is provided to prevent displacement of the sensor chip 200 in relation to the underlying circuit chip 300, and as such is formed "around the sensor chip 200" and exposed in the opening 120, as shown in Ohta's Figures 1A-B. *See,* Ohta, Figures 1A-B and paragraphs 57-61 and 82-85. Being formed and exposed in the opening 120, there is no "mold lock" function provided by Ohta's stopper wire 1 or stud bump 2. Indeed, Ohta's disclosed sensor stack 100, 300 would not be functionally operative if the opening 120 were filled with mold compound to engage with the stopper wire 1 or stud bump 2, as evidenced by Ohta's teaching that a cover lid 140 is "attached to an opening portion of the package 100" to seal the interior of the package 100. *See,* Ohta, paragraph 34. Each of these deficiencies is also enough to demonstrate that a *prima facie* anticipation and obviousness showing has not been established.

In respect of the rejection analysis for claim 15, the Examiner makes the curious and completely unsupported assertion that Shih's disclosure remedies Ohta's admitted failure to disclose forming "one or more wedge-to-wedge loops on the first die paddle," as claimed. This assertion appears to be directly belied by Shih's disclosure which neither teaches nor suggests forming "mold lock structures" with "wedge-to-wedge loops on the first die paddle." To the contrary, Shih typifies the prior art in which no mold lock structures are formed on the lead frame. *See, e.g.,* Shih Figures 1-4.

In view of at least these deficiencies, and putting aside for the moment the propriety of combining Ohta and Shih, Applicant respectfully submits that the anticipation and obviousness rejections of claims 11-19 should be reconsidered and withdrawn. By improperly ignoring the recited claim limitations or otherwise mischaracterizing the cited art disclosure, Applicant respectfully submits that a *prima facie* case of anticipation has not been established to meet the

6

Examiner's burden of pointing out where <u>each and every element of the claimed invention,</u> arranged as required by claims 11-14 and 16-19, is found in the Ohta reference, either expressly or under the principles of inherency. *See generally,* <u>In re King</u>, 801 F.2d 1324, 1326, 231 USPQ 136, 138 (Fed. Cir. 1986); <u>Lindemann Maschinenfabrik GMBH v. American Hoist and Derrick</u>, 730 F.2d 1452, 1458, 221 USPQ 481, 485 (Fed. Cir. 1984). Applicant submits further a *prima facie* case of obviousness has not been established that meets the Examiner's burden of pointing out where <u>each and every element of the claimed invention</u>, arranged as required by claim 15, are found in the cited art by making "a searching comparison of the claimed invention – *including all its limitations* – with the teaching of the prior art." <u>In re Ochiai</u>, 71 F.3d 1565, 1572 (Fed. Cir. 1995) (emphasis added). In addition, "obviousness requires a suggestion of all limitations in a claim." <u>CFMT, Inc. v. Yieldup Intern. Corp.</u>, 349 F.3d 1333, 1342 (Fed. Cir. 2003) (*citing* <u>In re Royka</u>, 490 F.2d 981, 985 (CCPA 1974)). Moreover, "*there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness.*" <u>KSR Int'l v. Teleflex Inc.</u>, 127 S. Ct. 1727, 1741 (2007) (*quoting* <u>In re Kahn</u>, 441 F.3d 977, 988 (Fed. Cir. 2006) (emphasis added)). Because the aforementioned features of the claims cannot reasonably be said to be present in the asserted combination of the cited references, Applicant respectfully submits that a *prima facie* case of anticipation and obviousness has not been established for claims 11-19, and therefore requests that the rejections of the claims be withdrawn and that the claims be allowed.

## CONCLUSION

In view of the remarks set forth herein, Applicant respectfully submits that all pending claims are in condition for allowance. Accordingly, Applicant requests that a Notice of Allowance be issued. Nonetheless, should any issues remain that might be subject to resolution through a telephone interview, the Examiner is requested to telephone the undersigned at 512-338-9100.

CERTIFICATE OF TRANSMISSION

I hereby certify that on October 15, 2015, this correspondence is being transmitted via the U.S. Patent & Trademark Office's electronic filing system.

*/Michael Rocco Cannatti/*

Respectfully submitted,

*/Michael Rocco Cannatti/*

Michael Rocco Cannatti
Attorney for Applicant
Reg. No. 34,791

7

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 23794569 |
| **Application Number:** | 14335366 |
| **International Application Number:** | |
| **Confirmation Number:** | 3808 |
| **Title of Invention:** | Wire Bond Mold Lock Method and Structure |
| **First Named Inventor/Applicant Name:** | Leo M. Higgins |
| **Customer Number:** | 53364 |
| **Filer:** | Michael Rocco Cannatti/Terri Munoz |
| **Filer Authorized By:** | Michael Rocco Cannatti |
| **Attorney Docket Number:** | MT12020TK |
| **Receipt Date:** | 15-OCT-2015 |
| **Filing Date:** | 18-JUL-2014 |
| **Time Stamp:** | 14:40:54 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | MT12020TK_ROA_7-15-15.pdf | 129020<br>27424fbd857dc045d3476278beef87dabed8619d | yes | 7 |

## Multipart Description/PDF files in .zip description

| Document Description | Start | End |
|---|---|---|
| Amendment/Req. Reconsideration-After Non-Final Reject | 1 | 1 |
| Claims | 2 | 4 |
| Applicant Arguments/Remarks Made in an Amendment | 5 | 7 |

| | |
|---|---|
| **Warnings:** | |
| **Information:** | |

| **Total Files Size (in bytes):** | 129020 |
|---|---|

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**

**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**

**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>14/335,366 | Filing Date<br>07/18/2014 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:**  ☒ LARGE   ☐ SMALL   ☐ MICRO

## APPLICATION AS FILED – PART I

| | (Column 1) | (Column 2) | | |
|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) |
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

## APPLICATION AS AMENDED – PART II

| | | (Column 1) | | (Column 2) | (Column 3) | | |
|---|---|---|---|---|---|---|---|
| **AMENDMENT** | **10/15/2015** | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * 20 | Minus | ** 20 | = 0 | x $80 = | 0 |
| | Independent (37 CFR 1.16(h)) | * 3 | Minus | ***3 | = 0 | x $420 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | **0** |

| | | (Column 1) | | (Column 2) | (Column 3) | | |
|---|---|---|---|---|---|---|---|
| **AMENDMENT** | | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | |

\* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.

\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".

\*\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".

The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

LIE
/EVELYN NIMMONS/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*



UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 14/335,366 | 07/18/2014 | Leo M. Higgins III | MT12020TK |

**CONFIRMATION NO. 3808**

53364
TERRILE, CANNATTI, CHAMBERS & HOLLAND, LLP - FSL
P.O. BOX 203518
AUSTIN, TX 78720

**PUBLICATION NOTICE**

*OC000000080050617*

**Title:**Wire Bond Mold Lock Method and Structure

**Publication No.**US-2016-0020182-A1
**Publication Date:**01/21/2016

# NOTICE OF PUBLICATION OF APPLICATION

The above-identified application will be electronically published as a patent application publication pursuant to 37 CFR 1.211, et seq. The patent application publication number and publication date are set forth above.

The publication may be accessed through the USPTO's publically available Searchable Databases via the Internet at www.uspto.gov. The direct link to access the publication is currently http://www.uspto.gov/patft/.

The publication process established by the Office does not provide for mailing a copy of the publication to applicant. A copy of the publication may be obtained from the Office upon payment of the appropriate fee set forth in 37 CFR 1.19(a)(1). Orders for copies of patent application publications are handled by the USPTO's Office of Public Records. The Office of Public Records can be reached by telephone at (703) 308-9726 or (800) 972-6382, by facsimile at (703) 305-8759, by mail addressed to the United States Patent and Trademark Office, Office of Public Records, Alexandria, VA 22313-1450 or via the Internet.

In addition, information on the status of the application, including the mailing date of Office actions and the dates of receipt of correspondence filed in the Office, may also be accessed via the Internet through the Patent Electronic Business Center at www.uspto.gov using the public side of the Patent Application Information and Retrieval (PAIR) system. The direct link to access this status information is currently http://pair.uspto.gov/. Prior to publication, such status information is confidential and may only be obtained by applicant using the private side of PAIR.

Further assistance in electronically accessing the publication, or about PAIR, is available by calling the Patent Electronic Business Center at 1-866-217-9197.

Office of Data Managment, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/335,366 | 07/18/2014 | Leo M. Higgins III | MT12020TK | 3808 |

53364          7590          02/16/2016
NXP-TERRILE, CANNATTI, CHAMBERS & HOLLAND - FSL
6501 William Cannon Drive West
AUSTIN, TX 78735

| EXAMINER |
|---|
| PERKINS, PAMELA E |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2822 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 02/16/2016 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

ip.department.us@nxp.com

PTOL-90A (Rev. 04/07)

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 14/335,366 | HIGGINS, LEO M. |
| | **Examiner** | **Art Unit** | **AIA (First Inventor to File) Status** |
| | PAMELA E. PERKINS | 2822 | Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE *3* MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on *15 October 2015*.
    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a) ☐ This action is **FINAL.**    2b) ☒ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☒ Claim(s) *1-20* is/are pending in the application.
    5a) Of the above claim(s) *1-10 and 20* is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☒ Claim(s) *11-19* is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

**Application Papers**

10) ☐ The specification is objected to by the Examiner.

11) ☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    **Certified copies:**
    a)☐ All    b)☐ Some**   c)☐ None of the:
    1.☐ Certified copies of the priority documents have been received.
    2.☐ Certified copies of the priority documents have been received in Application No. _____.
    3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)

2) ☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____.

3) ☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____.

4) ☐ Other: _____.

Application/Control Number: 14/335,366                                        Page 2
Art Unit: 2822

## DETAILED ACTION

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.  In the event the determination of the status of the application as subject to AIA 35 U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the statutory basis for the rejection will not be considered a new ground of rejection if the prior art relied upon, and the rationale supporting the rejection, would be the same under either status.

This office action is in response to the filing of the request for reconsideration on 15 October 2015.  Claims 1-20 are pending; claims 1-10 and 20 have been withdrawn from consideration.

### *Response to Arguments*

Applicant's arguments, see pages 5-8 of remarks, filed 15 October 2015, with respect to the rejection(s) of claim(s) 11-19 under 35 USC 102 and 35 USC 103 have been fully considered and are persuasive.  Therefore, the rejection has been withdrawn. However, upon further consideration, a new ground(s) of rejection is made in view of Shih et al. (2013/0122224).

### *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections set forth in this Office action:

A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is not identically disclosed as set forth in section 102 of this title, if the differences between the claimed invention and the prior art are such that the claimed invention as a whole

Application/Control Number: 14/335,366                                                                Page 3

Art Unit: 2822

would have been obvious before the effective filing date of the claimed invention to a person
having ordinary skill in the art to which the claimed invention pertains.  Patentability shall not
be negated by the manner in which the invention was made.

Claims 11-19 are rejected under 35 U.S.C. 103 as being unpatentable over Ohta

(2008/0191294) in view of Shih et al. (2003/0122224).

Referring to claim 11, Ohta discloses a method comprising:

providing a surface [110] and one or more electrical connector elements [300]; and

forming one or more positive mold lock structures [1/2] at predetermined locations

on a top surface of the lead frame which laterally protrude above the top surface (Fig.

1A, 1B, 5A & 5B; ¶30 & 82).

Otha does not specifically disclose the surface comprises a lead frame and die

paddle.

It is commonly known in the art that a lead frame is defined as the framework of

the IC package and it provides mechanical support to the die during its assembly into a

finished product[1].  A die paddle (die flag) is commonly known to serve as mechanical

support the die during package manufacturing[2].



_____

[1] https://en.wikipedia.org/wiki/Lead_frame
[2] http://www.coolingzone.com/library.php?read=526

Application/Control Number: 14/335,366                                        Page 4
Art Unit: 2822

Otha

FIG. 1B



Acting as lead frame

Mold lock

Acting as die paddle

Shih et al. discloses a method comprising providing a lead frame comprising a first die paddle and one or more electrical connector elements (9).

Since Ohta and Shih et al. are both from the same field of endeavor, a method of forming a package, the purpose disclosed by Shih et al. would have been recognized in the pertinent art of Ohta. Therefore, it would have been obvious to one of ordinary skill in the art at the time the invention was made to modify Ohta by the surface comprises a lead frame and die paddle as taught by Shih et al. to serve as mechanical support the die during package manufacturing.

Referring to claim 12, Ohta discloses mounting a microelectronic device onto the lead frame after forming the one or more positive mold lock structures (Fig. 4A & 4B; ¶66).

Referring to claim 13, Ohta discloses forming a molded body on at least the top surface of the lead frame to encapsulate a microelectronic device attached to the lead

Application/Control Number: 14/335,366                                                    Page 5

Art Unit: 2822

frame and engage with the one or more positive mold lock structures to promote

adhesion between the molded body and the lead frame (¶61).

Referring to claim 14, Ohta discloses forming one or more positive mold lock

structures comprises using a wedge bonding process to form one or more wedge-to-

wedge loops as dummy features on the lead frame (Fig. 1B; ¶59).

Referring to claim 15, Ohta discloses where forming one or more positive mold

lock structures comprises using a wedge bonding process to form one or more wedge-

to-wedge loops on the first die paddle (¶57).

Referring to claim 16, Ohta discloses where forming one or more positive mold

lock structures comprises using a wedge bonding process to form one or more wedge-

to-wedge loops on the one or more electrical connector elements (Fig. 1B; ¶59).

Referring to claim 17, Ohta discloses forming one or more positive mold lock

structures comprises forming one or more wedge-to-wedge loops which are positioned

as a fence around a down bond region (Fig. 1A & 5A).

Referring to claim 18, Ohta disclose forming one or more positive mold lock

structures comprises using a ball bonding process to form one or more stud bumps on

the one or more electrical connector elements (Fig. 5A; ¶82).

Referring to claim 19, Ohta discloses forming one or more positive mold lock

structures comprises forming a stud bump by ultrasonically forming a wedge bond with

an attached wire component and then breaking off the wire component directly adjacent

to the wedge bond, leaving the wedge bond region as the stud bump on the one or

more electrical connector elements (¶83).

Application/Control Number: 14/335,366                                                    Page 6
Art Unit: 2822

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to PAMELA E. PERKINS whose telephone number is (571)272-1840. The examiner can normally be reached on Monday thru Friday, 10:00am to 6:30pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Brett Feeney can be reached on (571) 270-5484. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/PAMELA E PERKINS/
Primary Examiner, Art Unit 2822
5 February 2016

| Index of Claims | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 14335366 | HIGGINS, LEO M. |
| | **Examiner** | **Art Unit** |
| | IDA M SOWARD | 2822 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant    ☐ CPA    ☐ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 04/09/2015 | 06/27/2015 | 02/05/2016 | | | | | |
| | 1 | ÷ | N | N | | | | | |
| | 2 | ÷ | N | N | | | | | |
| | 3 | ÷ | N | N | | | | | |
| | 4 | ÷ | N | N | | | | | |
| | 5 | ÷ | N | N | | | | | |
| | 6 | ÷ | N | N | | | | | |
| | 7 | ÷ | N | N | | | | | |
| | 8 | ÷ | N | N | | | | | |
| | 9 | ÷ | N | N | | | | | |
| | 10 | ÷ | N | N | | | | | |
| | 11 | ÷ | ✓ | ✓ | | | | | |
| | 12 | ÷ | ✓ | ✓ | | | | | |
| | 13 | ÷ | ✓ | ✓ | | | | | |
| | 14 | ÷ | ✓ | ✓ | | | | | |
| | 15 | ÷ | ✓ | ✓ | | | | | |
| | 16 | ÷ | ✓ | ✓ | | | | | |
| | 17 | ÷ | ✓ | ✓ | | | | | |
| | 18 | ÷ | ✓ | ✓ | | | | | |
| | 19 | ÷ | ✓ | ✓ | | | | | |
| | 20 | ÷ | N | N | | | | | |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Inventor: | Leo M. Higgins III | | |
| Title: | Wire Bond Mold Lock Method and Structure | | |
| Assignee: | Freescale Semiconductor, Inc. | | |
| Application No.: | 14/335,366 | Filed: | July 18, 2014 |
| Examiner: | Pamela E. Perkins | Group Art Unit: | 2822 |
| Docket No.: | MT12020TK | Customer No.: | 53364 |

*Filed Electronically*                                                               May 13, 2016

## RESPONSE TO NON-FINAL OFFICE ACTION

Sir:

This paper is responsive to the Office Action dated February 16, 2016, having a shortened statutory period expiring on May 16, 2016. Further examination and reconsideration are respectfully requested in view of the remarks set forth below.

1

## AMENDMENTS TO THE CLAIMS

1.      (Withdrawn)   A microchip structure, comprising:

a substrate structure;

a first chip affixed to the substrate structure;

a mold lock affixed to and laterally protruding above the substrate structure; and

a molded body formed at least partially around the first chip and around the mold lock, wherein the mold lock is configured to prevent delamination between the molded body and the substrate structure.

2.      (Withdrawn)   The microchip structure of claim 1, where the substrate structure comprises a die flag portion of a lead frame structure comprising a plurality of lead frame elements which form electrical connectors extending through the molded body.

3.      (Withdrawn)   The microchip structure of claim 1, where the first chip comprises a power integrated circuit die that is affixed to the substrate structure using solder die attach.

4.      (Withdrawn)   The microchip structure of claim 1, where the mold lock comprises one or more wire wedge bond loops or chains formed on the substrate structure as raised mechanical locking features.

5.      (Withdrawn)   The microchip structure of claim 1, where the mold lock comprises one or more stud bumps formed on the substrate structure as raised mechanical locking features.

6.      (Withdrawn)   The microchip structure of claim 1, further comprising one or more electrical connectors which are affixed to electrically connect one or more bond pads formed on the first chip to a corresponding lead frame element of the substrate structure which extends through the molded body.

7.      (Withdrawn)   The microchip structure of claim 1, where the mold lock comprises one or more dummy wire bond loops attached to a lead frame element of the substrate structure.

2

8.　　(Withdrawn)　The microchip structure of claim 1, where the mold lock comprises one or more wedge-to-wedge loops attached to the substrate structure and not to the first chip.

9.　　(Withdrawn)　The microchip structure of claim 1, where the mold lock comprises a plurality of mold lock structures which are positioned peripherally around a die flag or on one or more interior electrical contact leads or on a tie bar of the substrate structure.

10.　　(Withdrawn)　The microchip structure of claim 1, where the mold lock comprises a plurality of mold lock structures which are positioned as a fence around a down bond region.

11.　　(Original)　A method comprising:

providing a lead frame comprising a first die paddle and one or more electrical connector elements; and

forming one or more positive mold lock structures at predetermined locations on a top surface of the lead frame which laterally protrude above the top surface.

12.　　(Original)　The method of claim 11, further comprising mounting a microelectronic device onto the lead frame before or after forming the one or more positive mold lock structures.

13.　　(Original)　The method of claim 11, further comprising forming a molded body on at least the top surface of the lead frame to encapsulate a microelectronic device attached to the lead frame and engage with the one or more positive mold lock structures to promote adhesion between the molded body and the lead frame.

14.　　(Original)　The method of claim 11, where forming one or more positive mold lock structures comprises using a wedge bonding process to form one or more wedge-to-wedge loops as dummy features on the lead frame.

15.　　(Original)　The method of claim 11, where forming one or more positive mold lock structures comprises using a wedge bonding process to form one or more wedge-to-wedge loops on the first die paddle.

3

16.     (Original)     The method of claim 11, where forming one or more positive mold lock structures comprises using a wedge bonding process to form one or more wedge-to-wedge loops on the one or more electrical connector elements.

17.     (Original)     The method of claim 11, where forming one or more positive mold lock structures comprises forming one or more wedge-to-wedge loops which are positioned as a fence around a down bond region.

18.     (Original)     The method of claim 11, where forming one or more positive mold lock structures comprises using a ball bonding process to form one or more stud bumps on the first die paddle or on the one or more electrical connector elements or on a tie bar of the lead frame.

19.     (Original)     The method of claim 11, where forming one or more positive mold lock structures comprises forming a stud bump by ultrasonically forming a wedge bond with an attached wire component and then breaking off the wire component directly adjacent to the wedge bond, leaving the wedge bond region as the stud bump on the first die paddle or on the one or more electrical connector elements or on a tie bar of the lead frame.

20.     (Withdrawn)   A packaged device, comprising:

a lead frame substrate with one or more integrated circuit die attached on a first side;

a plurality of raised wire bond mold lock structures formed on the first side of the lead frame substrate as wedge bond wire loops or stud bumps; and

a molded body formed to encapsulate at the one or more integrated circuit die and to mechanically interlock with the plurality of raised wire bond mold lock structures to improve adhesion between the molded body and the lead frame substrate.

4

**REMARKS**

Claims 1-20 are pending. Claims 1-10 and 20 are withdrawn. In the Office Action dated February 16, 2016, the previous rejections were withdrawn, but claims 11-19 were newly rejected under 35 U.S.C. § 103 as obvious over U.S. Patent Publication No. 20080191294 to Ohta ("Ohta") and U.S. Patent Publication No. 20030122224 to Shih et al. ("Shih"). While noting with appreciation the withdrawal of the previous rejection, Applicant must respectfully traverse the pending rejections because, as explained more fully below, the cited art fails to disclose or suggest that the requirement of "mold lock structures" which engage with an encapsulating molded body to promote adhesion between the molded body and the lead frame.

A.    **Claims 11-19 Are Not Obvious Because The "Positive *Mold Lock*" Requirements Are Not Disclosed In The Cited Art**

Applicant has variously disclosed and claimed a wire bond "positive mold lock" methodology in which mechanical mold locking features are formed on a lead frame assembly (e.g., die paddle and/or connector elements) to promote adhesion between the encapsulating molded body and lead frame. In particular, independent claim 11 recites that a lead frame is provided that has a first die paddle and one or more electrical connector elements, and that "one or more positive mold lock structures" are formed at predetermined locations on a top surface to laterally protrude from the lead frame. With the protruding "mold lock structures" formed on the lead frame assembly, a "molded body" may be formed on the top surface of the lead frame "to encapsulate a microelectronic device attached to the lead frame and engage with the one or more positive mold lock structures to promote adhesion between the molded body and the lead frame." *See*, claim 13. In this arrangement, the protruding "mold lock structures" formed on the lead frame assembly allow the top of each integrated circuit die to be covered with a molding compound to "mechanically engage and lock with the protruding mechanical mold locking features to increase adhesion to the mold compound and thereby reduce and/or prevent delamination." *See, e.g.*, Application, paragraph 15.

Claims 11-19 stand rejected as obvious over Ohta and Shih. In rejecting the claims, the rejection analysis cites Ohta's stopper wire 1 or stud bump 2 (Figures 1A-B, 5A-B and paragraphs 30 and 82) to meet the claim requirement of the "positive mold lock structures," asserting that Shih's disclosure of a "lead frame" and "die flag." *See, e.g.*, Office Action, p. 3.

In reply, Applicant respectfully submits that the claim requirements are not met by the cited art disclosure from either the Ohta or Shih references. In particular, each of the pending

5

claims variously recite, *inter alia*, forming one or more protruding "positive mold lock structures" at predetermined locations on a top surface of the lead frame. *See, e.g.*, claim 11. The "mold lock" limitation in the claims directly connotes two requirements – namely, that there is a "mold" body (such as a mold encapsulation compound) and that the molded body is "locked" or attached to the positive mold lock structures. *See*, Figures 5-6 (showing the mold compound 124 locking to the positive mold lock wire loops 114). In contrast to the claim requirements, neither cited art reference discloses the formation of "positive mold lock structures," whether located on Ohta's circuit chip stack 300, Shih's lead frame structure, or otherwise. At best, Ohta's stopper wire 1 or stud bump 2 are provided to prevent displacement of the sensor chip 200 in relation to the underlying circuit chip 300. *See, e.g.*, Ohta, Figures 1A-B and paragraphs 57-61 and 82-85 ("stopper 1 [is formed] for regulating the displacement of the sensor chip 200 due to the deformation of the adhesive material 400 interposed between the chips 200 and 300 is arranged around the sensor chip 200."). Since Ohta's "stopper" function (of keeping Ohta's chips 300, 200 in place) is achieved by forming the stopper wire 1 or stud bump 2 "around the sensor chip 200" and in exposed in the opening 120 where the bonding wires 500 are also formed, there is clearly no "mold lock" function provided by Ohta's stopper wire 1 or stud bump 2. Indeed, Ohta's disclosed sensor stack 100, 300 would not be functionally operative if the opening 120 were filled with mold compound to engage with the stopper wire 1 or stud bump 2, as evidenced by Ohta's teaching that a cover lid 140 is "attached to an opening portion of the package 100" to seal the interior of the package 100. *See*, Ohta, paragraph 34. Since this deficiency from Ohta is not remedied by any disclosure from Shih, Applicant respectfully submits that a *prima facie* obviousness showing has not been established.

In respect of the rejection analysis for claim 12, Ohta's cited disclosure (Figures 4A-B and paragraph 66) makes no reference to "mounting a microelectronic device onto the lead frame," as confirmed by the Examiner's concession that "Otha does not specifically disclose the surface comprises a lead frame and die paddle." *See*, Office Action, p. 3. At best, Ohta discloses mounting the circuit chip 300 onto the ceramic layers 110 using an adhesive 130, but there is no teaching or suggestion of "mounting a microelectronic device onto the lead frame."

In respect of the rejection analysis for claim 13, Ohta's disclosure (paragraph 61) is cited to meet the claim requirement for "forming a molded body on at least the top surface of the lead frame to encapsulate a microelectronic device attached to the lead frame and engage with the one

6

or more positive mold lock structures to promote adhesion between the molded body and the lead frame." *See*, Office Action, pp. 4-5. This assertion is simply not supported by the cited Ohta disclosure which simply states that the stopper wire 1 height is tall enough to stop lateral movement of the sensor chip 200, but there is no teaching or suggestion of any "molded body" which engages with Ohta's stopper wire 1.

In respect of the rejection analysis for claims 14-15, the Examiner makes the completely unsupported assertion that Ohta's disclosure (paragraphs 57, 59) meets the claim requirements. This assertion directly contradicts the Examiner's previous concession that "Ohta does not specifically disclose forming the one or more wedge-to-wedge loops on the first die paddle." *See*, Office Action, p. 5 (July 15, 2015). But putting aside this prior contradiction, the current assertion is simply not supported by the cited Ohta disclosure which simply states that Ohta's stopper 1 regulates the displacement of the sensor chip 200 due to the deformation of the adhesive material 400 interposed between the chips 200 and 300, and there is no teaching or suggestion of the claim requirement for "using a wedge bonding process to form one or more wedge-to-wedge loops on the first die paddle."

In view of at least these deficiencies, and putting aside for the moment the propriety of combining Ohta and Shih (and the other footnoted references at page 3 of the Office Action), Applicant respectfully submits that the obviousness rejections of claims 11-19 should be reconsidered and withdrawn. By improperly ignoring the recited claim limitations or otherwise mischaracterizing the cited art disclosure, Applicant respectfully submits that a *prima facie* case of obviousness has not been established that meets the Examiner's burden of pointing out where each and every element of the claimed invention, arranged as required by claims 11-19, are found in the cited art by making "a searching comparison of the claimed invention – *including all its limitations* – with the teaching of the prior art." In re Ochiai, 71 F.3d 1565, 1572 (Fed. Cir. 1995) (emphasis added). In addition, "obviousness requires a suggestion of all limitations in a claim." CFMT, Inc. v. Yieldup Intern. Corp., 349 F.3d 1333, 1342 (Fed. Cir. 2003) (*citing* In re Royka, 490 F.2d 981, 985 (CCPA 1974)). Moreover, "*there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness.*" KSR Int'l v. Teleflex Inc., 127 S. Ct. 1727, 1741 (2007) (*quoting* In re Kahn, 441 F.3d 977, 988 (Fed. Cir. 2006) (emphasis added)). Because the aforementioned features of the claims cannot reasonably be said to be present in the asserted combination of the cited references, Applicant respectfully

submits that a *prima facie* case of obviousness has not been established for claims 11-19, and therefore requests that the rejections of the claims be withdrawn and that the claims be allowed.

## CONCLUSION

In view of the remarks set forth herein, Applicant respectfully submits that all pending claims are in condition for allowance.  Accordingly, Applicant requests that a Notice of Allowance be issued.  Nonetheless, should any issues remain that might be subject to resolution through a telephone interview, the Examiner is requested to telephone the undersigned at 512-338-9100.

<table>
<tr><td>

CERTIFICATE OF TRANSMISSION

I hereby certify that on May 13, 2016, this correspondence is being transmitted via the U.S. Patent & Trademark Office's electronic filing system.

*/Michael Rocco Cannatti/*

</td></tr>
</table>

Respectfully submitted,

*/Michael Rocco Cannatti/*

Michael Rocco Cannatti
Attorney for Applicant
Reg. No. 34,791

8

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 25771235 |
| **Application Number:** | 14335366 |
| **International Application Number:** | |
| **Confirmation Number:** | 3808 |
| **Title of Invention:** | Wire Bond Mold Lock Method and Structure |
| **First Named Inventor/Applicant Name:** | Leo M. Higgins |
| **Customer Number:** | 53364 |
| **Filer:** | Michael Rocco Cannatti/Terri Munoz |
| **Filer Authorized By:** | Michael Rocco Cannatti |
| **Attorney Docket Number:** | MT12020TK |
| **Receipt Date:** | 13-MAY-2016 |
| **Filing Date:** | 18-JUL-2014 |
| **Time Stamp:** | 12:33:01 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| Submitted with Payment | no |
|---|---|

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | MT12020TK_ROA_2-16-16.pdf | 144432<br>af2c794582f2a45027bc0522a4fa7aa886f808d2 | yes | 8 |

## Multipart Description/PDF files in .zip description

| Document Description | Start | End |
|---|---|---|
| Amendment/Req. Reconsideration-After Non-Final Reject | 1 | 1 |
| Claims | 2 | 4 |
| Applicant Arguments/Remarks Made in an Amendment | 5 | 8 |

**Warnings:**

**Information:**

| | | Total Files Size (in bytes): | 144432 |
|---|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>14/335,366 | Filing Date<br>07/18/2014 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:**  ☒ LARGE  ☐ SMALL  ☐ MICRO

## APPLICATION AS FILED – PART I

|  | (Column 1) | (Column 2) |  |  |
|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) |
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A |  |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A |  |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A |  |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | minus 20 = | * | X $ = |  |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | minus 3 = | * | X $ = |  |
| ☐ APPLICATION SIZE FEE<br>(37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). |  |  |  |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) |  |  |  |  |
| * If the difference in column 1 is less than zero, enter "0" in column 2. |  |  | TOTAL |  |

## APPLICATION AS AMENDED – PART II

|  |  | (Column 1) |  | (Column 2) | (Column 3) |  |  |
|---|---|---|---|---|---|---|---|
| **AMENDMENT** | **05/13/2016** | CLAIMS REMAINING AFTER AMENDMENT |  | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * 20 | Minus | ** 20 | = 0 | x $80 = | 0 |
| | Independent (37 CFR 1.16(h)) | * 3 | Minus | ***3 | = 0 | x $420 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) |  |  |  |  |  |  |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) |  |  |  |  |  |  |
| | | | | | | TOTAL ADD'L FEE | **0** |

|  |  | (Column 1) |  | (Column 2) | (Column 3) |  |  |
|---|---|---|---|---|---|---|---|
| **AMENDMENT** | | CLAIMS REMAINING AFTER AMENDMENT |  | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | X $ = |  |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $ = |  |
| | ☐ Application Size Fee (37 CFR 1.16(s)) |  |  |  |  |  |  |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) |  |  |  |  |  |  |
| | | | | | | TOTAL ADD'L FEE |  |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.

** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".

*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".

The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

LIE
/MONICA FRANCIS/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/335,366 | 07/18/2014 | Leo M. Higgins III | MT12020TK | 3808 |

53364          7590          08/16/2016
NXP-TERRILE, CANNATTI, CHAMBERS & HOLLAND - FSL
6501 William Cannon Drive West
AUSTIN, TX 78735

| EXAMINER |
|---|
| PERKINS, PAMELA E |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2822 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 08/16/2016 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

ip.department.us@nxp.com

PTOL-90A (Rev. 04/07)

| **Office Action Summary** | Application No. 14/335,366 | Applicant(s) HIGGINS, LEO M. |
|---|---|---|
| | Examiner PAMELA E. PERKINS | Art Unit 2822 | AIA (First Inventor to File) Status Yes |

*Note: header table spans as follows:*

| | **Application No.** 14/335,366 | **Applicant(s)** HIGGINS, LEO M. |
|---|---|---|
| **Office Action Summary** | **Examiner** PAMELA E. PERKINS | **Art Unit** 2822 | **AIA (First Inventor to File) Status** Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

### Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE _3_ MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
- Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

### Status

1)☒ Responsive to communication(s) filed on _13 May 2016_.

☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a)☒ This action is **FINAL**.    2b)☐ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

### Disposition of Claims*

5)☒ Claim(s) _1-20_ is/are pending in the application.

5a) Of the above claim(s) _1-10 and 20_ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☒ Claim(s) _11-19_ is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

### Application Papers

10)☐ The specification is objected to by the Examiner.

11)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

### Priority under 35 U.S.C. § 119

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

**Certified copies:**

a)☐ All   b)☐ Some**  c)☐ None of the:

1.☐ Certified copies of the priority documents have been received.

2.☐ Certified copies of the priority documents have been received in Application No. _____.

3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)

2)☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____.

3)☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____ .

4)☐ Other: _____.

Application/Control Number: 14/335,366                                            Page 2

Art Unit: 2822

## DETAILED ACTION

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.  This office action is in response to the filing of the request for reconsideration on 13 May 2016.  Claims 1-20 are pending; claims 1-10 and 20 have been withdrawn from consideration.

### *Response to Arguments*

Applicant's arguments filed 13 May 2016 have been fully considered but they are not persuasive.  As stated below, over Ohta (2008/0191294) in view of Shih et al. (2003/0122224) disclose the method of locks on a lead frame as described in claims 11-19.

In response to the applicant's arguments, the applicant argues "*there is clearly no "mold lock" function provided by Ohta's stopper wire.*"  Examiner respectfully disagrees, claim11 does not describe the function or the positive mold lock structure, only the location.  Additionally, the purpose of the stopper wire of Ohta is to prevent displacement (¶60 &61), similar to "locking" in the present application.  During patent examination, the claims are given the broadest reasonable interpretation consistent with the specification. See *In re Morris*, 127 F.3d 1048, 44 USPQ2d 1023 (Fed. Cir. 1997). See MPEP  § 2111 - § 2116.01 for case law pertinent to claim analysis.

Applicant also argues "*At best, Ohta discloses mounting the circuit chip 300 onto the ceramic layers 110 using an adhesive 130, but there is no teaching or suggestion of "mounting a microelectronic device onto the lead frame.'*"  Examiner respectfully disagrees, it is commonly known in the art that a lead frame is defined as the framework

Application/Control Number: 14/335,366                                           Page 3
Art Unit: 2822

of the IC package and it provides mechanical support to the die during its assembly into a finished product[1]. A die paddle (die flag) is commonly known to serve as mechanical support the die during package manufacturing[2].



Applicant further argues Ohta does not teach "*forming a molding body on at least the top surface of the lead frame to encapsulate a microelectronic device.*" However, Shih discloses a semiconductor die on the lead frame and molding compound (molding body) encapsulating the semiconductor die (¶9). It is obvious to one of ordinary skill to modify Ohta by molding compound encapsulating the semiconductor die as taught by Shih et al. to serve as mechanical support the die during package manufacturing (¶8).

Applicant argues "*there is no teaching or suggestion of the claim requirement for "using a wedge bonding process to form one or more wedge-to-wedge loops on the first die paddle.*" Examiner respectfully disagrees, Ohta discloses "*the stopper wire 1 has a **loop** height*" (emphasis added) in paragraph 61.

### Claim Rejections - 35 USC § 103

The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections set forth in this Office action:

---

[1] https://en.wikipedia.org/wiki/Lead_frame
[2] http://www.coolingzone.com/library.php?read=526

Application/Control Number: 14/335,366                                          Page 4

Art Unit: 2822

A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is not identically disclosed as set forth in section 102 of this title, if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains.  Patentability shall not be negated by the manner in which the invention was made.

Claims 11-19 are rejected under 35 U.S.C. 103 as being unpatentable over Ohta (2008/0191294) in view of Shih et al. (2003/0122224).

Referring to claim 11, Ohta discloses a method comprising:

providing a surface [110] and one or more electrical connector elements [300]; and

forming one or more positive mold lock structures [1/2] at predetermined locations on a top surface of the lead frame which laterally protrude above the top surface (Fig. 1A, 1B, 5A & 5B; ¶30 & 82).

Otha does not specifically disclose the surface comprises a lead frame and die paddle.

It is commonly known in the art that a lead frame is defined as the framework of the IC package and it provides mechanical support to the die during its assembly into a finished product[3].  A die paddle (die flag) is commonly known to serve as mechanical support the die during package manufacturing[4].



---

[3] https://en.wikipedia.org/wiki/Lead_frame
[4] http://www.coolingzone.com/library.php?read=526

Application/Control Number: 14/335,366                                        Page 5
Art Unit: 2822

Otha



FIG. 1B

Acting as lead frame

Mold lock

Acting as die paddle

Shih et al. discloses a method comprising providing a lead frame comprising a first die paddle with one or more electrical connector elements, a semiconductor die on the lead frame and molding compound (molding body) encapsulating the semiconductor die (¶9).

Since Ohta and Shih et al. are both from the same field of endeavor, a method of forming a package, the purpose disclosed by Shih et al. would have been recognized in the pertinent art of Ohta.  Therefore, it would have been obvious to one of ordinary skill in the art at the time the invention was made to modify Ohta by the surface comprises a lead frame and die paddle and molding compound encapsulating the semiconductor die as taught by Shih et al. to serve as mechanical support the die during package manufacturing (¶8).

Application/Control Number: 14/335,366                                                    Page 6
Art Unit: 2822

Referring to claim 12, Ohta discloses mounting a microelectronic device onto the

lead frame after forming the one or more positive mold lock structures (Fig. 4A & 4B;

¶66).

Referring to claim 13, Ohta in view of Shih et al. disclose forming a molded body

(Shih et al.: ¶9) on at least the top surface of the lead frame to encapsulate a

microelectronic device attached to the lead frame and engage with the one or more

positive mold lock structures to promote adhesion between the molded body and the

lead frame (Ohta: ¶61).

Referring to claim 14, Ohta discloses forming one or more positive mold lock

structures comprises using a wedge bonding process to form one or more wedge-to-

wedge loops as dummy features *(no electrical connection)* on the lead frame (Fig. 1B;

¶59).

FIG. 1B

Referring to claim 15, Ohta discloses where forming one or more positive mold

lock structures comprises using a wedge bonding process to form one or more wedge-

to-wedge loops on the first die paddle (Fig. 1B; ¶57).

Application/Control Number: 14/335,366                                                          Page 7
Art Unit: 2822

Referring to claim 16, Ohta discloses where forming one or more positive mold lock structures comprises using a wedge bonding process to form one or more wedge-to-wedge loops on the one or more electrical connector elements (Fig. 1B; ¶59).

Referring to claim 17, Ohta discloses forming one or more positive mold lock structures comprises forming one or more wedge-to-wedge loops which are positioned as a fence around a down bond region (Fig. 1A & 5A).

Referring to claim 18, Ohta disclose forming one or more positive mold lock structures comprises using a ball bonding process to form one or more stud bumps on the one or more electrical connector elements (Fig. 5A; ¶82).

Referring to claim 19, Ohta discloses forming one or more positive mold lock structures comprises forming a stud bump by ultrasonically forming a wedge bond with an attached wire component and then breaking off the wire component directly adjacent to the wedge bond, leaving the wedge bond region as the stud bump on the one or more electrical connector elements (¶83).

## Conclusion

**THIS ACTION IS MADE FINAL.**  Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE MONTHS from the mailing date of this action.  In the event a first reply is filed within TWO MONTHS of the mailing date of this final action and the advisory action is not mailed until after the end of the THREE-MONTH shortened statutory period, then the shortened statutory period will expire on the date the advisory action is mailed, and any

Application/Control Number: 14/335,366                                                    Page 8
Art Unit: 2822

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action.  In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the mailing date of this final action.

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to PAMELA E. PERKINS whose telephone number is

(571)272-1840.  The examiner can normally be reached on Monday thru Friday,

10:00am to 6:30pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Brett Feeney can be reached on (571) 270-5484.  The fax phone number for

the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/PAMELA E PERKINS/
Primary Examiner, Art Unit 2822
9 August 2016

| Index of Claims | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 14335366 | HIGGINS, LEO M. |
| | **Examiner** | **Art Unit** |
| | IDA M SOWARD | 2822 |

| ✓ | **Rejected** | - | **Cancelled** | **N** | **Non-Elected** | **A** | **Appeal** |
|---|---|---|---|---|---|---|---|
| = | **Allowed** | ÷ | **Restricted** | **I** | **Interference** | **O** | **Objected** |

| ☐ Claims renumbered in the same order as presented by applicant | | ☐ CPA | ☐ T.D. | ☐ R.1.47 |
|---|---|---|---|---|

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 04/09/2015 | 06/27/2015 | 02/05/2016 | 08/09/2016 | | | | | |
| | 1 | ÷ | N | N | N | | | | | |
| | 2 | ÷ | N | N | N | | | | | |
| | 3 | ÷ | N | N | N | | | | | |
| | 4 | ÷ | N | N | N | | | | | |
| | 5 | ÷ | N | N | N | | | | | |
| | 6 | ÷ | N | N | N | | | | | |
| | 7 | ÷ | N | N | N | | | | | |
| | 8 | ÷ | N | N | N | | | | | |
| | 9 | ÷ | N | N | N | | | | | |
| | 10 | ÷ | N | N | N | | | | | |
| | 11 | ÷ | ✓ | ✓ | ✓ | | | | | |
| | 12 | ÷ | ✓ | ✓ | ✓ | | | | | |
| | 13 | ÷ | ✓ | ✓ | ✓ | | | | | |
| | 14 | ÷ | ✓ | ✓ | ✓ | | | | | |
| | 15 | ÷ | ✓ | ✓ | ✓ | | | | | |
| | 16 | ÷ | ✓ | ✓ | ✓ | | | | | |
| | 17 | ÷ | ✓ | ✓ | ✓ | | | | | |
| | 18 | ÷ | ✓ | ✓ | ✓ | | | | | |
| | 19 | ÷ | ✓ | ✓ | ✓ | | | | | |
| | 20 | ÷ | N | N | N | | | | | |

Part of Paper No. : 20160809

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Inventor:        Leo M. Higgins III

Title:           Wire Bond Mold Lock Method and Structure

Assignee:        Freescale Semiconductor, Inc.

Application No.:  14/335,366          Filed:          July 18, 2014

Examiner:        Pamela E. Perkins     Group Art Unit:  2822

Docket No.:      MT12020TK            Customer No.:    53364

*Filed Electronically*                              November 1, 2016

### PRE-APPEAL BRIEF REQUEST FOR REVIEW AND STATEMENT OF REASONS

Sir:

Applicant requests review of the Final Office Action in this application. No amendments are being filed with the request. This request is being filed with a Notice of Appeal. The following sets forth a succinct, concise, and focused set of arguments for which the review is being requested.

### CLAIM STATUS

Claims 1-20 are pending. Claims 1-10 and 20 are withdrawn. In the Office Action dated August 16, 2016, claims 11-19 were rejected under 35 U.S.C. § 103 as obvious over U.S. Patent Publication No. 2008/0191294 to Ohta ("Ohta") and U.S. Patent Publication No. 2003/0122224 to Shih et al. ("Shih"). As explained below, Applicant respectfully traverses the rejections because the cited art fails to disclose or suggest the claim requirement of "positive mold lock structures" which engage with an encapsulating molded body to promote adhesion between the molded body and the lead frame, as variously claimed.

### REMARKS

A.    **Claims 11-19 Are Not Obvious Because The "Positive *Mold Lock*" Requirements Are Not Disclosed In The Cited Art**

Applicant has variously disclosed and claimed a wire bond "positive mold lock" methodology in which mechanical mold locking features are formed on a lead frame assembly (e.g., die paddle and/or connector elements) to promote adhesion between the encapsulating molded body and lead frame. By the very nature of the term "positive mold lock structures," the claim requires forming a structure on the lead frame top surface which positively protrudes

1

above the lead frame top surface and which <u>locks</u> with <u>mold</u>, such as a "molded body" which engages with the positive mold lock structure(s) to promote adhesion between the molded body and the lead frame.  In particular, independent claim 11 recites that a lead frame is provided that has a first die paddle and one or more electrical connector elements, and that "one or more positive <u>mold lock structures</u>" are formed at predetermined locations on a top surface to laterally protrude from the lead frame.  With the protruding or "positive mold lock structures" formed on the lead frame assembly, a "molded body" may be formed on the top surface of the lead frame "to encapsulate a microelectronic device attached to the lead frame <u>and engage with the one or more positive mold lock structures</u> to promote adhesion between the molded body and the lead frame."  *See*, claim 13.  In this arrangement, the protruding "mold lock structures" formed on the lead frame assembly allow the top of each integrated circuit die to be covered with a molding compound to "mechanically engage and lock with the protruding mechanical mold locking features to increase adhesion to the mold compound and thereby reduce and/or prevent delamination."  *See*, *e.g.*, <u>Application</u>, paragraph 15.

Claims 11-19 stand rejected as obvious over Ohta and Shih.  In rejecting the claims, the rejection analysis asserts that the claim requirement of the "positive mold lock structures" is met by Ohta's disclosure of an angular rate sensor device S1 (Figures 1A-B, 5A-B and paragraphs 30 and 82) in which a stopper wire 1 or stud bump 2 is affixed to a circuit chip 300 in a concave opening portion 120 for storing a sensor chip 200, although without the stopper wire 1 or stud bump 2 engaging any encapsulating molded body.  While admitting that Ohta fails to disclose a lead frame having a die paddle and top surface, the rejection analysis attempts to remedy this deficiency by citing Shih's disclosure (paragraphs 8-9) of a "lead frame" and "die flag."  *See*, *e.g.*, <u>Office Action</u>, pp. 4-5.

In reply, Applicant respectfully submits that the Examiner is misconstruing the claim requirements and otherwise misapplying the claim requirements to the cited Ohta and Shih references.  In particular, each of the pending claims variously recite, *inter alia*, forming one or more protruding "positive <u>mold lock structures</u>" at predetermined locations on a top surface of the lead frame.  *See*, *e.g.*, claim 11.  The "<u>mold lock</u>" limitation in the claims directly recites two requirements – namely, that there is a "mold" body (such as a mold encapsulation compound) and that the molded body is "locked" or attached to the protruding positive mold lock structures.  *See*, Figures 5-6 (showing the mold compound 124 locking to the positive mold lock wire loops

2

114).  In contrast to the claim requirements, neither cited art reference discloses the formation of "positive mold lock structures," whether located on Ohta's circuit chip stack 300, Shih's lead frame structure, or otherwise.  At best, Ohta's stopper wire 1 or stud bump 2 are provided to prevent displacement of the sensor chip 200 in relation to the underlying circuit chip 300.  *See, e.g.*, Ohta, Figures 1A-B and paragraphs 57-61 and 82-85 ("stopper 1 [is formed] for regulating the displacement of the sensor chip 200 due to the deformation of the adhesive material 400 interposed between the chips 200 and 300 is arranged around the sensor chip 200.").  Since Ohta's "stopper" function (of keeping Ohta's chips 300, 200 in place) is achieved by forming the stopper wire 1 or stud bump 2 "around the sensor chip 200" to be exposed in the opening 120 where the bonding wires 500 are also formed, there is clearly no "mold lock" function provided by Ohta's stopper wire 1 or stud bump 2.  Indeed, Ohta's disclosed sensor stack 100, 300 would not be functionally operative if the opening 120 were filled with mold compound to engage with the stopper wire 1 or stud bump 2, as evidenced by Ohta's teaching that a cover lid 140 is "attached to an opening portion of the package 100" to seal the interior of the package 100.  *See,* Ohta, paragraph 34.  Since this deficiency from Ohta is not remedied by any disclosure from Shih, Applicant respectfully submits that a *prima facie* obviousness showing has not been established.

In the Final Office Action, the Examiner incorrectly asserts that "claim 11 does not describe the function or (sic, of?) the positive mold lock structure, only the location." *See,* Office Action, p. 2.  This assertion is directly belied by the recited "positive mold lock" claim language which expressly recites the function of the structure as being a "positive mold lock" whereby "mold" is "locked" with the "positive" structure which protrudes above the top surface of the lead frame.  To assert otherwise is to ignore the plain language and meaning of the claim terms.  In contrast to such express functional and structural claim language, Ohta's stopper wire is clearly not provided to lockingly engage the mold compound.  This is readily confirmed by the fact that Ohta's sensor chip 200 would not function if a molded body or compound were formed to encapsulate the sensor chip 200 and lock with Ohta's stopper wire 1 or stud bump 2.  On this point, Ohta expressly teaches that the concave portion 120 of the sensor chip package 100 is covered by the lid or cover 140 to thereby seal the interior of the package 100 as an opening in which the angular rate sensor chip 200 is free to operate.   Applicant submits further that any attempt to rely on Shia's encapsulating mold compound to remedy this deficiency must fail

3

because such a mold compound encapsulant, if it came into locking engagement with the stoppers 1 inside Ohta's sealed, interior portion would also contact Ohta's sensor chip 200, thereby rendering the device inoperative since the mold compound encapsulant would render the angular rate sensor device 200 unable to detect an angular rate.

In respect of the rejection analysis for claim 12, Ohta's cited disclosure (Figures 4A-B and paragraph 66) makes no reference to "mounting a microelectronic device onto the lead frame," as confirmed by the Examiner's concession that "Ohta does not specifically disclose the surface comprises a lead frame and die paddle." *See*, Office Action, p. 4. At best, Ohta discloses mounting the circuit chip 300 onto the ceramic layers 110 using an adhesive 130, but there is no teaching or suggestion of "mounting a microelectronic device onto the lead frame."

In respect of the rejection analysis for claim 13, Ohta's disclosure (paragraph 61) is cited to meet the claim requirement for "forming a molded body on at least the top surface of the lead frame to encapsulate a microelectronic device attached to the lead frame and engage with the one or more positive mold lock structures to promote adhesion between the molded body and the lead frame." *See*, Office Action, p. 6. This assertion is simply not supported by the cited Ohta disclosure which simply states that the stopper wire 1 height is tall enough to stop lateral movement of the sensor chip 200, but there is no teaching or suggestion of any "molded body" which engages with Ohta's stopper wire 1.

In respect of the rejection analysis for claims 14-15, the Examiner makes the completely unsupported assertion that Ohta's disclosure (paragraphs 57, 59) meets the claim requirements. This assertion directly contradicts the Examiner's previous concession that "Ohta does not specifically disclose forming the one or more wedge-to-wedge loops on the first die paddle." *See*, Office Action, p. 5 (July 15, 2015). But putting aside this prior contradiction, the current assertion is simply not supported by the cited Ohta disclosure which simply states that Ohta's stopper 1 regulates the displacement of the sensor chip 200 due to the deformation of the adhesive material 400 interposed between the chips 200 and 300, and there is no teaching or suggestion of the claim requirement for "using a wedge bonding process to form one or more wedge-to-wedge loops on the first die paddle."

In view of at least these deficiencies, and putting aside for the moment the propriety of combining Ohta and Shih (and the other footnoted references at page 4 of the Office Action), Applicant respectfully submits that the obviousness rejections of claims 11-19 should be

4

reconsidered and withdrawn. By improperly ignoring the recited claim limitations or otherwise mischaracterizing the cited art disclosure, Applicant respectfully submits that a *prima facie* case of obviousness has not been established that meets the Examiner's burden of pointing out where each and every element of the claimed invention, arranged as required by claims 11-19, are found in the cited art by making "a searching comparison of the claimed invention – *including all its limitations* – with the teaching of the prior art." In re Ochiai, 71 F.3d 1565, 1572 (Fed. Cir. 1995) (emphasis added). In addition, "obviousness requires a suggestion of all limitations in a claim." CFMT, Inc. v. Yieldup Intern. Corp., 349 F.3d 1333, 1342 (Fed. Cir. 2003) (*citing* In re Royka, 490 F.2d 981, 985 (CCPA 1974)). Moreover, "*there must be some articulated reasoning* with some rational underpinning to support the legal conclusion of obviousness." KSR Int'l v. Teleflex Inc., 127 S. Ct. 1727, 1741 (2007) (*quoting* In re Kahn, 441 F.3d 977, 988 (Fed. Cir. 2006) (emphasis added)). Because the aforementioned features of the claims cannot reasonably be said to be present in the asserted combination of the cited references, Applicant respectfully submits that a *prima facie* case of obviousness has not been established for claims 11-19, and therefore requests that the rejections of the claims be withdrawn and that the claims be allowed.

## CONCLUSION

In view of the remarks set forth herein, the application is believed to be in condition for allowance and a notice to that effect is solicited. Nonetheless, should any issues remain that might be subject to resolution through a telephonic interview, the Examiner is requested to telephone the undersigned at 512-338-9100.

<table>
<tr><td>

CERTIFICATE OF TRANSMISSION

I hereby certify that on November 1, 2016, this correspondence is being transmitted via the U.S. Patent & Trademark Office's electronic filing system.

*/Michael Rocco Cannatti/*

</td><td>

Respectfully submitted,

*/Michael Rocco Cannatti/*

Michael Rocco Cannatti
Attorney for Applicant
Reg. No. 34,791

</td></tr>
</table>

5

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 14335366 |
| **Filing Date:** | 18-Jul-2014 |
| **Title of Invention:** | Wire Bond Mold Lock Method and Structure |
| **First Named Inventor/Applicant Name:** | Leo M. Higgins |
| **Filer:** | Michael Rocco Cannatti/Terri Munoz |
| **Attorney Docket Number:** | MT12020TK |

Filed as Large Entity

**Filing Fees for   Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| NOTICE OF APPEAL | 1401 | 1 | 800 | 800 |
| **Post-Allowance-and-Post-Issuance:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | **Total in USD ($)** | | **800** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 27385674 |
| **Application Number:** | 14335366 |
| **International Application Number:** | |
| **Confirmation Number:** | 3808 |
| **Title of Invention:** | Wire Bond Mold Lock Method and Structure |
| **First Named Inventor/Applicant Name:** | Leo M. Higgins |
| **Customer Number:** | 53364 |
| **Filer:** | Michael Rocco Cannatti/Terri Munoz |
| **Filer Authorized By:** | Michael Rocco Cannatti |
| **Attorney Docket Number:** | MT12020TK |
| **Receipt Date:** | 01-NOV-2016 |
| **Filing Date:** | 18-JUL-2014 |
| **Time Stamp:** | 16:52:58 |
| **Application Type:** | Utility under 35 USC 111(a) |

# Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $800 |
| RAM confirmation Number | 110216INTEFSW16531900 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Notice of Appeal Filed | MT12020TK_NoticeofAppeal. pdf | 237343<br><br>9a009e2707b4d61aa7ad82c0d642a2b9cd3 b9c79 | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 2 | Pre-Brief Conference request | MT12020TK_Pre-AppealBrief. pdf | 131181<br><br>ad79eeda8ce5af22aeb70fa94ebe79ab6d3 54fa0 | no | 5 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 3 | Fee Worksheet (SB06) | fee-info.pdf | 30288<br><br>49c175a52fc617c26a760fb658b192c21870 a4a5 | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| | | **Total Files Size (in bytes):** | 398812 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/AIA/31 (03-14)
Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| NOTICE OF APPEAL FROM THE EXAMINER TO THE PATENT TRIAL AND APPEAL BOARD | Docket Number (Optional) MT12020TK |
|---|---|

| I hereby certify that this correspondence is being facsimile transmitted to the USPTO, EFS-Web transmitted to the USPTO, or deposited with the United States Postal Service with sufficient postage in an envelope addressed to "Commissioner for Patents, P.O. Box 1450, Alexandria, on Alexandria, VA 22313-1450" [37 CFR 1.8(a)] on __November 1, 2016__ . | In re Application of Leo M. Higgins III | |
|---|---|---|
| | Application Number 14/335,366 | Filed July 18, 2014 |
| | For Wire Bond Mold Lock Method and Structure | |
| Signature /Terri Muñoz/ | Art Unit 2822 | Examiner Pamela E. Perkins |
| Typed or printed name Terri Muñoz | | |

Applicant hereby **appeals** to the Patent Trial and Appeal Board from the last decision of the examiner.

The fee for this Notice of Appeal is (37 CFR 41.20(b)(1))    $ 800

☐ Applicant asserts small entity status. See 37 CFR 1.27. Therefore, the fee shown above is reduced by 50%, and the resulting fee is:    $ _____

☐ Applicant certifies micro entity status. See 37 CFR 1.29. Therefore, the fee shown above is reduced by 75%, and the resulting fee is:    $ _____
Form PTO/SB/15A or B or equivalent must either be enclosed or have been submitted previously.

☐ A check in the amount of the fee is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☑ The Director is hereby authorized to charge any fees which may be required, or credit any overpayment to Deposit Account No. 502264 _____.

☑ Payment made via EFS-Web.

☐ A petition for an extension of time under 37 CFR 1.136(a) (PTO/AIA/22 or equivalent) is enclosed.
For extensions of time in reexamination proceedings, see 37 CFR 1.550.

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

I am the

☐ applicant    ☑ attorney or agent of record    ☐ attorney or agent acting under 37 CFR 1.34
    Registration number 34,791    Registration number _____

Signature /Michael Rocco Cannatti/

Typed or printed name Michael Rocco Cannatti

Telephone Number 512-338-9100

Date November 1, 2016

**NOTE:** This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. Submit multiple forms if more than one signature is required, see below*.

☑ * Total of 1 _____ forms are submitted.

This collection of information is required by 37 CFR 41.20(b)(1) and 41.31. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11, 1.14 and 41.6. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

## Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/335,366 | 07/18/2014 | Leo M. Higgins III | MT12020TK | 3808 |

53364          7590          03/09/2017
NXP-TERRILE, CANNATTI, CHAMBERS & HOLLAND - FSL
6501 William Cannon Drive West
AUSTIN, TX 78735

| EXAMINER |
|---|
| LUU, CHUONG A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2898 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 03/09/2017 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

ip.department.us@nxp.com

| Notice of Panel Decision from Pre-Appeal Brief Review | Application No. 14/335,366 | Applicant(s) HIGGINS, LEO M. |
|---|---|---|
| | Examiner CHUONG A. LUU | Art Unit 2898 |

This is in response to the Pre-Appeal Brief Request for Review filed 01 November, 2016.

1. ☐ **Improper Request** – The Request is improper and a conference will not be held for the following reason(s):

    ☐ The Notice of Appeal has not been filed concurrent with the Pre-Appeal Brief Request.
    ☐ The request does not include reasons why a review is appropriate.
    ☐ A proposed amendment is included with the Pre-Appeal Brief request.
    ☐ Other:    .

The time period for filing a response continues to run from the receipt date of the Notice of Appeal or from the mail date of the last Office communication, if no Notice of Appeal has been received.

2. ☐ **Proceed to Board of Patent Appeals and Interferences** – A Pre-Appeal Brief conference has been held. The application remains under appeal because there is at least one actual issue for appeal. Applicant is required to submit an appeal brief in accordance with 37 CFR 41.37. The time period for filing an appeal brief will be reset to be one month from mailing this decision, or the balance of the two-month time period running from the receipt of the notice of appeal, whichever is greater. Further, the time period for filing of the appeal brief is extendible under 37 CFR 1.136 based upon the mail date of this decision or the receipt date of the notice of appeal, as applicable.

    ☐ The panel has determined the status of the claim(s) is as follows:
Claim(s) allowed: _____.
Claim(s) objected to: _____.
Claim(s) rejected: _____.
Claim(s) withdrawn from consideration: _____.

3. ☐ **Allowable application** – A conference has been held. The rejection is withdrawn and a Notice of Allowance will be mailed. Prosecution on the merits remains closed. No further action is required by applicant at this time.

4. ☒ **Reopen Prosecution** – A conference has been held. The rejection is withdrawn and a new Office action will be mailed. No further action is required by applicant at this time.

| All participants: | |
|---|---|
| (1) *CHUONG A. LUU*. | (3) _____. |
| (2) *JULIO MALDONADO*. | (4) _____. |

| /CHUONG A LUU/ Primary Examiner, Art Unit 2898 | /Karl Tamai/ TQAS TC2800 | /JULIO J. MALDONADO/ Supervisory Patent Examiner, Art Unit 2898 |
|---|---|---|



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| 53364          7590          04/05/2017 |
| --- |
| NXP-TERRILE, CANNATTI, CHAMBERS & HOLLAND - FSL |
| 6501 William Cannon Drive West |
| AUSTIN, TX 78735 |

| EXAMINER |
| --- |
| LUU, CHUONG A |

| ART UNIT | PAPER NUMBER |
| --- | --- |
| 2898 | |

DATE MAILED: 04/05/2017

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 14/335,366 | 07/18/2014 | Leo M. Higgins III | MT12020TK | 3808 |

TITLE OF INVENTION: Wire Bond Mold Lock Method and Structure

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
| --- | --- | --- | --- | --- | --- | --- |
| nonprovisional | UNDISCOUNTED | $960 | $0 | $0 | $960 | 07/05/2017 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.   THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT.   SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED.   THIS STATUTORY PERIOD CANNOT BE EXTENDED.   SEE 35 U.S.C. 151.   THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION.   IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

## PART B - FEE(S) TRANSMITTAL

**Complete and send this form, together with applicable fee(s), to: <u>Mail</u>**   Mail Stop ISSUE FEE
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
**or <u>Fax</u>   (571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

53364        7590        04/05/2017
NXP-TERRILE, CANNATTI, CHAMBERS & HOLLAND - FSL
6501 William Cannon Drive West
AUSTIN, TX 78735

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

| | |
|---|---|
| | (Depositor's name) |
| | (Signature) |
| | (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/335,366 | 07/18/2014 | Leo M. Higgins III | MT12020TK | 3808 |

TITLE OF INVENTION: Wire Bond Mold Lock Method and Structure

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $960 | $0 | $0 | $960 | 07/05/2017 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| LUU, CHUONG A | 2898 | 257-676000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :   ☐ Individual   ☐ Corporation or other private group entity   ☐ Government

4a. The following fee(s) are submitted:
☐ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (**Please first reapply any previously paid issue fee shown above**)
☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____        Date _____

Typed or printed name _____        Registration No. _____

Page 2 of 3

PTOL-85 Part B (10-13) Approved for use through 10/31/2013.        OMB 0651-0033        U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/335,366 | 07/18/2014 | Leo M. Higgins III | MT12020TK | 3808 |

| | |
|---|---|
| 53364        7590        04/05/2017<br>NXP-TERRILE, CANNATTI, CHAMBERS & HOLLAND - FSL<br>6501 William Cannon Drive West<br>AUSTIN, TX 78735 | EXAMINER<br>LUU, CHUONG A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2898 | |

DATE MAILED: 04/05/2017

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
### (Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:
1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| | Application No.<br>14/335,366 | Applicant(s)<br>HIGGINS, LEO  M. |
|---|---|---|
| ***Notice of Allowability*** | Examiner<br>CHUONG A. LUU | Art Unit<br>2898 | AIA (First Inventor to File)<br>Status<br>Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *3/9/2017*.

    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on_____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are *11-19*. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp  or send an inquiry to PPHfeedback@uspto.gov.

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    **Certified copies:**

      a) ☐ All     b) ☐ Some   *c) ☐ None of the:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____

3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

4. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .

5. ☒ Examiner's Amendment/Comment

6. ☒ Examiner's Statement of Reasons for Allowance

7. ☐ Other _____.

/CHUONG A LUU/
Primary Examiner, Art Unit 2898

Application/Control Number: 14/335,366                                      Page 2

Art Unit: 2898

The present application, filed on or after March 16, 2013, is being examined

under the first inventor to file provisions of the AIA.

## DETAILED ACTION

## EXAMINER'S AMENDMENT

An examiner's amendment to the record appears below. Should the changes

and/or additions be unacceptable to applicant, an amendment may be filed as provided

by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be

submitted no later than the payment of the issue fee.

## AUTHORIZATION

Authorization for this examiner's amendment was given in an interview with Mr.

Michael Rocco Cannatti on March 20, 2017.

### To Claims

To cancel non-elected claims 1-10 and 20.

### *Allowable Subject Matter*

Claims 11-19 are allowed.

The following is an examiner's statement of reasons for allowance: The examiner

has reviewed the prior art in light of applicant's claimed invention and finds that the

combined claims define over the prior art.  The cited prior art does not disclose or

suggest a method inter alia the limitations "…forming one or more positive mold lock

structures at predetermined locations on a top surface of the lead frame which laterally

protrude above the top surface."

Application/Control Number: 14/335,366                                          Page 3
Art Unit: 2898

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee.  Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."


### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to CHUONG A. LUU whose telephone number is (571)272-1902.  The examiner can normally be reached on M-F (6:30-3:00).

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Julio Maldonado can be reached on (571) 272-1864.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Application/Control Number: 14/335,366                                                    Page 4
Art Unit: 2898

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system. Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/CHUONG A LUU/
Primary Examiner, Art Unit 2898
March 18, 2017

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 14335366 | HIGGINS, LEO M. |
| | **Examiner** | **Art Unit** |
| | CHUONG A. LUU | 2898 |

| CPC- SEARCHED | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| (H01L21/48, 4889).CPC. | 03/09/2017 | CAL |
| (H01L21/00; H01L24/28, 31, 47; H01L2224/48091, 291, 29144,29188; H01L2924/14).CPC. | 03/20/2017 | CAL |

| CPC COMBINATION SETS  - SEARCHED | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| | | |

| US CLASSIFICATION SEARCHED | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| 257 | 676 | 03/09/2017 | CAL |
| 257 | 666, 674, 670 | 03/18/2017 | CAL |
| 438 | 123 | 03/20/2017 | CAL |

| SEARCH NOTES | | |
|---|---|---|
| **Search Notes** | **Date** | **Examiner** |
| Please see the attchment. | 03/18/2017 | CAL |

| INTERFERENCE SEARCH | | | |
|---|---|---|---|
| **US Class/ CPC Symbol** | **US Subclass / CPC Group** | **Date** | **Examiner** |
| (H01L23/ | 00, 31, 495).CPC. | 03/18/2017 | CAL |

| | |
|---|---|
| | |

     Part of Paper No. :  20170318



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

## BIB DATA SHEET

**CONFIRMATION NO. 3808**

| SERIAL NUMBER 14/335,366 | FILING or 371(c) DATE 07/18/2014 RULE | CLASS 257 | GROUP ART UNIT 2898 | ATTORNEY DOCKET NO. MT12020TK |
|---|---|---|---|---|

**APPLICANTS**

**INVENTORS**
Leo M. Higgins III, Austin, TX;

** CONTINUING DATA *************************

** FOREIGN APPLICATIONS *************************

** IF REQUIRED, FOREIGN FILING LICENSE GRANTED **
07/29/2014

| None | CAL |
|---|---|
| None | CAL |

| Foreign Priority claimed ☐ Yes ☑ No | | STATE OR COUNTRY | SHEETS DRAWINGS | TOTAL CLAIMS | INDEPENDENT CLAIMS |
|---|---|---|---|---|---|
| 35 USC 119(a-d) conditions met ☐ Yes ☑ No | ☐ Met after Allowance | | | | |
| Verified and Acknowledged  /CHUONG A LUU/  Examiner's Signature | Initials | TX | 5 | 20 | 3 |

**ADDRESS**

NXP-TERRILE, CANNATTI, CHAMBERS & HOLLAND - FSL
6501 William Cannon Drive West
AUSTIN, TX 78735
UNITED STATES

**TITLE**

Wire Bond Mold Lock Method and Structure

| FILING FEE RECEIVED 1600 | FEES: Authority has been given in Paper No._____ to charge/credit DEPOSIT ACCOUNT No._____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees (Filing) |
| | | ☐ 1.17 Fees (Processing Ext. of time) |
| | | ☐ 1.18 Fees (Issue) |
| | | ☐ Other _____ |
| | | ☐ Credit |

BIB (Rev. 05/07).

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| S1 | 1 | 14/335366 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/09 22:19 |
| S2 | 7200 | (257/676).CCLS. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2017/03/09 22:20 |
| S4 | 7 | (("20110027943") or ("20070267731") or ("20090224381") or ("7091602") or ("7750486") or ("7808089") or ("7977773")).PN. | US-PGPUB; USPAT | OR | OFF | 2017/03/09 22:22 |
| S5 | 2 | (("20030122224") or ("20080131294")).PN. | US-PGPUB; USPAT | OR | OFF | 2017/03/09 22:23 |
| S6 | 1 | ((lead adj frame$1) or leadframe$1 or (lead-frame$1)) same ((die$1 or chip$1) adj paddle$1) same (connect$3) same (mold$3 adj lock$3 adj (element$1 or structure$1 or device$1)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/09 22:30 |
| S7 | 1 | ((lead adj frame$1) or leadframe$1 or (lead-frame$1)) same ((die$1 or chip$1) adj paddle$1) same (connect$3) same (mold$3 adj (lock$3 or hold$3) adj (element$1 or structure$1 or device$1)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/09 22:35 |
| S8 | 1 | ((lead adj frame$1) or leadframe$1 or (lead-frame$1)) same ((die$1 or chip$1) adj paddle$1) same (connect$3) same ((lock$3 or hold$3) adj (element$1 or structure$1 or device$1)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/09 22:35 |
| S9 | 39 | ((lead adj frame$1) or leadframe$1 or (lead-frame$1)) and ((die$1 or chip$1) adj paddle$1) same (connect$3) and ((lock$3 or hold$3) adj (element$1 or structure$1 or device$1)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/09 22:36 |
| S10 | 3 | ((lead adj frame$1) or leadframe$1 or (lead-frame$1)) and ((die$1 or chip$1) adj paddle$1) same (connect$3) and (mold$3 adj lock$3 adj (element$1 or structure$1 or device$1)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/09 22:36 |
| S11 | 867 | H01L21/48.CPC. | US-PGPUB; USPAT; | OR | ON | 2017/03/09 22:37 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | | | |
| S12 | 331 | H01L21/4889.CPC. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/09 22:37 |
| S13 | 2 | ("9287405").PN. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2017/03/14 13:50 |
| S14 | 1 | 14/335366 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/18 14:21 |
| S15 | 4 | ("5,424,576").PN. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2017/03/18 14:33 |
| S16 | 7664 | (257/666).CCLS. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2017/03/18 14:38 |
| S17 | 632 | (257/674).CCLS. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2017/03/18 14:38 |
| S18 | 1161 | (257/670).CCLS. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2017/03/18 14:38 |
| S19 | 632 | (257/674).CCLS. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2017/03/18 14:39 |
| S20 | 16000 | higgins.inv. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2017/03/18 14:43 |
| S21 | 185 | S20 and leo | US-PGPUB; USPAT; | OR | ON | 2017/03/18 14:43 |

| | | | USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | | | |

## EAST Search History (Interference)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| S22 | 143 | H01L23/00.CPC. | US-PGPUB; USPAT | OR | ON | 2017/03/18 14:40 |
| S23 | 294 | H01L23/31.CPC. | US-PGPUB; USPAT | OR | ON | 2017/03/18 14:40 |
| S24 | 908 | H01L23/495.CPC. | US-PGPUB; USPAT | OR | ON | 2017/03/18 14:40 |

**3/20/2017 9:23:06 AM**
**C:\Users\cluu\Documents\EAST\Workspaces\14335366.wsp**

| *Issue Classification*  | Application/Control No. 14335366 | Applicant(s)/Patent Under Reexamination HIGGINS, LEO M. |
|---|---|---|
| | **Examiner** CHUONG A LUU | **Art Unit** 2898 |

**CPC**

| Symbol | | | | Type | Version |
|---|---|---|---|---|---|
| H01L | 21 | / | 4889 | F | 2013-01-01 |
| H01L | 23 | / | 49541 | I | 2013-01-01 |
| H01L | 23 | / | 49503 | I | 2013-01-01 |
| H01L | 23 | / | 49551 | A | 2013-01-01 |
| H01L | 23 | / | 3142 | I | 2013-01-01 |
| H01L | 23 | / | 3107 | A | 2013-01-01 |
| H01L | 24 | / | 29 | A | 2013-01-01 |
| H01L | 24 | / | 32 | A | 2013-01-01 |
| H01L | 24 | / | 45 | A | 2013-01-01 |
| H01L | 24 | / | 48 | A | 2013-01-01 |
| H01L | 2224 | / | 291 | A | 2013-01-01 |
| H01L | 2224 | / | 29144 | A | 2013-01-01 |
| H01L | 2224 | / | 29188 | A | 2013-01-01 |
| H01L | 2224 | / | 2919 | A | 2013-01-01 |
| H01L | 2224 | / | 293 | A | 2013-01-01 |
| H01L | 2224 | / | 32245 | A | 2013-01-01 |
| H01L | 2224 | / | 45144 | A | 2013-01-01 |
| H01L | 2224 | / | 48247 | A | 2013-01-01 |
| H01L | 2224 | / | 83101 | A | 2013-01-01 |
| H01L | 2224 | / | 83444 | A | 2013-01-01 |
| H01L | 2224 | / | 29294 | A | 2013-01-01 |
| H01L | 2924 | / | 18301 | A | 2013-01-01 |
| H01L | 2924 | / | 19107 | A | 2013-01-01 |
| H01L | 2924 | / | 181 | A | 2013-01-01 |

**CPC Combination Sets**

| Symbol | | | | Type | Set | Ranking | Version |
|---|---|---|---|---|---|---|---|
| H01L | 2224 | / | 83444 | A | 1 | 1 | 2013-01-01 |
| H01L | 2924 | / | 00014 | A | 1 | 2 | 2013-01-01 |
| H01L | 2224 | / | 2919 | A | 2 | 1 | 2013-01-01 |

| NONE | | **Total Claims Allowed:** |
|---|---|---|
| (Assistant Examiner) | (Date) | 9 |
| /CHUONG A LUU/ Primary Examiner.Art Unit 2898 (Primary Examiner) | 03/18/2017 (Date) | O.G. Print Claim(s) 1 | O.G. Print Figure 2 & 5 |

U.S. Patent and Trademark Office

Part of Paper No. 20170318

| *Issue Classification*  | Application/Control No.<br>14335366 | Applicant(s)/Patent Under Reexamination<br>HIGGINS, LEO  M. |
|---|---|---|
| | **Examiner**<br>CHUONG A LUU | **Art Unit**<br>2898 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| H01L | 2924 | 0665 | A | 2 | 2 | 2013-01-01 |
| H01L | 2224 | 29188 | A | 3 | 1 | 2013-01-01 |
| H01L | 2924 | 00014 | A | 3 | 2 | 2013-01-01 |
| H01L | 2224 | 83101 | A | 4 | 1 | 2013-01-01 |
| H01L | 2924 | 00014 | A | 4 | 2 | 2013-01-01 |
| H01L | 2224 | 293 | A | 5 | 1 | 2013-01-01 |
| H01L | 2924 | 014 | A | 5 | 2 | 2013-01-01 |
| H01L | 2224 | 29144 | A | 6 | 1 | 2013-01-01 |
| H01L | 2924 | 00014 | A | 6 | 2 | 2013-01-01 |
| H01L | 2224 | 291 | A | 7 | 1 | 2013-01-01 |
| H01L | 2924 | 014 | A | 7 | 2 | 2013-01-01 |
| H01L | 2224 | 29294 | A | 8 | 1 | 2013-01-01 |
| H01L | 2924 | 00014 | A | 8 | 2 | 2013-01-01 |
| H01L | 2224 | 45144 | A | 9 | 1 | 2013-01-01 |
| H01L | 2924 | 00014 | A | 9 | 2 | 2013-01-01 |
| H01L | 2924 | 181 | A | 10 | 1 | 2013-01-01 |
| H01L | 2924 | 00012 | A | 10 | 2 | 2013-01-01 |

| NONE | | | **Total Claims Allowed:** | |
|---|---|---|---|---|
| (Assistant Examiner) | | (Date) | 9 | |
| /CHUONG A LUU/<br>Primary Examiner.Art Unit 2898<br><br>(Primary Examiner) | | 03/18/2017<br><br>(Date) | O.G. Print Claim(s)<br>1 | O.G. Print Figure<br>2 & 5 |

U.S. Patent and Trademark Office

Part of Paper No.  20170318

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 14335366 | HIGGINS, LEO M. |
| | **Examiner** | **Art Unit** |
| | CHUONG A LUU | 2898 |

| US ORIGINAL CLASSIFICATION | | INTERNATIONAL CLASSIFICATION | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **CLASS** | **SUBCLASS** | **CLAIMED** | | | | | **NON-CLAIMED** | | |
| 438 | 123 | H | 0 | 1 | L | 21 / 48 (2006.01.01) | | | |
| **CROSS REFERENCE(S)** | | | | | | | | | |
| **CLASS** | **SUBCLASS (ONE SUBCLASS PER BLOCK)** | | | | | | | | |
| | | | | | | | | | |

| NONE | | **Total Claims Allowed:** | |
|---|---|---|---|
| | | 9 | |
| (Assistant Examiner) | (Date) | | |
| /CHUONG A LUU/ Primary Examiner.Art Unit 2898 | 03/18/2017 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 2 & 5 |

U.S. Patent and Trademark Office

Part of Paper No. 20170318

| Issue Classification | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 14335366 | HIGGINS, LEO M. |
| | **Examiner** | **Art Unit** |
| | CHUONG A LUU | 2898 |

⊠ **Claims renumbered in the same order as presented by applicant**     ☐ CPA    ☐ T.D.    ☐ R.1.47

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

| NONE | | **Total Claims Allowed:** | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 9 | |
| /CHUONG A LUU/ Primary Examiner.Art Unit 2898 | 03/18/2017 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 2 & 5 |

U.S. Patent and Trademark Office

Part of Paper No. 20170318

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:** <u>Mail</u>    Mail    **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
or <u>Fax</u>    **(571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

53364    7590    04/05/2017
NXP-TERRILE, CANNATTI, CHAMBERS & HOLLAND - FSL
6501 William Cannon Drive West
AUSTIN, TX 78735

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

| ELECTRONICALLY FILED | (Depositor's name) |
|---|---|
| /Tracy Buffett/ | (Signature) |
| May 17, 2017 | (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/335,366 | 07/18/2014 | Leo M. Higgins III | MT12020TK | 3808 |

TITLE OF INVENTION: Wire Bond Mold Lock Method and Structure

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $960 | $0 | $0 | $960 | 07/05/2017 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| LUU, CHUONG A | 2898 | 257-676000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____
2 _____
3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

NXP USA, INC.

(B) RESIDENCE: (CITY and STATE OR COUNTRY)

AUSTIN, TX

Please check the appropriate assignee category or categories (will not be printed on the patent): ☐ Individual ☐ Corporation or other private group entity ☐ Government

4a. The following fee(s) are submitted:
☒ Issue Fee
☒ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): **(Please first reapply any previously paid issue fee shown above)**
☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☒ The director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment, to Deposit Account Number ___504019___ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

<u>NOTE</u>: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

<u>NOTE</u>: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

<u>NOTE</u>: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature ___/David G. Dolezal/___    Date ___2017-05-17___

Typed or printed name ___David G. Dolezal___    Registration No. ___41711___

Page 2 of 3

PTOL-85 Part B (10-13) Approved for use through 10/31/2013.    OMB 0651-0033    U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 14335366 |
| **Filing Date:** | 18-Jul-2014 |
| **Title of Invention:** | Wire Bond Mold Lock Method and Structure |
| **First Named Inventor/Applicant Name:** | Leo M. Higgins |
| **Filer:** | David George Dolezal/Tracy Buffett |
| **Attorney Docket Number:** | MT12020TK |

Filed as Large Entity

**Filing Fees for   Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| UTILITY APPL ISSUE FEE | 1501 | 1 | 960 | 960 |
| PUBL. FEE- EARLY, VOLUNTARY, OR NORMAL | 1504 | 1 | 0 | 0 |

**Extension-of-Time:**

**Miscellaneous:**

| | | |
|---|---|---|
| **Total in USD ($)** | | **960** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 29231360 |
| **Application Number:** | 14335366 |
| **International Application Number:** | |
| **Confirmation Number:** | 3808 |
| **Title of Invention:** | Wire Bond Mold Lock Method and Structure |
| **First Named Inventor/Applicant Name:** | Leo M. Higgins |
| **Customer Number:** | 53364 |
| **Filer:** | David George Dolezal/Tracy Buffett |
| **Filer Authorized By:** | David George Dolezal |
| **Attorney Docket Number:** | MT12020TK |
| **Receipt Date:** | 17-MAY-2017 |
| **Filing Date:** | 18-JUL-2014 |
| **Time Stamp:** | 10:22:44 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | DA |
| Payment was successfully received in RAM | $ 960 |
| RAM confirmation Number | 051717INTEFSW00008526504019 |
| Deposit Account | 504019 |
| Authorized User | Tracy Buffett |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

37 CFR 1.21 (Miscellaneous fees and charges)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Issue Fee Payment (PTO-85B) | MT12020TK-US01-20170517-Issue-Fee-Payment.pdf | 173127 <br><br> 4c54a1de8119e4b22be6b6b27b49a1433096ac7b | no | 1 |

**Warnings:**

**Information:**

| 2 | Fee Worksheet (SB06) | fee-info.pdf | 32465 <br><br> 9b89b909709bf271134e585ea1a944969de6e84f | no | 2 |

**Warnings:**

**Information:**

|  | **Total Files Size (in bytes):** | | 205592 | | |

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**
**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**
**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/335,366 | 06/20/2017 | 9685351 | MT12020TK | 3808 |

53364         7590         05/31/2017
NXP-TERRILE, CANNATTI, CHAMBERS & HOLLAND - FSL
6501 William Cannon Drive West
AUSTIN, TX 78735

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above.

### Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 1 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Data Management (ODM) at (571)-272-4200.

APPLICANT(s) (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

Leo M. Higgins III, Austin, TX;

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The USA offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to encourage and facilitate business investment. To learn more about why the USA is the best country in the world to develop technology, manufacture products, and grow your business, visit SelectUSA.gov.

IR103 (Rev. 10/09)

Docusign Envelope ID: 9791BD69-D051-47B7-86BA-8D9060CCF29B

CTLG POA

## POWER OF ATTORNEY - PATENT

### PTO/AIA/81A
(modified)

I hereby revoke all previous powers of attorney given in the patents listed below.

| Patent No. | Issued Date | Title | CTLG Docket No. |
|---|---|---|---|
| 10,381,295 | 8/13/2019 | LEAD FRAME HAVING REDISTRIBUTION LAYER | 2010-00100 |
| 10,217,700 | 2/26/2019 | LEAD FRAME FOR INTEGRATED CIRCUIT DEVICE HAVING J-LEADS AND GULL WING LEADS | 2010-00200 |
| 10,431,534 | 10/1/2019 | PACKAGE WITH SUPPORT STRUCTURE | 2010-00300 |
| 10,566,268 | 2/18/2020 | PACKAGE TO DIE CONNECTION SYSTEM AND METHOD THEREFOR | 2010-00400 |
| 11,498,829 | 11/15/2022 | NO-GEL PRESSURE SENSOR PACKAGE | 2010-00500 |
| 11,760,623 | 9/19/2023 | NO-GEL PRESSURE SENSOR PACKAGE | 2010-00501 |
| 9,548,263 | 1/17/2017 | SEMICONDUCTOR DEVICE PACKAGE FOR DEBUGGING AND RELATED FABRICATION METHODS | 2010-00600 |
| 9,299,646 | 3/29/2016 | LEAD FRAME WITH POWER AND GROUND BARS | 2010-00700 |
| 9,613,941 | 4/4/2017 | EXPOSED DIE POWER SEMICONDUCTOR DEVICE | 2010-00800 |
| 9,299,645 | 3/29/2016 | SEMICONDUCTOR DEVICE HAVING LEAD FRAME WITH NOTCHED INNER LEADS | 2010-00900 |
| 9,196,578 | 11/24/2015 | COMMON PIN FOR MULTI-DIE SEMICONDUCTOR PACKAGE | 2010-01000 |
| 8,536,684 | 9/17/2013 | METHOD OF ASSEMBLING SHIELDED INTEGRATED CIRCUIT DEVICE | 2010-01100 |
| 8,394,713 | 3/12/2013 | METHOD OF IMPROVING ADHESION OF BOND PAD OVER PAD METALLIZATION WITH A | 2010-01200 |

Docusign Envelope ID: 9791BD69-D051-47B7-86BA-8D9060CCF20B

CTLG POA

| | | | |
|---|---|---|---|
| | | NEIGHBORING PASSIVATION LAYER BY DEPOSITING A PALLADIUM LAYER | |
| 8,716,846 | 5/6/2014 | PRESSURE SENSOR AND METHOD OF PACKAGING SAME | 2010-01300 |
| 8,802,474 | 8/12/2014 | PRESSURE SENSOR AND METHOD OF PACKAGING SAME | 2010-01301 |
| 8,859,336 | 10/14/2014 | METHOD OF PACKAGING SEMICONDUCTOR DIE WITH CAP ELEMENT | 2010-01400 |
| 8,890,308 | 11/18/2014 | INTEGRATEDCIRCUIT PACKAGE AND METHOD OF FORMING THESAME | 2010-01500 |
| 8,810,020 | 8/19/2014 | SEMICONDUCTOR DEVICE WITH REDISTRIBUTED CONTACTS | 2010-01600 |
| 8,836,105 | 9/16/2014 | SEMICONDUCTOR DEVICE PACKAGE WITH CAP ELEMENT | 2010-01700 |
| 9,093,438 | 7/28/2015 | SEMICONDUCTOR DEVICE PACKAGE WITH CAP ELEMENT | 2010-01701 |
| 8,643,189 | 2/4/2014 | PACKAGED SEMICONDUCTOR DIE WITH POWER RAIL PADS | 2010-01800 |
| 9,159,643 | 10/13/2015 | MATRIX LID HEATSPREADER FOR FLIP CHIP PACKAGE | 2010-01900 |
| 9,640,469 | 5/2/2017 | MATRIX LID HEATSPREADER FOR FLIP CHIP PACKAGE | 2010-01901 |
| 8,790,964 | 7/29/2014 | POWER TRANSISTOR WITH HEAT DISSIPATION AND METHOD THEREFORE | 2010-02000 |
| 9,129,930 | 9/8/2015 | POWER TRANSISTOR WITH HEAT DISSIPATION AND METHOD THEREFORE | 2010-02001 |
| 9,685,351 | 6/20/2017 | WIRE BOND MOLD LOCK METHOD AND STRUCTURE | 2010-02100 |
| 9,676,611 | 6/13/2017 | SENSOR DEVICE PACKAGES AND RELATED FABRICATION METHODS | 2010-02200 |
| 9,190,352 | 11/17/2015 | MULTI-DIE SENSOR DEVICE | 2010-02300 |
| 9,064,838 | 6/23/2015 | HEAT SPREADER FOR INTEGRATED CIRCUIT DEVICE | 2010-02400 |

| | | | |
|---|---|---|---|
| 9,305,898 | 4/5/2016 | SEMICONDUCTOR DEVICE WITH COMBINED POWER AND GROUND RING STRUCTURE | 2010-02500 |
| 9,297,713 | 3/292016 | PRESSURE SENSOR DEVICE WITH THROUGH SILICON VIA | 2010-02600 |
| 9,355,945 | 5/31/2016 | SEMICONDUCTOR DEVICE WITH HEAT- DISSIPATING LEAD FRAME | 2010-02700 |
| 9,362,212 | 6/7/2016 | INTEGRATED CIRCUIT PACKAGE HAVING SIDE AND BOTTOM CONTACT PADS | 2010-02800 |
| 9,449,901 | 9/20/2016 | LEAD FRAME WITH DEFLECTING TIE BAR FOR IC PACKAGE | 2010-02900 |
| 10,151,658 | 12/11/2018 | DIAPHRAGM LID CONSTRUCTION FOR PRESSURE SENSOR PACKAGES APPLICATION | 2010-03000 |
| 10,364,140 | 7/30/2019 | INTEGRATING DIVERSE SENSORS IN A SINGLE SEMICONDUCTOR DEVICE | 2010-03100 |
| 11,021,363 | 6/1/2021 | INTEGRATING DIVERSE SENSORS IN A SINGLE SEMICONDUCTOR DEVICE | 2010-03101 |
| 8,736,034 | 5/27/2014 | LEAD-FRAME CIRCUIT PACKAGE | 2010-03200 |
| 7,772,036 | 8/10/2010 | LEAD FRAME BASED, OVER-MOLDED SEMICONDUCTOR PACKAGE WITH INTEGRATED THROUGH HOLE TECHNOLOGY (THT) HEAT SPREADER PIN(S) AND ASSOCIATED METHOD OF MANUFACTURING | 2010-03300 |
| 8,659,146 | 2/25/2014 | LEAD FRAME BASED, OVER-MOLDED SEMICONDUCTOR PACKAGE WITH INTEGRATED THROUGH HOLE TECHNOLOGY (THT) HEAT SPREADER PIN(S) AND ASSOCIATED METHOD OF MANUFACTURING | 2010-03301 |
| 8,427,797 | 4/23/2013 | ESD NETWORKS FOR SOLDER BUMP INTEGRATED CIRCUITS | 2010-03401 |

| 8,258,611 | 9/4/2012 | A LEADFRAME STRUCTURE FOR ELECTRONIC DEVICES | 2010-03500 |
|---|---|---|---|
| 8,895,357 | 11/25/2014 | INTEGRATED CIRCUIT AND METHOD OF MANUFACTURING THE SAME | 2010-03600 |
| 9,263,299 | 2/16/2016 | EXPOSED DIE CLIP BONDED PACKAGE | 2010-03700 |
| 9,653,414 | 5/16/2017 | SHIELDED QFN PACKAGE AND METHOD OF MAKING | 2010-03800 |
| 10,096,555 | 10/9/2018 | SHIELDED QFN PACKAGE AND METHOD OF MAKING | 2010-03801 |
| 10,192,837 | 1/29/2019 | MULTI-VIA REDISTRIBUTION LAYER FOR INTEGRATED CIRCUITS HAVING SOLDER BALLS | 2010-03900 |
| 8,013,452 | 9/6/2011 | WIRE-BOUND SEMICONDUCTOR COMPONENT WITH REINFORCED INNER CONNECTION METALIZATION | 2010-04000 |

I hereby appoint the Patent Practitioner(s), associated with the Customer Number: **159588**, as my/our attorney(s) or agent(s) with respect to the above-identified patents, and to transact all business in the United States Patent and Trademark Office connected therewith.

Please change the correspondence address for the above-identified patents to the address associated with the above-mentioned Customer Number.

I am the Patent Owner: Chip Packaging Technologies, LLC.

### Signature of Patent Owner

The undersigned (whose title is supplied below) is authorized to act on behalf of the Patent Owner.

Signed by:

Mark Roche

_____

Mark Roche
Member – Authorized Signor
Chip Packaging Technologies, LLC
Patent Owner

11/19/2024

_____

Date

PTO/AIA/96 (11-23)
Approved for use through **05/31/2024**. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## STATEMENT UNDER 37 CFR 3.73(c)

First Named Inventor/Patent Owner: Chip Packaging Technologies, LLC

Application No./Patent No.: 9,685,351          Filed/Issue Date: 2017-06-20

Titled: WIRE BOND MOLD LOCK METHOD AND STRUCTURE

Chip Packaging Technologies, LLC          , a Limited Liability Corporation

(Name of Assignee)          (Type of Assignee, e.g., corporation, partnership, university, government agency, etc.)

states that, for the patent application/patent identified above, it is (choose **one** of options 1, 2, 3 or 4 below):

1. [✓]  The assignee of the entire right, title, and interest.

2. [ ]  An assignee of less than the entire right, title, and interest (check applicable box):

   [ ]  The extent (by percentage) of its ownership interest is _____%. Additional Statement(s) by the owners holding the balance of the interest <u>must be submitted</u> to account for 100% of the ownership interest.

   [ ]  There are unspecified percentages of ownership.  The other parties, including inventors, who together own the entire right, title and interest are:

   Additional Statement(s) by the owner(s) holding the balance of the interest <u>must be submitted</u> to account for the entire right, title, and interest.

3. [ ]  The assignee of an undivided interest in the entirety (a complete assignment from one of the joint inventors was made). The other parties, including inventors, who together own the entire right, title, and interest are:

   Additional Statement(s) by the owner(s) holding the balance of the interest <u>must be submitted</u> to account for the entire right, title, and interest.

4. [ ]  The recipient, via a court proceeding or the like (*e.g.*, bankruptcy, probate), of an undivided interest in the entirety (a complete transfer of ownership interest was made).  The certified document(s) showing the transfer is attached.

The interest identified in option 1, 2 or 3 above (not option 4) is evidenced by either (choose **one** of options A or B below):

A. [ ]  An assignment from the inventor(s) of the patent application/patent identified above. The assignment was recorded in the United States Patent and Trademark Office at Reel _____, Frame _____, or for which a copy thereof is attached*.

B. [✓]  A chain of title from the inventor(s), of the patent application/patent identified above, to the current assignee as follows:

   1. From: Inventor          To: Freescale Semiconductor, Inc.

   The document was recorded in the United States Patent and Trademark Office at
   Reel 033344 , Frame 0775 , or for which a copy thereof is attached*.

   2. From: Freescale Semiconductor, Inc.          To: NXP USA, Inc.

   The document was recorded in the United States Patent and Trademark Office at
   Reel 041414 , Frame 0883 , or for which a copy thereof is attached*.

[Page 1 of 2]

A Federal agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with an information collection subject to the requirements of the Paperwork Reduction Act of 1995, unless the information collection has a currently valid OMB Control Number. The OMB Control Number for this information collection is 0651-0031. Public burden for this form is estimated to average 12 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the information collection. Send comments regarding this burden estimate or any other aspect of this information collection, including suggestions for reducing this burden to the Chief Administrative Officer, United States Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450 or email InformationCollection@uspto.gov. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/AIA/96 (11-23)
Approved for use through **05/31/2024**. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## STATEMENT UNDER 37 CFR 3.73(c)

3. From: <u>NXP USA, Inc.</u>          To: <u>Chip Packaging Technologies, LLC</u>

The document was recorded in the United States Patent and Trademark Office at

Reel <u>068541</u>, Frame <u>0903</u>, or for which a copy thereof is attached*.

4. From: _____    To: _____

The document was recorded in the United States Patent and Trademark Office at

Reel _____, Frame _____, or for which a copy thereof is attached*.

5. From: _____    To: _____

The document was recorded in the United States Patent and Trademark Office at

Reel _____, Frame _____, or for which a copy thereof is attached*.

6. From: _____    To: _____

The document was recorded in the United States Patent and Trademark Office at

Reel _____, Frame _____, or for which a copy thereof is attached*.

☐    Additional documents in the chain of title are listed on a supplemental sheet(s).

☑    *As required by 37 CFR 3.73(c)(1)(i), the documentary evidence of the chain of title from the original owner to the assignee was, or concurrently is being, submitted for recordation pursuant to 37 CFR 3.11.

[NOTE: A separate copy (i.e., a true copy of the original assignment document(s)) must be submitted to Assignment Division in accordance with 37 CFR Part 3, to record the assignment in the records of the USPTO. See MPEP 302.08]

The undersigned (whose title is supplied below) is authorized to act on behalf of the assignee.

/Corey Tumey/                                    2024-12-31

Signature                                        Date

Corey S. Tumey                                   57,079

Printed or Typed Name                            Title or Registration Number

[Page 2 of 2]

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. The United States Patent and Trademark Office (USPTO) collects the information in this record under authority of 35 U.S.C. 2. The USPTO's system of records is used to manage all applicant and owner information including name, citizenship, residence, post office address, and other information with respect to inventors and their legal representatives pertaining to the applicant's/owner's activities in connection with the invention for which a patent is sought or has been granted. The applicable Privacy Act System of Records Notice for the information collected in this form is COMMERCE/PAT-TM-7 Patent Application Files, available in the Federal Register at 78 FR 19243 (March 29, 2013). https://www.govinfo.gov/content/pkg/FR-2013-03-29/pdf/2013-07341.pdf

Routine uses of the information in this record may include disclosure to:

1) law enforcement, in the event that the system of records indicates a violation or potential violation of law;

2) a federal, state, local, or international agency, in response to its request;

3) a contractor of the USPTO having need for the information in order to perform a contract;

4) the Department of Justice for determination of whether the Freedom of Information Act (FOIA) requires disclosure of the record;

5) a Member of Congress submitting a request involving an individual to whom the record pertains, when the individual has requested the Member's assistance with respect to the subject matter of the record;

6) a court, magistrate, or administrative tribunal, in the course of presenting evidence, including disclosures to opposing counsel in the course of settlement negotiations;

7) the Administrator, General Services Administration (GSA), or their designee, during an inspection of records conducted by GSA under authority of 44 U.S.C. 2904 and 2906, in accordance with the GSA regulations and any other relevant (i.e., GSA or Commerce) directive, where such disclosure shall not be used to make determinations about individuals;

8) another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c));

9) the Office of Personnel Management (OPM) for personnel research purposes; and

10) the Office of Management and Budget (OMB) for legislative coordination and clearance.

If you do not furnish the information requested on this form, the USPTO may not be able to process and/or examine your submission, which may result in termination of proceedings, abandonment of the application, and/or expiration of the patent.



UNITED STATES
PATENT AND TRADEMARK OFFICE

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC ACKNOWLEDGEMENT RECEIPT

| APPLICATION # | RECEIPT DATE / TIME | ATTORNEY DOCKET # |
|---|---|---|
| **14/335,366** | **12/31/2024 12:11:00 PM Z ET** | **MT12020TK** |

## Title of Invention

Wire Bond Mold Lock Method and Structure

## Application Information

| | | | |
|---|---|---|---|
| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | 9685351 |
| CONFIRMATION # | 3808 | FILED BY | JANEAN HARGIS |
| PATENT CENTER # | 68566482 | FILING DATE | 07/18/2014 |
| CUSTOMER # | 53364 | FIRST NAMED INVENTOR | Leo M. Higgins III |
| CORRESPONDENCE ADDRESS | - | AUTHORIZED BY | Corey Tumey |

## Documents

## TOTAL DOCUMENTS: 2

| DOCUMENT | PAGES | DESCRIPTION | SIZE (KB) |
|---|---|---|---|
| 2010-02100-POA.pdf | 4 | Power of Attorney | 252 KB |
| 2010-02100-373 statement.pdf | 3 | Assignee showing of ownership per 37 CFR 3.73 | 229 KB |

## Digest

| DOCUMENT | MESSAGE DIGEST(SHA-512) |
|---|---|
| 2010-02100-POA.pdf | 40F4F0F9CE49EA6919FCE17F6DA2A9882C43F2E0FD5D86CC 54D18654753E4795E74CEFA24F6DD30498BA3756ED94E533B 7A498C8C2C5230A8239607BD745F917 |
| 2010-02100-373 statement.pdf | 21856D791412525697FDA94D336C2AE5B07C4F37DE972CD50 7B922AEA7DBF555C5778258BC7478ADE660D15E6ADF40EA6 |

7AB4F9B0D3AC687F49CB368AF463A22

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

**National Stage of an International Application under 35 U.S.C. 371**

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 14/335,366 | 07/18/2014 | Leo M. Higgins, III | MT12020TK |

**CONFIRMATION NO. 3808**

159588
C. Tumey Law Group PLLC
C. Tumey Law
PO Box 890226
Houston, TX 77062-9998

**POA ACCEPTANCE LETTER**

*OC000000083178420*

Date Mailed: 01/17/2025

## NOTICE OF ACCEPTANCE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 12/31/2024.

The Power of Attorney in this application is accepted. Correspondence in this application will be mailed to the above address as provided by 37 CFR 1.33.

Questions about the contents of this notice and the
requirements it sets forth should be directed to the Office
of Data Management, Application Assistance Unit, at
**(571) 272-4000** or **(571) 272-4200** or **1-888-786-0101**.

/ggasgedom/



UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 14/335,366 | 07/18/2014 | Leo M. Higgins, III | MT12020TK |

**CONFIRMATION NO. 3808**

53364
TERRILE, CANNATTI & CHAMBERS, LLP
NXP
6501 William Cannon Drive West
AUSTIN, TX 78735

**POWER OF ATTORNEY NOTICE**


*OC000000083178271*

Date Mailed: 01/17/2025

# NOTICE REGARDING CHANGE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 12/31/2024.

• The Power of Attorney to you in this application has been revoked by the assignee who has intervened as provided by 37 CFR 3.71. Future correspondence will be mailed to the new address of record(37 CFR 1.33).

Questions about the contents of this notice and the
requirements it sets forth should be directed to the Office
of Data Management, Application Assistance Unit, at
**(571) 272-4000** or **(571) 272-4200** or **1-888-786-0101**.

/ggasgedom/