**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| CHIP PACKAGING TECHNOLOGIES, LLC,<br>Plaintiff<br><br>v.<br><br>STMICROELECTRONICS, INC.,<br>Defendant | Civil Action No.: 7:25-cv-00505-DC-DTG |

**ORDER REGARDING JULY 16, 2026**
**DISCOVERY DISPUTE OVER PRODUCT IDENTIFICATION**

On July 16, 2026, the parties submitted a discovery dispute chart outlining a disagreement over the plaintiff's identification of allegedly infringing products. After reviewing the parties' positions, the Court finds a hearing unnecessary. The defendant's request to strike the plaintiff's accused-products that are not specifically charted in Appendices A–E to the plaintiff's preliminary contentions is **DENIED**; and the defendant's request for fees and costs is also **DENIED**.

**SIGNED** this 17th day of August, 2026.

DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT A

| Issue | ST's Position | CPT's Position |
|---|---|---|
| **Whether CPT has a sufficient basis to continue accusing uncharted products.** | CPT should not proceed on its uncharted product list because CPT's admissions show that it has no legitimate basis to accuse those products. CPT's list was constructed through guesswork without verifying the uncharted products 1) actually exist, and 2) were allegedly infringing. CPT's lack of diligence has multiplied ST's discovery costs, and CPT should not be permitted to continue multiplying those costs. Relief is needed to avoid further prejudice.<br><br>CPT's original February 12 contentions charted *five* products, relying on product teardown photos and X-ray imaging. Those contentions vaguely referred to additional, uncharted products. Left unable to address its production deadline, ST pressed CPT for a specific list of accused products. On March 27, CPT served "supplemental" contentions adding *320 products*, again with no infringement explanation. ST took the list at face value, producing on May 18 over 1,500 documents.<br><br>ST's subsequent investigation revealed a severe lack of diligence. To construct its list, CPT claims that it used "ST's own part-numbering conventions" to generate names including "all variants within [a] family" that the convention would predict. Ex-A, 1,11. Missing was any verification that the products existed (even a simple internet search) or that CPT had any basis to accuse them. Review reveals the result: over 50 products do not exist, and among the products that do exist are multiple package types with different pin counts and configurations lumped together as | CPT charted five products the only way ST's packages permit: by physically tearing down and X-raying them. The asserted claims cover structures inside the package—lead frames, power and ground bars, mold locks, and the sensor gel, diaphragm, and lid—that no public document reveals. Having proven infringement in the charted parts, CPT identified the broader families sharing those structures by package type and product line. That is all the preliminary stage requires: uncharted products "need only be 'reasonably similar' to those specifically charted." *IGT v. Zynga, Inc.*, No. 6:21-cv-00331-ADA, Dkt. 61, at 4 (W.D. Tex. Mar. 1, 2022) (Albright, J.).<br><br>ST's motion inverts that standard into something no plaintiff could meet. ST faults CPT for not confirming, before discovery, that every family member shares the accused internal structure. But there are only two ways to see inside an ST package: destroy a physical unit, or read ST's internal design and assembly documents. ST would have CPT buy and tear down hundreds of parts to answer a question ST can answer from its own files—files ST holds and refuses to produce. ST demands the impossible, then faults CPT for falling short of it.<br><br>The list ST attacks is the list ST demanded. When ST insisted on part numbers, CPT built them from ST's own datasheets and ST's own part-numbering conventions—an over-inclusive, good-faith effort to map a sprawling catalog ST alone controls. The "errors" ST touts prove the point: |

| | | |
|---|---|---|
| | though interchangeable. *Id.*,12-25. Despite the plausible inference, CPT denies that it used AI to construct the list. Pressed on how it could rely on "representativeness" for hundreds of different products, CPT promised a remedy while conceding the list included non-existent and unaccused products. Its June 16 "second" supplement removed over 70 products. For every remaining product, CPT added a single sentence per patent asserting without explanation the charted product is "representative." *Id.*<br><br>That assertion is not merely unsupported; it is unsupportable. CPT's infringement theory rests on interior package structures, yet CPT contends the information it used to compile its list "describe[s] only exterior features…and do[es] not show the internal package structures at all," and "says nothing about whether [a product] shares the claimed internal construction." *Id.*, 4-5,11. A representativeness theory may not "be used as remedy for incomplete PICs," particularly here where the theory is no more than a bare assertion. *SVV Tech. Innovations, Inc. v. Samsung Elecs. Co.*, No. 6:20-cv-139-ADA, ECF No. 35 at 2 (W.D. Tex. Aug. 9, 2020). CPT has thus admitted, in substance, that it had no basis to compile the list in the first place—yet CPT continues to rely on that list for additional production requests.<br><br>ST has been patient. It has sent five letters since February and permitted CPT to serve two rounds of amended contentions—amendments CPT could not have certified under the OGP. CPT should not be allowed to continue into discovery on its unexamined and unverified list, which has already cost ST significant time investigating over 50 non-existent products and producing documents for over 20 | whether a predicted part number exists, or carries a different pin count, is something ST could confirm from its catalog—and ST took weeks to do so. CPT dropped each part promptly once ST identified it.<br><br>To defeat representativeness, ST needs a "declaration or technical document" showing an internal difference. *IGT v. Zynga*, Dkt. 61, at 5. It has none—only attorney argument and pin counts, which say nothing about what is inside the package. The statement ST quotes was CPT's complaint about ST's deficient production, not an admission. And ST's lone authority struck nothing. *SVV Tech. Innovations, Inc. v. Samsung Elecs. Co.*, No. 6:20-cv-00139-ADA, Dkt. 35 (W.D. Tex. Aug. 9, 2020). Where the dispositive evidence sits with ST, the remedy is the production CPT is already pursuing, not a strike.<br><br>ST's fee request cites no rule, no authority, and no amount—and would shift to CPT the cost of ST producing its own public datasheets. It should be denied.<br><br>**CPT's Requested Relief:** It is ORDERED that ST's requested relief is DENIED. ST's request to strike CPT's accused-product list as to products not specifically charted in Appendices A–E to CPT's contentions is DENIED; and ST's request that CPT reimburse ST's fees and costs incurred investigating and responding to CPT's uncharted-product list is DENIED. |

| | | |
|---|---|---|
| | unaccused products.<br><br>**Relief:** ST requests that the Court order any or all of the following relief:<br><br>Order that "CPT's accused-product list is stricken as to all products not specifically charted in Appendices A–E to CPT's contentions, without prejudice to CPT seeking leave to add any specific product identified through subsequent discovery for which it can articulate a good-faith basis for alleging infringement;" and order that "CPT shall reimburse ST's reasonable fees and costs incurred investigating and responding to CPT's uncharted product list, including for each of the following:<br><br>**(a)** the non-existent products CPT included in its March 27, 2026 accused-product list through its lack of diligence;<br><br>**(b)** the unaccused products CPT included in its March 27, 2026 accused-product list through its lack of diligence; and<br><br>**(c)** the remaining uncharted products in CPT's June 16, 2026 list, for which CPT has failed to present any viable representative-products theory." | |