**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| CHIP PACKAGING TECHNOLOGIES, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>STMICROELECTRONICS, INC.,<br><br>*Defendant.* | Civil Action No. 7:25-cv-00505-DC-DTG<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF CHIP PACKAGING TECHNOLOGIES, LLC'S**
**SUR-REPLY CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. ARGUMENT ........ 1

- A. U.S. Patent No. 9,685,351 ........ 1
  - 1. "positive mold lock structure" ........ 1
  - 2. "laterally protrude above the top surface" ........ 4
- B. U.S. Patent No. 9,299,646 ........ 5
  - 1. "said area" ........ 5
  - 2. "disposed between . . . the plurality of signal leads and the first side of the power bar" ........ 5
- C. U.S. Patent No. 9,263,299 ........ 7
  - 1. "temporary carrier" ........ 7
  - 2. "each of said active device die having a solderable conductive surface on its underside" ........ 10
  - 3. "mounting . . . dispensing . . . attaching . . . and reflowing . . ." ........ 11
- D. U.S. Patent No. 8,643,189 ........ 13
  - 1. "power rail pad" ........ 13
  - 2. "opposite die connection pad surface" ........ 14

III. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M Innovative Props. Co. v. Tredegar Corp.*,
725 F.3d 1315 (Fed. Cir. 2013)....................3, 9, 14, 15

*Altiris, Inc. v. Symantec Corp.*,
318 F.3d 1363 (Fed. Cir. 2003)....................11, 12

*Aventis Pharma S.A. v. Hospira, Inc.*,
675 F.3d 1324 (Fed. Cir. 2012)....................3

*Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp.*,
262 F.3d 1258 (Fed. Cir. 2001)....................2

*Energizer Holdings, Inc. v. ITC*,
435 F.3d 1366 (Fed. Cir. 2006)....................6

*Fenner Invs., Ltd. v. Cellco P'ship*,
778 F.3d 1320 (Fed. Cir. 2015)....................8, 14

*GE Lighting Sols., LLC v. AgiLight, Inc.*,
750 F.3d 1304 (Fed. Cir. 2014)....................8

*Hologic, Inc. v. SenoRx, Inc.*,
639 F.3d 1329 (Fed. Cir. 2011)....................5

*MyPAQ Holdings Ltd. v. Samsung Elecs. Co.*,
No. 2023-2024, 2025 WL 1189920 (Fed. Cir. Apr. 24, 2025)....................9

*Tandon Corp. v. ITC*,
831 F.2d 1017 (Fed. Cir. 1987)....................7, 11, 14

*Thorner v. Sony Comput. Ent. Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012)....................3, 6, 9, 14

*U.S. Surgical Corp. v. Ethicon, Inc.*,
103 F.3d 1554 (Fed. Cir. 1997)....................5, 12

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
503 F.3d 1295 (Fed. Cir. 2007)....................10

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996)....................5

## I. INTRODUCTION

Defendant STMicroelectronics, Inc.'s ("ST") Reply (Dkt. 48) ("Reply") confirms that ST cannot carry the exacting burden the Federal Circuit imposes on a party seeking to depart from ordinary meaning. ST asks the Court to accept "context clues," a "pattern" of usage, and "definition by implication." But none of those is the standard. Departing from ordinary meaning requires a clear expression of intent, which ST does not demonstrate for any of its proposed constructions.

Chip Packaging respectfully submits that its proposed constructions should be adopted, and ST's rejected, for the reasons set forth below and in Chip Packaging's Responsive Brief (Dkt. 45) ("Resp. Br.").

## II. ARGUMENT

### A. U.S. Patent No. 9,685,351

#### 1. "positive mold lock structure"

Chip Packaging's construction—"raised mechanical locking features"—is correct because it is the phrase the specification itself uses, repeatedly and without qualification, to describe the claimed structures. U.S. Patent No. 9,685,351 ("'351 Pat.) at 2:29–35, 4:26–29, 4:30–31, 5:61–63, 6:59–61, 7:25–29, 7:29–33. Chip Packaging's construction is also correct because it is consistent with the meaning the applicant gave the Examiner: "[b]y the very nature of the term," the claims require "forming a structure on the lead frame top surface which positively protrudes above the lead frame top surface and which locks with mold." Dkt. 42, Ex. E at 121–22.

ST's Reply Brief simply ignores the passages cited above. Instead, ST's argument hinges on three other isolated statements in the specification. *See* Reply at 2 (citing 3:37–47, 5:61–6:4, and 6:25–32). But even those few passages do not support ST's position. The specification at 5:61–64 says ***nothing*** about etching, stamping, or recessing. At 3:37–47, the specification describes only the Figure 2 embodiment—not any sort of broad-based, clear disavowal of claim scope. And at 6:25–32, the specification explains how "selected embodiments" may be fabricated (*see* '351

Pat.") at 6:7–8), including that some may be "half-etched" (a different phrase than ST's construction), but without any reference to the other negative limitations that ST seeks to import (*i.e.*, "stamped" and "recessed"). *See* '351 Pat. at 6:22–25.

ST now asserts that "[h]alf-etched" is "a specific subtype of 'etched,'" and that the "not half-etched" parenthetical "is a further exclusion over and above 'not etched, stamped, or recessed.'" Reply at 3. But what ST's shifting explanation shows is that there is no single clear, consistent definition or exclusion of the negative limitations ST attempts to attach to this claim term. The different parentheticals do different work in different passages, describing different embodiments—which is exactly why they are not definitional. Definition by implication requires that the patentee use a term "in a manner consistent with only a single meaning." *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1271 (Fed. Cir. 2001). And the specification's many unqualified references to "raised" structures—which ST's Reply does not address—defeat consistency outright.

ST's explanation of the prosecution history (Reply at 3) likewise supports Chip Packaging's construction. ST says the applicant "had no reason to re-raise the not etched, stamped, or recessed distinction at that time." Reply at 3. Precisely so: when the applicant told the Examiner what "[b]y the very nature of the term" the claims require, it described a structure that "positively protrudes" and "locks with mold"—and said nothing about subtractive processes. Dkt. 42, Ex. E at 121–22. A limitation the applicant saw no reason to mention when explaining the term for the Examiner is not one the applicant clearly and unmistakably surrendered.

ST's Reply also repeatedly insists that the term "positive mold lock structures" is "coined." Whether or not the term is "coined" is ultimately irrelevant—the construction of the term should reflect the meaning of the term to a person of skill in the art in view of the intrinsic evidence. Here, as explained in Chip Packaging's Responsive Brief (Dkt. 45), the specification repeatedly describes the "positive mold lock structures" as "raised" structures without further qualification. '351 Pat. at 2:29–35, 4:26–29, 4:30–31, 5:61–63, 6:59–61, 7:25–29, 7:29–33.

ST's reliance on *Thorner* and *Aventis* (Reply at 2–3) is misplaced. The *Thorner* language ST quotes asks whether "the specification makes clear that the invention does not include a particular feature." Reply at 2 (citing *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012)). The '351 Patent says no such thing. It says that two specific, numbered structures—wire wedge bond loops 114 and stud bumps 214–215—are, "[a]s formed," "raised (not etched, stamped, or recessed) mechanical locking features." '351 Pat. at 3:35–39, 5:43–47. A sentence beginning "[a]s formed" and identifying an element by reference numeral narrates how a depicted example is manufactured. It is not a statement that the invention excludes anything. That the same parenthetical appears in the description of both structures, Reply at 2–3, shows only that the patent describes two embodiments the same way; *Thorner* holds expressly that "[i]t is not enough for a patentee to simply . . . use a word in the same manner in all embodiments, the patentee must 'clearly express an intent' to redefine the term." *Thorner*, 669 F.3d at 1365 (quoting *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1381 (Fed. Cir. 2008)). And *Aventis*'s instruction that a clear expression "need not be in *haec verba*" does not lower the bar; *Aventis* still demands "clear limiting descriptions of the invention." *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1330 (Fed. Cir. 2012). Statements that are "amenable to multiple reasonable interpretations . . . cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

ST next contends that "positive" must exclude subtractive features or it "adds nothing beyond the already recited requirement 'laterally protrude above the top surface.'" Reply at 4 (emphasis omitted). But "positive mold lock structure" and "laterally protrude above the top surface" are different limitations: the former identifies the structure (a raised mechanical locking feature); the latter describes how that structure extends relative to the lead frame's top surface. In any event, ST's own construction retains "raised mechanical locking features" in full—so whatever redundancy ST perceives exists equally under ST's proposal.

Finally, ST's dam bar 108 argument remains an infringement argument. ST's stated point is that Chip Packaging's construction "covers such previously well-known structures." Reply at 4.

Whether dam bar 108—or any accused structure—satisfies claim 1 depends on all of the claim's requirements, including that the structure be formed on the lead frame top surface and laterally protrude above it. That is a question for the factfinder, not a reason to write a negative limitation into the claim. The Court should adopt Chip Packaging's proposed construction: "raised mechanical locking features."

### 2. "laterally protrude above the top surface"

Both parties agree this term takes its plain and ordinary meaning, and ST's own dictionary defines "lateral" as "of or relating to the side." Dkt. 42, Ex. K. That is the basis of Chip Packaging's construction. "Along" appears nowhere in ST's dictionary, and nowhere in the specification's own uses of "protruding laterally" and "laterally protruding." '351 Pat. at 2:33, 2:38, 6:59–61, Fig. 10.

ST's Reply attempts to recast the dispute as "direction" versus "location," arguing that Chip Packaging improperly "uses the top surface as a reference for location." Reply at 5. The characterization does not survive ST's own construction. ST proposes that the structure protrude "along . . . the top surface"—language that is itself expressly referenced to the top surface, and that describes position relative to that surface. And more fundamentally, the claim itself recites that the positive mold lock structures protrude "above the top surface." There is no reason to rewrite clear claim language.

ST's remaining objection rests on a misreading. ST asserts that Chip Packaging's construction would "place the protrusion spatially offset to the side of [the top surface]—a location beyond the edge of the lead frame," excluding the wire loop and stud bump embodiments. Reply at 5 (emphasis omitted). It would not. Chip Packaging's construction is "to the side of and above the top surface." The word "above" holds the structure over the surface; "to the side of" describes the direction in which the structure protrudes from its base. As Chip Packaging has explained, "[a]ny structure that protrudes to the side of and above the surface necessarily also extends along the surface to some degree. The two descriptions are not mutually exclusive." Resp. Br. at 8–9. ST's mold-flow argument confirms the point rather than defeating it: for mold compound to "flow

under" a feature, the feature must overhang—that is, extend to the side—while remaining above the surface. '351 Pat. at 4:26–29, 5:59–61. A feature that ran only parallel to the surface, with no lateral overhang, would leave nothing for the compound to flow beneath. Because Chip Packaging's construction reads on every disclosed embodiment, *Vitronics* is not implicated. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996). Nor is *Hologic*: ST's Reply states that the parties "appear to agree that 'above the top surface' describes the location of a protrusion relative to the top surface of the lead frame." Reply at 4. The claim thus supplies its own frame of reference, and no specification-derived gloss is needed. *Hologic, Inc. v. SenoRx, Inc.*, 639 F.3d 1329, 1335 (Fed. Cir. 2011).

### B. U.S. Patent No. 9,299,646

#### 1. "said area"

No construction is necessary because there is no dispute. The parties agree that "said area" takes its antecedent from the claims' earlier recitation of "an area," and they agree what that antecedent is. Courts need not construe language that is already clear. *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).

ST's Reply adds only an unpublished district court order from another district. Reply at 6 n.3. That courts may sometimes make an antecedent explicit does not show it is warranted here, and ST still identifies nothing about "said area" that a juror could misunderstand. The concrete risk runs the other way. ST's proposed construction does not merely restate the antecedent; it imports the "between the . . . plurality of signal leads" phrase that the parties separately dispute. Reading that disputed phrase to the jury twice—once as an element and once as the construction of a different element—invites the jury to believe there are two separate proof requirements where the claim recites one.

#### 2. "disposed between . . . the plurality of signal leads and the first side of the power bar"

The plain meaning governs. To be "between" two things is to exist, at least in part, in the space or interval separating them—the definition Chip Packaging advanced, Resp. Br. at 10–11, and the definition ST's own dictionaries supply, Dkt. 42, Ex. L. Neither dictionary contains the words ST seeks to add: "the ends of."

ST says Chip Packaging "never advances an alternative plain meaning showing ST's proposal to be incorrect." Reply at 6. Chip Packaging advances the plain meaning, and it shows exactly that: ST's construction replaces the claim's "the plurality of signal leads" with "the ends" of those leads. Nothing in the claim says "ends," and the specification passage that actually describes the ground bar tracks the claim without them: "each ground bar 132 includes a first portion 132a disposed between the adjacent embedded portions 122b of the signal leads 122 and the first side 124a of the adjacent power bar 124." U.S. Patent No. 9,299,646 ("'646 Pat.") at 3:46–49. A construction that adds words—words that the claim and the corresponding specification passage both omit—is incorrect for that reason alone.

ST's remaining arguments do not fill that gap. That Figure 2 depicts one arrangement of ground bar portion 132a does not narrow the claim; a single embodiment does not redefine a claim term. *Thorner*, 669 F.3d at 1365–66. To be clear, Chip Packaging does not contend that "between" means "amongst." The ground bar's first portion must lie, at least in part, in the space or interval separating the signal leads and the first side of the power bar. Whether an accused structure does so is a question of fact for the jury under the plain meaning, not a reason to add "the ends of" to the claim.

ST's indefiniteness argument fares no better in its "alternative" framing. Reply at 7. ST says its concern is the inability to distinguish "a power bar from a power lead and a ground bar from a ground lead." *Id*. But that difficulty, if it existed, would exist equally under ST's construction: adding "the ends" of tells a skilled artisan nothing about how to tell a bar from a lead. In any event, a term amenable to construction—indeed, one that both parties contend has a plain meaning—is not indefinite. *Energizer Holdings, Inc. v. ITC*, 435 F.3d 1366, 1371 (Fed. Cir. 2006).

Indefiniteness is an invalidity defense carrying a clear-and-convincing burden—not a canon for narrowing claims at *Markman*.

**C. U.S. Patent No. 9,263,299**

**1. "temporary carrier"**

"Temporary carrier" should be given its plain and ordinary meaning—a structure that carries something temporarily. Contrary to ST's argument, "temporary carrier" is not used interchangeably with "tape" in U.S. Patent No. 9,263,299 ("'299 Pat."). The specification repeatedly uses "temporary carrier" with no reference to tape at all. '299 Pat. at 1:59–61, 1:65–2:4, 2:22–27. Dependent claim 5 describes the "temporary carrier" in one of two ways: "a carrier tape stretched in a carrier ring apparatus," and "a carrier tape attached to a support plate." If the independent claim's "temporary carrier" already meant "tape," claim 5 could have simply recited "said temporary carrier stretched in a carrier ring apparatus" or "said temporary carrier [being] attached to a support plate." The fact that the dependent claim uses different language confirms that the words have different meanings. *See Tandon Corp. v. ITC*, 831 F.2d 1017, 1023 (Fed. Cir. 1987).

ST's answers to claim differentiation both fail. First, ST argues that claim 5 "recites two specific kinds of 'tape,'" and that therefore the claim raises no differentiation issue. Reply at 8. But that argument misdescribes claim 5, which does not recite two kinds of tape, but rather two temporary carrier assemblies that happen to use tape: the first type of "temporary carrier" being "a carrier tape stretched in a carrier ring apparatus," and the second type of "temporary carrier" being "a carrier tape attached to a support plate." The claim language confirms that a "temporary carrier" is not simply "tape," but an apparatus that may or may not involve tape.

ST's treatment of Figure 6 confirms the problem. ST maintains that "plate-backed carrier tape 620" is "just a specific kind of 'tape.'" Reply at 8. But again, the specification language confirms that the temporary carrier is an apparatus, one that in the Figure 6 embodiment utilizes a support plate and tape. Indeed, ST's own opening brief (Dkt. 42) ("Def. Br.") described that

structure as the "support plate-backed carrier tape 620"—an assembly of tape and a support plate. Def. Br. at 20; *see also* '299 Pat. at 6:53–61. Under ST's construction, the claim term "temporary carrier" would reach only the tape, and the structure the patent (and ST) describes as a single "temporary carrier" would be split in two. A construction that misdescribes the disclosed embodiments is incorrect.

ST relies on *Fenner* to argue that the doctrine of claim differentiation should be set aside here. Reply at 8 (citing *Fenner Invs., Ltd. v. Cellco P'ship*, 778 F.3d 1320, 1327 (Fed. Cir. 2015)). But *Fenner* holds only that claim differentiation cannot override "clear statements of scope in the specification and the prosecution history." *Fenner*, 778 F.3d at 1327 (quoting *Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1302 (Fed. Cir. 1999)). It presupposes the very showing ST has failed to make. Absent lexicography or disavowal, there is nothing for claim differentiation to override. And as explained in Chip Packaging's Responsive Brief, there is no lexicography or disavowal here—the specification discloses tape as an example of or a part of a temporary carrier, not as a clear, unmistakable, exclusive definition of that term. *See* Resp. Br. at 13–14.

ST's parenthetical arguments—asking the Court to find lexicography based on "context clues" about the patentee's use of parentheses throughout the specification (Reply at 8–9)—should likewise be rejected. ST observes that the specification writes Chromium as (Cr) and Titanium as (Ti) at 3:38–41. Reply at 8. Those parentheticals supply the standard chemical symbol for an element—a notational convention, not the redefinition of a claim term to a single species. If anything, the example confirms Chip Packaging's point: this patentee uses parentheticals for several different purposes, including examples, "(NiAu, Cu, NiAg, etc.)" ('299 Pat. at 3:33–34), and definitions marked by "i.e.," (*id.* at 3:17–19). ST's "(e.g., a matrix)" argument (Reply at 9) likewise fails: the paragraph at issue introduces "another example process," and a description whose express framing is exemplary is a poor candidate for binding definition. *See* '299 Pat. at 3:45–52. Chip Packaging has never contended that the absence of "i.e." is dispositive—only that its absence, in a sentence describing an example, falls far short of the "exacting" standard for lexicography. *GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014).

ST's newly cited *MyPAQ* decision is nonprecedential and, by its own terms, holds only that parenthetical formulations "may be indicative" of lexicography—permissive language fully consistent with *Thorner*'s requirement of a clear expression of intent to redefine. *MyPAQ Holdings Ltd. v. Samsung Elecs. Co.*, No. 2023-2024, 2025 WL 1189920, at *3 (Fed. Cir. Apr. 24, 2025).

The prosecution history does not help ST either. ST emphasizes that the originally filed claim used both "temporary carrier" and "carrier tape." Reply at 8. The applicant corrected it in the direction that defeats ST's reading: it amended the claims to recite "temporary carrier" throughout, replacing rather than adopting the narrower "carrier tape." Dkt. 42, Ex. F at 85. Had the applicant understood the two as synonyms, no correction would have been needed; and had the applicant meant "tape," it would have amended the other way. That the Examiner later "echoed the parenthetical" (Reply at 9) adds nothing, because an examiner's characterization is not applicant lexicography or disavowal of claim scope. *See 3M*, 725 F.3d at 1332.

As such, ST has not met the exacting standard to establish lexicography of this term. Nor has it established what it calls a "broader pattern of consistent interchangeable usage" or "definition by implication." Reply at 9. There is no clear expression of the patentee's intent to define "temporary carrier" as "tape." The specification's use of "temporary carrier" standing alone at 1:59–61, 1:65–2:4, and 2:22–27 defeats consistency, and ST's Reply does not address those passages. ST's rejoinder—that Chip Packaging identifies no non-tape embodiment—asks the wrong question. *Thorner* forecloses it directly: "[i]t is likewise not enough that the only embodiments, or all of the embodiments, contain a particular limitation." *Thorner*, 669 F.3d at 1366.

Finally, ST's Reply confirms that ST's own construction is wrong. ST argues that the temporary carrier "must, at a minimum, have a releasable adhesive quality," citing an article about a commercial tape product. Reply at 10 (citing Ex. I). That is a functional requirement, and it is not "tape." ST thus asks the Court to adopt a one-word construction that ST simultaneously describes as incomplete, propped up by an article that contradicts the claims and specification. The plain and ordinary meaning should govern.

### 2. "each of said active device die having a solderable conductive surface on its underside"

The disputed language is part of a method claim "for packaging an integrated circuit (IC) device." '299 Pat. at cl. 1. It sits inside the first step of the claimed method, and it describes the active device die as they are mounted: "mounting a plurality of active device die, into predetermined positions, onto a temporary carrier, each said active device die having bond pads, each of said active device die having a solderable conductive surface on its underside." '299 Pat. at cl. 1. Grammatically, the "having" clauses describe an input characteristic at the front end of the claimed process. Claims 1 and 3 end at the reflow step; it is dependent claim 4 that adds encapsulating, removing the temporary carrier, and singulating the device die into individual devices. ST's construction imports a finished-package requirement into a claim 1 limitation that describes the starting material.

ST's Reply tries to reframe the dispute as whether the claim "can be satisfied by a method that destroys that characteristic during packaging." Reply at 10. That reframing concedes the grammar—ST agrees the die must have a solderable underside when mounted—and then asks the Court to add a negative limitation that appears nowhere in the claim: that the process must not consume or cover the surface. Claim construction does not supply prohibitions the patentee did not write.

ST also repeats the main argument made in its opening brief—that the Court should nevertheless construe the claim 1 language as "describ[ing] the packaged active device die" because that is allegedly consistent with the specification's descriptions of the invention as a whole. Reply at 10–12; Def. Br. at 20–21. ST relies heavily on *Verizon v. Vonage*, but the Federal Circuit there limited "localized wireless gateway system" because the specification's description of the "present invention" spoke directly to that claim term, stating what the gateway does. *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007). The passages ST invokes here are different in kind. The Title, and the statements at 1:5–10 and 1:46–50, describe the goal of the disclosure more broadly—reducing $R_{Dson}$ by exposing the die backside. None of

them purports to describe or limit the claim term "each of said active device die having a solderable conductive surface on its underside," which is the term actually at issue. A statement of the disclosure's purpose is not a redefinition of a die's input characteristic.

As explained in Chip Packaging's Responsive Brief, the passage at 3:34–38 is a materials-selection criterion, and its opening words are permissive: "[a]ny solderable finish can be used, as long as the solderability is not deteriorated by the processing conditions and allows storage for a sufficient period between package assembly and customer use." That sentence tells the skilled artisan which finishes are acceptable inputs—those that survive assembly and remain solderable through storage. It says nothing about whether the underside must be externally exposed in a finished package rather than consumed in an internal solder joint. Permissive, optional language of this kind is the opposite of a clear limiting description of the invention. ST's remaining citations (2:10–25, 5:28–34, 5:61–67) each describe what the illustrated exposed-die process accomplishes; none defines the disputed "having" clause.

ST's reliance on claim 4 is self-defeating. ST argues that claim 4's "removing the temporary carrier" step "confirm[s] the temporary carrier is removed to expose the die's solderable underside in the finished package." Reply at 12. Claim 4 is a dependent claim, and a limitation appearing there is presumed absent from the claim it depends on. *Tandon*, 831 F.2d at 1023. That claim 4 is asserted does not change the analysis; it makes the point sharper. If claim 4 must add the encapsulation, removal, and singulation steps to reach a finished package, then claims 1 and 3—which recite none of them—do not require one. ST's construction would import claim 4's result into the mounting step of every claim. The Court should reject it and decline construction.

### 3. "mounting . . . dispensing . . . attaching . . . and reflowing . . ."

Under *Altiris*, a strict sequential order applies only if the claim language requires it as a matter of logic or grammar, or the specification or prosecution history make clear that order is required. *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369–70 (Fed. Cir. 2003). Chip Packaging has always acknowledged the dependencies the claim itself supplies: the die must occupy their

predetermined positions before the lead frame is attached, and solder paste must be present on the bond pads before the lead frame is attached. What the claim does not require is that each step run to completion before the next begins.

ST's fallback proposal does not bridge the gap. ST asks the Court "at a minimum" to construe the term to require that "the mounting and dispensing steps must occur before the attaching and reflowing steps." Reply at 12. ST's willingness to accept less confirms that its primary construction is not compelled by the claim. But the fallback is not what Chip Packaging concedes, and ST should not be permitted to characterize it that way. Chip Packaging concedes that the die must be mounted and the paste dispensed before the lead frame is attached. ST's fallback goes further, requiring that both steps be complete before reflowing begins as to anything—the same non-overlap requirement, restated. Because the dependencies the claim actually supplies are undisputed, no construction is needed at all. *U.S. Surgical*, 103 F.3d at 1568. Entering ST's fallback would not resolve a dispute; it would signal to the jury a strict sequence the claim does not impose.

On the two genuine disputes, ST identifies no claim language that carries its burden. For mounting before dispensing, ST relies on the phrase "onto the bond pads on the plurality of active device die," contending it "presupposes the die (and their bond pads) are already in their predetermined positions on the carrier." Reply at 12–13. The phrase identifies where the paste goes—the bond pads of the die—not when those die arrived at their positions. Paste may be dispensed onto a die's bond pads before, during, or after that die is placed on the carrier, and the claim reads on each. For attaching before reflowing, ST argues reflow "cannot logically begin" until the lead frame contacts the paste. Reply at 13. That is true of any single connection, but it says nothing about the steps as a whole: nothing forecloses reflow beginning as to some connections while attaching continues as to others. *Altiris* asks whether logic or grammar compels the order, not whether a preferred implementation follows it.

ST's repositioning of the prosecution history does not rescue the argument. ST now says it relies on the Examiner's statements not "for disclaimer" but "to show how one of skill in the art

would understand the claim." Reply at 13. But the substance of those statements concerned whether Gong and Kelkar disclosed the claimed steps at all—mounting onto a temporary carrier, and dispensing onto exposed bond pads before the lead frame is placed—not whether the claimed steps may overlap. Dkt. 42, Ex. F at 113–14. No construction is necessary.

### D. U.S. Patent No. 8,643,189

#### 1. "power rail pad"

Chip Packaging's construction—"a conductive pad on the die connection pad surface"—tracks the intrinsic record. Claim 1 places the power rail pad "on the die connection pad surface." U.S. Patent No. 8,643,189 ("'189 Pat.") at 7:36–37. The specification describes the pads as "mounted on the die connection pad surface 303 by an epoxy or other form of adhesive." *Id*. at 4:13–16. And in prosecution the applicant distinguished Jassowski precisely on that structural ground: Jassowski's power rails "are located inside the die and are formed during die fabrication," whereas the claimed pads sit on the die's top surface and are "electrically connected to the die connection pads 304 with bond wires 501." Dkt. 42, Ex. G at 77.

ST's Reply narrows the dispute considerably. ST states that "no one intends to argue this term means the power rail pad is not electrically connected" to the die circuitry, and that the "import of 'not integrated' is reasonably clear"—namely, that the pads are "mounted on the die connection pad surface 303 by an epoxy or other form of adhesive" rather than formed within the die. Reply at 14. Chip Packaging agrees with that substance. The problem is that ST's proposed words do not say it. "Not integrated with the die circuitry" states a relationship to the circuitry, not a location on the die, and invites the juror to conclude that the pad stands apart from the die circuitry electrically—the very reading ST disclaims and the claim forecloses, since claim 1 requires "die wire bonds electrically coupling the power rail pad to at least two of the die connection pads." The Court should adopt Chip Packaging's construction because it captures the distinction the intrinsic record actually draws: one of location and formation, not electrical isolation. Dkt. 42, Ex. G at 77.

ST has not shown lexicography. ST rests on a contrast between the specification's "are" and "are not" sentences and its permissive "may" sentences. Reply at 14. But the sentences ST quotes describe "the power rail pads 309, 310"—the depicted embodiment, identified by reference numeral. Present-tense description of a numbered embodiment is not redefinition of a claim term. *See Thorner*, 669 F.3d at 1365–66. That the applicant cited the same specification passage during prosecution, Dkt. 42, Ex. G at 76–77, does not convert embodiment description into a definition. The applicant pointed to that passage to distinguish Jassowski, whose power rails were "located inside the die and . . . formed during die fabrication." *Id.* at 77. Citing a passage to explain where the claimed pads sit is not a clear and unmistakable surrender of everything the passage does not describe. *See 3M*, 725 F.3d at 1326.

ST's claim-differentiation answer again depends on *Fenner*. Reply at 15 (citing *Fenner*, 778 F.3d at 1327). But *Fenner* bars using claim differentiation to override "clear statements of scope"; it does not excuse the absence of one. *See id.* (quoting *Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1302 (Fed. Cir. 1999)). Claim 11 expressly recites that "the power rail pad is a non-circuit node of the semiconductor die," as does independent claim 15. Asserted claims 1 and 19 do not. The patentee knew how to claim that characteristic and chose to do so in some claims but not others; that choice is entitled to effect. *Tandon*, 831 F.2d at 1023. Nor does ST's redundancy objection to Chip Packaging's construction help ST. If "on the die connection pad surface" merely restates claim 1, then the appropriate remedy is to decline to construe the term—not to adopt ST's negative limitation.

#### 2. "opposite die connection pad surface"

No construction is necessary. The claims themselves state the operative relationship: the "die connection pad surface" is opposite the "die support mounting surface." '189 Pat. at cls. 1, 15, 19. ST's proposal adds two words the claims do not contain—"top" and "active"—and both invite needless dispute. Whether a surface is "top" depends on the orientation in which a package is drawn, mounted, or handled; the claim's requirement is directional only in the relative sense of

"opposite." And whether the surface is also the die's "active" surface is a technical characterization the claims never require.

ST's argument is that the applicant used the words "the present invention is directed to a semiconductor die package 300" and then described an "opposite die connection pad surface 303 (top, active surface)" as part of that invention. Reply at 15 (emphasis omitted). But the sentence ST quotes comes after the sentence with the "present invention" language, and it is a walkthrough of numbered structures in a numbered embodiment—die 301, surface 303—offered to orient the Examiner, not to define "opposite die connection pad surface." *See* Dkt. 42, Ex. G at 75. The applicant never said the surface must be the "top" surface, never said it must be "active," and never distinguished prior art on either ground. A parenthetical descriptor used in passing is not the "clear and unmistakable" statement required to narrow a claim through prosecution history. *3M*, 725 F.3d at 1326. The plain meaning should govern.

## III. CONCLUSION

For the foregoing reasons and those set forth in its Responsive Brief, Plaintiff Chip Packaging Technologies, LLC respectfully requests that the Court adopt Chip Packaging's proposed constructions for each of the nine disputed terms and reject ST's proposals.

Dated: August 18, 2026

Respectfully submitted,

*<u>/s/ Ameet Modi</u>*
Garland Stephens (Texas Bar No. 24053910)
garland@bluepeak.law
Robert Magee (*pro hac vice*)
robert@bluepeak.law
Justin Constant (*pro hac vice*)
justin@bluepeak.law
Richard Koehl (Texas Bar No. 24115754)
richard@bluepeak.law
Kate Falkenstien (*pro hac vice*)
kate@bluepeak.law
Heng Gong (New York Bar No. 4930509)
heng@bluepeak.law
Natalie Lieber (*pro hac vice*)

lieber@bluepeak.law
Ameet Modi (*pro hac vice*)
modi@bluepeak.law
**BLUE PEAK LAW GROUP LLP**
3139 West Holcombe Blvd.
PMB 8160
Houston, TX 77025
Telephone: (281) 972-3036

*Of Counsel:*
Mark D. Siegmund (Texas Bar No. 24117055)
msiegmund@cjsjlaw.com
**CHERRY JOHNSON SIEGMUND JAMES, PC**
7901 Fish Pond Road, 2nd Floor
Waco, TX 76710
Telephone: (254) 732-2242
Fax: (866) 627-3509

William D. Ellerman (Texas Bar No. 24007151)
wellerman@cjsjlaw.com
**CHERRY JOHNSON SIEGMUND JAMES, PC**
One Glen Lakes Tower
8140 Walnut Hill Lane, Suite 105
Dallas, TX 75231

ATTORNEYS FOR PLAINTIFF CHIP
PACKAGING TECHNOLOGIES, LLC

**CERTIFICATE OF SERVICE**

A true and correct copy of Plaintiff Chip Packaging Technologies, LLC's Sur-Reply Claim Construction Brief was served via CM/ECF to all counsel of record on August 18, 2026.

*/s/ Ameet Modi*
Ameet Modi