**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| CHIP PACKAGING TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>STMICROELECTRONICS, INC.,<br><br>Defendant. | Civil Action No. 7:25-cv-00505-DC-DTG<br><br>JURY TRIAL DEMANDED |

**STMICROELECTRONICS, INC.'S RULE 72(A)**
**OBJECTIONS TO THE AUGUST 17, 2026 ORDER REGARDING**
**DISCOVERY DISPUTE OVER PRODUCT IDENTIFICATION**

Defendant STMicroelectronics, Inc. ("ST") respectfully objects under Federal Rule of Civil Procedure 72(a) to the portion of Magistrate Judge Gilliland's August 17, 2026 Order Regarding July 16, 2026 Discovery Dispute Over Product Identification (Dkt. 50) denying ST's request to strike the products in Chip Packaging Technologies, LLC's ("CPT") accused-product list that are not specifically charted in Appendices A–E to CPT's preliminary infringement contentions. Each argument advanced in these objections, together with the supporting evidence, was raised or fairly encompassed by, and is consistent with, ST's position in the parties' joint discovery-dispute chart and accompanying Exhibit A, which were before Magistrate Judge Gilliland. Dkt. 50 at 2–4; Ex. A (Exhibit A to the parties' joint discovery-dispute chart, containing the correspondence and CPT's Second Supplemental Preliminary Infringement Contentions submitted with and cited in that chart, and cited herein as "Ex. A").

## I. INTRODUCTION

The challenged ruling permits CPT to continue accusing hundreds of products that it did not chart and for which its supplemental statements supply no representativeness analysis. The

governing requirement is straightforward. The Court's Standing Order Governing Patent Proceedings ("OGP") requires a plaintiff's preliminary infringement contentions "in the form of a ***chart*** setting forth where in the accused product(s) each element of the asserted claim(s) are found." OGP at Appendix A (W.D. Tex. Aug. 2, 2022). Courts in this District allow plaintiffs to pursue a representativeness theory for ***uncharted*** products only when they are "reasonably similar" to those specifically charted. *See, e.g.*, *IGT v. Zynga Inc.*, No. 6:21-CV-00331-ADA, 2022 WL 606719, at *2 (W.D. Tex. Mar. 1, 2022). CPT did not meet that threshold, and the Court's order denying ST's motion to strike was thus clearly erroneous and contrary to this District's precedent.

CPT's June 16, 2026 statements declare that a single charted product is "representative" and then allege that hundreds of other products contain structures required by the claims, with no analysis or factual basis as to how the charted products are representative. Worse, CPT simultaneously told ST that the public materials used to assemble its list say nothing about the internal structures supplying the asserted claims' limitations. *See* Ex. A at 4–5 ("Where ST's documents do address packaging, they describe only exterior features (*e.g.*, pinouts and exterior package outline drawings) and do not show the internal package structures at all or otherwise describe their construction."). On this record, CPT lacked a reasonable factual basis to infer that the uncharted products shared the same relevant structures as the charted representative products, much less infringed. The Order does not explain why CPT's bare accusation of hundreds of products with no charts and no factual support or representativeness analysis satisfies this Court's rules. ST requests that the Court set aside the product-list ruling and strike the uncharted products without prejudice to CPT seeking leave to add a specific product if it can articulate a good-faith factual basis for alleging infringement in a requisite claim chart. At a minimum, the Court should vacate and remand for a reasoned determination under the correct standard with reviewable

findings.

## II. BACKGROUND

### A. CPT Charted Five Products Through Product-Specific Teardowns

On February 12, 2026, CPT served preliminary infringement contentions charting five exemplary products: STL220N6F7 for the ’299 Patent; SPC582B60E1 for the ’646 Patent; STM32G071CB for the ’189 Patent; SR5E1E7 for the ’351 Patent; and LPS28DFW for the ’658 Patent. The charts relied on physical teardowns, including annotated reverse-engineering photographs, X-ray images, and cross-sectional views. *See* Dkt. 50 at 2; Ex. A at 4, 11, 13. CPT also vaguely referred to additional products, but did not specifically identify them.

### B. CPT Expanded the List Without Product-Specific Analysis

At ST’s request for “a complete list of specifically identified ST products (by product name),” CPT served supplemental contentions on March 27, 2026. The list added approximately 320 products but, as the dispute chart records, supplied no infringement explanation for those additions. CPT said it built the list from ST’s public product-family pages and parametric tables, datasheets, application notes, product briefs, distributor catalogs, and alleged part-numbering conventions, attempting to include all variants within a family. *See* Dkt. 50 at 2; Ex. A at 1–2, 11. Those sources and methodology supplied names and external classifications, not a technical comparison showing that each listed product or group shared the same claimed internal structures as the five charted representative products.

### C. CPT’s Own Correspondence Described the Limits of Its Public Sources

In its May 27, 2026 letter, CPT admitted that ST’s publicly available datasheets describe only exterior features—such as pinouts and package-outline drawings—and “do not show the internal package structures at all or otherwise describe their construction.” Ex. A at 4–5. In its June 16 letter, CPT likewise stated that a package’s pin count “says nothing about whether it shares the

claimed internal construction" and that ST had identified no internal difference. *Id.* at 11–12.

### D. CPT Removed and Corrected Entries

ST's position in the dispute chart reported that its review identified more than 50 listed part numbers that did not even exist and more than 20 listed products that were unaccused, while the products that did exist spanned multiple package types, pin counts, and configurations. Dkt. 50 at 2–3. CPT's June 16 supplement removed more than 70 products and corrected package designations; it explained that certain entries used the suffix for a corresponding ball-grid-array variant even though CPT meant the *lead-frame product.* Dkt. 50 at 3; Ex. A at 11–12, 18, 21, 23–24. CPT also acknowledged that compiling a list from public materials alone might make it over-inclusive at the margins. Ex. A at 2. These are not abstract differences in nomenclature. They show that extrapolating from part-number conventions and external package information did not reliably establish whether a product existed, which package it had, or whether it contained the claimed structures necessary to establish infringement. CPT simply failed to meet its burden of establishing why the uncharted products could possibly infringe the asserted patents.

### E. CPT's June 16 Supplement Added Labels, Not Analysis

CPT's June 16 supplement added one representativeness sentence per patent allegedly covering all uncharted products, asserting on information and belief that those products contained certain recited structures in the claim. The contentions contained no theory of representativeness nor explained how the products are allegedly reasonably similar to the five charted products.

### F. The Parties Presented the Dispute to Magistrate Judge Gilliland

On July 16, the parties submitted a joint discovery-dispute chart addressing whether CPT could continue accusing products not specifically charted in Appendices A–E. ST requested that those products be stricken without prejudice to CPT seeking leave to add a specific product identified through discovery for which CPT could articulate a good-faith basis for alleging

infringement. CPT opposed, relying on its position that uncharted products need only be "reasonably similar" to the charted products. Dkt. 50 at 2–4. On August 17, Judge Gilliland found a hearing unnecessary and denied ST's request to strike. Dkt. 50 at 1. The Order does not state the standard, explain how CPT satisfies that standard, or make factual findings. *See id.*

## III. STANDARD OF REVIEW

Under Rule 72(a), the district judge must consider timely objections and modify or set aside any part of a magistrate judge's nondispositive order that is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). A factual finding is clearly erroneous when, after reviewing the record, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *See Sparling v. Doyle*, No. EP-13-CV-00323-DCG, 2016 WL 236266, at *2 (W.D. Tex. Jan. 20, 2016). Legal conclusions are reviewed de novo under the "less stringent 'contrary to law'" standard, which is met when an order fails to apply or misapplies relevant statutes, case law, or rules of procedure. *See Daedalus Blue, LLC v. Microsoft Corp.*, No. 6:20-CV-01152-ADA, 2022 WL 3031076, at *2 (W.D. Tex. Aug. 1, 2022); *Arroyo v. Oprona, Inc.*, No. CV H-16-852, 2017 WL 1106318, at *1 (S.D. Tex. Mar. 24, 2017).

This objection presents both forms of Rule 72(a) error. The product-list ruling rests on an erroneous legal premise—that CPT could continue accusing uncharted products without first showing reasonable similarity in claim-relevant respects—and on a conclusion unsupported by the *record that CPT made that showing.* ST does not contend that the absence of a hearing, standing alone, requires relief. The problem is that the Order gives no way to determine what standard governed, how it was applied, or what facts supported the result.

## IV. ARGUMENT

### A. CPT Bore the Threshold Burden to Show Reasonable Similarity in Claim-Relevant Respects

The governing substantive requirement is straightforward. Judge Counts's OGP requires the plaintiff to serve preliminary infringement contentions "in the form of a chart setting forth where in the accused product(s) each element of the asserted claim(s) are found." OGP at Appendix A. At the preliminary stage, *IGT* permits representative-product charting only when the additional products are "reasonably similar" to the specifically charted products. *IGT*, 2022 WL 606719, at *2. That standard is modest, but it is a threshold burden on the patentee: CPT had to present enough facts to permit a reasonable inference that the uncharted products shared the same structural features required by its infringement theories.

*Zebra* confirms that representativeness requires analysis rather than a label. There, the court ordered the plaintiff to provide either an infringement chart for specified products and "an analysis explaining why" its charts were representative of all accused products, or a chart for a representative product from each group of similar products. *Intellectual Tech LLC v. Zebra Techs. Corp.*, No. 6:19-CV-00628-ADA, Dkt. 31 at 1 (W.D. Tex. Apr. 29, 2020). *WSOU* applied the same principle: lists of products were not specific enough, and the plaintiff had to provide either individual charts or detailed descriptions of how each product was represented by the single charted product. *WSOU Invs. LLC v. OnePlus Tech. (Shenzhen) Co.*, No. 6:20-CV-00952-ADA, 2022 WL 174517, at *2–3 (W.D. Tex. Jan. 18, 2022). Although *WSOU* denied a motion to strike without prejudice on timing and diligence grounds, it expressly stated that the denial did not accept the existing contentions and required greater detail. *Id.* at *3.

### B. CPT's Supplemental Statements Are Conclusory Representativeness Assertions, Not Analysis

Not only did CPT fail to meet its threshold burden, its admissions show that it had no basis to have made a representativeness allegation in the first place. Instead, CPT added merely conclusory accusations of representativeness. For example, the supplement does not compare the

charted product to any uncharted product or defined group. The supplement does not explain why a product family, technology generation, package type, or part-number pattern establishes the presence of the claimed internal structure required by the asserted patents. Nor does it identify a technical document, teardown, or other source showing that the feature is present in any uncharted product. *See* Dkt. 50 at 2–3; Ex. A at 1–2, 4–5, 11–12, 16, 18. *Zebra* required "an analysis explaining why" the chart was representative, and *WSOU* required detailed descriptions for each product or group. CPT supplied neither.

CPT's reliance on a bare "representativeness" sentence also conflicts with *SVV*. There, the court refused to create a standard in which representative products could "be used as remedy for incomplete PICs," while allowing the request to be renewed after the start of fact discovery if representative products would fairly streamline the case. *See SVV Tech. Innovations, Inc. v. Samsung Elecs. Co.*, No. 6:20-cv-00139-ADA, Dkt. 35 at 2–3 (W.D. Tex. Aug. 9, 2020). Representative-product charting may streamline an adequate preliminary disclosure; it cannot replace the disclosure's necessary factual basis.

That distinction matters here. CPT did not present smaller representative buckets, identify the common internal feature that defines each bucket, or explain why known differences in package type and pin count did not matter to its particular claim theories. It simply extended five teardown-based charts to a much larger list. The supplement therefore left ST and the Court without the notice the preliminary-contention requirement is designed to provide.

**C. CPT's Own Record Shows It Lacked a Basis to Infer Similarity or Infringement**

More fundamentally, CPT's own correspondence negates the factual premise of any potential representativeness theory, making any amendment to add such analysis futile. CPT told ST that the public packaging materials it reviewed to identify the products describe only exterior

features and "do not show the internal package structures at all or otherwise describe their construction." Ex. A at 4–5. CPT further stated that "[t]hat a package has 48 pins rather than 176 says nothing about whether it shares the claimed internal construction." *Id.* at 11–12. These statements affirmatively establish that the information CPT relied on to compile its accused products list reveals *no basis to assert a theory of representativeness, much less infringement.*

Indeed, rather than defend its contentions as presenting any legitimate theory of representativeness, CPT's responsive dispute chart submission merely alleges that actually examining each product to develop a basis of infringement would have been too hard. *See* Dkt. 50 at 2 (CPT responding that "ST would have CPT buy and tear down hundreds of parts to answer a question ST can answer from its own files," and that "ST demands the impossible"). CPT cannot escape this Court's rules for having a basis for asserting infringement based on burden. If CPT cannot afford to conduct an infringement analysis of each product, the answer is not to accuse the product of infringement anyway and then engage in a fishing expedition based on guesswork. CPT cannot use the absence of internal information to justify accusing products and then use that same absence to demand discovery to find out whether the accusations were warranted.

### D. The List's Nonexistent and Unaccused Entries Confirm the Unreliability of CPT's Extrapolation

The subsequent corrections confirm that CPT's methodology was not a reliable means of identifying accused products. The dispute chart reports that more than 50 predicted part numbers did not exist, that more than 20 listed products were unaccused, and that the list swept together multiple package types, pin counts, and configurations.[1] Dkt. 50 at 2–3. CPT then removed more than 70 entries and corrected package designations, including entries that had used a ball-grid-

[1] "Despite the plausible inference, CPT denies that it used AI to construct the list. Pressed on how it could rely on 'representativeness' for hundreds of different products, CPT promised a remedy while conceding the list included non-existent and unaccused products." Dkt. 50 at 3.

array suffix for a lead-frame product. Ex. A at 11–12, 18, 21, 23–24. Those corrections show that product names, numbering conventions, and external package information did not reliably identify the products or their packages—much less their internal construction.

### E. The Order Improperly Shifted CPT's Threshold Burden to ST and Allowed Discovery to Create the Missing Basis

The ruling reverses the required sequence. CPT cannot simply accuse swathes of products with no chart and no representativeness theory and thereby shift the burden to ST to show the charted products are not representative. Instead, the ruling permits discovery to continue with respect to hundreds of products without requiring CPT to show those products relate in any way to its infringement theories. Dkt. 50 at 2–3; Ex. A at 4–5, 11–12. That shifts CPT's burden to ST and turns discovery into a mechanism for fabricating, rather than proving, a preliminary infringement theory.

*IGT* does not support that inversion. There, the court found that IGT met the reasonably-similar standard—but "only barely"—because all the uncharted games were run by Zynga, were alleged to work in the same way, and the accused communication with servers remained unrebutted by Zynga's arguments or evidence. *IGT*, 2022 WL 606719, at *2. Only after finding that threshold showing did the court discount Zynga's position for lack of a declaration or technical document showing that certain games never communicated with a server. *Id. IGT* therefore considered the defendant's lack of rebuttal evidence after the plaintiff had supplied a basis for similarity; it did not hold that a defendant must disprove similarity before the plaintiff provides any analysis. Here, CPT's record supplies no comparable technical or product-specific basis and affirmatively states that its public sources did not reveal the relevant internal structures.

### F. The Order's Silence Compounds and Confirms the Rule 72(a) Error

Finally, the Order contains no governing standard, reasoning, application, or reviewable

findings for the challenged product-list ruling. It states only that a hearing is unnecessary and that ST's request to strike is denied. Dkt. 50 at 1. ST does not assert a freestanding requirement that every discovery ruling contain detailed findings, and it does not contend that the absence of a hearing alone requires relief. The narrower problem is that, in resolving whether preliminary contentions support hundreds of uncharted accusations, the Order gives no way to tell whether Judge Gilliland applied the preliminary-contention requirement, *IGT*'s reasonably-similar standard, or any standard at all.

That omission compounds and confirms the Rule 72(a) error. The record cannot support the result under the correct standard: CPT's statements are conclusory, its public sources did not reveal the internal structures at issue, and its list contained nonexistent and unaccused entries that it later removed or corrected. Without a stated standard and findings applying it, the Court cannot distinguish a permissible factual judgment from a legal misallocation of the threshold burden. The product-list ruling should therefore be set aside; at minimum, it should be vacated and remanded for a reasoned determination under the correct standard, with reviewable findings addressing whether CPT showed reasonable similarity in claim-relevant respects.

## V. CONCLUSION

ST respectfully requests that the Court set aside the August 17, 2026 Order to the extent it denies ST's request to strike products not specifically charted in Appendices A–E to CPT's preliminary infringement contentions; and strike those uncharted products without prejudice to CPT seeking leave to add a specific product when CPT can articulate a good-faith factual basis for alleging infringement. At minimum, ST requests vacatur and remand to Magistrate Judge Gilliland for a reasoned determination under the correct governing standard, with reviewable findings applying that standard to the record presented to him. ST requests such other relief as the Court deems just and proper.

Dated: August 31, 2026

Respectfully submitted,

*/s/ Jeffery S. Becker*

Jeffery S. Becker
Texas State Bar No. 24069354
Nolan McQueen
Texas State Bar No. 24125322
Spencer Nayar
Texas State Bar No. 24149241
**BAKER BOTTS L.L.P.**
2001 Ross Ave, Suite 900
Dallas, Texas 75201
Telephone: (214) 953-6500
Facsimile: (214) 953-6503
Email: Jeff.Becker@BakerBotts.com
Email: Nolan.McQueen@BakerBotts.com
Email: Spencer.Nayar@BakerBotts.com
**ATTORNEYS FOR DEFENDANT STMICROELECTRONICS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record are being served with a copy of the foregoing document via the Court's CM/ECF system on August 31, 2026.

*/s/ Jeffery S. Becker*
Jeffery S. Becker