# EXHIBIT A

BLUE PEAK
LAW GROUP LLP

May 14, 2026

[Via Email]

Jeffery S. Becker
Baker Botts L.L.P.
2001 Ross Avenue, Suite 900
Dallas, Texas 75201-2980

**RE: Chip Packaging Technologies, LLC v. STMicroelectronics, Inc., No. 7:25-cv-00505-DC-DTG (W.D. Tex.)**

Dear Mr. Becker:

We write in response to your letter of May 8, 2026, raising questions about a subset of the accused products identified in Chip Packaging's March 27, 2026 Supplemental Preliminary Infringement Contentions. Your letter requests that Chip Packaging confirm it will amend the supplemental contentions to remove part numbers that ST contends are not currently associated with any ST product, and, in the alternative, that Chip Packaging provide the basis for its identification of those parts.

Before turning to the parts themselves, we address the framing of your letter. Your speculation that Chip Packaging "fabricated its list of accused products using a generative AI tool," and your demand that we either confirm or deny that speculation, are improper. The investigative methods of counsel are work product, and we decline to characterize them. The footnote citation to public benchmarks of AI "hallucination rates" adds nothing. An arithmetic comparison between a number derived from ST's own (still unsubstantiated) list and a published benchmark does not establish anything about the methodology Chip Packaging actually used. We accordingly reject the insinuation that Chip Packaging has conducted any aspect of this litigation in bad faith. Nonetheless, in an effort to resolve this issue without unnecessary motion practice, Chip Packaging provides the following information about the list of accused products.

The supplemental list of accused products was developed from publicly available information, including ST's own product-family pages and parametric tables on st.com, ST datasheets that describe families of variants within a single document, the application notes and product briefs ST publishes for each technology generation, third-party distributor and aggregator catalogs (DigiKey, Mouser, Octopart, Findchips, TME, Arrow, Newark), industry press, and marketing materials. Where ST documentation described a family of devices by reference to a systematic naming convention, Chip Packaging made a good-faith effort to compile all variants within that family and within the temporal scope of the patent in question. This work was performed despite the fact that ST refused (and continues to refuse) to identify its own products, denied (and continues to deny) in its pleadings that it even operates the website located at www.st.com (*see,*

BLUE PEAK
LAW GROUP LLP

*e.g.*, Dkt. No. 30 at ¶¶ 34-38), and has yet to produce the technical documents ST itself maintains, which would have permitted direct verification.

We acknowledge that compilation of an accused-product list from public materials alone, without ST's cooperation, may have resulted in a list that could be over-inclusive at the margins.

Chip Packaging has reviewed the parts listed in your letter against the public materials from which the supplemental list was compiled. Based on that review, Chip Packaging is prepared to amend the supplemental contentions to remove those parts from the list, subject to the reservations of rights below.

To permit Chip Packaging to make an additional amendment, we ask that ST confirm in writing that, for each of the parts identified in your May 8 letter, the part has never been manufactured, sold, marketed, distributed, sampled, or otherwise made available by ST or any predecessor-in-interest, parent, subsidiary, affiliate, or contract manufacturer, under any product number, custom designation, OEM/JV channel, or sales-region-specific branding. ST is in the unique position of being able to confirm or refute the existence of its own products from its own records.

Chip Packaging's willingness to remove parts from the supplemental list is without prejudice to its right to re-add any such part, or any other part, upon receipt of discovery that reveals the existence of a previously undisclosed product or confirms the existence of any of the accused variants. Final Infringement Contentions are not due until November 5, 2026, and Chip Packaging expects further amendment as ST's still-outstanding core technical document production and sales records are received.

To the extent your May 8 letter renews the representative-product-charting arguments first raised in ST's April 3 letter, those arguments remain contrary to controlling authority. The Federal Circuit has recognized that where "publicly available information might not have been available" for some accused products, the patentee "could not have been more diligent," and that product-by-product analysis "might place an undue strain on the judicial resources of the district court." *Keranos, LLC v. Silicon Storage Tech., Inc.*, 797 F.3d 1025, 1038 (Fed. Cir. 2015). This District accordingly approves representative-product charting at the preliminary contention stage. *See, e.g.*, *IGT v. Zynga Inc.*, No. W-21-CV-00331-ADA, 2022 WL 606719, at *2 (W.D. Tex. Mar. 1, 2022) (holding that where uncharted products are "reasonably similar" to those specifically charted, a defendant "cannot refuse to comply with discovery just because [it] believes it does not infringe"). ST's contrary citation to *Intellectual Tech LLC v. Zebra Technologies Corp.*, No. 6:19-CV-00628-ADA, ECF No. 31 at 1 (W.D. Tex. Apr. 29, 2020) itself requires only that a plaintiff provide "an analysis explaining why" its chart is representative, which Chip Packaging's supplemental contentions do by identifying each accused product family by package type, technology generation, and structural features. Chip Packaging stands on its prior responses dated March 6 and March 27, 2026 for the substantive merits of these arguments.

Chip Packaging is available to meet and confer regarding these issues on May 15 between 1:00 p.m. and 2:00 p.m. or between 3:00 p.m. and 5:00 p.m. Central. Please let us know which time works for ST.

BLUE PEAK
LAW GROUP LLP

Sincerely,

Robert Magee
Blue Peak Law Group LLP
robert@bluepeak.law

BLUE PEAK
LAW GROUP LLP

May 27, 2026

[Via Email]

Jeffery S. Becker
Baker Botts L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX 75201

**RE: Chip Packaging Technologies, LLC v. STMicroelectronics, Inc., No. 7:25-cv-00505-DC-DTG (W.D. Tex.) — Deficiencies in ST's May 18, 2026 Technical Production**

Dear Jeff,

We write regarding Defendant STMicroelectronics, Inc.'s ("ST") May 18, 2026 core technical document production. As explained in detail below, the production is deficient and does not satisfy ST's discovery obligations under the Amended Scheduling Order (Dkt. 38). We request that ST promptly supplement its production no later than June 3, 2026.

Pursuant to the original Scheduling Order, CPT timely served its Preliminary Infringement Contentions on February 12 and further served Supplemental Preliminary Infringement Contentions on March 27. CPT's contentions chart each element of every asserted claim against the Accused Products, supported by annotated reverse-engineering photographs, X-ray images, and cross-sectional views, among other materials. ST's core technical production was originally due on April 16. On April 3, ST requested a one-month extension to May 18, representing that "more time is needed for ST to prepare its preliminary invalidity contentions and 'sufficient to show' production." Dkt. 37 at 1. CPT agreed, the parties jointly moved, and the Court granted the extension. Dkt. 38.

As you know, the Asserted Patents in this case are directed to the physical structures and construction of semiconductor packages, particularly features inside the package. Despite this, the vast majority of ST's technical production appears limited to public, freely available, customer-facing literature drawn from st.com, including marketing materials, training decks, application notes, reference manuals, and technical notes.[1] As an initial matter, much of what ST produced is unrelated to packaging at all—it is generic ST material on firmware, peripherals, software tools, training decks, and application examples. *See, e.g.*, ST_CPT_00070161 (an installation guide for third-party software); ST_CPT_00066527 (programming manual covering instruction set and core peripherals). Where ST's documents do address packaging, they describe only exterior features (*e.g.*, pinouts and exterior package outline

1 *See, e.g.*, ST_CPT_00010886 (STL220N6F7 datasheet, DS10089 Rev 6), available at https://www.st.com/resource/en/datasheet/stl220n6f7.pdf, and ST_CPT_00005079 (Application Note AN2548, "Introduction to DMA controller for STM32 MCUs"), available at https://www.st.com/resource/en/application_note/an2548-introduction-to-dma-controller-for-stm32-mcus-stmicroelectronics.pdf.

BLUE PEAK
LAW GROUP LLP

drawings) and do not show the internal package structures at all or otherwise describe their construction.

ST's production is deficient because it does not contain any design documents that show how the accused infringing features of the packages are constructed. By way of example and not limitation, the production contains no lead-frame design files and mechanical drawings, die-pad layout drawings, internal X-ray and SEM cross-section reference images, package CAD files, wire-bond and clip-bond diagrams, assembly process specifications and travelers, bills of material specifying alloy and mold-compound choices, mold-compound supplier specifications, gel composition specifications, diaphragm design drawings, or lid assembly drawings.

The Federal Circuit has explained that early discovery and contention requirements are designed, among other things, "to allow the plaintiff to pin down the defendant's theories of defense." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365-66 (Fed. Cir. 2006). In *I-Flow Corp. v. Apex Med. Techs., Inc.*, 250 F.R.D. 508, 510 (S.D. Cal. 2008), the court held that defendant's technical production was inadequate because it provided "no detail of the internal structure," "no technical specifications describing the components or materials used to manufacture the accused device," and did not "identify the dimensions of the structural components." *Id.* ST's production presents the same deficiencies.

By Wednesday, June 3, 2026, please produce, for each accused product in CPT's March 27 supplemental contentions, the core technical documents sufficient to show the internal structures and physical construction of each accused package. Such documents should include, as applicable, lead-frame design files and mechanical drawings, die-pad layout drawings, internal X-ray and SEM cross-section reference images, package CAD files, wire-bond and clip-bond diagrams, assembly process specifications and travelers, bills of material specifying alloy and mold-compound choices, mold-compound supplier specifications, gel composition specifications, diaphragm design drawings, and lid assembly drawings, among others. We note that ST appears to have access to confidential engineering documents held by its affiliates. *See, e.g.*, ST_CPT_00050561 and ST_CPT_00055616 (memory architecture inventories for the SPC58 microcontroller family, each stamped "ST Restricted"). The technical production should include affiliate documents under ST's possession, custody, or control.

Further, to the extent that ST does not intend to supplement its production for any particular accused product because it contends that it does not have possession, custody, or control over responsive documents, please identify, for each product, the specific entity that has possession, custody, or control of each category of responsive documents. CPT first raised the foreign affiliate document question on February 4, 2026. ST declined to engage, responding on February 11 that it "disagrees that now is the appropriate time to discuss hypothetical discovery disputes regarding document productions that have yet to occur." ST repeated the position in the Joint Rule 26(f) Report, characterizing CPT's concerns as "speculative" and "hypothetical" and proposing that any dispute over "ST's possession, custody, or control of any documents sought by Plaintiff" be addressed through a "meet and confer in good-faith . . . before involving the Court." Dkt. 31 at 5–6.

BLUE PEAK
LAW GROUP LLP

Accordingly, by June 3, 2026, please supplement the technical production with the documents identified above and answer the question above. Please also provide your availability to meet and confer during the week of June 3.

Sincerely,

/s/ Natalie Lieber

Natalie Lieber
Blue Peak Law Group LLP
lieber@bluepeak.law

BLUE PEAK
LAW GROUP LLP

June 16, 2026

[Via Email]

Jeffery S. Becker
Baker Botts L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX 75201

**RE: Chip Packaging Technologies, LLC v. STMicroelectronics, Inc., No. 7:25-cv-00505-DC-DTG (W.D. Tex.)—ST's Core Technical Production Deficiencies and Ongoing Refusal to State a Position on Control of Core Technical Documents**

Dear Jeff:

This responds to your June 4, 2026, letter. ST's core technical production was due May 18, 2026, under the Court's Order Governing Proceedings in Patent Cases (the "OGP") and the Amended Scheduling Order (the "Scheduling Order," Dkt. 38). As explained below, ST's production remains materially deficient because it includes no internal construction documents for the package interiors—the core technical documents that the Scheduling Order requires. And to date, ST has refused to take a position on what documents it is withholding or why, including whether any core technical documents are held by foreign affiliates.[1] To facilitate the parties' Rule 26(f) obligations (Dkt. 31 at 6), please answer the questions set forth below in Section II by June 22, 2026, and provide your availability for a meet and confer with lead and local counsel on June 23 or 24, 2026; otherwise, we will be at an impasse.

## I. ST Failed to Produce the Internal Construction Documents the Scheduling Order Requires

ST's May 18 production comprises more than 140,000 pages of public, customer-facing material. CPT's review has identified no document showing the internal construction of any accused product, including the five products CPT charted element by element: STL220N6F7, SPC582B60E1, STM32G071CB, SR5E1E7, and LPS28DFW ('299 App'x A, '646 App'x B, '189 App'x C, '351 App'x D, '658 App'x E). CPT could not identify a single document in ST's technical production addressing lead frames at all—the only documents in which the word "lead frame" even appears are alleged prior-art references cited in ST's invalidity contentions. Your June 4 letter does not contend otherwise.

That production does not satisfy the Court's Scheduling Order, which required ST to produce "technical documents, including software where applicable, sufficient to show the operation of the accused product(s)." Dkt. 38. Your suggestion that CPT is importing "California rules of discovery" is misplaced. The asserted patents claim the internal construction of semiconductor packages, and the "operation" of the accused products cannot meaningfully be shown without it. Public, exterior-facing material does not suffice, and adequacy is measured by substance, not page count. If you contend that public, exterior-facing materials can satisfy that obligation in a package-construction case, identify the authority that supports the view. We are aware of none, and your June 4 letter cites none.

The Western District decisions you cite do not support your position. All three are software cases in which the key internal technical material—source code—was produced, agreed to be produced, or ordered produced;

[1] CPT has now raised the issue five times over the past four months. *See infra* Section II.

none involved patents on package construction, and none suggests that public material alone can satisfy a party's production obligations. *Kajeet* denied relief only because the defendant represented that, after searching, it "possessed no additional responsive documents." *Kajeet, Inc. v. Trend Micro, Inc.*, No. 6:21-cv-00389-ADA (W.D. Tex. Nov. 30, 2021), ECF No. 34. ST has made no similar representation; to the contrary, your letter states that "ST expects that it will produce additional technical materials on the timeline set by the Court." Please clarify whether those materials include the internal construction documents identified in the table in Section II below—i.e., documents sufficient to show the design and assembly of each accused package—and, if so, explain the reason why they were omitted from ST's May 18 production.

If the absence of a final protective order is the basis for withholding any documents, please state whether ST will agree to produce them now under "Outside Attorneys' Eyes Only" treatment pending entry of a final order (i.e., the interim mechanism provided in standing orders used for patent cases in this District, which the parties can adopt by agreement pending entry of a protective order here), so that production can proceed now.

## II. For the Parties to Meet and Confer Productively, ST Should State What It Is Withholding and Why

The internal construction documents exist, they were due May 18, and they have not been produced. Your June 4 letter recites four potential justifications—the supposed adequacy of ST's production, the accused-product list, CPT's contentions, and the absence of a final protective order—without committing to any of them. As an initial matter, none of the four would excuse nonproduction. The product-list complaints are moot: CPT agreed at the parties' May 15 conference to remove the unreleased part numbers ST identified, the amendments served today do so, and CPT never sought documents for those parts. As to the contentions, ST has never explained how any claimed defect prevented it from producing a single document, and a merits disagreement is no basis to withhold discovery. *TwinStrand Biosciences, Inc. v. Guardant Health, Inc.*, No. 21-1126-GBW-SRF, 2022 WL 20402683, at *1 (D. Del. Oct. 18, 2022).

In any event, CPT cannot confer about objections that have not been stated, and the burden is ST's, as the producing party, to show that its production satisfies the OGP. *See Edward D. Ioli Tr. v. Avigilon Corp.*, No. 2:10-cv-605-JRG, 2012 WL 5830711, at *3–4 (E.D. Tex. Nov. 16, 2012). A productive conference requires ST's position on what it is withholding, on what basis, and whether the missing documents are within its control.

Under the Federal Rules, documents within ST's "control" include those it has the legal right or practical ability to obtain from a related entity. *See Mir v. L-3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 229 (N.D. Tex. 2016); *Shell Global Solutions (US) Inc. v. RMS Eng'g, Inc.*, No. 4:09-cv-3778, 2011 WL 3418396, at *2 (S.D. Tex. Aug. 3, 2011). CPT has been asking since February 4 whether ST's affiliates hold the technical documents for the accused products. ST called the question premature in February and called it "speculative" and "hypothetical" in the Rule 26(f) Report, while committing to "meet and confer in good faith . . . before involving the Court" over any dispute concerning "ST's possession, custody, or control of any documents sought by Plaintiff." Dkt. 31 at 5–6. CPT asked again on May 27 and again at the parties' June 4 conference; ST declined to state a position. The production deadline has passed, and the question is no longer hypothetical. If ST does not control these documents, CPT must seek them from the entities that do, through mechanisms that take substantial time—and every week of silence compresses the schedule at CPT's expense. That prejudice is the direct result of ST's refusal to state a position it committed, months ago, to discuss in good faith.

Accordingly, by June 22, please complete the table below for each accused package and document category. ST "controls" a document if it is within ST's possession, custody, or control — including any document ST has the legal right or practical ability to obtain from a lead-frame or substrate supplier or assembly subcontractor.

BLUE PEAK
LAW GROUP LLP

| **Accused package (patent)** | **Documents sufficient to show:** | **In ST's control? If not, who has them?** | **If ST has them but is withholding, the basis** |
|---|---|---|---|
| PowerFLAT/PQFN ('299) | Design — the lead-frame design (e.g., the die pad and the lead-frame portions connected to the die's bond pads) | | |
| PowerFLAT/PQFN ('299) | Assembly — how the package is assembled (e.g., die mounting, lead-frame/clip attach, and encapsulation) | | |
| eTQFP ('646, '351) | Design — the lead-frame design (e.g., the power and ground bars between the signal leads and the die; the lead-frame flag and its mold-lock structures) | | |
| eTQFP ('646, '351) | Assembly — how the package is assembled (e.g., wire bonding of the die to the bars and leads; mold-compound interlock with the flag) | | |
| eLQFP ('646, '351) | Design — the lead-frame design (e.g., the power and ground bars between the signal leads and the die; the lead-frame flag and its mold-lock structures) | | |
| eLQFP ('646, '351) | Assembly — how the package is assembled (e.g., wire bonding of the die to the bars and leads; mold-compound interlock with the flag) | | |
| LQFP ('351, '189) | Design — the lead-frame design (e.g., the lead-frame flag and mold-lock structures; the larger-area power-rail pad) | | |
| LQFP ('351, '189) | Assembly — how the package is assembled (e.g., wire bonding of the die to the leads, power-rail pad, and external connectors; mold-compound interlock with the flag) | | |
| UFQFPN ('189) | Design — the lead-frame design (e.g., the larger-area power-rail pad and die connection pads) | | |
| UFQFPN ('189) | Assembly — how the package is assembled (e.g., wire bonding of the power-rail pad to the die pads and an external connector) | | |
| CCLGA sensors / LPS-series ('658) | Design — the sensor design (e.g., the pressure-sensing die, the flexible gel over its sensing region, the diaphragm, and the lid with its aperture) | | |
| CCLGA sensors / LPS-series ('658) | Assembly — how the package is assembled (e.g., assembly of the lid, gel, diaphragm, and port) | | |

BLUE PEAK
LAW GROUP LLP

The specific documents requested are illustrative examples only and do not limit ST's production. These categories are provided to focus the meet and confer that Rule 26(f) Report contemplates; they do not limit ST's obligation to produce other documents showing how the accused packages are built.

We look forward to your response. CPT reserves all rights, including the right to seek relief from the Court on the deficiencies addressed above.

Sincerely,

<u>/s/ Natalie Lieber</u>
Natalie Lieber
Blue Peak Law Group LLP
(646) 238-0951
lieber@bluepeak.law

BLUE PEAK
LAW GROUP LLP

June 16, 2026

[Via Email]

Jeffery S. Becker
Baker Botts L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX 75201

**RE: Chip Packaging Technologies, LLC v. STMicroelectronics, Inc., No. 7:25-cv-00505-DC-DTG (W.D. Tex.)—Service of CPT's Second Supplemental Preliminary Infringement Contentions; Response to ST's June 1, 2026 Letter**

Dear Jeff:

This responds to your June 1, 2026 letter. Served with this letter are CPT's Second Supplemental Preliminary Infringement Contentions. As the parties discussed on May 15, the amendments expressly state CPT's representativeness analysis, and they resolve the product-list issues your letter raises—certain products are removed without prejudice, certain package designations are corrected, and twelve entries are conformed to the part numbers of the lead-frame-package products the March 27 list identified, as noted in the contentions themselves. The claim charts are unchanged, and no new infringement theories have been added.

ST has known CPT's infringement theories since February 12, when CPT served its Preliminary Infringement Contentions charting an exemplary product for each asserted patent, element by element, based on CPT's physical teardowns. Those contentions accused both the exemplary products and the STM device series sharing the charted package structures. At ST's request for "a complete list of specifically identified ST products (by product name)," CPT served such a list on March 27, identifying each accused product by part number, product family, and package type drawn from ST's own published datasheets. Because ST publishes no comprehensive list of its products, CPT built the requested list using ST's own part-numbering conventions, capturing every device in the accused package families. A list built that way can sweep in part numbers ST never released; CPT agreed to remove any such entries ST identified, and has done so. Having demanded an exhaustive list from a party limited to public information, ST cannot fairly treat the margins of that list as evidence of an inadequate investigation, much less as a discovery burden, when ST need only check the part numbers against its own records.

The amendments served today state CPT's representativeness analysis expressly, package family by package family. To the extent your letter demands more of CPT's preliminary contentions, that demand is premature. At this stage, the uncharted products need only be "reasonably similar" to the charted exemplary products. *IGT v. Zynga Inc.*, No. 6:21-cv-00331-ADA, 2022 WL 606719, at *2 (W.D. Tex. Mar. 1, 2022). Final contentions are not due until November 5, 2026, after fact discovery opens.

Setting aside the removed products, none of the differences ST recites bears on representativeness. The asserted claims are directed to the internal construction of the package—the lead frame, ground and power bars, mold locks, sensor gel, and lid—not to pin counts, package outlines, or the die inside. That a package has 48 pins rather than 176 says nothing about whether it shares the claimed internal construction, and your letter identifies no internal difference in any accused product, only external ones. A representativeness challenge requires

BLUE PEAK
LAW GROUP LLP

evidence of differences in that internal construction, such as "a declaration or technical document," not attorney argument. This Court rejected exactly such an unsupported challenge in *IGT*, ordering discovery on every accused product. 2022 WL 606719, at *2. If ST has internal documents supporting its position, please produce them now. Such documents are overdue as detailed in CPT's letter today regarding ST's technical production: ST has yet to produce a single internal construction document for any accused product.

Nor do the amendments prejudice ST. The asserted claims and claim charts are unchanged, and the parties have already exchanged claim terms and proposed constructions. An amendment that only narrows and clarifies the case affects no deadline, particularly where every supplement CPT has served answered an ST request. This Court has declined to find unfair prejudice where a plaintiff supplements its preliminary contentions in response to a defendant's complaints. *WSOU Invs. LLC v. OnePlus Tech. (Shenzhen) Co.*, No. 6:20-cv-00952-ADA, 2022 WL 174517, at *3 (W.D. Tex. Jan. 18, 2022). To the extent ST contends that a specific claim term is genuinely necessitated by the amendments, CPT is prepared to confer in good faith.

Please let us know if you'd like to further discuss any of these issues. CPT reserves all rights.

Sincerely,

/s/ Natalie Lieber

Natalie Lieber
Blue Peak Law Group LLP
(646) 238-0951
lieber@bluepeak.law

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| CHIP PACKAGING TECHNOLOGIES, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>STMICROELECTRONICS, INC.,<br><br>*Defendant*. | Civil Action No. 7:25-cv-00505-DC-DTG<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S SECOND SUPPLEMENTAL PRELIMINARY INFRINGEMENT CONTENTIONS**

Pursuant to the Court's Standing Order Governing Patent Proceedings, Defendant's request by letter on March 19, 2026, and the parties' May 15, 2026 meet-and-confer, Plaintiff Chip Packaging Technologies, LLC ("Chip Packaging" or "Plaintiff") hereby provides the following second supplemental preliminary infringement contentions to Defendant STMicroelectronics, Inc. ("STM" or "Defendant").

Attached hereto as Appendices A–E are claim charts identifying, to the best of Plaintiff's current knowledge, where the elements of each Asserted Claim are found in Defendant's products. The charts are identical to the charts served with the March 27, 2026 contentions. The removal of any product from the tables below is without prejudice, and Plaintiff reserves the right to amend these Preliminary Infringement Contentions based on material identified after the contentions are served, including STM's document production and other discovery. Each representativeness statement below is based on Plaintiff's reverse engineering of the charted exemplary products and

on STM's published package and datasheet documentation. STM has not produced its internal packaging documents.

## I. U.S. PATENT NO. 9,263,299

Defendant infringes Claims 1, 3, and 4 of U.S. Patent No. 9,263,299 (the "'299 Patent"). Plaintiff's investigation to date indicates that STM PowerFLAT and PQFN devices include the devices identified below. On information and belief, Defendant makes, uses, sells, offers to sell, and/or imports into the United States (and induces customers and consumers to make, use, sell, offer to sell, or import into the United States) further STM products — including PowerFLAT and PQFN devices — whose packages share the construction described in the representativeness statement below, in addition to those identified in the table.

| Product Family | Part Number | Package |
|---|---|---|
| **STripFET F7 (60V)** | STL7N6F7 | PowerFLAT 2x2 |
| **STripFET F7 (60V)** | STL20N6F7 | PowerFLAT 3.3x3.3 |
| **STripFET F7 (60V)** | STL50N6F7 | PowerFLAT 5x6 |
| **STripFET F7 (60V)** | STL90N6F7 | PowerFLAT 5x6 |
| **STripFET F7 (60V)** | STL180N6F7 | PowerFLAT 5x6 |
| **STripFET F7 (60V)** | STL220N6F7 | PowerFLAT 5x6 |
| **STripFET F7 (60V)** | STL225N6F7AG | PowerFLAT 5x6 |
| **STripFET F7 (60V)** | STL260N4F7 | PowerFLAT 5x6 |
| **STripFET F7 (60V Dual)** | STL36DN6F7 | PowerFLAT 5x6 DI |
| **STripFET F7 (60V Dual)** | STL50DN6F7 | PowerFLAT 5x6 DI |
| **STripFET F7 (40V)** | STL64N4F7AG | PowerFLAT 5x6 |
| **STripFET F7 (40V)** | STL110N4F7AG | PowerFLAT 5x6 |
| **STripFET F7 (40V)** | STL210N4F7 | PowerFLAT 5x6 |
| **STripFET F7 (40V)** | STL260N4LF7 | PowerFLAT 5x6 |
| **STripFET F7 (40V Dual)** | STL64DN4F7AG | PowerFLAT 5x6 DI |
| **STripFET F7 (40V Dual)** | STL76DN4LF7AG | PowerFLAT 5x6 DI |
| **STripFET F7 (80V)** | STL105N8F7AG | PowerFLAT 5x6 |
| **STripFET F7 (80V)** | STL120N8F7 | PowerFLAT 5x6 |
| **STripFET F7 (80V)** | STL130N8F7 | PowerFLAT 5x6 |
| **STripFET F7 (80V)** | STL135N8F7AG | PowerFLAT 5x6 |
| **STripFET F7 (100V)** | STL3N10F7 | PowerFLAT 2x2 |

| | | |
|---|---|---|
| **STripFET F7 (100V)** | STL4N10F7 | PowerFLAT 3.3x3.3 |
| **STripFET F7 (100V)** | STL7N10F7 | PowerFLAT 3.3x3.3 |
| **STripFET F7 (100V)** | STL8N10F7 | PowerFLAT 3.3x3.3 |
| **STripFET F7 (100V)** | STL12N10F7 | PowerFLAT 5x6 |
| **STripFET F7 (100V)** | STL20N10F7 | PowerFLAT 5x6 |
| **STripFET F7 (100V)** | STL30N10F7 | PowerFLAT 5x6 |
| **STripFET F7 (100V)** | STL40N10F7 | PowerFLAT 5x6 |
| **STripFET F7 (100V)** | STL45N10F7AG | PowerFLAT 5x6 |
| **STripFET F7 (100V)** | STL60N10F7 | PowerFLAT 5x6 |
| **STripFET F7 (100V)** | STL80N10F7 | PowerFLAT 5x6 |
| **STripFET F7 (100V)** | STL100N10F7 | PowerFLAT 5x6 |
| **STripFET F7 (100V)** | STL110N10F7 | PowerFLAT 5x6 |
| **STripFET F7 (DSC)** | STLD110N10F7 | PowerFLAT 5x6 DSC |
| **STripFET F7 (DSC)** | STLD257N4F7AG | PowerFLAT 5x6 DSC |
| **STripFET F8 (40V)** | STL100N4LF8 | PowerFLAT 3.3x3.3 |
| **STripFET F8 (40V)** | STL130N4LF8 | PowerFLAT 3.3x3.3 |
| **STripFET F8 (40V)** | STL140N4LF8 | PowerFLAT 5x6 |
| **STripFET F8 (40V)** | STL160N4F8 | PowerFLAT 5x6 |
| **STripFET F8 (40V)** | STL300N4F8 | PowerFLAT 5x6 |
| **STripFET F8 (40V)** | STL320N4LF8 | PowerFLAT 5x6 |
| **STripFET F8 (40V)** | STL320N4F8 | PowerFLAT 5x6 |
| **STripFET F8 (40V)** | STL325N4F8AG | PowerFLAT 5x6 |
| **STripFET F8 (40V)** | STL325N4LF8AG | PowerFLAT 5x6 |
| **STripFET F8 (40V)** | STL305N4LF8AG | PowerFLAT 5x6 |
| **STripFET F8 (40V)** | STL059N4S8AG | PowerFLAT 5x6 WF |
| **STripFET F8 (80V)** | STL110N8F8 | PowerFLAT 5x6 |
| **STripFET F8 (100V)** | STL120N10F8 | PowerFLAT 5x6 |
| **STripFET F8 (100V)** | STL125N10F8AG | PowerFLAT 5x6 |
| **STripFET F6 (60V)** | STL8DN6LF6AG | PowerFLAT 5x6 DI |
| **STripFET F6 (40V)** | STL42P4LLF6 | PowerFLAT 5x6 |
| **STripFET F6 (40V)** | STL42P6LLF6 | PowerFLAT 5x6 |
| **STripFET F6 (40V)** | STL12P6F6 | PowerFLAT 5x6 |
| **STripFET F6 (40V)** | STL13DP10F6 | PowerFLAT 5x6 |
| **STripFET F6 (40V DSC)** | STLD125N4F6AG | PowerFLAT 5x6 DSC |
| **STripFET F6 (40V DSC)** | STLD200N4F6AG | PowerFLAT 5x6 DSC |
| **MDmesh M6 (600V)** | STL17N60M6 | PowerFLAT 8x8 HV |
| **MDmesh M6 (600V)** | STL22N60M6 | PowerFLAT 8x8 HV |
| **MDmesh M6 (600V)** | STL33N60M6 | PowerFLAT 8x8 HV |
| **MDmesh M6 (600V)** | STL36N60M6 | PowerFLAT 8x8 HV |

| | | |
|---|---|---|
| **MDmesh M6 (600V)** | STO68N60M6AV | PowerFLAT 8x8 HV |
| **MDmesh DM6 (600V)** | STL22N60DM6 | PowerFLAT 8x8 HV |
| **MDmesh DM6 (600V)** | STL33N60DM6 | PowerFLAT 8x8 HV |
| **MDmesh DM6 (600V)** | STL45N60DM6 | PowerFLAT 8x8 HV |
| **MDmesh DM6 (600V)** | STL52N60DM6 | PowerFLAT 8x8 HV |
| **MDmesh K5 (800V)** | STL2N80K5 | PowerFLAT 5x6 VHV |
| **MDmesh K5 (800V)** | STL3N80K5 | PowerFLAT 5x6 VHV |
| **MDmesh K5 (800V)** | STL4N80K5 | PowerFLAT 5x6 VHV |
| **MDmesh K5 (800V)** | STL4LN80K5 | PowerFLAT 5x6 VHV |
| **MDmesh K5 (800V)** | STL5N80K5 | PowerFLAT 5x6 VHV |
| **MDmesh K5 (800V)** | STL7N80K5 | PowerFLAT 5x6 VHV |
| **MDmesh K5 (800V)** | STL8N80K5 | PowerFLAT 5x6 VHV |
| **SiC Schottky (650V)** | STPSC4H065DLF | PowerFLAT 8x8 HV |
| **SiC Schottky (650V)** | STPSC10065DLF | PowerFLAT 8x8 HV |
| **SiC MOSFET (650V)** | SCTL90N65G2V | PowerFLAT 8x8 HV |
| **Schottky Rectifier (100V)** | STPS30H100DJF | PowerFLAT 5x6 |
| **Schottky Rectifier (45V)** | STPS1045DEE | PowerFLAT 3.3x3.3 |
| **Schottky Rectifier (30V)** | STPS8L30DEE | PowerFLAT 3.3x3.3 |

**Representativeness.** The chart attached as Appendix A analyzes the STL220N6F7. On information and belief, each product identified above is likewise assembled with its die's bond pads connected to a lead frame by reflowed solder, on a temporary carrier.

A preliminary infringement contentions chart setting forth where in the accused product(s) each element of the asserted claim(s) are found is attached as Appendix A. The priority date of the '299 Patent is July 2, 2014. A copy of the file history has been separately provided.

## II. <u>U.S. PATENT NO. 9,299,646</u>

Defendant infringes Claims 1, 5-7, and 11 of U.S. Patent No. 9,299,646 (the "'646 Patent"). Plaintiff's investigation to date indicates that STM eTQFP and QFP devices include the devices identified below. On information and belief, Defendant makes, uses, sells, offers to sell, and/or imports into the United States (and induces customers and consumers to make, use, sell, offer to sell, or import into the United States) further STM products — including eTQFP and eLQFP

devices — whose packages share the construction described in the representativeness statement below, in addition to those identified in the table.

| Product Family | Part Number | Package |
|---|---|---|
| **SPC58 2B-Line** | SPC582B50E1 | eTQFP-64 |
| **SPC58 2B-Line** | SPC582B50E3 | eTQFP-100 |
| **SPC58 2B-Line** | SPC582B54E1 | eTQFP-64 |
| **SPC58 2B-Line** | SPC582B54E3 | eTQFP-100 |
| **SPC58 2B-Line** | SPC582B60E1 | eTQFP-64 |
| **SPC58 2B-Line** | SPC582B60E3 | eTQFP-100 |
| **SPC58 4B-Line** | SPC584B64E1NH00X | eTQFP-64 |
| **SPC58 4B-Line** | SPC584B64E3ND00X | eTQFP-100 |
| **SPC58 4B-Line** | SPC584B60E1 | eTQFP-64 |
| **SPC58 4B-Line** | SPC584B60E3 | eTQFP-100 |
| **SPC58 4B-Line** | SPC584B70E1 | eTQFP-64 |
| **SPC58 4B-Line** | SPC584B70E1NHC0X | eTQFP-64 |
| **SPC58 4B-Line** | SPC584B70E3 | eTQFP-100 |
| **SPC58 4B-Line** | SPC584B70E5 | eTQFP-144 |
| **SPC58 C-Line** | SPC584C60E1 | eTQFP-64 |
| **SPC58 C-Line** | SPC584C60E3 | eTQFP-100 |
| **SPC58 C-Line** | SPC584C70E1 | eTQFP-64 |
| **SPC58 C-Line** | SPC584C70E3 | eTQFP-100 |
| **SPC58 C-Line** | SPC584C70E5 | eTQFP-144 |
| **SPC58 C-Line** | SPC584C80E1 | eTQFP-64 |
| **SPC58 C-Line** | SPC584C80E3 | eTQFP-100 |
| **SPC58 C-Line** | SPC584C80E5 | eTQFP-144 |
| **SPC58 C-Line** | SPC584C80E7 | eTQFP-176 |
| **SPC58 C-Line (Dual)** | SPC58EC80E1 | eTQFP-64 |
| **SPC58 C-Line (Dual)** | SPC58EC80E3 | eTQFP-100 |
| **SPC58 C-Line (Dual)** | SPC58EC80E5 | eTQFP-144 |
| **SPC58 C-Line (Dual)** | SPC58EC80E7 | eTQFP-176 |
| **SPC58 G-Line** | SPC584G80E5 | eTQFP-144 |
| **SPC58 G-Line** | SPC584G80E7 | eTQFP-176 |
| **SPC58 G-Line (Dual)** | SPC58EG80E5 | eTQFP-144 |
| **SPC58 G-Line (Dual)** | SPC58EG80E7 | eTQFP-176 |
| **SPC58 G-Line (Triple)** | SPC58NG80E5 | eTQFP-144 |
| **SPC58 G-Line (Triple)** | SPC58NG80E7 | eTQFP-176 |
| **SPC58 H-Line (Triple)** | SPC58NH92E5† | eTQFP-144 |
| **SPC58 H-Line (Triple)** | SPC58NH92E7† | eLQFP-176 |

| | | |
|---|---|---|
| **SPC58 N-Line** | SPC58NN84E7 | eTQFP-176 |
| **SPC58 N-Line** | SPC58NH84E5 | eTQFP-144 |
| **SPC58 N-Line** | SPC58NH84E7 | eTQFP-176 |
| **Stellar SR5 E1** | SR5E1E3 | eTQFP-100 |
| **Stellar SR5 E1** | SR5E1E5 | eTQFP-100 |
| **Stellar SR5 E1** | SR5E1E7 | eLQFP-176 |

† The March 27, 2026 list identified this product by its lead-frame package type (see Package column) but inadvertently bore the part-number suffix of the corresponding ball-grid-array variant, which Plaintiff does not accuse. The part number is corrected to identify the lead-frame-package product. No new product is accused: the corrected entry identifies the same lead-frame-package construction identified since March 27, which falls within the representativeness statement below.

**Representativeness.** The chart attached as Appendix B analyzes the SPC582B60E1. On information and belief, the lead frame of each product identified above likewise includes a power bar and a ground bar in the area between the signal leads and the die.

A preliminary infringement contentions chart setting forth where in the accused product(s) each element of the asserted claim(s) are found is attached as Appendix B. The priority date of the '646 Patent is August 23, 2015. A copy of the file history has been separately provided.

## III. <u>U.S. PATENT NO. 8,643,189</u>

Defendant infringes Claims 1, 13, 14, and 19 of U.S. Patent No. 8,643,189 (the "'189 Patent"). Plaintiff's investigation to date indicates that STM UFQFPN and LQFP devices include the devices identified below. On information and belief, Defendant makes, uses, sells, offers to sell, and/or imports into the United States (and induces customers and consumers to make, use, sell, offer to sell, or import into the United States) further STM products — including UFQFPN

and LQFP devices — whose packages share the construction described in the representativeness statement below, in addition to those identified in the table.

| Product Family | Part Number / Series | Package(s) |
|---|---|---|
| **STM32L0 Series** | STM32L051C6 | UFQFPN-48 |
| **STM32L0 Series** | STM32L051K8 | UFQFPN-32 |
| **STM32L0 Series** | STM32L052C8 | UFQFPN-48 |
| **STM32L0 Series** | STM32L053C8* | UFQFPN-48 |
| **STM32L0 Series** | STM32L071CB* | UFQFPN-48 |
| **STM32L0 Series** | STM32L071V8* | LQFP-100 |
| **STM32L0 Series** | STM32L072CB* | UFQFPN-48 |
| **STM32L0 Series** | STM32L073CZ* | UFQFPN-48 |
| **STM32L0 Series** | STM32L073RZ* | LQFP-64 |
| **STM32L0 Series** | STM32L073VZ* | LQFP-100 |
| **STM32F7 Series** | STM32F722RC | LQFP-64 |
| **STM32F7 Series** | STM32F722ZC | LQFP-144 |
| **STM32F7 Series** | STM32F746ZG* | LQFP-144 |
| **STM32F7 Series** | STM32F756ZG* | LQFP-144 |
| **STM32F7 Series** | STM32F765ZI | LQFP-144 |
| **STM32F7 Series** | STM32F767ZI | LQFP-144 |
| **STM32F7 Series** | STM32F769II† | LQFP-176 |
| **STM32L4 Series** | STM32L431CB* | UFQFPN-48 |
| **STM32L4 Series** | STM32L432KC | UFQFPN-32 |
| **STM32L4 Series** | STM32L433CC* | UFQFPN-48 |
| **STM32L4 Series** | STM32L451CE* | UFQFPN-48 |
| **STM32L4 Series** | STM32L476RG | LQFP-64 |
| **STM32L4 Series** | STM32L476VG* | LQFP-100 |
| **STM32L4 Series** | STM32L476ZG* | LQFP-144 |
| **STM32L4 Series** | STM32L486RG | LQFP-64 |
| **STM32L4 Series** | STM32L496ZG | LQFP-144 |
| **STM32L4 Series** | STM32L4A6ZG | LQFP-144 |
| **STM32H7 Series** | STM32H743VI* | LQFP-100 |
| **STM32H7 Series** | STM32H743ZI | LQFP-144 |
| **STM32H7 Series** | STM32H745ZI | LQFP-144 |
| **STM32H7 Series** | STM32H747II† | LQFP-176 |
| **STM32H7 Series** | STM32H750VB* | LQFP-100 |
| **STM32H7 Series** | STM32H753ZI | LQFP-144 |
| **STM32H7 Series** | STM32H755ZI | LQFP-144 |
| **STM32H7 Series** | STM32H7B3VI* | LQFP-100 |

| | | |
|---|---|---|
| **STM32H7 Series** | STM32H735ZG | LQFP-144 |
| **STM32G0 Series** | STM32G030F6 | UFQFPN-20 |
| **STM32G0 Series** | STM32G030K8 | UFQFPN-32 |
| **STM32G0 Series** | STM32G031K8 | UFQFPN-32 |
| **STM32G0 Series** | STM32G070CB | LQFP-48 |
| **STM32G0 Series** | STM32G070RB | LQFP-64 |
| **STM32G0 Series** | STM32G071CB | UFQFPN-48 |
| **STM32G0 Series** | STM32G071RB* | LQFP-64 |
| **STM32G0 Series** | STM32G081CB | UFQFPN-48 |
| **STM32G0 Series** | STM32G0B1CE* | UFQFPN-48 |
| **STM32G0 Series** | STM32G0B1RE* | LQFP-64 |
| **STM32G4 Series** | STM32G431CB* | UFQFPN-48 |
| **STM32G4 Series** | STM32G431KB | UFQFPN-32 |
| **STM32G4 Series** | STM32G431RB* | LQFP-64 |
| **STM32G4 Series** | STM32G474CB | LQFP-48 |
| **STM32G4 Series** | STM32G474RE | LQFP-64 |
| **STM32G4 Series** | STM32G474VE* | LQFP-100 |
| **STM32G4 Series** | STM32G491RE* | LQFP-64 |
| **STM32L5 Series** | STM32L552CC | UFQFPN-48 |
| **STM32L5 Series** | STM32L552CE | UFQFPN-48 |
| **STM32L5 Series** | STM32L552RE | LQFP-64 |
| **STM32L5 Series** | STM32L552ZE | LQFP-144 |
| **STM32L5 Series** | STM32L562CE | UFQFPN-48 |
| **STM32L5 Series** | STM32L562RE | LQFP-64 |
| **STM32WB Series** | STM32WB55CC | UFQFPN-48 |
| **STM32WB Series** | STM32WB55RG | UFQFPN-64 |
| **STM32WB Series** | STM32WB50CG | UFQFPN-48 |
| **STM32WB Series** | STM32WB15CC* | UFQFPN-48 |
| **STM32WL Series** | STM32WL55CC† | UFQFPN-48 |
| **STM32WL Series** | STM32WLE5CC† | UFQFPN-48 |
| **STM32U5 Series** | STM32U575CI | LQFP-100 |
| **STM32U5 Series** | STM32U575ZI | LQFP-144 |
| **STM32U5 Series** | STM32U585CI | LQFP-100 |
| **STM32H5 Series** | STM32H503RB | LQFP-64 |
| **STM32H5 Series** | STM32H563RI | LQFP-64 |
| **STM32H5 Series** | STM32H563VI | LQFP-100 |
| **STM32H5 Series** | STM32H563ZI | LQFP-144 |
| **STM32H5 Series** | STM32H573VI | LQFP-100 |
| **STM32H5 Series** | STM32H573ZI | LQFP-144 |

| | | |
|---|---|---|
| **STM32C0 Series** | STM32C011F4 | UFQFPN-20 |
| **STM32C0 Series** | STM32C011F6 | UFQFPN-20 |
| **STM32C0 Series** | STM32C031C6 | UFQFPN-48 |
| **STM32C0 Series** | STM32C031K6 | UFQFPN-32 |

* This part number is sold both in a lead-frame package (LQFP or UFQFPN) and in a ball-grid-array or wafer-level package under the same root part number. Plaintiff accuses only the lead-frame variant.

† The March 27, 2026 list identified this product by its lead-frame package type (see Package column) but inadvertently bore the part-number suffix of the corresponding ball-grid-array variant, which Plaintiff does not accuse. The part number is corrected to identify the lead-frame-package product. No new product is accused: the corrected entry identifies the same lead-frame-package construction identified since March 27, which falls within the representativeness statement below.

**Representativeness.** The chart attached as Appendix C analyzes the STM32G071CB. On information and belief, each product identified above likewise has, on the die's connection-pad surface opposite the mounting surface, a power-rail pad of larger surface area than the die connection pads, connected by wire bonds to two or more of those pads.

A preliminary infringement contentions chart setting forth where in the accused product(s) each element of the asserted claim(s) are found is attached as Appendix C. The priority date of the '189 Patent is July 17, 2012. A copy of the file history has been separately provided.

## IV. U.S. PATENT NO. 9,685,351

Defendant infringes Claims 1-3 of U.S. Patent No. 9,685,351 (the "'351 Patent"). Plaintiff's investigation to date indicates that STM 32-bit Microcontrollers (MCU), Microprocessors (MPU) and similar large die devices in QFP format include the devices identified

below. On information and belief, Defendant makes, uses, sells, offers to sell, and/or imports into the United States (and induces customers and consumers to make, use, sell, offer to sell, or import into the United States) further STM products — including 32-bit microcontrollers (MCU), microprocessors (MPU), and similar large-die devices in QFP format — whose packages share the construction described in the representativeness statement below, in addition to those identified in the table.

| Product Family | Part Number / Series | Package(s) |
|---|---|---|
| **STM32L4 Series** | STM32L476RG | LQFP-64 |
| **STM32L4 Series** | STM32L476VG* | LQFP-100 |
| **STM32L4 Series** | STM32L476ZG* | LQFP-144 |
| **STM32L4 Series** | STM32L486RG | LQFP-64 |
| **STM32L4 Series** | STM32L496ZG | LQFP-144 |
| **STM32L4 Series** | STM32L4A6ZG | LQFP-144 |
| **STM32F7 Series** | STM32F722ZC | LQFP-144 |
| **STM32F7 Series** | STM32F746ZG* | LQFP-144 |
| **STM32F7 Series** | STM32F756ZG* | LQFP-144 |
| **STM32F7 Series** | STM32F765ZI | LQFP-144 |
| **STM32F7 Series** | STM32F767ZI | LQFP-144 |
| **STM32F7 Series** | STM32F769II† | LQFP-176 |
| **STM32F7 Series** | STM32F769BI† | LQFP-208 |
| **STM32H7 Series** | STM32H743VI* | LQFP-100 |
| **STM32H7 Series** | STM32H743ZI | LQFP-144 |
| **STM32H7 Series** | STM32H745ZI | LQFP-144 |
| **STM32H7 Series** | STM32H747II† | LQFP-176 |
| **STM32H7 Series** | STM32H750VB* | LQFP-100 |
| **STM32H7 Series** | STM32H753ZI | LQFP-144 |
| **STM32H7 Series** | STM32H755ZI | LQFP-144 |
| **STM32H7 Series** | STM32H757II† | LQFP-176 |
| **STM32H7 Series** | STM32H735ZG | LQFP-144 |
| **STM32H7 Series** | STM32H7B3VI* | LQFP-100 |
| **SPC58 2B-Line** | SPC582B60E1 | eTQFP-64 |
| **SPC58 2B-Line** | SPC582B60E3 | eTQFP-100 |
| **SPC58 4B-Line** | SPC584B70E3 | eTQFP-100 |
| **SPC58 4B-Line** | SPC584B70E5 | eTQFP-144 |
| **SPC58 C-Line** | SPC584C80E5 | eTQFP-144 |

| | | |
|---|---|---|
| **SPC58 C-Line** | SPC584C80E7 | eTQFP-176 |
| **SPC58 C-Line (Dual)** | SPC58EC80E5 | eTQFP-144 |
| **SPC58 C-Line (Dual)** | SPC58EC80E7 | eTQFP-176 |
| **SPC58 G-Line** | SPC584G80E5 | eTQFP-144 |
| **SPC58 G-Line** | SPC584G80E7 | eTQFP-176 |
| **SPC58 G-Line (Dual)** | SPC58EG80E5 | eTQFP-144 |
| **SPC58 G-Line (Dual)** | SPC58EG80E7 | eTQFP-176 |
| **SPC58 G-Line (Triple)** | SPC58NG80E5 | eTQFP-144 |
| **SPC58 G-Line (Triple)** | SPC58NG80E7 | eTQFP-176 |
| **SPC58 H-Line** | SPC58NH92E5† | eTQFP-144 |
| **SPC58 H-Line** | SPC58NH92E7† | eLQFP-176 |
| **SPC58 N-Line** | SPC58NN84E7 | eTQFP-176 |
| **Stellar SR5 E1** | SR5E1E3 | eTQFP-100 |
| **Stellar SR5 E1** | SR5E1E5 | eTQFP-100 |
| **Stellar SR5 E1** | SR5E1E7 | eLQFP-176 |
| **STM32G4 Series** | STM32G474VE* | LQFP-100 |
| **STM32G4 Series** | STM32G491RE* | LQFP-64 |
| **STM32G0 Series** | STM32G070RB | LQFP-64 |
| **STM32G0 Series** | STM32G071RB* | LQFP-64 |
| **STM32G0 Series** | STM32G0B1RE* | LQFP-64 |
| **STM32U5 Series** | STM32U575CI | LQFP-100 |
| **STM32U5 Series** | STM32U575ZI | LQFP-144 |
| **STM32U5 Series** | STM32U585CI | LQFP-100 |
| **STM32H5 Series** | STM32H563VI | LQFP-100 |
| **STM32H5 Series** | STM32H563ZI | LQFP-144 |
| **STM32H5 Series** | STM32H573VI | LQFP-100 |
| **STM32H5 Series** | STM32H573ZI | LQFP-144 |

* This part number is sold both in a lead-frame package (LQFP or UFQFPN) and in a ball-grid-array or wafer-level package under the same root part number. Plaintiff accuses only the lead-frame variant.

† The March 27, 2026 list identified this product by its lead-frame package type (see Package column) but inadvertently bore the part-number suffix of the corresponding ball-grid-array variant, which Plaintiff does not accuse. The part number is corrected to identify the lead-frame-package product. No new product is accused: the corrected entry identifies the same lead-

frame-package construction identified since March 27, which falls within the representativeness statement below.

**Representativeness.** The chart attached as Appendix D analyzes the SR5E1E7. On information and belief, the lead frame of each product identified above likewise has, on its top surface, positive mold lock structures that laterally protrude above that surface.

A preliminary infringement contentions chart setting forth where in the accused product(s) each element of the asserted claim(s) are found is attached as Appendix D. The priority date of the ’351 Patent is July 18, 2014. A copy of the file history has been separately provided.

## V. U.S. PATENT NO. 10,151,658

Defendant infringes Claim 1 of U.S. Patent No. 10,151,658 (the "’658 Patent"). Plaintiff's investigation to date indicates that STM pressure sensor devices include the devices identified below. On information and belief, Defendant makes, uses, sells, offers to sell, and/or imports into the United States (and induces customers and consumers to make, use, sell, offer to sell, or import into the United States) further STM products — including pressure sensor devices — whose packages share the construction described in the representativeness statement below, in addition to those identified in the table.

| Product Family | Part Number | Package |
|---|---|---|
| **LPS27 Series** | LPS27HHW | CCLGA-10L |
| **LPS27 Series** | LPS27HHTW | CCLGA-10L |
| **LPS28 Series** | LPS28DFW | CCLGA-6L |
| **LPS33 Series** | LPS33HW | CCLGA (ceramic) |
| **LPS33 Series** | LPS33K | CCLGA (ceramic, gel) |
| **ILPS Series** | ILPS28QSW | CCLGA-6L |

**Representativeness.** The chart attached as Appendix E analyzes the LPS28DFW. On information and belief, each product identified above likewise includes a pressure-sensing die with

a flexible gel over its sensing region, a flexible diaphragm covering the gel, and a lid located between the gel and the exterior, with an aperture.

A preliminary infringement contentions chart setting forth where in the accused product(s) each element of the asserted claim(s) are found is attached as Appendix E. The priority date of the '658 Patent is November 20, 2016. A copy of the file history has been separately provided.

| | |
|---|---|
| Dated: June 16, 2026 | By: <u>*/s/ Robert Magee*</u><br>Garland Stephens (Texas Bar No. 24053910)<br>garland@bluepeak.law<br>Robert Magee (*pro hac vice*)<br>robert@bluepeak.law<br>Justin Constant (*pro hac vice*)<br>justin@bluepeak.law<br>Richard Koehl (Texas Bar No. 24115754)<br>richard@bluepeak.law<br>Kate Falkenstien (*pro hac vice*)<br>kate@bluepeak.law<br>Natalie Lieber (*pro hac vice*)<br>lieber@bluepeak.law<br>Ameet Modi (*pro hac vice*)<br>modi@bluepeak.law<br>**BLUE PEAK LAW GROUP LLP**<br>3139 West Holcombe Blvd.<br>PMB 8160<br>Houston, TX 77025<br>Tel: (281) 972-3036<br><br>*Of Counsel:*<br>Mark D. Siegmund (Texas Bar No. 24117055)<br>msiegmund@cjsjlaw.com<br>**CHERRY JOHNSON SIEGMUND JAMES, PC**<br>7901 Fish Pond Road, 2nd Floor<br>Waco, TX 76710<br>Tel: (254) 732-2242<br>Fax: (866) 627-3509<br><br>William D. Ellerman (Texas Bar No. 24007151)<br>wellerman@cjsjlaw.com<br>**CHERRY JOHNSON SIEGMUND JAMES, PC**<br>One Glenn Lakes Tower |

| | |
|---|---|
| | 8140 Walnut Hill Lane, Suite 105<br>Dallas, TX 75231<br>Tel: (254) 732-2242<br>Fax: (866) 627-3509<br><br>*Attorneys for Plaintiff Chip Packaging Technologies, LLC* |

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2026, I caused the foregoing document, *Plaintiff's Second Supplemental Preliminary Infringement Contentions*, and associated documents, to be served on counsel of record by e-mail.

Dated: June 16, 2026 By: *\/s/ Robert Magee*